WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

```
             FILED
U.S. DISTRICT COURT

2011 AUG 29  P 1:09

 DISTRICT OF UTAH

BY:_____
      DEPUTY CLERK
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| WALTER L. WAGNER, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| PRESTON MICHIE, KENNETH | ) |
| FRANCIK, LESLIE COBOS, MARK | ) |
| ROBINSON, ANNETTE EMERSON | ) |
| STEVE BRYANT, WORLD BOTANICAL | ) |
| GARDENS, INC. (WBGI), | ) |
| | ) |
|     Defendants | ) |
| | ) |

Case No._____

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF**

[Tort/Defamation, Etc.]

[Diversity/28 U.S.C. § 1332]

[Jury Trial Demanded]

```
Case: 2:11cv00784
Assigned To : Wells, Brooke C.
Assign. Date : 8/29/2011
Description: Wagner v. Michie et al
```

## COMPLAINT

### Nature of the Case

By his complaint, Plaintiff WALTER L. WAGNER seeks damages for false defamation of him by defendants, and injunctive relief to preclude further defamation of him by defendants, and for damage to plaintiff's share valuation in WBGI due to the fraud, waste and mismanagement by defendants of the WBGI corporation. Plaintiff also seeks injunctive relief to preclude the continuing defamation that has been ongoing and becoming increasingly more extensive, and to appoint a new Board of Directors to manage the affairs of WBGI.

Plaintiff and defendants are current or former officers or directors of a Nevada corporation, World Botanical Gardens, Incorporated (hereinafter WBGI), which operates a botanical garden tourist attraction in Hawaii that was constructed primarily through the efforts of plaintiff WAGNER between 1995 and 2004. Defendants did not become shareholders in this company until late in that period, and replaced plaintiff WAGNER as an officer in September, 2004. Plaintiff Wagner was the Founder and Incorporator of WBGI and served as WBGI's President and Director from 1995 to 2004 (http://en.wikipedia.org/wiki/World_Botanical_Gardens). Plaintiff owns an approximately 1/6th interest in WBGI, disputed by defendants. The defendants replaced plaintiff WAGNER as corporate officers and directors of WBGI in 2004, and since becoming officers or directors of WBGI, have engaged in continuous

2

false defamation of plaintiff WAGNER to further their own agenda, and to cover-up or hide their own misdeeds and wrongdoings, as detailed *infra*.   Plaintiff WAGNER is owed approximately $750,000 (judgment obtained separately in Hawaii) by defendant WBGI for the work of constructing the botanical garden, and the continuing defamation of plaintiff by the defendants is part of an ongoing effort to avoid that financial obligation owed to plaintiff.   That defamation has had profound negative impact on plaintiff's other business efforts and enterprises in Utah.   The efforts by defendants to hide defendants' misdeeds and wrongdoings, as well as other acts that constitute fraud, waste and mismanagement of WBGI's assets, has created a substantial financial burden on defendant WBGI causing its valuation to plummet from approximately $10,000,000 in 2004 to near $0.0 presently, and reducing plaintiff WAGNER's personal ownership therein from approximately $1,600,000 in 2004 to near $0.0 presently.

### The Parties

1.     Plaintiff WALTER L. WAGNER is an individual residing in Payson, Utah at the above-captioned address.    Plaintiff WAGNER is also the Founder, Incorporator and an original officer and director of WBGI, who was subsequently replaced by defendants, *infra*, as officers and directors.    Plaintiff WAGNER originally incorporated WBGI in 1995, and was replaced as an officer and director in September 2004.    Plaintiff WAGNER conceptualized, formed and

capitalized WBGI in Utah circa 1990-1995 while living in West Valley City, and spent approximately 10 years in Hawaii (January 1995- September 2004) developing the WBGI site location, while returning annually to Utah and his extended family in Utah. Plaintiff WAGNER was the primary driving force for creation of that botanical garden.

2.    Defendant PRESTON MICHIE is an individual residing in Oregon City, Oregon at an address yet to be ascertained. Defendant MICHIE is also a current officer and director of defendant WBGI.

3.    Defendant KENNETH FRANCIK is an individual residing in Simi Valley, California at an address yet to be ascertained. Defendant FRANCIK is also a former officer and director of defendant WBGI who continues to unofficially direct WBGI.

4.    Defendant LESLIE COBOS is an individual residing in Valencia, California at an address yet to be ascertained. Defendant COBOS is also a current officer and director of defendant WBGI.

5.    Defendant MARK ROBINSON is an individual residing in Spokane, Washington at an address yet to be ascertained. Defendant ROBINSON is also a current officer and director of defendant WBGI.

