Arnold Richer, #2751
Patrick F. Holden, #6247
**RICHER & OVERHOLT, P.C.**
Attorneys for Defendant World Botanical Gardens, Inc.
901 West Baxter Drive
South Jordan, Utah 84095
Telephone: (801) 561-4750
Email: aricher@richerandoverholt.com

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| WALTER L. WAGNER, an individual, | : | |
| Plaintiff, | : | Case No. 2:11-cv-00784-BCW |
| v. | : | DEFENDANT WORLD BOTANICAL GARDENS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS. |
| PRESTON MICHIE, an individual, KENNETH FRANCIK, an individual, LESLIE COBOS, an individual, MARK ROBINSON, an individual, ANNETE EMERSON, an individual, STEVE BRYANT, an individual, and WORLD BOTANICAL GARDENS, INC., a Nevada corporation, | : : : | Magistrate Brooke C. Wells |
| Defendants. | : | |

---

Defendant World Botanical Gardens, Inc, a Nevada corporation ("Defendant WBGI"), by

and through its attorneys of record and pursuant to the *Federal Rules of Civil Procedure*

(hereinafter "Rule" or "Rules") 12(b)(1) and (6), submits Defendant World Botanical Gardens,

Inc.'s Memorandum in Support of Motion to Dismiss.

## INTRODUCTION

This is the latest in a series of cases between Defendant WBGI and its disgruntled former incorporator and shareholder Plaintiff Walter L. Wagner ("Plaintiff"). There have been three prior state court decisions resolving the very issues Plaintiff has brought before this Court. All three cases were decided against Plaintiff and in favor of Defendant WBGI. A Nevada state court judge observed that:

> [a]t every opportunity, [Plaintiff] Walter Wagner has attempted to paralyze and destroy WBGI - he has frozen WBGI bank accounts; he has improperly and illegally recorded a lis pendens against the property of WBGI . . ., he has trespassed on WBGI property, where he sprayed weed-killer on Garden plants; . . . [and] he improperly sold interests in WBGI and pocketed the proceeds . . . .

World Botanical Gardens, Inc. v. Walter Wagner et al.; Case No. CV 05-02079; *Order of Permanent Injunction and Judgment*, Finding of Fact # 23, pgs. 7-8.

A Hawaii state court found Plaintiff engaged in "fraud, conversion, intentional interference with WBGI's prospective business opportunities, embezzlement, misappropriation or theft of WBGI's trade secrets and trade names, abuse of process and malicious prosecution." Walter Wagner v. World Botanical Gardens; Case No.04-1-0232; Findings of Fact, Conclusions of Law, and Decision and Order; pg. 43, ¶ 19. In fact, that same court declared Plaintiff a "vexatious" litigant and required prior court approval for future lawsuits against Defendant WBGI.

Plaintiff now seeks a rehearing in federal court for matters entirely resolved by the three

WBGI 03

prior state court decisions.  Plaintiff's action is nothing more than an attempt to further deplete Defendant WBGI's resources as well as to harass and intimidate members of its current Board of Directors.  Plaintiff has failed to inform this Court that the three prior state court decisions addressed and resolved the issues raised by Plaintiff's Complaint.

Defendant WBGI brings the instant motion to address the preclusive effect of these state court decisions under the doctrine of res judicata.  In addition to the res judicata argument, Defendant WBGI moves to dismiss Plaintiff's Complaint because Plaintiff lacks standing. Finally, Plaintiff's corporate mismanagement claims are not properly raised before this Court. Instead, the proper forum for Plaintiff's allegations is Nevada state court, the state where Defendant WBGI was incorporated.

WBGI 03

## SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff's First Amended Complaint for Damages and Injunctive Relief ("Plaintiff's Complaint") contains five state-law defamation claims and one corporate fraud, waste and mismanagement claim. Plaintiff's defamation allegations cover three subject-matter areas; (1) poor record-keeping; (2) misappropriation of WBGI funds; and (3) fraud in the execution of a promissory note in 2004. In addition, Plaintiff alleges a separate claim based on waste, fraud and mismanagement at Defendant WBGI.

