# EXHIBIT B

Of Counsel:
TSUKAZAKI YEH & MOORE

THOMAS L.H. YEH  2341
85 W. Lanikaula Street
Hilo, Hawaii 96720

(808) 961-0055 (phone)
(808) 969-1531 (fax)

Attorneys for Plaintiff
WORLD BOTANICAL
GARDENS, INCORPORATED

FILED

2007 NOV 13  PM 2: 30

C. OKAWA, CLERK
THIRD CIRCUIT COURT
STATE OF HAWAII

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| WALTER L. WAGNER, | ) | Civil No. 04-1-0232 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF |
| | ) | WALTER L. WAGNER'S MOTION FOR |
| vs. | ) | PARTIAL SUMMARY JUDGMENT |
| | ) | FILED ON SEPTEMBER 13, 2007, AND |
| WORLD BOTANICAL GARDENS, | ) | GRANTING DEFENDANT WORLD |
| INCORPORATED, | ) | BOTANICAL GARDENS, |
| | ) | INCORPORATED'S MOTION FOR |
| Defendant. | ) | SUMMARY JUDGMENT FILED ON |
| | ) | SEPTEMBER 25, 2007; EXHIBIT "A" |
| | ) | |
| | ) | *Date:*     October 17, 2007 |
| | ) | *Time:*     8:00 a.m. |
| | ) | *Judge:*    Glenn S. Hara |
| | ) | |
| | ) | *No Trial Date Set* |

***ORDER DENYING PLAINTIFF WALTER L. WAGNER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT FILED ON SEPTEMBER 13, 2007,
AND
GRANTING DEFENDANT WORLD BOTANICAL GARDENS, INCORPORATED'S
MOTION FOR SUMMARY JUDGMENT FILED ON SEPTEMBER 25, 2007***

This action came on for hearing on October 17, 2007 on Plaintiff Walter L. Wagner's

Motion for Partial Summary Judgment (filed on September 13, 2007) and on Defendant World

I hereby certify that this is a full, true and correct
copy of the original on file in this office.

Clerk, Third Circuit Court, State of Hawaii

Botanical Gardens, Incorporated's Motion For Summary Judgment (filed on September 25, 2007). Present at said hearing were Plaintiff Walter L. Wagner, *pro se*, and Thomas L.H. Yeh, attorney for Defendant World Botanical Gardens, Incorporated.

The Court, having reviewed the record and pleadings herein, and having considered the arguments of the parties, and good cause appearing therefore, denied Plaintiff Walter L. Wagner's Motion for Partial Summary Judgment and granted Defendant World Botanical Gardens, Incorporated's Motion for Summary Judgment, and makes the following Findings of Fact, Conclusions of Law and Decision and Order:

### *FINDINGS OF FACT*

#### *Procedural Background*

1.      On July 28, 2004, Plaintiff Walter L. Wagner ("Wagner") filed a Complaint against Defendant World Botanical Gardens, Incorporated ("WBGI") herein, alleging that WBGI was a Nevada corporation, and that during the course of the years between 1995 and 2003, Wagner was a "regularly salaried worker" for WBGI, who had deferred taking payment on his salary, in accordance with an attached salary deferment schedule attached as Attachment A to the Complaint. The Complaint further alleged that for each year, the deferred payment balance was reduced to a promissory note, and that at the end of 2003, the total balance of the notes was $340,736.75. The Complaint further attached a Promissory Note dated January 1, 2004, signed by Wagner and his wife, Linda Wagner, in their purported capacities as President and Secretary/Treasurer, respectively. The 2004 note purported to carry forward and liquidate the past balance of a previous 2003 note.

2.      After filing the Complaint, Wagner purported to serve the Complaint upon Linda Wagner, and no answer was filed on behalf of WBGI. Thereafter, Wagner scheduled a hearing on a motion for the entry of a default judgment. At a August 25, 2004 proof hearing, Wagner represented to the Court, *inter alia*, that the 2004 promissory note was authorized by WBGI, that he and Linda Wagner were the only shareholders of WBGI, that Nevada law only required a Nevada corporation to have officers and no directors, that WBGI did not object to any default being taken, and that Wagner wanted to obtain the default judgment as he was expecting to divest himself of his sole ownership of WBGI to others. Based upon Wagner's representation, a default judgment was entered against WBGI in the sum of $340,736.75.

3.     On April 10, 2006, the Court set aside the default judgment after a motion to set aside the default judgment was filed by WBGI, on the basis that:

A.     The Return and Acknowledgment of Service falsely represented that Linda M. Wagner was the Secretary/Treasurer of WBGI as of July 28, 2004.

B.     Since August 16, 2003, Annette Emerson served as the Secretary/Treasurer of WBGI pursuant to appointment of the Board of Directors of WBGI and was serving in that capacity as of July 28, 2004.

C.     WBGI's Board of Directors and officers were not notified of the Complaint and also did not have notice or knowledge of the Promissory Note upon which the Complaint was based.

D.     At the August 25, 2004 proof hearing on the Motion For Entry of Default Judgment, Plaintiff made certain representations to the Court, *inter alia*, that the subject Promissory Note was authorized by WBGI, that he and his wife Linda M. Wagner were the only officers and shareholders of WBGI, that WBGI had no objection to the entry of default, and that Nevada law did not require WBGI, a Nevada corporation, to have directors. These representations were untrue.

