WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT

2011 NOV 14  P 12: 33

DISTRICT OF UTAH

BY:_____
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | | |
|---|---|---|
| WALTER L. WAGNER, | ) | Case:   2:11cv00784 |
| | ) | |
| Plaintiff | ) | **AFFIDAVIT OF WALTER L.** |
| | ) | **WAGNER IN SUPPORT OF** |
| vs. | ) | **OPPOSITION TO MOTION** |
| | ) | **TO DISMISS** |
| PRESTON MICHIE, KENNETH | ) | |
| FRANCIK, LESLIE COBOS, MARK | ) | |
| ROBINSON, ANNETTE EMERSON | ) | |
| STEVE BRYANT, WORLD BOTANICAL | ) | Hon. Clark Waddoups |
| GARDENS, INC. (WBGI), | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## AFFIDAVIT OF WALTER L. WAGNER IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS

I, Walter L. Wagner, affirm, state and declare under penalty of perjury of the laws of the State of Utah as follows:

1.     I have read the defendant's *Motion to Dismiss* and its accompanying documents, which seem to indicate a clear misapprehension as to the nature of *res judicata*.  However, it does give great insight into why defendants believe they have the legal right to falsely tell WBGI shareholders that I was the person who stole the Visitor Center Account funds, as their means of covering up their own theft of those funds; and why they have the right to presently disseminate on the WBGI website a State of Hawai'i indictment document as if it were currently being charged against me, when in fact that indictment was dismissed and the dismissal finalized more than one year ago and the allegations therein are utterly bogus.

2.     Because of their misrepresentations in their pleadings of the history of the prior litigations and the facts therein, I set forth below a correct synopsis of the history of the litigations and their facts, in that I was privy to have read all of the pleadings therein, and am familiar with all of the facts pertaining thereto.  My comments regarding the legal effect of these facts will be discussed in my

2

accompanying *Memorandum of Law in Support of Opposition to Motion to Dismiss*.

## History of Litigations

3.    In 2004, Mr. Dan Perkins and I assisted WBGI in raising additional investment capital.  All together in that year, we  assisted WBGI in raising approximately $220,000 from existing WBGI shareholders, which monies I caused to be deposited into a dedicated *Visitor Center Account* at the Bank of Hawaii.    Those shareholders had been promised in writing that their funds would be used exclusively for construction of a Visitor Center.  Additionally, we assisted WBGI in raising approximately $400,000 from new investors who had not previously been WBGI shareholders, which funds were deposited into the general operating account, also maintained at the Bank of Hawai'i.  At that time in 2004, neither Mr. Perkins nor I had signatory authority over either account, though we could make deposits into the accounts, which we did whenever checks arrived at the WBGI office from WBGI shareholders.  I personally did not make the deposits, but instead allowed the office managers to make the deposits, even though I often received the checks in the mail when I was the office person to open the mail on some days.

4.    In early 2005 Mr. Perkins resigned from the WBGI board, and told me that he did so because of illegalities of defendant Francik.  Shortly thereafter, Mr.

Ron Tolman, also a WBGI shareholder, challenged defendant Francik as to illegalities he perceived were taking place, and caused a freeze of the WBGI bank accounts at the Bank of Hawai'i.   A few weeks later circa March 2005 defendant Francik and Mr. Tolman signed an agreement in which they promised that neither the Francik board, nor the more recently organized Tolman board would use WBGI funds to engage in litigation regarding their disputes, and that all WBGI funds would be used for WBGI purposes only.   With that understanding in writing, Mr. Tolman lifted the freeze on the WBGI bank accounts, allowing WBGI to spend its money on routine WBGI matters.

5.   In May 2005 defendant Francik and his board voted to initiate litigation against Mr. Tolman and the ten members of Mr. Tolman's board (myself included), minutes of which meeting I have seen showing such vote. Circa July and August, 2005 defendants Francik, Michie and others filed two separate, nearly identical suits, naming the members of Mr. Tolman's board as defendants.  One was filed in Nevada, and the other one was filed in Hawaii. Both sought confirmation that the Francik board was the proper controlling authority of WBGI, and both alleged monetary claims against the predecessor board, namely myself and my wife, for some of our actions during the preceding decade in developing WBGI which were alleged to be civil offenses, as well as members of the Tolman board for freezing the WBGI bank account.