6.    Defendant ANNETTE EMERSON is an individual residing in Pleasant Hill, California at an address yet to be ascertained. Defendant EMERSON is also a former officer and director of defendant WBGI.

4

7.     Defendant STEVE BRYANT is an individual residing in Grand Rapids, Minnesota at an address yet to be ascertained.  Defendant Bryant is also a current officer and director of defendant WBGI.

8.     Defendant WBGI is a corporation currently organized under the laws of the state of Nevada with its principal place of business in Hawaii.

### Jurisdiction and Venue

9.     This Court has jurisdiction pursuant to 28 U.S.C. 1332 in that there is a complete diversity of citizenship and the damages to plaintiff exceeds $75,000.00

10.    Venue is proper in Utah pursuant to 28 U.S.C. 1391(a)(3) in that the plaintiff (WAGNER) resides in the district, the district is the most centrally located for all named parties, defendant WBGI has previously retained legal counsel located in Salt Lake county, Utah which counsel is currently handling other WBGI matters in the Utah District Court (Fourth District, American Fork Department), and a majority of the damages occurred in Utah and the witnesses pertaining to those damages also reside in Utah.

### Facts

11.    The defendants are agents of each other and of defendant corporation WBGI, and were acting in such agency capacity in doing the things set forth hereafter, and are liable for each other's tortious conduct while engaged in such agency capacity.

12.    Commencing on or about September, 2004 and continuously thereafter to the present time, the defendants have commenced a series of oral and written false defamations designed to place defendant in a false light, and to use such false light as a 'justification' to themselves, WBGI shareholders, news-media, courts, attorneys and others for their conduct of initiating lawsuits naming defendant, and otherwise 'justifying' their reasons for controlling the corporation. Additionally, defendants have engaged in extreme examples of waste, fraud and mismanagement of the affairs of WBGI, including sell-off of 90% of its land holdings, embezzlement of dedicated funds to other purposes, waste of the natural resources of the garden lands, etc. all of which has devalued WBGI to nearly zero in valuation including plaintiff's ownership interest.

## COUNT I – SLANDER

13.    Commencing on or about September, 2004 and continuously to the present time, defendants Kenneth Francik and Leslie Cobos orally told all other defendants, WBGI shareholders, and others that plaintiff WAGNER had kept poor and incomplete records of the shareholders of the WBGI corporation and that such records had omitted numerous shareholders.  In fact he kept good and complete records without any omissions during the entire time he served as a corporate officer.  Such slanderous comments included, but were not limited

6

to, assertions to the effect that plaintiff WAGNER did not keep an electronic data base of shareholders but rather that he merely kept a file cabinet that contained written listings of only some of the shareholders, listings that were composed of "post-it" notes or other shoddy records, and that such hard-copy records were incomplete and did not contain all shareholders.  Commencing shortly thereafter and through to the present time, all other defendants have repeated such false slander to themselves and others for the express purpose of placing plaintiff WAGNER in a false light to themselves, to the WBGI shareholders and to others for the express purpose of having them shun plaintiff or otherwise to have no further contact with him with respect to the WBGI corporation.

14.   In fact, while serving as a WBGI corporate officer, plaintiff WAGNER maintained a complete electronic data base of all shareholders that included their name, address, phone number, company registration number, date of share acquisition, amount paid for their shares, and other pertinent information, which data base he printed out *in toto* in 2001, in 2003, and in 2005, and which printouts were available at the WBGI office in addition to the hard-drive on the computer where they were primarily stored, and will be presented as evidence at trial.  On or about June, 2004 all such electronic records were handed over on a CD disk to Mr. David Adams, the WBGI office manager at that time, and who thereafter continued to maintain such electronic records on the new office

computer he maintained, in the same electronic format as had been maintained by plaintiff WAGNER, through and until February 2005 when Mr. Adams resigned upon learning of frauds being committed by defendant Kenneth Francik, and leaving at the WBGI office in Hilo, Hawaii in their entirety the electronic data base he had been continuing to maintain on behalf of WBGI.

15.   Plaintiff WAGNER was informed circa March 2011 that defendants Kenneth Francik and Leslie Cobos thereafter, sometime between February 2005 and February 2011, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, or made false entries in the WBGI shareholder electronic data base previously maintained by plaintiff, in violation of State and Federal securities regulations and other regulations precluding such altering, destroying mutilating etc. of shareholder records, thereby deleting numerous shareholders from the *Substitute Shareholder Database* that they substituted for the original data base they had obtained from David Adams and which substitute data base is now falsely promoted by defendants, and each of them, as the complete shareholder data base, and that any omissions or deletions of shareholders were occasioned by plaintiff WAGNER, and not by defendants or any of them.