**(1) Poor Record-keeping.** Defendant WBGI's alleged statement that Plaintiff kept poor shareholder records while in control of WBGI and that Plaintiff's poor record-keeping resulted in an incomplete list of all Defendant WBGI shareholders. [Plaintiff's Complaint, Count I, ¶ ¶ 13-16 and Count II, ¶ ¶ 18- 19]

**(2) Misappropriation of WBGI Funds.** Defendant WBGI's alleged statement that Plaintiff embezzled funds designated for use to construct a visitor center ("Visitor Center"). Defendant WBGI allegedly stated that there was no designated Visitor Center account and that Plaintiff misappropriated investor funds for personal use. [Plaintiff's Complaint, Count III, ¶ ¶ 21-24 and Count IV, ¶ ¶ 27 - 29]

**(3) Fraudulent 2004 Promissory Note.** Defendant WBGI allegedly stated that Plaintiff fraudulently executed a promissory note from Defendant WBGI in favor of Plaintiff. Defendant WBGI allegedly stated that Plaintiff's spouse executed the promissory note as an officer of

1

Defendant WBGI, but was in fact not an officer of Defendant WBGI. [Plaintiff's Complaint, Count V, ¶ ¶ 31 - 37]

(4) **Waste, Fraud and Mismanagement.** Plaintiff asks this Court to appoint a receiver and replace the existing Board based on Defendant WBGI's alleged: (a) failure to build a Visitor Center; (b) refusal to pay money owed to Plaintiff; (c) expenditure of attorneys' fees to prosecute and defend state court cases; (d) the use of Visitor Center funds for attorneys' fees; and (e) the sale or transfer of property for inadequate consideration. [Plaintiff's Complaint, Count VI ¶ ¶ 40 - 64]

**REQUEST FOR JUDICIAL NOTICE OF THE THREE PRIOR
STATE COURT JUDGMENTS.**

There are three prior state court judgments related to this case:

(1) World Botanical Gardens, Inc. v. Walter Wagner, et al.; Second Judicial District for the State of Nevada, Washoe County; Case No. CV05-02079, dated October 2, 2006. A copy of the decision is attached as Exhibit A (the decision shall hereinafter be referred to as the "Nevada Judgment" and the court as the "Nevada Court");

(2) Walter L. Wagner v. World Botanical Gardens, Inc.; Third Circuit Court for the State of Hawaii; Civil No. 04-01-0232, dated November 13, 2007. A copy of the decision is attached as Exhibit B (the decision will hereinafter be referred to as the "First Hawaii Judgment" and the court as the "First Hawaii Court"; Plaintiff's appeal is pending before the Hawaii Court of Appeals; and

2

(3)  World Botanical Gardens, Inc. v. Walter Wagner, et al.; Third Circuit for the State of

Hawaii; Case No. 05-01-0210, dated October 9, 2008.  A copy of the decision is attached as

Exhibit C (the decision will hereinafter be referred to as the "Second Hawaii Judgment" and the

court as the "Second Hawaii Court").  Plaintiff's Petition for Certiorari is pending before the

Hawaii Supreme Court.

Defendant WBGI requests, pursuant to Fed. R. Evid. 201(d), that the Court take judicial

notice of these three state court decisions.  Fed. R. Evid. 201(d) provides that a "court shall take

judicial notice if requested by a party and supplied with the necessary information."  In addition,

Fed.R. Evid. 201(b) defines a "judicially noticed fact must be one not subject to reasonable

dispute in that it . . . capable of accurate and ready determination by resort to sources whose

accuracy cannot be reasonably questioned."

The Tenth Circuit Court of Appeals has taken judicial notice of state court proceedings.

For example, in St. Louis Baptist Temple  v. Federal Deposit Insurance Corporation, 605 F.2d

1169, 1172 (10th Cir. 1979) the Tenth Circuit stated that "[i]t has been held that federal courts . . .

may take notice of proceedings in other courts, both within and without the federal judicial

system, if those proceedings have a direct relation to matters at issue."  See also Pace v.

Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008)(affirming district court action in taking "judicial

notice of all the materials in the state court's file.") and Painsolvers, Inc. v. State Farm Mut.

Auto. Ins. Co., 732 F.Supp. 2d 1107, 116 n. 12 (D. Hawaii 2010)("Judicial notice is properly

taken of transcripts, orders and decisions made by other courts or administrative agencies.")

1

These three state court decisions are directly related to the resolution of this case.  Each state court decision addressed issues raised in Plaintiff's Complaint.  Accordingly, Defendant WBGI seeks dismissal of Plaintiff's Complaint under the doctrine of res judicata.  This Court can only resolve the res judicata issues in this case by taking judicial notice of the three state court decisions.