E.     Wagner's service of the Complaint upon his wife was prohibited by HRCP Rule 4(c)(1), which requires the service of summons by "any person who is not a party."

F.     Service of the Complaint was not properly made upon WBGI pursuant to HRCP Rule 4(d)(3).

4.     On June 26, 2006, Wagner filed a First Amended Complaint herein. The substantive allegations of the First Amended Complaint changed. This time, WBGI was only stated to be a foreign corporation.

5.     In his Counts entitled "Breach of Contract-Salary", Wagner alleges that he entered into oral contracts with WBGI for "directorship services" with WBGI for each of the years 1995 through 2003, and attached promissory notes purporting to be made on January 1 of each of those years. Each of the promissory notes attached to the First Amended Complaint incorporates and merges the balance of the note from the previous year. The 2003 promissory note states that as of January 1, 2003, WBGI owed Wagner the sum of $382,000.00, a sum greater than that stated in the 2004 promissory note which had purported to carry forward a balance from the end of

-2-

2003 in the sum of $340,736.45. All of the promissory notes expressly state that they are based upon work performed by Wagner in accordance with his "independent contractor contracts" for that year.

      6.    The First Amended Complaint also alleges that:

      A.    From 1997, Wagner made loans in the form of monthly oral contracts with WBGI under which WBGI was to pay charges made on Wagner's personal credit cards for charges made for WBGI purposes. Wagner alleges that he had the obligation to keep copies of all credit card statements so as to be able to make an accounting thereon, and subtract out personal charges made.

      B.    For the period between 1995 through 2003, Wagner makes a claim for quantum meruit or injust enrichment on the basis of allegations that he rendered services "by improving the lands it owns" and created cash flow for the World Botanical Gardens operations for which the fair market value of his work exceeded $700,000.

      C.    Wagner is entitled to the imposition of a constructive trust upon WBGI's land on the theory that since he was not being paid, WBGI used monies that should have been paid to him to acquire land in its name.

      7.    Wagner's Motion for Partial Summary Judgment filed on September 13, 2007, asserts that there is no genuine issue of material fact as to his claims that WBGI contracted with him in 2001, 2002 and 2003 to provide services to WBGI and that WBGI issued promissory notes during those years. In support of his motion, Wagner submitted affidavits from himself, his wife, Linda Wagner, Dave Adams, and Dan Perkins. In none of the affidavits does Wagner attest to the authenticity of the promissory notes sued upon, or to any demand for payment. Instead, he and Linda Wagner only make reference to certain promissory notes. In addition, the affidavits of Dave Adams and Dan Perkins are all based upon hearsay reference to promissory notes which they acknowledge they never saw, or they refer to documents, none of which have been produced.

      8.    WBGI's Motion for Summary Judgment filed on September 25, 2007, provided a comprehensive history of the background of the World Botanical Gardens, Inc. operations, and is supported by documents attested and sworn to by the affiants as required under HRCP Rule 56(e).

-3-

*History Regarding World Botanical Gardens, Inc., the Nevada corporation and Wagner's Prior Business Operations*

9.    Defendant WBGI is a Nevada Corporation which was not formed until April 12, 2001. WBGI operates a botanical garden near Honomu, Hawaii ("the Gardens"). Since approximately May of 2004, WBGI and its Board of Directors have been involved in a dispute with Wagner, his wife, Linda Wagner, David Adams and Dan Perkins over issues related to misappropriation from WBGI by Wagner and his wife, various breaches of fiduciary duty, and Wagner's interference with the business operations of WBGI.[1]

10.    Prior to its incorporation on April 12, 2001, financial operations of the Gardens were directed by Walter and Linda Wagner. In 1995, Wagner had formed a Utah corporation also called World Botanical Gardens, Inc. The Utah corporation was involuntarily dissolved by the Department of Commerce of the State of Utah on March 1, 1996 for failure to file its annual exhibit. The Certificate of Involuntary Dissolution was sent to Walter Wagner at his Utah address. Wagner has falsely claimed in his Motion for Partial Summary Judgment filed on September 13, 2007, that he was not aware of the Utah corporation's dissolution on March 1, 1996, and claims his mailing address had changed by then. However, on April 11, 1996 he filed incorporation papers for yet another Utah corporation, World Botanical Gardens-Second, Inc., using the same Utah address to which the Certificate of Involuntary Dissolution was sent.

---

[1] On June 30, 2005, a Complaint was filed by WBGI against Wagner, his wife Linda Wagner, Dan Perkins and David Adams filed in Civil No. 05-1-0210, Circuit Court of the Third Circuit, State of Hawaii on June 30, 2005.

The gist of the Complaint against Wagner is that Wagner mismanaged the corporation and corporate funds, operated the business with his wife using large amounts of cash, failed to maintain accurate records of expenditures for tax deductions, failed to keep accurate accounting records, failed to keep business records, failed to follow corporate formalities, failed to file corporate income taxes, failed to keep accurate records of shareholders, failed to hold elections, failed to pay corporate filing fees when due, failed to record sales on a cash register, failed to pay payroll taxes, and that Wagner sold WBGI shares and misappropriated money from those share sales.

The Complaint in Civil No. 05-1-0210 also contends that Wagner used corporate funds to purchase real property in his name near the Gardens and that Wagner and his co-defendants diverted funds in excess of $100,000 to an unrelated entity called Monterey Bay Terrarium.