4

6.     Following service of both suits on myself, I moved to have either the Hawaii suit dismissed, or the Nevada suit dismissed, as they were duplicate litigations in two different forums.

## Nevada Suit

7.     Rather than dismiss the Hawaii suit, the Honorable Greg Nakamura in Hawaii ordered that the Hawaii suit be restricted solely to the monetary claims, and the Nevada suit be restricted solely to the governance claims as to which board was controlling, which was agreed to by WBGI's attorney as well. Accordingly, both suits were allowed to proceed, the Nevada suit being restricted to solely governance claims, and the Hawaii suit being restricted to solely monetary claims.

8.     The Nevada suit went to trial first in 2006 and solely governance claims were presented and litigated.  Following extensive lying by defendant Francik, the Nevada court ruled that the Francik board was the proper governing board. However, WBGI through its attorney also then submitted monetary damages claims in the final order for the Nevada judge's approval, even though no monetary claims were litigated or presented against myself and other defendants save Dr. Hansen, and they were incorporated into that judgment, notwithstanding the agreement that the Nevada suit was not to litigate monetary

damages. (Dr. Hansen had not been named in the Hawaii suit, but was named in the Nevada suit, the sole minor difference between the suits.)

9. The theft of the Visitor Center Account funds by defendants herein or their agents was not mentioned in that litigation, because that theft was not then known by me, Mr. Tolman, or others. Likewise, defendants herein were not then claiming that the Visitor Center Account funds were missing or stolen, and they likely were not yet missing, though I cannot be certain on that point. It was never an issue raised at that trial, and I presumed the funds were still intact as when I had last been informed thereon in January 2005.

10. The date as to when defendant Francik became WBGI president was raised during that litigation when the judge directly asked defendant Francik, while he was testifying, when he became WBGI president, to which defendant Francik responded "September 2, 2004", which was the date also shown on the Corporation Records for Nevada, attached herewith as *Exhibit "A"*. That date was not challenged during cross-examination and accepted as true.

11. The WBGI shareholder database was never an issue at that trial, and no mention was made by anyone that names were missing or deleted from the database, or that it was not being properly maintained. That issue was never litigated. It was claimed that some financial records were incomplete as a 'reason' as to why defendant Francik decided to form his board in 2004.

### Hawaii Suit

12.    The Hawaii suit went to "trial" second, in April 2008.  Two months earlier, in February 2008 defendant Francik appeared before the Hilo grand jury and lied concerning when he and defendant Emerson became WBGI officers.  There had been a vote by the board on September 2, 2004 replacing Linda Wagner and me as WBGI officers on that date with defendants Francik and Emerson, as per the affidavit of Dan Perkins and the accompanying *Exhibit "A"*. Notwithstanding that vote, and the filing of paperwork with Nevada, Francik claimed that Emerson had replaced Linda Wagner as an officer in August, 2003 and that accordingly the Promissory Note we both signed as WBGI officers on January 1, 2004 was an "attempted theft" because we were, according to Francik's testimony to the grand jury, no longer WBGI officers.  This was also deemed by him to be an "identity theft" of stealing the identity of being a WBGI officer.  Accordingly, based solely on his false and perjured testimony, the grand jury issued an indictment against Linda Wagner and me for "attempted theft" and "identity theft".

13.    About ten days prior to the "trial" both Linda Wagner and I appeared in person before the Honorable Greg Nakamura on a pre-trial motion held in his courtroom.  At that time, he was holding an arrest warrant for us, which he had signed in February 2008 the day after issuance of the indictment.  However, we

were unaware of that fact, as it was not mentioned to us, and we were not arrested at that time, and instead we were instructed to appear at the forthcoming "trial" ten days hence.