16.   Plaintiff is damaged in his reputation generally, and to his ability to associate with his business associates, in the amount of $100,000 by such defamation of character as to defendants WBGI, Francik and Cobos. Plaintiff is entitled to punitive damages of $100,000 in that defendants knew their

8

accusations were false but intended to commit this tort without regard to the effects on plaintiff.

## COUNT II – LIBEL

17 Plaintiff repeats and re-alleges the first 16 paragraphs as if set forth in full herein.

18. On July 13, 2011, on July 29, 2011, and again on July 31, 2011 defendant Steve Byrant repeated the false defamation that plaintiff WAGNER had kept an incomplete shareholder database which were missing records and which had records only in "Post-it" note form for other shareholders in an email writing he sent electronically from Minnesota to Utah to one Utah shareholder whose record was not found in the WBGI *Substitute Shareholder Database* created by defendants Kenneth Francik and Leslie Cobos. His two emails of July 12 and July 29, addressed to the same shareholder read in pertinent part: *"What I have learned is that the database of shareholder information we have was compiled from information contained in file cabinets that Walter Wagner had. In most cases, there is a subscription agreement and stock certificate that clearly documents stock ownership of an individual or business. In some cases, there is nothing more than a Post-it note."* (7/13/2011 email) *"There are a number of people that we don't have any information on except in some cases a post-it note."* (7/29/2011 email) His email of July 31 to a different shareholder, given as an explanation as to why his records were not found in the shareholder

database, reads in pertinent part: "*If you purchased shares from Walter Wagner, it's possible that he didn't properly document that transaction.*"

19. Plaintiff is damaged in his reputation generally in the amount of $100,000.00 by such defamation of character as to defendants WBGI, Francik, Cobos and Bryant. Plaintiff is entitled to punitive damages in the amount of $100,000.00 in that the defendants knew their accusations were false but intended to commit this tort without regard to the effects on plaintiff.

## COUNT III – SLANDER

20. Plaintiff repeats and re-alleges paragraphs 11-12 as if set forth in full herein.

21. In 2004, the WBGI corporation and defendant Kenneth Francik on behalf of the company advertised to the WBGI shareholders, in a WBG newsletter, that the company was seeking additional investment capital from the existing shareholders for construction of a Visitor Center for the company's business operations. The proposed Visitor Center was a long-delayed project that had been commenced in late 2000 with architectural drawings and a model thereof prepared in mid-2001, and the site excavated. However, on September 11,

2001 the company encountered a severe downturn in its gate-receipts, and the Visitor Center project was placed on hold until the financial situation improved. In 2004 Kenneth Francik promised in writing to the existing shareholders that those existing shareholders who invested further with the company would have their investment capital placed into a special "Visitor Center" account that would be used exclusively for construction of a visitor center and for no other purpose. Plaintiff WAGNER assisted in setting up the Visitor Center Account at the Bank of Hawaii in Hilo, Hawaii, and was present when the account was opened, but was not a signatory on the account.

22.     In response to this call for additional investment capital approximately 20 shareholders invested additional funds with WBGI totaling approximately $220,000 which was deposited into the Visitor Center Account recently opened for that purpose.  Of those monies, approximately $20,000 was spent by the defendants in late 2004 and in early 2005 towards construction of the Visitor Center by completing, submitting and obtaining Hawaii county approval of a Visitor Center *Special Use Permit* required by the county before a Hawaii county *Building Permit* could be obtained.  Plaintiff WAGNER extensively assisted WBGI in obtaining said *Special Use Permit* by frequently consulting with the attorney retained by WBGI to advance the county approval, by incorporating the existing Visitor Center plans he had previously prepared, and by appearing at

the County hearing thereon to support it.  He received no compensation for this assistance.

23.    Thereafter, commencing circa late 2005 or early 2006 defendants Annette Emerson, Preston Michie, Kenneth Francik and others removed the monies from the dedicated-funds Visitor Center Account, which had previously been opened at the Bank of Hawaii with an account name of "*WBGI Visitor Center Account*".  They then agreed to spend, and did unlawfully spend the monies elsewhere other than for construction of a Visitor Center as they had promised the WBGI shareholders generally, and specifically the WBGI shareholders who had placed their monies into that account in good faith.

24.    In order to provide a cover-up of their unlawful use of the Visitor Center Account funds, they agreed amongst themselves to falsely tell all others who inquired regarding those funds that the monies had not been deposited into a Visitor Center account as had been promised, and that plaintiff WAGNER had unlawfully spent the monies on himself during the period of time when he had been in control of the WBGI finances.  Accordingly, they falsely slandered plaintiff WAGNER by falsely telling themselves and the other named defendants, and other shareholders who inquired, that the Visitor Center account did not exist and had never existed and that the monies intended for deposit into such account had instead been embezzled and not deposited into such an account and had instead been misspent by plaintiff WAGNER on

himself personally, when in reality defendants themselves had spent the monies in violation of their promise to the WBGI shareholders that those WBGI Visitor Center account funds would be spent solely on construction of a visitor center. They and the other named defendants did thereafter, continuously and through to the present time, continue to slander defendant WAGNER to themselves, to other WBGI shareholders, and to others by repeating that false allegation that plaintiff WAGNER had embezzled the Visitor Center monies sent in for opening a visitor center account.