## THE STATE COURT DECISIONS

### 1.  The Nevada Judgment.

Defendant WBGI sued Plaintiff in Nevada state court to obtain an injunction against Plaintiff's ongoing interference with the Defendant WBGI's operations.  After a three day trial, the Nevada Court entered Findings of Fact, Conclusions of Law, Order of Permanent Injunction, and Judgment on October 2, 2006.  The Nevada Judgment described a "relentless conspiracy and campaign by Defendant Walter Wagner and other Remaining Defendants to gain control of WBGI at any cost."  [Exhibit A, pg. 4, ¶ 13]

> The Nevada Court found that Plaintiff:

> had diverted funds to his personal accounts, failed to keep proper financial records, and failed to pay employment taxes, failed to file corporate income tax reports, failed to keep accurate records of shareholders.  Emerson and Francik also discovered the Internal Revenue Service had placed a lien on WBGI's real property to secure payment of overdue payroll taxes.

> [Exhibit A, pgs. 2 - 3; ¶ 6]

> The Nevada Court also ruled that Plaintiff "intentionally and illegally engaged in a fraudulent scheme to sell shares of WBGI stock to unsuspecting purchasers."  [Exhibit A, pg. 7, ¶

3

27]. Based on its Findings of Fact, the Court ruled that "[t]he removal of Defendant Walter Wagner from the WBGI Board of Directors was proper . . . ." [Exhibit A, pg. 9, ¶ 2. The Court also held that "[f]rom Defendant Walter Wagner's removal through the present, the WBGI Board of Directors has properly managed the business and affairs of WBGI." [Exhibit A, pg. 6, ¶ 22.

As a result, the Nevada Court entered a permanent injunction against Plaintiff ordering Plaintiff to cease creating or participating in an alternate board of directors, interfering with Defendant WBGI's business affairs, altering signature cards of Defendant WBGI bank accounts, or attempting to sell Defendant WBGI property. [Exhibit A, pgs. 10-11]   The Nevada Court also granted Defendant WBGI damages and imposed a constructive trust on the proceeds of Plaintiff's improper stock sales.

### 2. The First Hawaii Judgment.

Plaintiff sued Defendant WBGI seeking recovery of "deferred salary" in the form of a Promissory Note dated January 1, 2004 (the "2004 Note").  Defendant WBGI purportedly executed the 2004 Note (and prior notes referenced in te 2004 Note) in favor of Plaintiff in the amount of $340,736.75. The First Hawaii Court found that the "promissory notes are fabrications," [Exhibit B, pg. 11, ¶ 16], and that "Wagner's own statements to the Court also constitute admissions that the promissory notes are fabrications." [Exhibit B, pg. 12, ¶ 33].

Recounting a long list of misdeeds, the First Hawaii Court ultimately ruled that "[t]he 2004 promissory note . . . was fraudulently created." [Exhibit B, pg. 16, ¶ 5].  In addition, the First Hawaii Court stated that "Wagner has engaged in a course and pattern of fraud dating to the

period before WBGI was incorporated." [Exhibit B, pg. 19, ¶ 28].  Among Plaintiff's conduct

identified by the Court was the following: (1) signing promissory notes as an officer of a non-

existent corporation; (2) signing the 2003 and 2004 promissory notes without shareholder

approval; (3) concealing information about the promissory notes and this lawsuit from WBGI's

shareholders and directors; and (4) making fraudulent representations to the Court in order to

induce the entry of a default judgment.  [Exhibit B, pgs. 19-20, ¶ ¶ 28-39]

### 3.  The Second Hawaii Judgment.

Defendant WBGI initiated the Second Hawaii case against Plaintiff to recover corporate

funds Plaintiff misappropriated and converted for his personal use.  The Second Hawaii Court

issued extensive Findings of Fact, Conclusions of Law and Order detailing Plaintiff's

malfeasance.  The Second Hawaii Court ruled that Plaintiff "diverted WBGI funds to their

personal purposes.  These included funds for the Wagner's personal mortgage, property tax

payments and personal credit card payments and for debts incurred to creditors for personal

expenditures." [Exhibit C, pg. 6, ¶ 5]   The Second Hawaii Court found that Plaintiff

mischaracterized corporate funds as loans, business expenses and salary. [Exhibit C, pgs. 6-7, ¶

5]

The Second Hawaii Court also went on to find Plaintiff guilty of abuse of process and

malicious prosecution, [Exhibit C, pg. 45, ¶ 26-28], and declared Plaintiff a vexatious litigant for,

most pertinent to the instant case, "relitigating or attempting to relitigate in propria persona and

in bad faith the validity of final determinations in Nevada adverse to defendants involving WBGI

who prevailed on all issues in the dispute." [Exhibit C, pgs. 46-47, ¶ ¶ 29-32].