11. After March 1, 1996, no corporate entity called World Botanical Gardens, Inc. legally existed until WBGI's formation as a Nevada corporation on April 12, 2001. Prior to WBGI's formation in 2001, a business called World Botanical Gardens received substantial sums from "share sales" in a fictitious entity (which has been referred to by Wagner as a "Joint Venture Partnership") in the form of participation agreements to own shares in a Utah corporation they called "World Botanical Gardens, Inc." Investors were not informed of the previous dissolution of the Utah corporation.

12. Prior to and after WBGI's formation in April of 2001, periodic reports to investors in the form of "Partnership Newsletters" were sent, not withstanding that no partnership was ever registered or formed in any state. No partnership or operating agreement exists for the business the Wagners claimed was a joint venture partnership.

13. Financial statements, balance sheets, and profit and loss statements and balance sheets used by Wagner for soliciting investments in World Botanical Gardens for the years 1995 through 1998 did not disclose any promissory note(s), loans, debts or liability of WBGI to Wagner. Financial statements and financial records for 1999 and 2000 were not provided by Wagner to WBGI's Board.

14. Investors who purchased WBGI shares after April 12, 2001 also became shareholders by virtue of signing "participation agreements" with WBGI.

15. After its incorporation in April of 2001, no annual meeting of shareholders for the purpose of electing a board of directors was scheduled by Wagner. However, in 2002, prospective directors were solicited, and in December of 2002, ballots for a board of directors was sent to shareholders. The elected directors were announced in a February 1, 2003 newsletter. Until this Board finally met, no independent board of directors for WBGI had been in existence.

16. At the time of the August 25, 2004 hearing in this Court on Wagner's Motion for Default Judgment, Wagner testified that he was the sole shareholder, and no directors were required under Nevada law. This testimony was false.

17. Even by Wagner's own version of events, there was a WBGI board of directors that met in April of 2004. That such a board existed prior to August 24, 2004 is undisputed. Wagner signed an independent contractor agreement for Garden Director services on December 15, 2003, that agreement was signed by Ken Francik, Chairman of the Board of Directors of

WBGI. Under Wagner's version of the December 1, 2003 Garden Director contract, said contract was a "replacement" or "novation" of an oral contract for services as an "independent contractor" (see Paragraph 7 of Final Affidavit of Walter Wagner filed herein on October 12, 2007).

18.     After WBGI's independent board had the opportunity to obtain and review financial records relating to its incurred expenses, the board ascertained that money from gate receipts and share sales had been and were being used by the Wagners to fund their personal expenses, including home mortgage payments, car insurance, cable TV, groceries, toys for their children, Wagner's personal expenses to defend criminal proceedings, acquiring real property that was put into Wagner's name, and funding unrelated business entities. Wagner was thereafter terminated from his position of employment in May of 2004 for several reasons, including the fact that he had failed to account for the credit card expenses. At an April 2004 Board meeting, WBGI's meeting minutes reflect that Wagner promised to repay WBGI these sums over a 3-5 year period.

19.     At no time before its formation, after its formation, or during the dispute with WBGI over his misappropriation, did Wagner produce any records of any unpaid salaries or promissory notes to other shareholders, officers or directors of WBGI. WBGI's records did not contain any Promissory Notes or evidence of any contract with Wagner regarding debts allegedly due to Wagner and Wagner has not produced the same. Wagner has admitted that he did not show the promissory notes to WBGI's elected board. The promissory notes were not discovered until after Wagner had been terminated and had fraudulently obtained the Default Judgment herein. Wagner's claim that he demanded payment from WBGI for the promissory notes is entirely inconsistent with his admission that he did not show the notes to WBGI's Board.

20.     After the election of an independent board, Annette Emerson (WBGI's Treasurer) began preparing annual financial statements for WBGI in 2003 which did not reflect any liabilities due to Wagner. Neither Wagner, Linda Wagner, Dave Adams or Dan Perkins informed Annette Emerson that the statements were inaccurate or should be corrected to reflect debts owed to Walter Wagner. Those statements continued to be used by Wagner, Perkins and Adams to solicit investors and to induce additional share sales, before and after their work for WBGI was terminated.

-6-

21.     In a February 14, 2002 newsletter to shareholders, Wagner wrote that both the officers and directors will be elected, and that "those will initially be non-compensated positions, but they will be responsible for issues that might need to be brought to the attention of the partners." Wagner did not indicate he was an exception to the no compensation rule.

22.     Wagner's claim for compensation for services as a director is also contradicted by a letter he wrote to "partners" of WBGI on August 1, 2002. In this letter, he mentions that an election of directors will be held. In soliciting resumes, Wagner wrote, "Currently, these positions are not compensated and are for a one-year appointment. That might change in the future, however with both potential compensation, as well as longer duration for the positions, again *subject to shareholder vote*" [emphasis added].

23.     The only promissory notes which could have been executed by WBGI after it was formed are the 2002, 2003 and 2004 notes. Not later than six weeks after he claims the 2004 promissory note was executed, on February 18, 2004, Wagner submitted annual exhibits with the State of Nevada designating Dan Perkins as WBGI's Treasurer from 2001-2004. Linda Wagner has also testified and admitted she did not serve in any capacity as an officer of WBGI after Annette Emerson took over in 2003.

24.     The 2002 and 2003 notes were misrepresented to have been signed by Linda Wagner as a Treasurer of WBGI.

25.     The 2004 promissory note could not have been signed by Linda Wagner as a Secretary or Treasurer because Annette Emerson was the Secretary/Treasurer at that time.