14.    At the "trial" Linda Wagner was arrested and removed from the courtroom about ½ hour after she arrived.  The honorable Greg Nakamura took a "short break" seconds before the arrest, and no oral motion for continuance could be made.  He subsequently acknowledged on the court record that he had been approached prior to the "trial" with a request that he allow Linda Wagner to be arrested pursuant to his warrant during the "trial", with which request he decided to comply.  As soon as she was arrested, I left the courtroom to go post her bail, which took several hours to arrange for a bondsman, obtain the cash, sign the papers, etc.  Immediately upon her release, I returned to the courtroom, but it was empty.  I was informed by the clerk that the honorable Greg Nakamura had resumed the "trial" in our absence while we were at the jailhouse, and that the "trial" had concluded only minutes earlier.  I confirmed this, as I saw defendant's counsel, Mr. Tom Yeh who was also the *judge pro tempore* for the honorable Greg Nakamura, walking down the hallway with his clients (some of the defendants herein) away from the courtroom as I was walking towards the courtroom.

15.   As a consequence, there was no actual litigation of issues.  No cross-examination of witnesses took place.  No witnesses were presented from the opposing side.   No examination of exhibits was performed.   There was in actuality no trial whatsoever, but rather a mock "trial" in which only one side gave a presentation.  I have read the "judgment" that was entered thereafter, based on a single-sided presentation, and it is utterly bogus.  The alleged "misappropriations" on my part were simply expenditures of WBGI funds for WBGI purposes with which defendants herein retroactively disagreed, or were mischaracterizations/misunderstandings of their nature.  For example, WBGI promised me as part of my employment to provide my housing rent in Hawaii, to provide Officers and Directors legal defense should I be charged in court for WBGI matters, to repay my personal credit cards which I had loaned to WBGI for WBGI purchases, etc. All of those lawful activities were mischaracterized at the "trial" as "misappropriations" of WBGI funds.  In fact, I had instead loaned WBGI approximately $500,000 by way of uncollected salary and credit card loans, which is the subject of my suit against WBGI currently pending in Hawaii.

16.   While I have not read the transcripts of that "trial" because they would be expensive to have prepared, I do not believe that there was any evidence presented regarding the theft of the Visitor Center Account funds.  No mention of theft of those funds or other misappropriation of Visitor Center Account funds

Case 2:11-cv-00784-CW-PMW Document 14 Filed 11/14/11 Page 10 of 19

was mentioned in any of the voluminous pre-trial pleadings as an issue, and that theft had never been raised as an issue, and at that time I had no direct knowledge of that theft. Likewise, I do not believe that there was any evidence presented regarding the deletion of names from the shareholder database. I was unaware that such was taking place at that time, and only learned of it this past summer when several shareholders shared their email exchanges with me in which defendants herein were claiming that those individuals were not shareholders. Likewise, the deletion of shareholders from the WBGI database was never mentioned in any of the pre-trial pleadings, and I had no clue that such was taking place or would be taking place.

17.     That Hawaii civil action was appealed in 2008, and appellate review is currently pending in Hawaii, focusing primarily on the fact that my wife and I were denied a "trial" by collusion of the trial court judge with defendant Francik and his lies to the grand jury for obtaining that bogus "indictment".

## 2004 *Wagner v. WBGI* Hawaii Suit for Back-pay

18.     The third suit judgment attached as an exhibit to defendants' pleadings is from the suit I filed in 2004 to collect back-pay I had loaned to WBGI, and which was amended in late 2005 to collect other monies I had loaned to WBGI.

19.     In that suit I sought back-pay for services performed over the course of nearly a decade on behalf of WBGI. Year by year, those services were

10

converted into promissory notes, with a deferral of payment for ten years. After nine such years, the ninth promissory note was signed on January 1, 2004 by the WBGI officers at that time, namely myself and Linda Wagner, just as we had done the preceding eight years each January 1, starting on January 1, 1996. Since I had been paid out only a very small portion of my earnings, the ninth such promissory note was for about $450,000, accumulating the preceding amounts year by year as the balance slowly grew larger. The other monies I had loaned to WBGI, on my credit cards, totaled about $80,000.

20. In that suit, WBGI's attorney Tom Yeh alleged without any supporting evidence that the promissory notes were fabrications. Apparently believing that false allegation by his *judge pro tempore*, notwithstanding the fact that I had given extensive evidence that the work was performed and the promissory notes signed on the dates as indicated, and no evidence was given to the contrary, the trial court dismissed the action circa January 2008. The appeal of that dismissal has been pending before the Hawaii appellate courts since. The appeal focuses on several facts other than the wrongful dismissal. Earlier I had obtained a clerical default against WBGI when Tom Yeh refused to file an answer. Only after the clerical default was entered did he file an answer. He followed that with a motion to vacate the clerical default, which was wrongly granted, as Tom Yeh had been served several months earlier and refused to file

an answer on behalf of WBGI, falsely claiming he was not the agent for service of process when in fact he was, which fact he subsequently admitted.