25.    Plaintiff WAGNER is damaged generally to his character in the sum of $1,000,000 by defendants WBGI, Francik, Michie and Cobos in that the false accusations are *slander per se* in that they set forth an accusation that plaintiff WAGNER engaged in felony conduct of embezzlement, when in truth those defendants are the parties who wrongfully removed and spent the Visitor Center Account monies.  Plaintiff WAGNER is entitled to punitive damages in the sum of $1,000,000 in that the defendants knew their accusations were false and they intended to commit this tort without regard to the effects on plaintiff.

## COUNT IV – LIBEL

26.    Plaintiff WAGNER repeats and re-alleges paragraphs 20-25 as if set forth in full herein.

27.    On <u>May 11, 2011</u> defendant Preston Michie, in his purported capacity as WBGI's "CEO" and "General Counsel" sent from Oregon to Utah an electronic

email written letter continuing the false defamation of plaintiff WAGNER in which Preston Michie falsely claimed that plaintiff WAGNER had embezzled the monies sent in by the WBGI shareholders for opening of a Visitor Center account and that accordingly no Visitor Center account had been opened and that no Visitor Center had yet been constructed by WBGI because of said alleged embezzlement.   Said electronic email writing in response to a direct query from a WBGI shareholder regarding the funds in the visitor center account stated in pertinent part:  "*There has never been a 'visitor center' account.   ... Wagner misappropriated several hundred thousands of dollars from WBGI and from investors to his personal purposes.   As a result we have not yet been able to construct a new Visitor Center, although we have been working toward that end.*"

28.    Such false and defamatory written claim by defendant Preston Michie is *libel per se* in that it places defendant WAGNER in the false light of having committed the crime of embezzling the monies that were sent in for the Visitor Center Account, when in reality defendants Michie, Francik, Emerson and others unlawfully removed those monies from the Visitor Center Account and attempted to cover up such unlawful expenditure of funds by falsely slandering and libeling plaintiff to make it appear as if he were the guilty party.

29.    Plaintiff is damaged generally in the amount of $1,000,000 as to defendants WBGI, Francik and Michie in that defendants committed *libel per se*

in that they falsely accused plaintiff of engaging in the felony of embezzlement. Plaintiff is entitled to punitive damages in the sum of $1,000,000 in that the defendants intended to commit this tort without regard to the effect on plaintiff.

## COUNT V – SLANDER and LIBEL

30.    Plaintiff repeats and re-alleges the allegations of paragraphs 11-12 as if set forth in full herein.

31.    Commencing in 2005 and continuously thereafter to the present time defendant Kenneth Francik orally began falsely claiming to the other named defendants and to others that plaintiff WAGNER had committed the fraud of signing a corporate promissory note in January 2004 while acting as a corporate officer, payable to himself, and cosigned by another corporate officer (Linda Wagner, his wife), when plaintiff allegedly was no longer a corporate officer and had no corporate authority and that the cosigner on the promissory note likewise was not a corporate officer, and that both had allegedly committed the criminal fraud of signing a WBGI promissory note without being WBGI corporate officers.    In fact, plaintiff WAGNER was listed as the incorporator/founder of WBGI and corporate officer with the Nevada department of corporations, which records show him retaining such corporate officer position continuously through and until September 2, 2004 when he was replaced by Kenneth Francik as President following a board vote.    Likewise, the Nevada records showed the

15

other co-signing corporate officer (Linda Wagner) was a valid corporate officer at the time of signing of the promissory note, and that she was not replaced in that capacity until September 2, 2004 approximately eight months after signing of that promissory note, when she too was voted out of office at a board meeting held on September 2, 2004. Still further, these facts were at all times known to defendant Francik in that he was present at that board meeting of September 2, 2004 when he was voted in as President to replace plaintiff WAGNER as WBGI president, and when Linda Wagner was voted out of office. Still further, the promissory note was a valid WBGI obligation for which plaintiff WAGNER signed in order to defer an otherwise immediately owing obligation, and was very similar in nature to promissory notes signed each preceding year for the preceding nine years deferring plaintiff WAGNER's accruing unpaid salary for a period of ten years. That particular 2004 promissory note was in actuality a deferral of a payment obligation to plaintiff WAGNER for the past year's service (2003), deferring such payment obligation by WBGI for a period of ten years (until 2014), unless WBGI breached repayment of a credit card loan he had also made to WBGI, which would allow plaintiff WAGNER to call said promissory note immediately due and payable.