## ARGUMENT

## POINT I

## PLAINTIFF'S DEFAMATION CLAIMS ARE BARRED UNDER THE DOCTRINE OF RES JUDICATA.

**A. General Rule 12(b) Standards.**

Under Rule 12(b)(6), a court "must accept all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." <u>Moss v. Kopp</u>, 559 F.3d 1155, 1161 (10th Cir. 2009).   The United States Supreme Court cautioned that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 - 1950, 173 L.Ed.2d 868 (2009).

Res judicata is an affirmative defense appropriately resolved pursuant to Rule 12(b)(6). <u>See</u> <u>Lewis v. Drug Enforcement Administration</u>, 777 F.Supp.2d 151, 159 (D. D.C. 2011)("[t]he Federal Rules of Civil Procedure provide that a party may assert an affirmative defense by motion in its initial response to a complaint.  Res judicata and collateral estoppel are affirmative defenses.  These defenses may be raised by motion under Rule 12(b)(6)").

In addition, Rule 12(b)(6) motions "can either be established from the face of the complaint, matters fairly incorporated within it, and matters susceptible to judicial notice.  The court may take judicial notice of public records from other court proceedings." <u>Id</u>. at 159.  <u>See</u>

7

<u>also</u> <u>Pace v. Swerdlow</u>, 519 F.2d 1067, 1072 (10th Cir. 2008)(affirming district court's

consideration of materials in "state court files.")

**B.      The Rendering State's Law Governs the Resolution of Defendant WBGI's Res Judicata Defense.**

A threshold issue in this case is which forum's law applies to determine the preclusive

effect of the three state court judgments.  "A federal court sitting in diversity applies the choice of

law rules of the forum state to determine questions of res judicata."  <u>Ventas, Inc. v. HCP, Inc.</u>, 647

F.3d 291, 304 n. 4 (6th Cir. 2011).  "Since Utah is the forum state, Utah's choice of law rules

determine the outcome of the conflict."  <u>Shaw v. Layton Construction Company</u>, 872 P.2d 1059,

1063 (Utah Ct. App. 1994).

Utah courts apply "the 'most significant relationship' [test] . . . . in determining which

state's laws should apply to a given circumstance."  <u>Waddoups v. Amalgamated Sugar Company</u>,

54 P.3d 1054, 1059, 452 Utah Adv. Rep. 58, 2002 UT 69.  "[T]he particular factors considered in

determining the 'most significant relationship' vary according to the type of action brought."  <u>Id</u>.

The type of issue is the preclusive effect of state court judgments.  While Utah has not

addressed the specific issue of the preclusive effect of a sister-state judgment, the majority view is

that "[t]he Full Faith and Credit Clause requires the courts of each state to give a judgment of

another state the same preclusive effect as it has in the state in which it was rendered . . . ."

<u>Edward Rose Building Company v. Cascade Lumber Company</u>, 621 N.W.2d 193, 194-195 (Iowa

2001).  <u>See also Migra v. Warren City School District Board of Education</u>, 104 S.Ct. 892, 896,

8

WBGI 03

465 U.S. 75, 81, 79 L.Ed.2s 56 (1984)("It is now well-settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); Amaco Production Company v. Heimannn, 904 F.2d 1405, 1417(10th Cir. 1990)("Federal courts must apply the law of the state rendering the judgment to determine its collateral estoppel effect; we may not accord greater preclusive effect to a state court judgment than would a state in which the judgment is rendered.")

In an analogous case, Massey v. Board of Trustees, 86 P.3d 120, 122, 2004 UT 27, the court applied federal law to consider the preclusive effect of a federal court judgment in a Utah state court. Under the significant relationship test, the rendering state has the strongest interest in ensuring its judgment has a preclusive effect.

Given the majority rule and the holding of Massey, a Utah state court would apply the rendering state's law to determine the preclusive effect of that state court's judgment in the forum state's court. Accordingly, the preclusive effect of the state court decisions in this case will be determined under the rendering state's law - Nevada and Hawaii.

## C. Plaintiff's Defamation Claims are Barred by Hawaii Res Judicata Law.

Hawaii courts recognize the doctrine of res judicata furthers the policies of "preventing inconsistent results, preventing a multiplicity of suits, and promoting finality and judicial economy." Smallwood v. City and County of Honolulu, 185 P.3d 887, 894 (Haw. Ct. App. 2008).

## (1) Issue Preclusion.

Under Hawaii law, "[c]ollateral estoppel may preclude the relitigation of a fact or issue

9

that was previously determined in a prior action on a different claim or cause of action between

the same parties or their privies." Id. at 895.