26.     The Garden Director contract in effect from December of 2003 to May of 2004, *which was approved by WBGI's board of directors*, provided that WBGI would pay Wagner $4,000.00 per month for services as Garden Director. It is undisputed that Wagner received all sums due under this written contract.

27.     A comparison of the January 1, 2003 Note references that as of January 1, 2003, there was a "carrying forward" of a balance of $382,000 from the "2002 Promissory Note." The fictitious Notes do not even match each other. Thus, the 2004 promissory note filed with the original Complaint referenced a "carrying forward" of a balance of $315,000 from the 2003 promissory note. The January 1, 2003 promissory note attached to the First Amended Complaint asserts a balance of $390,000. Wagner's Default Judgment filed on September 10, 2004, based on

-7-

Wagner's testimony, states a balance of $340,736.75. When compared with Attachment "A" to the Complaint, the figures on this statement don't match with the amounts stated on the promissory notes attached to the First Amended Complaint.

28. In this matter, WBGI requested all documents relating to:

(1) Any and all documents or credit card statements which constitute evidence of the interest charged and amounts alleged to be "loaned" by Walter Wagner and/or Linda Wagner to WBGI as alleged in Count XI of the First Amended Complaint.

(2) Any and all documents which constitute evidence of the oral contracts for directorship services you allege to have been entered into in Counts I, II, III, IV, V, VI, VII, VIII and IX of the First Amended Complaint.

(3) Any and all documents which constitute evidence of the approval of any of the loans and Promissory Notes referred to in the First Amended Complaint by the shareholders and/or directors of WBGI.

(4) Any and all documents which constitute evidence of or support the allegations of the First Amended Complaint that demand for payment on each of the Promissory Notes which you contend was made on May 24, 2004.

(5) Any and all documents which constitute evidence of or which you content supports the claims in Count XII of the First Amended Complaint relating to the claim of quantum merit.

(6) Any and all balance sheets, financial statements, asset and debt statements, and financial records which constitute evidence that the Promissory Notes alleged to have been made by WBGI in the First Amended Complaint were reflected as debts or obligations in the records of WBGI.

(7) Any and all documents which constitute evidence of all loans of money made to Walter Wagner referred to in the First Amended Complaint.

29. The only documents Wagner has produced in response to WBGI's First Request for Production of Documents and Things which was served on Wagner on March 19, 1007 are a few current credit card statements which contain no information as to the expenditures claimed, the dates they were incurred.

-8-

30.     As to the credit card charges, Wagner admitted in open court that he has no records of what charges are attributable to as yet unpaid expenses by WBGI, and has admitted in his First Amended Complaint that it was his obligation to retain copies of the credit card statements and to account for what expenses were legitimate WBGI expenses. Wagner has not produced any such documents. No documents relating to the claim for credit card expenses were submitted by Wagner in opposition to WBGI's Motion for Summary Judgment.

31.     The Complaint filed herein falsely alleges that demand for payment was made on May 24, 2004, prior to filing the Complaint. No such demand was made or produced. On May 24, 2004, Wagner signed the letter terminating his Garden Director contract. As the record herein establishes, even after filing the instant lawsuit in 2004, Wagner concealed the existence of this lawsuit to WBGI's board of directors, preferring instead to secretly obtain a Default Judgment, despite Wagner's claim that he was still the President and a director of WBGI and had a duty to disclose this lawsuit to WBGI's other directors and shareholders. Wagner also failed to disclose the existence of the Default Judgment debt to those controlling the entity, which purportedly owed him large sums of money.

### *Fraudulent Nature of The Promissory Notes*

32.     The facts individually and cumulatively establish that all of the promissory notes are not binding upon WBGI. These facts include:

(1)     Wagner and his wife purported to sign the promissory notes as officers of a non-existent corporation from 1996 through 2001. Wagner knew or should have know of the dissolution of the Utah corporation as the notice of the dissolution and reinstatement documents were in the records he turned over to WBGI's board.

(2)     In deposition testimony taken in Civil No. 05-1-0210, Linda Wagner testified that she did not even know if any of the promissory notes were made in favor of WBGI, the Utah corporation (which had been involuntarily dissolved in March of 1996) or WBGI, the Nevada corporation (which was incorporated in April of 2001). To Linda Wagner, corporate formality did not matter. To Linda Wagner, the name World Botanical Gardens, Inc. was an interchangeable name for a corporation or partnership. When her deposition was taken, Linda Wagner did not even know if the Utah corporation was defunct. For all she knew, Linda Wagner was signing all of the promissory notes on behalf of a defunct Utah corporation.

-9-

(3)     The 2002 and 2003 Notes purportedly signed by Linda Wagner in her capacity as Treasurer of WBGI after its formation were also ultra vives. In response to a notice from the State of Nevada that annual lists of officers had not been filed, on February 18, 2004, Wagner sent to Nevada's Secretary of State a reinstatement fee and a list of officers for the years April of 2001-2002, 2002-2003, and 2003-2004, listing his co-promoter, Dan Perkins, as the Treasurer of WGBI. Walter Wagner's representations to the State of Nevada estop him from claiming Linda Wagner was a Treasurer at that time. His filing also established that Wagner and his wife failed to adhere to corporate formality.

(4)     The books and records kept by the Wagners between 1995 and 2003 and turned over to WBGI's Board did not contain copies of any of the Notes or of any minutes of a shareholder or director meeting authorizing either a director's salary or a promissory note.