21.    Accordingly, no facts have been litigated in that action.  Certainly the dismissal of the criminal indictment, which dismissal became final in 2010, was not litigated as defendant Francik had not yet lied to the grand jury when the appeal was filed.  Rather, his lying to the grand jury took place about one month after that action was dismissed by the honorable Glenn Hara, for whom Tom Yeh also serves as his *judge pro tempore* (Hilo has only two non-family-matter trial court judges, and Tom Yeh was serving as *judge pro tempore* for both honorable Glenn Hara and honorable Greg Nakamura).

22.    Likewise, the deletion of shareholders from the WBGI database was not litigated, as the shareholder deletions were not known by me when that case was before the trial court, and they likely did not occur until later.  Likewise, the theft of the Visitor Center Account funds was not litigated, as that theft was also not known by me when that case was before the trial court and also would not have been an issue pertaining to my claims for back-pay.

## My Discovery of Theft of Visitor Center Account Funds

23.    I did not have direct knowledge of the theft of the Visitor Center Account funds until this past summer, though I did have earlier suspicions that they had been stolen.   This past summer Mr. Louis Pratt shared with me his email

12

exchange with defendant Bryant and defendant Michie, a copy of which I will have available as evidence at the hearing of these motions, should the Court wish to see them.

24.    Immediately upon seeing the email, I was alerted to the theft of the Visitor Center Account funds. In that email, defendant Michie denied that there was ever a Visitor Center Account. Had the Visitor Center Account existed at that time with the funds intact, no sane person with knowledge thereof would have denied the existence of that account and funds, which were held in trust for Mr. Pratt and the other shareholders, and which information Mr. Pratt was privileged to have. Because defendant Michie denied that that account had ever existed, when he was privy to the knowledge of its existence, for which I have had exact knowledge of its opening and existence, and the fairly accurate account balance in January 2005, I knew that the funds had been stolen and were no longer available to WBGI.

25.    More importantly, I was aghast that I was being accused by defendant Michie of spending those monies on myself, and that the checks sent in by shareholders were never deposited into that account but rather 'misappropriated', and instead the account purportedly was never opened. I had observed that account being opened and I was well aware that a substantial sum ($220,000) had been deposited into that account, but here was

defendant Michie claiming that I had spent that money on myself, and claiming the account had never been opened. This was a very clear cover-up of the theft of those monies by blaming me for their theft – a tactic that defendant's Michie and Francik had been using repeatedly in court previously by blaming me for their board's failures or ineptness.

My Discovery of the Illegal Deletions of Shareholders

26.    In similar manner, this past summer I learned of the illegal deletion of shareholders from the WBGI shareholder database when I was provided with emails obtained by WBGI shareholders in which Mr. Bryant was stating that he could find no shareholder records for them. I had maintained an accurate shareholder database, which database continued on to the Francik/Michie board as of February 2005, long after I was no longer on their board as of September 2004. Mr. David Adams continued to maintain that database, and I was provided a printout from 2005 in which both Milton Lunt and Cal Andrus were properly listed as WBGI shareholders. This database was in computer format on the WBGI computer, with a print-out back-up copy being made every few months, as well as a CD disk drive back-up.

27.    Again, I was aghast to learn not only that shareholders had been deleted by one or more of the defendants, but that I was being blamed for the deletions with false claims of sloppy record-keeping on my part. This was simply more of

14

the same blame-game they had been engaged in for more than half a decade in an effort to cover up their ineptness.