32.   On February 27, 2008 defendant Kenneth Francik appeared before the Hilo Grand Jury, Hawaii County, without any notice to plaintiff WAGNER and without plaintiff WAGNER's awareness of his appearance at the Grand Jury

meeting room, and repeated his false defamation of defendant WAGNER falsely

claiming that defendant WAGNER signed a WBGI promissory note on January

1, 2004 without being a WBGI officer, falsely claiming that WAGNER and his

co-signer had been replaced as corporate officers in August 2003 and that

accordingly they had attempted to defraud WBGI by so doing.   As a

consequence, on the following day (February 28, 2008) Plaintiff WAGNER was

wrongly prosecuted with a felony charge of "attempted theft", by the filing of an

indictment that was wholly based upon the false slander of plaintiff WAGNER

produced by defendant Kenneth Francik to the Hilo Grand Jury, and on no other

testimony of alleged wrongdoing from any other person, nor upon any

documents of any form, and accordingly solely on the oral defamation of plaintiff

WAGNER provided to the Hilo Grand Jury by defendant FRANCIK.

33.   Thereafter, in order to maintain said false prosecution, defendant Kenneth

Francik continually thereafter repeated, through to the present time, said false

slander of plaintiff WAGNER's alleged fraudulent issuance of a WBGI

promissory note, which slander was continually repeated to the other named

defendants, to news media, to public and business figures in Hawaii, to WBGI

shareholders, and to others for the purpose of placing plaintiff WAGNER in a

false light and using such false publicity to help maintain the wrongful criminal

prosecution of plaintiff WAGNER.   Further, following said false slander to the

Hilo Grand Jury, defendant FRANCIK repeated said slander to the local

17

Honolulu newspaper for the purpose of further falsely defaming plaintiff which false defamation was then published in the local newspaper, and republished continuously thereafter on the internet, and has caused such false defamation to be published and republished on the internet generally, continuously through to the present time, and on numerous internet forums specifically, continuously through to the present time.

34.    On September 08, 2010 said wrongfully initiated criminal prosecution of plaintiff WAGNER based upon the continuing slander and defamation of plaintiff by defendant Kenneth Francik was dismissed in its entirety by court Order, without ever going to a trial, and said dismissal became **final** on October 08, 2010 by automatic operation of statute because the State of Hawaii declined to appeal said dismissal within 30 days of entry of the dismissal order.

35.    Plaintiff WAGNER was damaged generally by defendants WBGI and Francik in that said continuing defamation was actionable *slander per se* in that it falsely set forth the accusation that plaintiff WAGNER had been engaged in felony conduct, which damages to plaintiff are in the sum of $2,000,000. Plaintiff WAGNER was additionally damaged specifically by defendants WBGI and Francik in that he lost a prospective contract with Utah Valley University (UVU) to construct a botanical garden at UVU, losing such prospective contract specifically due to said continuing false defamation and false publication of defendant Francik's fraudulent accusations, which also constitutes the tort of

18

tortious contractual interference. Said prospective contract had a prospective valuation to plaintiff WAGNER of $100,000/year for a period of several years. Further, plaintiff was denied employment with the Utah Department of Education as an educator in Utah schools for two years until dismissal of said wrongful prosecution (whereupon he was then granted employment opportunity), which caused plaintiff WAGNER damages in excess of $90,000; he was denied continuing employment with an insurance corporation occasioned by said false defamation which caused plaintiff WAGNER damages in excess of $100,000; he has been denied issuance of an insurance license in various states other than Utah occasioned by said false defamation which caused plaintiff WAGNER damages in excess of $100,000; and he has been likewise damaged in his standing amongst his family and friends due to said false defamation, in an amount exceeding the jurisdiction of this court and to be determined at trial.

36.    Plaintiff WAGNER was additionally damaged by defendants WBGI and Francik in that his wife, Linda Wagner, was arrested pursuant to the same fraudulent criminal prosecution initiated by defendant FRANCIK (in that she was the co-signer on the promissory note, an actual WBGI officer at the time, but falsely alleged by defendant FRANCIK to have been replaced as a WBGI officer in August, 2003), and plaintiff WAGNER was forced to immediately go post her bail following her unlawful arrest with the result being that both he and Linda Wagner were removed from a civil courtroom where the arrest took place.