> The elements of collateral estoppel or issue preclusion under Hawaii law are:
>
> (1) the fact or issue in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the parties to the present action are the same or in privity with the parties in the prior action; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment.
>
> Id.

**(a)    Identical Issues.**

The First Hawaii Judgment resolved the issue of whether Plaintiff fraudulently

manufactured the 2004 Note (in addition to the prior notes incorporated into the 2004 Note).  In

this action, Plaintiff contends that Defendant WBGI's statement that Plaintiff fraudulently

executed the 2004 Note was defamatory.  Plaintiff also alleges the assertion that Plaintiff's spouse

executed the 2004 Note as an officer of Defendant WBGI, while she was in fact not an officer of

Defendant WBGI was also defamatory.  [Plaintiff's Complaint, Count V, ¶¶ 31 - 37]

The First Hawaii Court Judgment resolved this issue and found that the "promissory notes

are fabrications," [Exhibit B, pg. 11, ¶ 16], and that "Wagner's own statements to the Court also

constitute admissions that the promissory notes are fabrications." [Exhibit B, pg. 12, ¶ 33].

In addition, the First Hawaii Court ultimately ruled that "[t]he 2004 promissory note . . . was

fraudulently created." [Exhibit B, pg. 16, ¶ 5].  Plaintiff's defamation claims are based, in part, on

the assertion that the statement "Plaintiff fraudulently created the 2004 Note," is false.  This fact -

WBGI 03

that Plaintiff fraudulently created the 2004 Note - is identical to the issue resolved by the First Hawaii Court.

The Second Hawaii Judgment addressed Plaintiff's misappropriation and conversion of Defendant WBGI funds for personal use. Plaintiff's defamation claim is based in part on allegations that Defendant WBGI stated that Plaintiff embezzled funds designated for use to construct a Visitor Center. Defendant WBGI also allegedly stated that there was no designated Visitor Center account and that Plaintiff misappropriated investor funds for personal use. [Plaintiff's Complaint, Count III, ¶ ¶ 21-24 and Count IV, ¶ ¶ 27 - 29]

These are the same issues resolved by the Second Hawaii Court. The Second Hawaii Court found that Plaintiff (with other individuals) "diverted WBGI funds to their personal purposes. These included funds for the Wagner's personal mortgage, property tax payments and personal credit card payments and for debts incurred to creditors for personal expenditures." [Exhibit C, pg. 6, ¶ 5] The Second Hawaii Court found that Plaintiff mischaracterized funds as loans, business expenses and salary. [Exhibit C, pgs. 6-7, ¶ 5] While the Visitor Center is not specifically mentioned, it is encompassed within the Second Hawaii Court's global finding of misappropriation of corporate funds. Plaintiff's defamation claim is based on the view that he did not misappropriate Defendant WBGI funds, and that any such statement is false. However, the Second Hawaii Court found to the contrary, i.e. Plaintiff misappropriated Defendant WBGI funds.

In addition, the Second Hawaii Court Judgment provides that: "Defendant Linda Wagner was neither a WBGI director nor a WBGI officer after August of 2003. Defendant Linda Wagner

11

WBGI 03

has admitted in deposition testimony that after Annette Emerson became Treasurer, she no longer had any position of authority and was neither an officer or director of WBGI." [Exhibit C, pg. 16, ¶ 41]. This too is part of Plaintiff's defamation claim, and the Second Hawaii Court has explicitly ruled on this issue. It can therefore not be a part of a subsequent defamation claim.

    **(b)**    **Judgment on the Merits and Final Adjudication.**

    The First and Second Hawaii Judgments are final and on the merits. Plaintiff has appealed both Judgments, however, this does not mean the Judgments are not final for purposes of res judicata[1]. The majority view is that an appeal does not effect the finality of a judgment for res judicata purposes. See In re Williams, 280 B.R. 857, 864 n. 8 (9th Cir. BAP 2002)(noting "California state law follows the minority position denying res judicata effect to state court judgments on appeal.")

    Hawaii appellate courts have not squarely addressed this issue. In dictum the Hawaii Supreme Court stated that a "judgment is final and binding unless an appeal is taken." Hoopai v. Civil Service Comm'n, 103 P.3d 365, 384 (Haw. 2004). Hoopai concerned the finality of an arbitration award, and concluded the arbitration award was final because there was no right of appeal. The Hoopai dictum cited two decisions[2] also addressing attacks on arbitration awards.

---

[1] The First Hawaii Judgment appeal is pending before the Hawaii Court of Appeals. The Second Hawaii Judgment was affirmed by the Hawaii appellate court. Plaintiff has petitioned for certiorari.