(5)     There is no mention of the Notes or back pay obligations in any newsletters sent by Wagner to the shareholders. Linda Wagner also admitted she could not recall ever seeing an employment agreement or independent contractor agreement, even though she was responsible for maintaining such documents and had signed documents as Chief Financial Officer.

(6)     There is no record of any deferred compensation plan adopted by WBGI or any predecessor entity.

(7)     There is no record that Wagner was ever an employee of WBGI, such as a corporate resolution setting forth compensation amounts, a W-9, annual W-2s, or withholding statements.

(8)     There is no accounting treatment of a deferred compensation plan, as a business expense or accrued liability, or even a footnote in balance sheets disclosing to investors or others that WBGI had become indebted to Wagner, in the books and records kept by Wagner and his wife.

(9)     WBGI's shareholders and independent board of directors did not authorize the creation of promissory notes by any resolution or otherwise, nor did WBGI's board agree to assume any pre-incorporation debts. No corporate resolution authorizing WBGI to assume the debts or liability of any Utah corporation, a partnership or other entity was provided in the records Wagner turned over to WBGI's Board or was produced in response to WBGI's request for production of documents and things in this case. Linda Wagner also testified that she was not

aware of any agreement, written or otherwise, whereby WBGI agreed to assume any pre-incorporation debts incurred by she or Wagner, including any agreements between the Utah corporation and the Nevada corporation relating to the transfer of rights, duties, or obligations between the Utah corporation and the Nevada corporation.

(10)     At no time did Wagner make demand for payment of any Notes upon WBGI's board of directors, before or after the Notes were purportedly executed.

(11)     The procedural history, execution dates and lack of any evidence of the promissory notes indicate that the promissory notes were created after Wagner's termination so that Wagner could utilize them in the event he was later sued for misappropriation, as WBGI has done.

(12)     The Notes are all identical and each was purportedly signed on January 1st of each year.

(13)     WBGI financial statements prepared by Wagner and his wife through 1998 do not list any past due wages or contractual obligations as a liability.  Financial records for 1999 and 2000 were never provided by Wagner to WBGI's Board.  In 2001 and 2002, WBGI's shareholders requested, but did not receive, such statements.

(14)     After his termination, Wagner and his co-promoter, Dan Perkins, continued to sell WBGI shares and used a 2004 year end balance sheet which did not reflect any debt, judgment or other obligation owing to Wagner from WBGI.

(15)     While Wagner and his follow promoters, Dan Perkins and Dave Adams, were selling WBGI shares to investors, at no time did Wagner disclose the existence of any claimed debts on the balance sheets used for solicitation.

(16)     Wagner's misrepresentations to this Court on August 25, 2004, indicate that the promissory notes are fabrications.  Wagner made the following statements, among others, to this Court: (a) the "promissory note was authorized by the Gardens", (b) "that the Gardens has no objection of entry of default judgment", (c) the sole shareholder of World Botanical Gardens is himself, (d) lawsuit necessary because Wagner needs to "protect my right to the monies that are owed to me", (e) Wagner expects "in the very near future I [he] will be divesting that company to others", and (f) that WBGI has no directors and Nevada law only requires that a corporation "have

-11-

only one officer". David Adams, has testified in Civil No. 05-1-0210 that he was on WBGI's board in 2003, and that Wagner did not inform him of the promissory notes or this lawsuit.

(17)    The promissory notes were not part of the documents that were turned over to WBGI by Wagner when WBGI's independent Board was elected. The promissory notes were never disclosed by Wagner.

(18)    The appearance of the first of these promissory notes in July of 2004 corresponds to the period of time when Wagner was terminated. When Wagner was fired in May of 2004, the termination letter made clear that his salary would terminate and no further payments would be made on Wagner's credit card charges.

(19)    In his deposition of June, 2006, David Adams, who wrote the corporate and business checks at the relevant times, stated that when Wagner was confronted with embezzlement, Wagner admitted taking the funds, requested a 3-5 year period to reimburse WBGI, and never mentioned he was owed back pay or had loaned money for which the diversion was "collateralized."

33.    Wagner's own statements to the Court also constitute admissions that the promissory notes are fabrications. In an effort to avoid the conclusion that he was not performing work as an unlicensed independent contractor, Wagner stated in open court and in affidavits that he was an employee, directly contradicting the  face of the promissory notes that he was to be paid under a series of "independent contractor" contracts.

34.    In a final attempt to claim that there was no WBGI board of directors, Wagner claims that the board elected by shareholders in 2003 was a "partnership board." This statement merely supports the finding that the promissory notes were never approved by an independent corporate board of directors of WBGI.

### *Claim for "Credit Card Loans"*

35.    Funds from Garden operations and investor sales would be used to pay for Wagner's commingled personal expenses and WBGI's expenses. When Wagner was in control over the check writing, checks would be cut on the Garden' business account for commingled credit card expenses.

36.    After an independent board was elected, it took some time for the board to understand the financial commingling and in October of 2003, Wagner was prohibited from

writing further checks on behalf of Defendant WBGI. Specific guidelines were set for payment or reimbursement on the credit card accounts and agreed to by Wagner.

37.    The Garden Director contract entered into between Wagner and Defendant WBGI, effective December 1, 2003, expressly required that during the term of the agreement, "the Contractor (Wagner) shall bill and the Company shall reimburse him for all reasonable and approved out-of-pocket expenses which are incurred." That was the only express agreement ever created between Wagner and WBGI for reimbursement for the payment of legitimate expenses which, as Wagner had admitted, replaced any prior oral contract for services. The same agreement provides that: "The Company (Defendant WBGI) may terminate this Agreement at any time."