<u>My Discovery of the Posting of Defamatory Material on the WBGI Website</u>

28.    This past summer, one of the shareholders also made available to me the opportunity to access the 'shareholder only' section of the WBGI website. I had not had access to that section for several years. Again, I was aghast to discover that the "indictment" that had been obtained by defendant Francik's fraud before the Hilo grand jury, and which had been dismissed in its entirety with the dismissal becoming final circa October 2010, was instead prominently posted on the WBGI website as if the State of Hawai'i was still indicting me and still accusing me of having committed the felonies defendant Francik fraudulently accused me and my wife of having committed. Nowhere was there an explanation that the "indictment" had been dismissed, and certainly there was no explanation that it had been obtained by the complete fraud of defendant Francik. While perhaps the defendants think it is cute or funny to falsely accuse people of felonies, such false accusations can be financially disastrous. I have had to repeatedly explain to proper authorities in Utah, in obtaining my Utah teaching credential and my Utah insurance license, that that 'pending felony' was utterly bogus. In some states, I have been denied issuance of my insurance license because of that 'pending felony'. In other

15

instances, I have been denied insurance company appointments because of that fraudulent "indictment". And as further explained in the complaint, some business relationships have completely soured when it was learned that there was a 'pending felony' notwithstanding my explanations that it was based on fraud and lies.

## Discovery of Fraudulent Share Sales

29.    My discovery of the fraudulent sale of my shares during a supposed public "auction" circa June 2006 also occurred this past summer (2011) when I was provided access to the shareholder section of the WBGI website. While reading through the WBGI emailed Newsletters (which were not being sent to me), I read that in late 2007, shortly after that "public" "auction", my shares were being sold to the WBGI shareholders at $250/share, and that that selling at that price continued for about one year thereafter.

## Other Continuing Defamations

30.    Even the responsive pleading filed herein, in lieu of an answer, is defamatory, though ostensibly privileged. Because of the extensive frauds worked on the courts by the defendants, I cannot characterize all of them in this limited space. Rather, I take a representative example to show the kinds of deception the defendants engage themselves in before the courts.

31.    In the *Introduction* to defendants' memorandum of law in support of its motion to dismiss, first paragraph, is quoted an excerpt from the Nevada judgment.  This excerpt was prepared by defendant Michie in conjunction with the Nevada attorney, and was not necessarily based on litigated facts.  While it is true that Mr. Tolman did freeze the WBGI bank account briefly, and that I filed a *lis pendens* based on my suit against WBGI for back-pay, these were lawful acts; nor was the sale of my personal shares of ownership in WBGI illegal (nor improper, though lied about by defendant Francik to be made to appear improper).

32.    However, most telling of how defendant Michie works in conjunction with his lawyers he hires with WBGI shareholder monies is the insinuation that I had engaged in trespass and vandalism, which are crimes.  That is where defendant Michie wrote "*he has trespassed on WBGI property, where he sprayed weed-killer on Garden plants*".  This was never litigated, and simply slipped into the 'judgment' for the judge's signature.  This was, of course, designed to make it appear as if I were engaged in vandalism at the Gardens, while neglecting to mention any of the twelve year's of effort to create the Gardens.  Once again, that was a complete fraud.

33.    While in fact I have spent nearly a dozen years (early 1995 to mid 2006) spraying weed-killer at the Gardens, the Garden plants that were sprayed were

the <u>weeds</u>, not the beneficial plants. That fact is known to defendant Michie, in that he has no evidence to the contrary. But since technically it is true that I sprayed Garden plants, since the weeds were also Garden plants, he apparently feels comfortable with this sort of distortion of facts, to make it appear that I was engaged in vandalism by omitting relevant facts while stating an abbreviated truth. The 'trespassing' claim is based upon his supposed 'retroactive revocation' of the approval I had from WBGI over those dozen years to be spraying the garden weeds, similar to defendant Francik's retroactive insertion of himself and defendant Emerson as WBGI officers one year earlier than actually voted in as officers, to make it appear that Linda Wagner and I signed WBGI documents while no longer officers. To defendant Michie, this is apparently simply good lawyering if it gets him what he wants.

## Conclusion

33.    While defendants now wish to characterize me as "disgruntled", I believe a better characterization is "victimized by their frauds". Of course, I am not the only victim. All of the WBGI shareholders have been victimized by their frauds.

34.    Accordingly it is respectfully requested that defendants be required to file an Answer, that their motion to dismiss be denied, that my motion for preliminary injunctive relief be granted, and that this Court schedule a

subsequent hearing to determine whether the fraud, waste and mismanagement

of defendants supports appointment of a Receiver.

DATED:      November 11, 2011


_____

Walter L. Wagner