Defendant FRANCIK was on the witness stand in that civil case (*WBGI v. Wagner*), testifying untruthfully against plaintiff and his wife, with plaintiff WAGNER starting to cross-examine defendant FRANCIK when Francik's orchestration of the false arrest took place. In that neither plaintiff WAGNER nor his wife were able to appear in defense at that civil trial (except for the earliest portion) because they were instead at the jailhouse posting bail, and were unable to cross-examine witnesses and present their own testimonies and evidences which would have refuted in their entirety the fraudulent civil accusations being made against them by Francik and his cronies, a civil judgment was entered against them for approximately $2,405,523.45 + 10% interest from February 28, 2009 (totaling approximately $3,006,904.31 on August 28, 2011), when such judgment would not otherwise have been entered against him based on the actual facts, in that neither plaintiff herein nor his wife were in actuality civilly liable in that case, and the accusations made against them were wholly unfounded and based entirely upon false supposition. Plaintiff is likewise entitled to punitive damages in the sum of $3,006,904.31 in that defendant Francik intended to commit this tort of having them wrongfully removed from a civil trial without regard to the effect on plaintiff WAGNER and his rights to defend himself at trial.

## COUNT VI – FRAUD, WASTE and MISMANAGEMENT

37.    Plaintiff repeats paragraphs 1-36 *supra* as if set forth in full herein.

38.   The acts of defamation *supra* constitute a waste of WBGI resources in that they have occasioned extensive expenditures of funds for legal proceedings in which the defendants were seeking to promote fraudulent lawsuits, both already expended on prior proceedings and those to be expended in this proceeding.   Such waste has been occasioned by all of the named defendants.

39.   Plaintiff WAGNER, both prior to September 2, 2004 and after that date, assisted WBGI in obtaining approximately $600,000 in new investment funds in 2004 in addition to the gross gate receipts from the ongoing WBGI business he had developed (which gross gate receipts totaled approximately $350,000 for 2004).   This assistance of obtaining investment funds included assisting in convincing then-current WBGI investors to invest still further beyond the original amount they had invested so that their funds would be placed into the dedicated Visitor Center Account, announced by defendant Francik in a WBG newsletter, convincing them that this would result in the construction of a visitor center.   In response to plaintiff's assistance to WBGI in 2004, approximately $220,000 was raised from existing WBGI shareholders during that year and deposited into that dedicated Visitor Center Account.   In addition, plaintiff WAGNER assisted in obtaining an additional approximately $380,000 in new investment capital in 2004, deposited into the WBGI general operating account, by convincing new prospective investors (new to WBGI) that their monies would be used to build a

visitor center, though the new investors were not specifically promised that their monies would be used exclusively for construction of a visitor center as had the existing shareholders been so promised in writing by defendant FRANCIK.

40. In September 2004 plaintiff WAGNER turned over control of the corporation to Defendants WBGI, Francik, Michie, and Emerson.

41. In late 2004 and early 2005 WBGI spent approximately $20,000 of the approximately $220,000 in the Visitor Center account towards construction of the visitor center by utilizing the architectural drawings previously prepared by plaintiff, in conjunction with the architect retained by plaintiff WAGNER, and in conjunction with a Special Use Permit application prepared by an attorney retained by plaintiff WAGNER, to obtain a prerequisite *Special Use Permit* that was required by Hawaii county before a county Building Permit could be issued.

42. Plaintiff WAGNER had previously loaned approximately $70,000 to WBGI on his personal credit cards, which WBGI had agreed to use as its own and make the appropriate monthly payments thereon. WBGI made those monthly payments for several years, but discontinued such payments under the direction of defendant FRANCIK, leaving plaintiff WAGNER with that WBGI indebtedness on his personal credit cards, which is the subject of a separate legal proceeding currently pending in Hawaii (in the appellate court) in which plaintiff WAGNER initiated suit to collect on said indebtedness, as well as the subject of the pending suit in Utah in which one of the credit card banks has initiated suit

against both plaintiff herein WAGNER and defendant herein WBGI to obtain repayment of that credit card indebtedness (see paragraph 51 *infra*).

43.    In order to avoid repayment of that $70,000 owed by WBGI to plaintiff WAGNER, defendants became embroiled in litigation (some of which is currently pending in the appellate court of Hawaii) and spent approximately $700,000 of WBGI funds on lawyer fees over the course of several years to avoid that $70,000 obligation to plaintiff WAGNER.   This misuse of corporate funds to avoid legitimate WBGI obligations constitutes a waste, fraud and mismanagement of WBGI funds.