[2] In Darcy v. Lolohea, 886 P.2d 759, 761 (Haw. Ct. App. 1994) the Hawaii Court of Appeals held "that an arbitration award which has become a final judgment . . . may not be

12

No Hawaii case has addressed the preclusive effect of a judgment pending appeal under the doctrine of collateral estoppel.

The issue therefore remains open in Hawaii.  Granting a judgment preclusive effects pending an appeal furthers Hawaii's recognized public policies of "preventing inconsistent results, preventing a multiplicity of suits, and promoting finality and judicial economy." Smallwood v. City and County of Honolulu, 185 P.3d 887, 894 (Haw. Ct. App. 2008).  In addition, the majority of jurisdictions follow this better reasoned approach.  Here, the two Hawaii Judgments resulted in final judgments.  Both Judgments have been subsequently enforced against Plaintiff.  For purposes of evaluating their preclusive effect, Hawaii would likely follow the majority rule that an appeal does not alter the preclusive effect of a judgment.

       **(c)**      **Same Parties.**

Both Defendant WBGI and Plaintiff were parties to the First and Second Hawaii cases.

       **(d)**      **The issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment.**

The First Hawaii Judgment reflects the fact that the First Hawaii Court conducted a hearing at which Plaintiff was present.  The First Hawaii Court considered all the papers filed and

---

vacated or modified by the circuit court, or appealed . . . ."  The court did not address whether a judgment is final for purposes of res judicata pending appeal.  Similarly in the other decision cited by the Hoopai court, Kim v. Reilly, 94 P.3d 648 (Haw. 2004), the Hawaii Supreme Court reaffirmed the unsurprising notion that arbitration awards are final and subject to collateral attack.  Therefore, the dictum cited by the Hoopai court appears unsupported by the very decisions cited by the court.  The question, therefore, remains open whether a judgment which has been appealed is final for purposes of res judicata.

the arguments of all parties. [Exhibit B, pgs. 1-2]. The entire First Hawaii Judgment is an extensive and thorough review of the facts and circumstances surrounding the execution and attempted collection of the 2004 Note.

The Second Hawaii Judgment reflects that the Second Hawaii Court conducted a two day trial. Plaintiff was present for the first day, but failed to appear when the court reconvened on the second day of trial. [Exhibit C, pg. 5] The Second Hawaii Court proceeded to take evidence, and after considering the same, along with the papers filed by both parties, found against Plaintiff. [Exhibit C, pgs. 5-6] The resulting Second Hawaii Judgment is an extensive and thorough review of the facts and circumstances surrounding Plaintiff's misappropriation of funds.

The First and Second Hawaii Judgments bar Plaintiff from relitigating the issues of missappropriation of funds and the fraudulent nature of the 2004 Note. The underlying factual predicate of these two aspects of Plaintiff's state law defamation claims were definitively resolved in the two prior state court judgments. Having met each element of issue preclusion, Plaintiff's defamation claims relating to the fraudulent execution of the 2004 Note and the misappropriation of funds for a Visitor Center must be dismissed with prejudice.

## D. Plaintiff's State Law Defamation Claims are Barred Under Nevada Res Judicata Law.

### (1) Issue Preclusion.

Under Nevada law, the elements of issue preclusion are:

(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity

14

with a party to the prior litigation; and (4) the issue was actually and necessarily litigated.

Five Star Capital Corporation v. Ruby, 194 P.3d 709, 713 (Nev. 2008).

**(a)     Identical Issues.**

The issue decided in the prior litigation was and is identical to the issue Plaintiff presents

in this litigation, namely Plaintiff's poor record-keeping as an officer of Defendant WBGI.

Plaintiff's defamation claims are based on the assertion that Defendant WBGI stated that Plaintiff

kept poor shareholder records while in control of WBGI and that Plaintiff's poor record-keeping

resulted in an incomplete list all Defendant WBGI shareholders.  *See* Plaintiff's Complaint, Count

I, ¶ ¶ 13-16 and Count II, ¶ ¶ 18- 19.