38.    The Garden Director contract also allowed Defendant WBGI to terminate the agreement for the failure of Wagner to follow directives, misconduct, or a material breach of the agreement (Paragraphs 3 and 11 of Garden Director contract).

39.    Prior to his termination, at the April 16-17, 2004 Board meeting, Wagner was reprimanded about his failure to provide invoices for services and mileage reports. During the same meeting, discussion was had as to the fact that approximately $100,000.00 in Wagner's non-business expenses had been paid from WBGI funds. At that meeting, Wagner admitted to at least $50,000.00 in such misappropriations. Of that sum, a substantial portion of the unrelated expenses were personal credit card expenses that had been wrongfully paid by WBGI.

40.    As for the cause of his termination from the Garden Director contract, the $100,000.00 diversion was stated along with the fact that Wagner had failed to comply with the requirement that he provide required documents, including deposit receipts, mail/bills, invoices, time cards, etc. The Termination Letter dated May 24, 2004, which was signed by Wagner, stated that "the company, will however, terminate all payments of Walter L. Wagner's credit cards, effective immediately."

41.    WBGI did not enter into any agreement to pay for Wagner's credit cards except to the extent that they were for legitimate and reasonable business expenses *incurred during the term of the contract*. The contract was terminated for cause. While Wagner claims the Garden Director contract was breached, this is not alleged in the First Amended Complaint, and there is no credit card loan agreement that has been established or proven.

-13-

42.   The language of the Garden Director contract made no mention of any prior credit card debt, back pay, promissory notes, or other reference to indebtedness of WBGI to Wagner.

43.   Wagner makes much of the fact that WBGI's board chose to pay for and close an Advanta credit card account at the April, 2004 board meeting.  This account was in the name of "World Botanical Gardens", WBGI's business name.  WBGI was concerned about that account due to the fact that it too was used for the Wagners' personal expenses such as diapers, baby wipes, expensive dinners, art and school supplies for the Wagners' children and sundry other improper charges.  Since the Advanta credit card account was in the name of World Botanical Gardens, the business name used by Defendant WBGI, and the Board did not want to jeopardize its credit rating or continue to pay Advanta's finance charge of some 34.99%, WBGI decided to close the account.  By then, WBGI had already terminated payment on Wagner's personal credit cards.

44.   While Wagner has claimed that Defendant WBGI received benefits under the personal credit card accounts, he has not produced any documents establishing whether such benefits remain unpaid.  Wagner was provided the opportunity to review WBGI's records, including receipts of pre-incorporation and post incorporation accounts, much of which were already missing when they were turned over by Wagner.  While he asserts in his memorandum that there are factual affidavits relating to cash advances totaling $23,000 being made and $50,000 in additional purchases of materials and supplies, there has been no supporting documentation for this argument, both in the way of affidavits or documents relating to this claim.

### 2002 and 2003 Promissory Note Claims

45.   In its Findings of Fact, Conclusions of Law, Order of Permanent Injunction, and Judgment entered on October 2, 2006, in *World Botanical Gardens, Inc. v. Walter Wagner, et al.*, Case No. CV05-02079, In the Second Judicial District Court of the State of Nevada, In and For the County of Washoe ("the Nevada case"), also found that Ken Francik and Annette Emerson were appointed as President and Secretary/Treasurer, respectively, in August 2003.  The Nevada Court, which had exclusive jurisdiction over issues of internal affairs, also found that Wagner had submitted false filings with the Secretary of State thereafter.  Wagner participated in the proceedings before the Washoe County court and *was represented by counsel throughout the proceedings.*  The Court takes judicial notice of the findings in the courts of the State of Nevada,

which findings are also res judicata as to the issue. Even in the absence of such judicial notice, Defendant WBGI has submitted admissible and competent evidence on the elections of directors, and Wagner may not rely upon hearsay statements.

46.     As for the 2002 and 2003 promissory notes, Wagner attempts to argue that WBGI is bound to honor notes that were executed without disclosure to the shareholders or the approval of an independent board of directors duly elected by the shareholders. No explanation or reason for non-disclosure of the Notes was provided.

47.     Wagner and his wife were beneficiaries of the promissory notes. They had a conflict of interest when they executed the promissory notes. No independent officer or director or shareholder of WBGI authorized, approved or ratified the promissory notes.

### *Quantum Meruit Claims*

48.     As to work performed by Wagner prior to its incorporation, Wagner was a promoter of WBGI.

49.     As to work performed by Wagner after its incorporation, the promissory notes state that Wagner performed services under independent contractor agreements. Wagner now claims in his affidavits and oral argument that he was an employee. No documents have been produced by Wagner showing that W-2 and tax withholding occurred.

50.     Wagner claims some of his work included improving the Gardens, its improvements and grounds. Wagner has claimed he is entitled to receive union contractor wage equivalent for such work.

## II.    *CONCLUSIONS OF LAW*

1.     There are no genuine issues of material fact and WBGI is entitled to summary judgment as a matter of law on all counts or claims stated in the First Amended Complaint based upon the following:

### *Promissory Note and Independent Contractor Claims*

2.     WBGI cannot be held liable for the alleged promissory notes and alleged oral contracts which were formed or entered into prior to April of 2001, as WBGI was not in existence until that time, and WBGI has not assumed pre-incorporation debts.