44.    In order to obtain that approximately $700,000 to pay for its lawyers in the litigation initiated by defendants' actions, defendants and each of them did the following or approved the following:

a)    Embezzled or otherwise wrongfully removed the approximately remaining $200,000 (following the valid expenditure of $20,000 on a *Special Use Permit*) from the dedicated Visitor Center Account without first building the visitor center as the shareholders who had placed their monies into that account had been promised in writing would occur with that money, or approved such removal of those funds without objection; those funds were then spent on defendants' lawyers in 'defense' of plaintiff's activities to obtain payment on the $70,000 loan plaintiff had previously made to WBGI, which expenditure of funds was a fraud on the WBGI shareholders and a waste of WBGI funds;

b)     Spent approximately $300,000 of monies raised from new investors in 2004 who had been told their monies would be used to build a visitor center, with such monies instead being spent on defendants' lawyers in 'defense' of plaintiff's valid activities to obtain payment on the $70,000 loan he had made to WBGI, which expenditure was likewise a waste, fraud and mismanagement of WBGI funds;

c)     Sold off approximately 90% of the WBGI land holdings (obtained by plaintiff WAGNER in the name of WBGI between 1995 and 2004 totaling approximately 300 acres of prime Hawaii agricultural land) for far below-market prices, without public market offerings and to private friends and cronies of defendants, and in violation of WBGI By-Laws requiring all sales of land to be approved by a simple majority of shareholders prior to any sale of WBGI land. This illegal sale of WBGI lands raised approximately $200,000 for WBGI that was then spent on defendants' personal-friend lawyers in 'defense' of plaintiff's activities to obtain payment on the $70,000 loan he had made to WBGI.  This illegal sale of WBGI lands below market value was a waste, fraud and mismanagement of WBGI assets, and the expenditure of the measly $200,000 received from such illegal sales of WBGI land (to their friends and cronies) on its lawyers in 'defense' of a valid WBGI obligation was likewise a fraud, waste and mismanagement of WBGI assets.

45.   The great bulk of the payments to defendants' lawyers were to long-time personal friends of defendant MICHIE who were members of Hawaii or Nevada bar associations and who utilized extensive frauds in their pleadings to maintain such legal 'defenses' in order to garner huge legal fees for themselves personally totaling approximately $700,000, to the great detriment of WBGI and its shareholders.

46.   This fraudulent expenditure of the funds that had been dedicated to construction of a visitor center, and the sell-off of the WBGI lands, with the funds being spent instead on a fraudulent 'defense' of a legitimate WBGI obligation, was a fraud on the WBGI shareholders and is the major cause of the devaluation of plaintiff WAGNER's stock ownership in defendant WBGI.

47.   The above-referenced wastes of WBGI funds, which waste has served to preclude the development of the necessary infrastructure of WBGI, including construction of its visitor center, constitutes gross mismanagement of WBGI's affairs, leaving defendants liable to the WBGI shareholders for such mismanagement which has served to drastically devalue their share holdings.

48.   In addition to the above mismanagement, defendants either sold-off, or failed to follow-through on its acquisition, or acquiesced in that activity, its primary asset, namely the Umauma Falls overlook (http://en.wikipedia.org/wiki/Umauma_Falls).  The Umauma Falls overlook had served as the primary revenue generator for WBGI since it was first opened to

the general public circa 1995. Defendants sold or otherwise gave up the right of WBGI patrons to visit the Umauma Falls overlook circa 2008, and have continuously thereafter failed to seek either a lease or repurchase of the overlook notwithstanding overtures from the current owner to do so. Consequently, the revenue stream generated from incorporation of that asset into the WBGI tourist attraction has greatly diminished, and the reputation of WBGI in the community has substantially deteriorated resulting in loss of word-of-mouth advertising. Almost all of the investors in WBGI obtained share ownership because the Umauma Falls overlook was part of the WBGI tour experience, and loss of that venue is a gross mismanagement of WBGI causing irreparable harm to their ownership in WBGI, including plaintiff's ownership.

49.     The valuation of the WBGI shares continuously increased from 1995 to 2004 while plaintiff served as Director and President, with the valuation in 1995 at $30/share, and by September 2, 2004 the valuation had risen to $520/share. Thereafter, between 2005 and 2007 after defendants took the helm of WBGI the valuation plummeted to $10/share, and currently is not being sold and has a valuation below $10/share.

50.     From 1995 to 2004 WBGI had an extensive planting program to develop the botanical gardens into an amazing tourist attraction. That planting program entailed continuous planting of large numbers of trees and shrubs, both to replace those that had grown for too long a time and were no longer a desirable

26

size, as well as to plant in new areas not previously planted. Defendants and each of them have failed to maintain that planting program, causing a slow deterioration of the gardens instead of continuing increase in beauty, diversity and complexity, which were the factors that kept a steady tourist flow. Consequently, the tourist flow to the gardens, which was continuously increasing from 1995 to 2004, is now continuously decreasing from 2004 to the present due to the mismanagement of defendants, further decreasing the value of the shareholder ownership.