> The First Nevada Court squarely addressed issues of Plaintiff's mismanagement:
>
> In the latter part of 2003, Emerson and Francik spent numerous hours trying to
> decipher and organize WBGI's business records, which had formerly been kept by
> Defendant Walter Wagner.  Emerson and Francik discovered that Defendant
> Walter Wagner had diverted funds to his personal accounts, failed to keep proper
> financial records, and failed to pay employment taxes, failed to file corporate
> income tax reports, failed to keep accurate records of shareholders.  Emerson and
> Francik also discovered the Internal Revenue Service had placed a lien on
> WBGI's real property to secure payment of overdue payroll taxes.
>
> [Exhibit A, pgs. 2 - 3]

In addition, the Nevada Court found that Plaintiff "intentionally and illegally engaged in a

fraudulent scheme to sell shares of WBGI stock to unsuspecting purchasers." [Exhibit A., pg. 7]

The Nevada Court was taken aback by Plaintiff's conduct, observing:

> At every opportunity, Defendant Walter Wagner has attempted to paralyze and
> destroy WBGI - he has frozen the WBGI bank account; he has improperly and

15

WBGI 03

illegally recorded a lis pendens against the property of WBGI and its Garden
Director . . .; he has trespassed on WBGI property, where he sprayed weed-killer
on Garden plants; he has taken over and/or closed WBGI's website; thereby
destroying WBGI's internet marketing plan; and he improperly sold interests in
WBGI and pocketed the proceeds, thereby depriving WBGI of badly needed
capital and defrauding investors.

[Exhibit A, pgs. 6-7]

Based on these findings, the Nevada Court found that "[t]he removal of Defendant Walter

Wagner from the WBGI Board of Directors was proper . . . ." *See* Exhibit A, pg. 9.

The Nevada Court found Defendant WBGI's allegations of Plaintiff's poor record-

keeping true.  In the Findings of Fact, the Nevada Court found that Plaintiff "had diverted funds

to his personal accounts, failed to keep proper financial records, and failed to pay employment

taxes, failed to file corporate income tax reports, failed to keep accurate records of shareholders."

[Exhibit A, pg. 2, Findings of Fact, ¶ 5]

> **(b)     Judgment on the Merits and Final.**

The Nevada Judgment was on the merits and is final.  Accordingly, the second element of

issue preclusion is satisfied.

> **(c)     Same Parties.**

The party against whom the judgment is asserted, Plaintiff, was a party to the Nevada

case.  Therefore, Defendant WBGI meets the third element of issue preclusion.

> **(d)     Issue actually and necessarily litigated.**

The issue was actually and necessarily litigated.  At issue before the Nevada Court was

WBGI 03

the propriety of Plaintiff's removal from the Board of Directors and from Defendant WBGI generally.  Plaintiff's poor record-keeping was integral to the assessment of the propriety of the action taken against Plaintiff.  The Nevada Court explicitly referred to the issue in its Findings of Fact.  Accordingly, Defendant WBGI meets the final element of issue preclusion.

Having met each element of issue preclusion, Plaintiff's defamation claim predicated on poor record-keeping should be dismissed with prejudice.

## POINT II

### PLAINTIFF DOES NOT HAVE STANDING TO BRING AN ACTION AGAINST DEFENDANT WBGI BASED ON FRAUD, WASTE AND MISMANAGEMENT.

Plaintiff asks this Court to review his allegations of fraud, waste and mismanagement against Defendant WBGI.  [Complaint, Count VI, ¶ 39 - 64]  Ultimately, Plaintiff would like this Court to remove "defendants as officers or directors of the WBGI corporation and appoint[] a Receiver to work in directing the affairs of WBGI . . . ."  [Complaint, pg. 38; Requested Relief, ¶ (a)]  However, Plaintiff is not a shareholder, and therefore lacks standing to bring such an action. Plaintiff's lack of standing deprives this Court of subject matter jurisdiction.

"Standing is a jurisdictional issue that may be raised by the court at any time."  Wilson v. Glenwood Intermountain Properties, 98 F.3d 590, 592 (10th Cir. 1996).  Further, "[s]tanding is determined as of the time the action is brought."  Nova Health Systems v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005)(internal citations omitted).  See also Carr v. Alta Verde Industries, Inc., 931 F.2d 1055, 1061 (5th Cir. 1991)("As with all questions of subject matter jurisdiction except

17

mootness, standing is determined as of the date of the filing of the complaint.")

Federal courts can resolve factual issues on the issue of subject matter jurisdiction, and may do so based on evidence extrinsic to the pleadings. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009)("factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside of the pleadings, such as testimony and affidavits, are considered.") and State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 77 n. 4 (2d Cir. 2007)("in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to the evidence outside the pleadings, including affidavits.")

The Tenth Circuit affirmed this rule, stating that:

> [w]hen a party challenges the allegations supporting subject-matter jurisdiction, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside the pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment.

Davis ex rel. Davis v. U.S., 343 F.3d 1282, 1296 (10th Cir. 2003)(internal quotations, citations and parentheses omitted).