3.     As to the 2002 and 2003 promissory notes, the Court concludes that they are fraudulent fabrications which Wagner created after he was terminated.

4.     The 2002 and 2003 promissory notes were also purportedly executed by Linda Wagner as the Treasurer of WBGI, however Dan Perkins was listed by Wagner as the Treasurer in a filing with the Secretary of State for the State of Nevada for the years 2002, 2003 and 2004.

5.     The 2004 promissory note which purported to incorporate and merge all of the prior promissory notes, was fraudulently created.  The 2004 promissory note is contradicted by the statements and testimony submitted by Wagner in the original Complaint, the hearing on default judgment, and by the terms of the incorporated notes.  The 2004 promissory note was also falsely misrepresented to be executed by Linda Wagner in her capacity as Secretary/Treasurer of WBGI, when she admits she did not serve in that capacity at that time.

6.     None of the 2002, 2003, or 2004 promissory notes were executed with the approval or ratification of an independent board of directors or with the approval of the shareholders of WBGI.  An inherent conflict of interest existed when Wagner and his wife signed the promissory notes.  None of the promissory notes were ratified by the shareholders or an independent board.

7.     Under Nevada Revised Statutes ("NRS") Section 78-140(2), transactions involving interested directors are not valid unless approved by disinterested directors, a majority of the shareholders, or the contract is fair to the corporation at the time it is approved.

8.     None of the 2002, 2003, or 2004 promissory notes were fair to WBGI, as they purported to incorporate the pre-incorporation obligations incurred by Wagner, who as a promoter of WBGI, was personally liable for obligations he created and had no right to expect compensation for his efforts.  The promissory notes were also unfair because Wagner failed to ever disclose the notes until after his termination, and even then by way of an undisclosed lawsuit.

9.     All of the promissory notes were fraudulently concealed.  Wagner breached his fiduciary duty and duty of full disclosure to WBGI's shareholders.

10.     Based upon his representations as to the financial status of WBGI when soliciting investments from its shareholders, Wagner is estopped from claiming any recovery on the promissory notes and salary.

11.     Wagner's own statements and admissions that he was an employee disprove the promissory notes, which state that Wagner was an independent contractor on their face.

-16-

12.     Wagner also is attested by Linda Wagner to have served as a Trustee for the benefit of the investors. This too imposed a high standard of fiduciary duty which was breached by Wagner.

13.     The 2004 promissory note, which merged and incorporated the prior alleged oral contracts and notes, was fraudulently created and is not enforceable.

14.     Wagner's most recent argument that he was not an independent contractor, but an employee of WBGI, also directly contradicts the express terms of the promissory notes, which refer to his services as an independent contractor. If Wagner was an employee as he claims, the promissory notes falsely represented his status as an independent contractor.

15.     Wagner has not met his burden of establishing the entire fairness of his claims agreements, and has not shown the transaction to be absolutely free of fraud. *Lum v. Kwong*, 53 Haw. 532, 538-539 (1952).

### *Salary and Quantum Meruit Claims*

16.     Similar to the claim related to the promissory notes, WBGI cannot be held liable for salary or compensation in whatever form for obligations Wagner claims to have incurred prior to its incorporation. As a promoter of WBGI, Wagner had no right to expect compensation.

17.     As for Wagner's claim for back pay after its incorporation, Wagner is similarly barred from any agreement he claims to have made with himself on the basis that such agreements were not approved by the shareholders or disinterested directors and is unfair.

18.     Wagner is also barred from recovery, because the back pay claims were merged and consolidated into the fraudulent 2002, 2003 and 2004 promissory notes.

19.     While Wagner argues that he had the authority to enter into the oral contracts, or for that matter, the promissory notes because he was the only director and self-proclaimed President, Wagner cannot benefit from his failure to timely conduct annual elections for directors, and Wagner's concealment of his claimed back pay claims was a breach of his fiduciary duty.

20.     Wagner's claim for the value of his services in improving the WBGI property, whether based upon independent contractor agreements or in quantum meruit is also barred to the extent that he was not a licensed contractor. On the face of the promissory notes, he was an independent contractor, not an employee. HRS Section 444-1 defines "contractor" to mean "any person who by oneself or through others offers to undertake, or holds oneself out as being able to

-17-

undertake, or does undertake to alter, add to, subtract from, improve, enhance, or beautify any realty or construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building, highway, road, railroad, excavation, or other structure, project, development, or improvement, or do any part thereof, including the erection of scaffolding or other structures or works in connection therewith." HRS Section 444-22 prohibits persons who are unlicensed contractors "from recovering for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof, in a civil action, if such person failed to obtain a license under this chapter prior to contracting for such work."

21.     Wagner's claim for quantum meruit is also barred by the doctrine of unclean hands. Wagner's failure to disclose the amount of his contract or claimed debt, and his representations to shareholders that neither officers or directors would be compensated estop him from making this claim, and he also breached his fiduciary duty.

22.     By Wagner's own admission, the Garden Director contract was a "replacement" or "novation" of any prior oral agreements he may have made. This contract superceded any prior agreements, could be terminated for cause or without cause, and any claim of right to a salary or independent contractor compensation was terminated at the same time.