51.    Defendants and each of them continue to waste WBGI shareholder funds by continuing to pay lawyers to 'defend' against the valid claim for monies owed by WBGI based upon credit card loans initiated by plaintiff WAGNER in his capacity as a WBGI officer, now also lodged against WBGI in civil number 100106166, Utah Fourth District Court, American Fork department, entitled *Capital One Bank v. Wagner, WBGI.*

52.    Defendant Kenneth Francik, in his capacity as a WBGI officer or director or both, was caught stealing mature coconut trees (raised to maturity from seed over the course of almost a decade by plaintiff herein from 1995 to 2004) on land that had formerly been owned by WBGI (the Umauma Falls overlook parcel; http://en.wikipedia.org/wiki/Umauma_Falls) but had been sold off to another     party     (now     called     Umauma     Experience; http://www.umaumaexperience.com/) long after title to the land had transferred

27

to the new owner and long after WBGI lost its ownership rights to the coconut trees. As a consequence of this theft, the police from Hilo were called to investigate and Kenneth Francik was identified as the perpetrator of the theft by numerous witnesses. However, to the detriment of WBGI shareholders, WBGI gave up assets and other benefits to the new owner of the Umauma Falls overlook (from whom the trees were stolen) in order to avoid a prosecution of Kenneth Francik, following a hasty plea by defendant FRANCIK to the Umauma Falls overlook owner to not prosecute.

53. Defendant Kenneth Francik and others in conjunction with him began systematically digging up trees located on WBGI property that had been planted and grown-out previously by plaintiff during the decade 1995-2004, selling them at well-below market value for a quick-cash infusion to support their fraudulent litigation efforts. This includes approximately 300 mature coconut trees that were valued at approximately $500/tree but were sold to a single party for approximately $25/tree. This fire-sale was such a windfall that the purchaser, who had no immediate use or need for the trees, simply dug them up on the WBGI property, and then transported them and planted them out in a small orchard on his property several miles away, for future sale by him to future purchasers at their true value. In addition to coconut trees, other trees were dug up and sold off at well below market value, including rare breadfruit trees, etc.

54.    Defendant FRANCIK, following his false defamation of plaintiff WAGNER
to the Hilo grand jury, communicated that false defamation to the news media
for the purpose of further defaming plaintiff.    However, these fraudulent
allegations of wrongdoing by plaintiff, as well as the fraudulent 'defense' of
monies owed by WBGI, expressed in the local newspaper and elsewhere, has
served to diminish the reputation of WBGI developed by plaintiff WAGNER over
the course of a decade (1995-2004), likewise serving to diminish the valuation
of WBGI.

55.    Plaintiff has been damaged by this Fraud, Waste and Mismanagement of
defendants in that the valuation of his shares plummeted from a valuation of
approximately $1,731,600.00 on September 2004 to about $600.00 at the time
of filing of this suit, and accordingly he is entitled to the sum of $1,731,000.00 in
actual damages.    Further, defendants intentionally caused this devaluation in
share value to 'punish' plaintiff for opposing them in court, and punitive
damages are likewise awardable as against the corporate officers for
intentionally devaluating WBGI as a means of damaging plaintiff.

## Requested Relief

        Wherefore, the Plaintiff respectfully requests relief as follows:

(a)    For preliminary and permanent injunctive relief enjoining all of the named
Defendants and other conspirators from engaging in further knowing defamation
of plaintiff and from engaging in further defamation of plaintiff as detailed *supra*;

and for preliminary and permanent injunctive relief removing the named defendants as officers or directors of the WBGI corporation and appointing a Receiver to work in directing the affairs of WBGI including finding a replacement board of directors from amongst the existent WBGI shareholders;

(b)    For an Order awarding actual damages in the amount of $8,721,600.00 as against each of the named defendants, to be jointly and severally liable;

(c)    For an Order awarding punitive damages as follows:

1.    As against defendant Kenneth Francik, $5,206,904.31;

2.    As against defendant Preston Michie, $1,100,000.00;

3.    As against defendant Annette Emerson, $1,100,000.00;

4.    As against defendant Leslie Cobos, $100,000.00;

5.    As against defendant Steve Bryant, $100,000.00;

(d)    For leave to amend this complaint to add additional named defendants should discovery disclose other participants in this massive fraud on the shareholders, etc., and for leave to amend to add existing defendants as participants in the causes of action in which they are not now mentioned, should discovery reveal their participation therein;

(e)    For interest accruing on the actual damages at the legal maximum rate calculated from the date of filing of this complaint;

(f)    For such other and further relief as the Court deems just and proper under the circumstances.

Please take notice that the Plaintiff demands trial by jury in this action.

DATED:      August 23, 2011

_Walter L. Wagner_

Walter L. Wagner