In his Complaint, Plaintiff asserts that "Plaintiff owns an approximately 1/6th interest in WBGI, disputed by defendants." [Complaint, pg. 3] There is no evidentiary basis for this assertion. The Washoe County Sheriff's Office sold Plaintiff's remaining shareholder interest to satisfy an outstanding judgment. The Second Hawaii court noted that "[o]n July 20, 2007, a Report of Sheriff's Sale was filed, in which the sale of the shares held by [Plaintiff] to satisfy the

WBGI 03

Nevada judgment was reported . . . ." [Exhibit C, pg. 9, ¶ 8]  Further, "[a]fter his removal from

WBGI's Board of Directors . . . , [Plaintiff] lacked authority to take any action on behalf of or to

represent WBGI in any capacity, and was merely a shareholder ("[Plaintiff's] shares were sold at

public auction by the Washoe County, Nevada Sheriff's Office on June 29, 2007, at which time

his relationship with WBGI ended.") [Exhibit C, pg. 18, ¶ 55]

Plaintiff no longer has any stake in Defendant WBGI.  His shares were sold and he was

lawfully removed from Defendant WBGI.  Accordingly, Plaintiff lacks standing to bring his

fraud, waste and mismanagement claims.

**POINT III**

**NEVADA STATE COURTS HAVE EXCLUSIVE SUBJECT MATTER JURISDICTION
OF PLAINTIFF'S FRAUD, WASTE AND MISMANAGEMENT CLAIMS AGAINST
DEFENDANT WBGI.**

Under Utah substantive law, Defendant WBGI's internal affairs are governed by the laws

of the State of Nevada.  See U.C.A. § 48-2c-1601(1)(2010)("The laws of the state or other

jurisdiction under which a foreign company is organized govern its organization and internal

affairs and the liability of its managers, members, and assignees of members.").  In a recent

decision, the Utah Supreme Court noted that because a corporation was "organized under the

laws of Colorado, those laws should govern [that corporation's] 'organization and internal

affairs.'" Wasatch Oil & Gas, LLC v. Reott, 2011 UT App 152, ¶ 3.  Because Defendant WBGI

was organized under the laws of the State of Nevada, Nevada law governs Plaintiff's claims.

Applying Nevada law, shareholder claims relating to the management of a Nevada

19

corporation must be brought in "the district court of the county in which the registered office of the corporation is located . . . ." N.R.S. 78.630. Plaintiff's fraud, waste and mismanagement claims relate to the management of Defendant WBGI. Plaintiff's grievances are extensive, however, a sample illustrates the nature of his action. Plaintiff claims misappropriation of corporate funds earmarked for use to construct a visitor center [Complaint, ¶ 42 and ¶ 44]; the use of corporate funds for litigation [Complaint, ¶ ¶ 50-51]; the sale or transfer of corporate property without adequate consideration [Complaint, ¶ 50(c) , ¶ 54 and ¶ 59] and the failure to reimburse individuals [Plaintiff] for corporate expenditures [Complaint, ¶ 48].

These are all claims that relate to the management of WBGI. They are therefore covered by N.R.S. 78.630. In addition, Defendant WBGI's registered office is in Washoe County, Nevada. Therefore under Nevada law, Plaintiff's claims must be brought in the state court of Washoe County, Nevada. Plaintiff has brought his fraud, waste and mismanagement case before the wrong court. Accordingly, Count VI of Plaintiff's Complaint should be dismissed.

*(This Space Left Intentionally Blank)*

WBGI 03

## CONCLUSION

Based on the foregoing, Defendant WBGI request that Plaintiff's Complaint be dismissed.

DATED this 7ᵗʰ day of November, 2011.

**RICHER & OVERHOLT, P.C.**

Arnold Richer
Patrick F. Holden
Attorneys for Defendant World Botanical Gardens, Inc.

21

WBGI 03

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **DEFENDANT**

**WBGI, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** to be

delivered to the following in the manner and on the date below indicated:

[  ] Mail                          Walter L. Wagner
[  ] Fax                           532 N 700 E
[X] Email                          Payson, Utah 84651
[  ] Hand Delivery                 retlawdad@hotmail.com
                                   (Pro Se Plaintiff)

DATED this 7th day of November, 2011.


[X] Mail                           Walter L. Wagner
[  ] Fax                           532 N 700 E
[  ] Email                         Payson, Utah 84651
[  ] Hand Delivery                 retlawdad@hotmail.com
                                   (Pro Se Plaintiff)

DATED this 8th day of November, 2011.


22                                               WBGI 03