### *Credit Card Loans*

23.     For pre-incorporation obligations incurred by Wagner under the common law, Wagner is himself liable for any debts incurred, as he was the promoter of WBGI. Pursuant to HRS Section 414-34, Wagner and not WBGI is also jointly and severally liable for all liabilities created by him while purporting to act for a corporation he knew did not exist.

24.     For post incorporation expenses, Wagner has not met his burden of coming forward and proving that for current outstanding credit card debt, specifically which portions of those debts are for legitimate WBGI credit card expenses incurred after WBGI's incorporation..

25.     Wagner also agreed in the Garden Director contract and admits in his own First Amended Complaint that he had the affirmative obligation to provide an accounting of what expenses on those accounts were his personal expenses and legitimate WBGI expenses. Wagner has admitted he cannot provide such an accounting and has not done so. Wagner's Garden Director contract was terminated for his inability to do so then. Wagner has had ample opportunity to prove his claim for credit card expenses.

-18-

26.     WBGI had the right under the Garden Director contract to terminate all credit card payments, which it did, after Wagner's termination. There is no genuine issue of fact that Wagner commingled expenses on the credit cards, and breached his fiduciary duty.

27.     Wagner has also admitted to the fact that at least $50,000.00 was paid by WBGI for expenses unrelated to WBGI. If anything, Wagner is obligated to fully account for unrelated expenses paid by WBGI for his personal expenses or unrelated ventures, and to reimburse WBGI for those amounts.

### *Pattern and Practice of Fraud upon WBGI, its Investors, and the Court*

28.     WBGI has asserted the defense of fraud as to all of Wagner's claims. The Court further concludes that this, as well as Wagner's breach of his fiduciary duty of full disclosure, constitutes a complete defense to all of Wagner's claims. Wagner has engaged in a course and pattern of fraud dating to the period before WBGI was incorporated. This pattern and course of fraudulent conduct included:

29.     Making representations to investors that there was a joint venture partnership when no such partnership existed.

30.     Making representations to investors that a non-existent partnership held the shares in a Utah corporation when the Utah corporation has been dissolved.

31.     Making representations to investors that there was a Utah corporation when Wagner knew it had been involuntarily dissolved in 1996.

32.     Signing promissory notes as an officer of a non-existent corporation.

33.     Signing the notes, particularly the 2002, 2003, and 2004 promissory notes, when Linda Wagner did not hold office as represented.

34.     Signing the 2003 and 2004 promissory notes without shareholder approval after claiming to shareholders that neither officers or directors would be compensated without shareholder approval.

35.     Representing to investors a certain state of financial affairs of WBGI that did not include any debts or liabilities to Wagner.

36.     Concealing information about the promissory notes and this lawsuit from WBGI's shareholders and directors.

37.     Concealing the default judgment from WBGI's shareholders, directors and investors.

38.     Making fraudulent representations to the Court in order to induce the entry of the default judgment.

39.     Making false representations that there was a corporate resolution to assume the pre-incorporation debts.

### *Claim for Constructive Trust*

40.     As to Wagner's claim for constructive trust, the Court has already ruled as a law of the case that no valid claim for a constructive trust has been pleaded.

41.     Moreover, by his own pleadings, Wagner has alleged that it was agreed that his compensation was to be deferred. WBGI did not wrongfully misappropriate funds from Wagner.

42.     Finally, the claim for constructive trust is also premised on the claim for back pay, which has been disposed of above.

### *Award of Attorneys Fees and Costs to WBGI*

43.     Wagner's claims on the promissory notes and for unpaid salary or directorship compensation constitute claims in the nature of assumpsit, and pursuant to HRS Section 607-14, WBGI is entitled to recovery of reasonable attorneys' fees in a sum not to exceed 25% of the amount claimed by Wagner.  Wagner has claimed that he is owed the sum of $425,736.75 in the First Amended Complaint for the promissory notes and back pay through 2003 and $700,000.00 on the quantum meruit claim.

44.     Pursuant to HRS Section 607-9, WBGI is also entitled to the taxation of costs incurred in this action.

### III.   *DECISION AND ORDER*

Based upon the foregoing Findings of Fact and Conclusions of Law, and good cause appearing therefor, IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

1.     Plaintiff Walter L. Wagner's Motion For Summary Judgment be and the same is hereby denied.

2.      Defendant World Botanical Gardens, Incorporated's Motion For Summary Judgment is hereby granted in it entirety as to all claims and causes of action alleged in the First Amended Complaint.

3.      WBGI is entitled to a judgment of dismissal with prejudice as to all claims and causes of action alleged in the First Amended Complaint and to an award of reasonable attorneys fees and costs incurred by WBGI in defending against this action, in the form attached hereto as Exhibit "A".

4.      The amount of the attorneys' fees and costs to be awarded to WBGI shall be determined by the Court upon motion and submittal of affidavit(s) in support of such award.

DATED:  Hilo, Hawaii, _____**NOV 1 3 2007**_____.


_____

GLENN S. HARA [SEAL]

JUDGE OF THE ABOVE-ENTITLED COURT


---

*Walter L. Wagner v. World Botanical Gardens, Incorporated;*
*Civil No. 04-1-0232*

ORDER DENYING PLAINTIFF WALTER L. WAGNER'S MOTION FOR
PARTIAL SUMMARY JUDGMENT FILED ON SEPTEMBER 13, 2007, AND
GRANTING DEFENDANT WORLD BOTANICAL GARDENS,
INCORPORATED'S MOTION FOR SUMMARY JUDGMENT FILED ON
SEPTEMBER 25, 2007

-21-