# EXHIBIT "1"

FILED

Of Counsel:
TSUKAZAKI YEH & MOORE

2008 MAR 13  PM 12: 19

THOMAS L.H. YEH  2341
85 W. Lanikaula Street
Hilo, Hawaii 96720
(808) 961-0055 (phone)
(808) 969-1531 (fax)

J. YAGI, CLERK
THIRD CIRCUIT COURT
STATE OF HAWAII

PRESTON MICHIE  80310
321 SE Alder Street #7
Portland, OR  97214
(503) 804-7331

CRAIG A. SENEF  93170
321 SE Alder Street
Portland, Oregon 97214
Telephone: (503) 295-2766

Attorneys for Plaintiff
WORLD BOTANICAL
GARDENS, INCORPORATED

### IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

### STATE OF HAWAII

| | |
|---|---|
| WORLD BOTANICAL GARDENS, INCORPORATED, a Nevada corporation, )<br><br>Plaintiff, )<br><br>vs. )<br><br>WALTER WAGNER; LINDA WAGNER; DAN PERKINS; DAVID ADAMS; JOHN DOES 1-10; JANE DOES 1-10, and DOE ENTITIES 1-10, )<br><br>Defendants. ) | CIVIL NO. 05-1-0210<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF WORLD BOTANICAL GARDENS, INCORPORATED'S MOTION FOR PARTIAL SUMMARY JUDGMENT FILED HEREIN ON NOVEMBER 30, 2007<br><br>*HEARING:*<br>*Date:    January 15, 2008*<br>*Time:    8:30 a.m.*<br>*Judge:   Greg K. Nakamura*<br><br>*Trial Date:  April 28, 2008* |

I hereby certify that this is a full, true and correct
copy of the original on file in this office.

*ORDER GRANTING IN PART AND DENYING IN PART*
*PLAINTIFF WORLD BOTANICAL GARDENS, INCORPORATED'S*
*MOTION FOR PARTIAL SUMMARY JUDGMENT*
*<u>FILED HEREIN ON NOVEMBER 30, 2007</u>*

This cause came on for hearing on January 15, 2008 on Plaintiff World Botanical Gardens, Incorporated's Motion for Partial Summary Judgment filed herein on November 15, 2007, the Honorable Greg K. Nakamura, Judge presiding. Present at said hearing were Thomas L.H. Yeh, Esq., attorney for Plaintiff WORLD BOTANICAL GARDENS, INCORPORATED, and Defendants WALTER WAGNER and LINDA WAGNER.

The Court, having considered the record and pleadings herein, and considered the arguments of the parties, and good cause appearing therefor, makes the following findings of fact, conclusions of law, and decision and order:

### *FINDINGS OF FACT*

1.     Plaintiff WORLD BOTANICAL GARDENS, INCORPORATED ("WBGI") is a Nevada corporation registered to do business in Hawaii, and which was incorporated in the State of Nevada on April 12, 2001.

2.     WBGI operates a visitor center and botanical gardens operation at Honomu, Hawaii. Prior to the incorporation of WBGI, Defendants Walter Wagner, Linda Wagner and Dan Perkins were engaged as promoters of the to be formed corporation and solicited investments in the business.

3.     After WBGI's incorporation, Walter Wagner appointed himself to serve as WBGI's President and acted in that capacity until an independent board of directors was elected and began serving in August of 2003. Similarly, Linda Wagner served as a self-appointed Treasurer and Secretary of WBGI until the independent board of directors of WBGI began to serve.

4.     Until the independent board of WBGI began serving, the financial operations and expenditures of WBGI were under the control of Defendants Wagner. Defendant Walter Wagner also claims he was the sole director of WBGI until the independent board began to serve.

5.     After the independent board of directors began to assume control over the finances of WBGI, the board discovered that a substantial amount of WBGI's funds had been used for the purpose of funding unrelated ventures being promoted by Defendant Walter Wagner which were

-2-

called "wellness foundation", "wellness center" or the "Monterey Bay Terrarium" project in Monterey, California.

6.      Defendant Walter Wagner does not dispute that such funds were distributed to him for use in the unrelated "wellness foundation" and Monterey Bay Terrarium ventures.  However, he contends that these funds were loaned to him from WBGI and were somehow secured or "collateralized" by promissory notes which he claims were owed to him by WBGI. Neither the "loans" for the "wellness foundation" and Monterey Bay Terrarium ventures, or the promissory notes were approved by the shareholders or an independent board of directors of WBGI.  No documentation relating to the "loans" or promissory notes has been produced by the Defendants in this case.

7.      In a related case filed in the Circuit Court of the Third Circuit, State of Hawaii, entitled *Walter L. Wagner v. World Botanical Gardens, Inc.*, Civil No. 04-1-0232, the Honorable Glenn S. Hara has granted summary judgment in WBGI's favor and against Walter Wagner and dismissed all of his claims against WBGI, including claims based on the promissory notes, the basis of which dismissal includes Judge Hara's findings that the promissory notes were fraudulently executed and lacked authorization from WBGI's shareholders or board of directors.

8.      No proof or evidence of any loan from WBGI to Defendant Walter Wagner for the "wellness foundation" or Monterey Bay Terrarium has been submitted by the defendants, nor have the defendants produced any evidence as to the specific terms of the claimed loans or advances.

9.      NRS Section 78.140 provides in pertinent part as follows:

> "NRS 78.140  Restrictions on transactions involving interested directors or officers; compensation of directors.
>
> 1.  A contract or other transaction is not void or voidable solely because:
>
>     (a) The contract or transaction is between a corporation and:
>
>         (1) One or more of its directors or officers; or
>
>         (2) Another corporation, firm or association in which one or more of its directors or officers are directors or officers or are financially interested;

-3-

(b) A common or interested director or officer:

(1) Is present at the meeting of the board of directors or a committee thereof which authorizes or approves the contract or transaction; or

(2) Joins in the execution of a written consent which authorizes or approves the contract or transaction pursuant to subsection 2 of NRS 78.315; or (c) The vote or votes of a common or interested director are counted for the purpose of authorizing or approving the contract or transaction, if one of the circumstances specified in subsection 2 exists.

2.  The circumstances in which a contract or other transaction is not void or voidable pursuant to subsection 1 are:

(a) The fact of the common directorship, office or financial interest is known to the board of directors or committee, and the board or committee authorizes, approves or ratifies the contract or transaction in good faith by a vote sufficient for the purpose without counting the vote or votes of the common or interested director or directors.

(b) The fact of the common directorship, office or financial interest is known to the stockholders, and they approve or ratify the contract or transaction in good faith by a majority vote of stockholders holding a majority of the voting power. The votes of the common or interested directors or officers must be counted in any such vote of stockholders.

(c) The fact of the common directorship, office or financial interest is known to the director or officer at the time the transaction is brought before the board of directors of the corporation for action.

(d) The contract or transaction is fair as to the corporation at the time it is authorized or approved."
[Emphasis added]

10.    No evidence has been submitted which establishes that the claimed loans or advances for the "wellness foundation" and Monterey Bay Terrarium expenditures were approved of by either WBGI's shareholders or board of directors or subsequently ratified. On the contrary, minutes of a

board of directors' meeting held on April 16-17, 2004, reflect that upon the discovery of these diversions, Defendant Walter Wagner was confronted, Defendant Walter Wagner agreed to pay back the "loans", and at that meeting the board voted to terminate his contract for services for cause.

      11.    WBGI has estimated that approximately $100,000 in WBGI funds were used by Defendant Walter Wagner for the "wellness foundation" and Monterey Bay Terrarium ventures. The specific sums due will be proven at trial.

      12.    During the period between December 10, 2001 and November 14, 2002, $47,789.69 in WBGI's funds were used by Defendant Walter Wagner to pay for legal expenses incurred by him in defending criminal charges filed in Monterey, California for alleged violation of a permanent injunctive order entered on June 23, 1977 that had been obtained by a former law school student named Gail Morton, and to defend against a civil claim for injunctive relief that had been filed by Ms. Morton against Defendant Walter Wagner. The legal expenses were paid to a law firm called the Law Offices of Lawrence A. Biegel ("the Biegel law firm").

The Biegel law firm fees and expenses paid for by WBGI are as follows:

| | |
|---|---:|
| Check #824 dated December 10, 2001, made payable to the Bank of Hawaii for "legal" in the amount of | $3,000.00 |
| Check #787 dated December 20, 2001, made payable to the Bank of Hawaii but cashed by the Law Offices of Lawrence E. Biegel in the amount of | $5,820.00 |
| Check #827 dated January 8, 2002, made payable to the Bank of Hawaii for "legal" in the amount of | $3,508.00 |
| Check #850 dated February 14, 2002, payable to Bank of Hawaii for "Biegel", and cashed by the Biegel Law Firm in the amount of | $5,000.00 |
| Check #808 dated May 9, 2002, made payable to Tina Biegel in the amount of | $6,000.00 |
| Check #625 dated June 10, 2002, made payable to Tina Biegel in the amount of | $5,000.00 |
| Check #625 (a duplicate check number, but separate check) dated June 25, 2002, made payable to Tina Biegel in the amount of | $5,000.00 |

| | |
|---|---|
| Check #621 dated September 11, 2002, made payable to Tina Biegel in the amount of | $5,000.00 |
| Check #818 dated November 14, 2002, made payable to Bank of Hawaii for "legal fees" but cashed by the Biegel Law Firm in the amount of | $ 6,861.69 |
| Total Payments to the Biegel Law Firm: | $45,189.69 |
| In addition Walter Wagner wrote check #624 dated June 25, 2002 made payable to "Superior Court" for "Appellate Ct." in the amount of $2,600.00. This check was payment for an appeal related to Wagner's criminal charges. | $2,600.00 |
| Total amount WBGI paid for to the Biegel Law Firm relating to Walter Wagner's criminal charges: | $47,789.69 |

13.     The undisputed evidence shows that Walter Wagner attempted to contact Ms. Morton for purposes unrelated to WBGI's business, but rather for the purpose of leaving her his business card so she could contact him. Walter Wagner was a former law school classmate of Ms. Morton. Ms. Morton had previously obtained an order on June 23, 1977, enjoining Defendant Walter Wagner from contacting her. Moreover, Defendant Walter Wagner had traveled to Monterey for purposes related to his Monterey Bay Terrarium venture. WBGI had no corporate interest in having Defendant Walter Wagner contact Ms. Morton. Neither the criminal charge nor the civil claim related to this contact alleged that any contact was by reason of the fact that Defendant Walter Wagner was acting in the course and scope of his work on behalf of WBGI.

14.     Between November 27, 2001 and May 2, 2003, checks were written from WBGI's business checking account for the purchase of a parcel of real property located at Honomu, Hawaii and identified as TMK No. (3) 3-1-004:027 ("Parcel 27"), totaling $42,928.25, which parcel was put into the name of Walter Wagner, not WBGI..

| | |
|---|---|
| The total amounts paid by WBGI for the purchase of Parcel 27 are as follows: | |
| Check #773 dated November 27, 2001, made payable to "Walter L. Wagner" for "part. Pay. Of salary - 2", but endorsed by Wagner made payable to Title Guaranty in the amount of | $ 14,000.00 |

-6-

Check #839 dated January 14, 2002, made payable to
"Bank of Hawaii" for "20-acre", but cashed by Title
Guaranty in the amount of                                              $ 22,500.00

Check number unknown; unknown date.  Amount
determined by December 12, 2005 Walter Wagner
Statement of December 12, 2005 in the amount of                        $ 1,000.00

Total paid to Title Guaranty/Mauna Kea Ag
for the purchase of Parcel 27:                                         $37,500.00

In addition, Wagner wrote checks on WBGI's account
to make payments to Mauna Kea Agribusiness to serve the note Wagner
created to pay for the purchase of this parcel:

Check #5679 dated January 23, 2003 made payable to
Mauna Kea Agribusiness for "Walters Land Payments
TMK (3) 3-1-004-027" in the amount of                                  $ 1,085.65

Check #5718 dated February 1, 2003, made payable to
Mauna Kea Ag for "Payment #2; 20 acres in the amount of               $ 1,085.65

Check #5785 dated March 12, 2003, made payable to
Mauna Kea Ag in the amount of                                          $ 1,085.65

Check #6094 dated April 3, 2003, made payable to Mauna
Kea Ag in the amount of                                                $ 1,085.65

Check #6182 dated May 2, 2003, made payable to Walter
Wagner for "Walters' Land Payment" in the amount of                    $ 1,085.65

Total monthly payments to Mauna Kea Ag                                 $ 5,428.25

Total including escrow payments                                        $42,928.25

15.    Defendant Walter Wagner contends that the payments made toward the purchase of

Parcel 27 were actually part payment of salary he claims was owed to him by WBGI.  However,

these payments had none of the normal indicia of payments of salary, no evidence of an employment

contract has been submitted, and no documents or evidence has been submitted establishing that the

requirements of NRS Section 78.140 were met.

16.    In addition to the assumption of control by Defendants Walter Wagner and Linda

Wagner over the financial operations and expenditures of WBGI prior to the election of an

independent board, Defendant Dan Perkins was involved in the sale of shares to investors who purchased shares in WBGI. Personal expenses of the Wagners, unrelated to WBGI's business, were paid for with WBGI's funds, including funds solicited by Defendant Dan Perkins for WBGI's business operations. Full disclosures and accurate records of income and expenses were not kept, disclosed or maintained by said defendants.

### *CONCLUSIONS OF LAW*

1.     Summary judgment is appropriate and shall be rendered forthwith when the pleadings, discovery, and exhibits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment "is appropriate where there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Ross v. Stouffer Hotel Co.*, 76 Hawaii 454, 457, 879 P. 2d 1037, 1040 (1994)(citing HRCP 56(c)). Even if genuine fact issues exist, those facts must actually preclude summary judgment against the party opposing summary judgment. *Ross*, 76 Haw. at 456.

2.     The Hawaii Supreme Court has adopted the summary judgment standards articulated by the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 316, 106 S. Ct. 2548 (1986). *French v. Pizza Hut, Inc.*, 105 Hawaii 462, 472, 99 P.3d 1046 (2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 316, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986)). One of the principal purposes of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. Celotex, supra at 319. The mere existence of a minor factual dispute will not defeat a motion for summary judgment if there is truly no "genuine" issue of material fact. *Liberty Lobby*, supra.

3.     Hawaii Rules of Civil Procedure, Rule 56, reads, in pertinent part, as follows:

> "The motion shall be filed and served not less than 18 days before the date set for the hearing. The adverse party may file and serve opposing memorandum and/or affidavits not less than 8 days before the date set for the hearing. The moving party may file and serve a reply or affidavit not less than 3 days before the date set for the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of

liability alone although there is a genuine issue as to the amount of damages.

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extend to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

4.      Under Rule 56, the moving party bears the initial responsibility of informing the court of the basis of its motion. *GECC Fin. Corp. v. Jafarian*, 79 Hawaii 516, 521, 904 P.2d 530, 535 (App.1995) (affirmed in relevant part, 80 Hawaii 118, 118, 905 P.2d 624, 624 (1995). All evidence must be viewed in the light most favorable to the non-moving party. *Maguire v. Hilton Hotels Corp.*, 79 Hawaii 110, 112, 889 P.2d 393, 395 (1995).

5.      Once the moving party makes the required showing, the burden shifts to the non-moving party to designate specific facts showing genuine issues of fact exist for trial. *GECC Fin. Corp., supra* at 521. The nonmoving party "must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against him." If the nonmoving party fails to show sufficient evidence to establish the existence of a genuine issue of fact with respect to the disputed element of the party's case, summary judgment is appropriate. *French v. Pizza Hut, Inc.*, 105 Hawaii 462, 472, 99 P.3d 1046 (2004).

6.      In *GECC Fin. Corp., supra,* the Hawaii Supreme Court affirmed the following part of the opinion of the Intermediate Court of Appeals:

> "The burden is on the party moving for summary judgment to show the absence of any genuine issue of material facts... Only when the moving party satisfies its initial burden of production does the burden shift to the non- moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial."

*GECC Fin. Corp. v. Jafarian, supra.*

HRCP Rule 56(e) provides:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

7.     The Court concludes that no evidence exists than any loans or advances were made by WBGI to Defendant Walter Wagner for the "wellness foundation" or Monterey Bay Terrarium expenditures and that Defendant Wagner's expenditures were not authorized as such by WBGI's shareholders or board of directors. No specific facts have been demonstrated by Defendant Walter Wagner which would satisfy his burden of coming forward with evidence that presents a genuine issue worthy of trial.

8.     The expenditures for the "wellness center" and Monterey Bay Terrarium were unrelated to the business operations of WBGI. As such, such expenditures were of no benefit to WBGI and were inherently unfair.

9.     Even assuming, arguendo, that the expenditures for the "wellness center" and Monterey Bay Terrarium were loans made from WBGI to Defendant Walter Wagner, no evidence was submitted as to when such loans were to be repaid. If the distributions were loans or advances, then the question becomes when repayment is due. The apparent majority position is that when the terms of a loan agreement are silent as to the time of repayment, the time of repayment is a term supplied by the court. When the term is supplied by a court, repayment is to be made within a reasonable time as determined by the court. *In re Estate of Musgrove*, 696 P.2d 720, 723 (Ariz. App. 1985). The latter alternative is the rule set forth in *Restatement of Contracts (Second), § 204.* It states:

> "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is

-10-

essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court."

*Restatement of Contracts (Second), § 204.*

10.    To the extent that the Court is called upon to determine when repayment of the alleged loans and advances is due, the Court determines that it would be ninety (90) days after demand is made for repayment. By this action and activities in this case, Plaintiff has made it clear that it seeks repayment of the alleged loans and advances. More that 90 days has passed since Plaintiff gave notice of its claim for repayment of the alleged loans and advances.

11.    Regardless of whether the repayment of the alleged loans and advances were immediately due or due 90 days after demand for repayment, repayment is now due. Defendant Walter Wagner has not presented admissible evidence raising a genuine issue of material fact which contradicts this conclusion. As such, partial summary judgment is granted in favor of Plaintiff and against Defendant Walter Wagner on this point. However, Plaintiff has not met its burden of producing evidence in regard to the liability of Defendant Linda Wagner.

12.    As to the use of WBGI finds to pay the legal expenses paid to the Biegel law firm incurred by Defendant Walter Wagner in criminal and civil proceedings initiated by Gail Morton, the Court also grants summary judgment in WBGI's favor and against Defendant Walter Wagner on this issue. Under Section 78.7502 of the Nevada Revised Statutes ("NRS"):

"1. A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or competed action, suit or proceeding, whether civil, criminal, administrative or investigative, except an action by or in the right of the corporation, <u>by reason of the fact that he is or was a director, officer, employee or agent of another corporation</u>, partnership, joint venture, trust or other enterprise, against expenses, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with the action, suit or proceeding if he:

\* \* \*

(b) <u>Acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation</u>, and, with respect to any criminal action or

-11-

> proceeding, had no reasonable cause to believe his conduct
> was unlawful."

NRS § 78.7502.

13.     In this case, as a matter of law, it cannot be said that Gail Morton's action for injunctive relief was "by reason of the fact" that Defendant Walter Wagner was a director, officer or employee of Plaintiff or that he was acting in the interests of WBGI when he attempted to contact Ms. Morton. Defendant Walter Wagner's conduct before April, 2001 with respect to Ms. Morton had nothing to do with his relationship with Plaintiff. Plaintiff also had no corporate interest in having Defendant Walter Wagner contact or attempt to contact Ms. Morton in violation of a permanent injunction against him which precluded such contact or attempt to contact Ms. Morton.

14.     Therefore, partial summary judgment is granted in favor of Plaintiff and against Defendant Walter Wagner for the sum of $47,789.69 for legal expenses arising from the action filed by Ms. Morton, but not against Defendant Linda Wagner.

15.     Defendant Walter Wagner's claim that payments from WBGI's fund for the purchase of Parcel 27 constituted salary is rejected. In *Lum v. Kwong,* 53 Haw. 532, 538-539 (1952), the Court cited the rule to be applied where a director engages in self-dealing.

> The relation of directors to corporations is a fiduciary one and
> the well-established rule both in Hawaii and in a majority of
> the States is that <u>when fiduciaries deal with themselves
> relative to their trust property the burden is upon such
> fiduciaries to establish the fairness of the transaction.</u> ( *Dress
> Mfg. Co. v. Cadinha*, 36 Haw. 732, 742; *Watumull v. Ettinger*,
> 39 Haw. 185.)
>
> . . . "The relation of directors to corporations is of such a
> fiduciary nature that transactions between boards having
> common members are regarded as jealously by the law as are
> personal dealings between a director and his corporation, and
> <u>where the fairness of such transactions is challenged the
> burden is upon those who would maintain them to show their
> entire fairness and where a sale is involved the full adequacy
> of the consideration.</u>"
>
>         . . .
>
> "The fairness of contracts between corporations having
> directors in common must be shown by clear and convincing

proof, and it must be made to appear that they are absolutely free from fraud." [Emphasis added]

16.     Moreover, where a director votes to approve his own salary, the action is voidable if the salary is unreasonable or fraud in involved. *Lussier v. Mau-Van Development, Inc.*, 4 Haw.App. 359, 384 (1983). Here, not only were the salary contracts claimed by Defendant Walter Wagner undisclosed and not approved, but both the alleged contracts and the Promissory Notes were concealed.

17.     As to the use of WBGI funds to pay for the purchase of Parcel 27, the Court will impose a constructive trust or equitable lien on that real property bearing Tax Map Key No. (3) 3-1-004:027, situate at Kamaee, District of North Hilo, Island, County and State of Hawaii ("Parcel 27"). The constructive trust or equitable lien will be equal to the principal amount due; the amount of interest, if any is awarded, and the attorney's fees and costs awarded, if any, for the recovery of the $42,928.25 principal amount.

18.     A constructive trust may arise in favor of a person whose money was wrongfully acquired and used, based on a policy basis designed to prevent a holder of property from being unjustly enriched due to fraud, duress or other unconscionable conduct. *DeMello v. Home Escrow, Inc.*, 4 Haw.App. 41, 659 P.2d 759 (1983). A constructive trust is imposed by law without regard to the intention of the parties, in order to compel the restoration of unjust gains. Rest. Restitution Sec.1 (1937). Kam Oi Lee v. Fong Wong, 57 Haw. 137, 552 P.2d 635 (1976). Upon the imposition of a constructive trust upon real property, plaintiff is entitled to any enhanced value, if any. Peine v. Murphy, 46 Haw. 233, 377 P.2d 708 (1962).

19.     Courts imposing a constructive trust impose a duty on defendants to restore property, whether real or personal to the plaintiff. "A constructive trust is a device to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." DeMello v. Home Escrow, Inc., 4 Haw. App. 41, 46, 659 P.2d 759, 765 (1983). Restoration is the sole obligation of the defendant, who becomes a constructive trustee, and this obligation is enforced by mandatory injunction. Harmon v. Harmon, 613 P.2d 1298 (Ariz. 1980). In Beneficial Hawaii, Inc. v. Kida, 96 Haw. 289, 30 P.3d 895 (2001). "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity may convert him into a trustee." Beneficial Hawaii, Inc., at 315 (quoting from Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 122 N.E. 378, 380 (Cardozo, J.). 5 A. Scott, The Law of Trusts Sec. 462 (3d ed. 1967).

-13-

20.    As a constructive trustee, the Court determines that Defendant Walter Wagner holds title to Parcel 27 as a constructive trustee for the benefit of WBGI's equitable interest to the extent of the amounts due to WBGI, subject to any prior liens or encumbrances.

21.    As to WBGI's claim for an accounting, the Court determines that WBGI is entitled to an accounting from Defendants Wagner of all income, receipts and expenditures of WBGI from April 12, 2001 through August of 2003.  Fiduciaries have a duty to keep accurate accounting records and to make full disclosure. *Watamull v. Ettinger*, 39 Haw. 185 (Haw. Terr. 1952).  A fiduciary trustee has a duty to keep clear and accurate accounts and render them upon application. Restatement, Trusts, Sec. 172.

22.    The fiduciary is under a duty to render and provide and accounting that would show in detail the items expended and show when, to whom, and for what purposes the payments were made so the beneficiaries can make a reasonable test of the accuracy of the accounts.  The accounts should be clear and accurate and if they are not, all presumptions are against the trustee and all obscurities and doubts are to be taken adversely to him.  Alexopoulos v. Dakouras, 48 Wis.2d 32, 179 N.W.2d 836, 841 (1970); see also Updike v. Wolf and Co., 175 Ill.App.3d 408, 529 N.E.2d 993, 999-1000 (1988); Englesmann v. Holekamp, 402 S.W.2d 382 (Mo.1966).

23.    ~~Pursuant to HRS Sections 478-3 and 636-16, the Court will award pre-judgment~~ interest on the amounts of WBGI funds expended for the legal expenses and court costs paid to the Biegel law firm and for the purchase of Parcel 27, at legal the rate of 10% per annum, commencing when each expenditure of WBGI funds was made for such purpose.



24.    As the recovery of WBGI funds expended for the Biegel law firm and the purchase of Parcel 27 constitute claims for restitution and unjust enrichment, the Court determines that such claims are in the nature of assumpsit for which WBGI is entitled to recover a sum no greater than 25% of the principal and interest amounts awarded, pursuant to HRS Section 607-14.

25.    HRS Section 607-14, states in pertinent part as follows:

> **§ 607-14. Attorneys' fees in actions in the nature of assumpsit, etc.**
>
> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the ~~court an affidavit stating the amount of time the attorney spent~~

~~on the action and the amount of time the attorney is likely to~~ spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. <u>The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.</u>

Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed.

Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed.

Where the note or other contract in writing provides for the recovery of attorneys' fees incurred in connection with a prior debt, those attorneys' fees shall not be allowed in the immediate action unless there was a writing authorizing those attorneys' fees before the prior debt was incurred. "Prior debt" for the purposes of this section is the principal amount of a debt not included in the immediate action.

<u>The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.</u> [Emphasis added]

26.     HRS Section 607-14 has been interpreted to authorize the award of up to 25% of the amount claimed in three types of cases: (1) all actions in the nature of assumpsit, (2) all actions on a promissory note, and (3) contracts in writing that provides for an attorneys fee. *Eastman v. McGowan*, 86 Haw. 21, 31 (1997). *S. Utsenomiya Enterprises, Inc. v. Moomuku Country Club*, 76 Haw. 396, 399-400 (1984).

27.     Assumpsit has also been defined to include all forms of contracts, "express or implied, written or verbal, as well as quasi-contractual obligations". *Utsunomiya*, at 399-400. Attorneys fees may also be awarded to the prevailing party under HRS Section 607-14 for litigation on a claim for unjust enrichment, as such a claim is in the nature of assumpsit or quasi-contract. *Porter v. Hu*, 116 Haw. 42 (2007). As such, all of the attorneys fees incurred by WBGI in

~~prosecuting the claims involving the Biegel law firm and the purchase of Parcel 27 are recoverable~~
under HRS Section 607-14.

28.    ~~The Court, upon submission of appropriate evidence of the reasonableness of~~ *N*
~~WBGI's attorneys fees incurred, will award attorneys fees to WBGI on these claims.~~

23. 29.    While WBGI has sought partial summary judgment against Defendant Linda Wagner
on the issue of her liability on the "wellness center", Monterey Bay Terrarium, the Biegel law firm
and pre-incorporation loan payments to her, WBGI has not met its burden of proof as to these issues
for purposes of summary judgment, and its motion on these issues is denied on these grounds.

24. 30.    WBGI has failed to meet its burden of proving its entitlement to summary judgment
on the issue of pre-incorporation "salary" payments made to Defendant Walter Wagner and its
motion on this issue is denied.

25. 31.    As to the liability of Defendants Walter Wagner, Linda Wagner and Dan Perkins as
promoters for pre-incorporation debts and obligations, this issue is reserved for future
determination.

26. 32.    Pursuant to HRCP Rule 54(b), there is no reason why entry of judgment on the issue
of repayment of the Biegel law firm and the imposition of a constructive trust upon Parcel 27 should
be delayed, and a final judgment should be entered on those issues forthwith.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AN DECREED, that Plaintiff
World Botanical Gardens, Incorporated's Motion For Partial Summary Judgment filed herein on
November 30, 2007, be and the same is hereby granted in part and denied in part as follows:

1.    Summary judgment is granted in WBGI's favor and against Defendant Walter
Wagner as to the following:

A.    The issue of Defendant Walter Wagner's liability for expenditures of WBGI
funds for the "wellness center" and Monterey Bay Terrarium ventures, in a sum to be proven at the
trial of this action.

B.    The sum of $47,789.69 for the Biegel law firm legal expenses, ~~plus pre~~
judgment interest accrued from the date each payment was made to February 29, 2008 ($27,693.13),
totaling the sum of $75,482.82, ~~plus~~ reasonable attorneys not to exceed 25% of the principal and    *N*
~~interest, subject to submission of appropriate affidavit as to the amounts of attorneys fees incurred~~

-16-

~~by WBGI on this issue.  Upon approval of the award of reasonable attorneys fees, final judgment on these sums shall be entered pursuant to HRCP Rule 54(b).~~

C. The sum of $42,928.25 for the payments made from WBGI's funds for the purchase of Parcel 27, ~~plus pre-judgment interest accrued from the date of each such payment to~~ February 29, 2008 ($25,479.17), totaling the sum of $68,407.42, plus reasonable attorneys fees not to exceed 25% of the principal and interest, subject to submission of appropriate affidavit as to the amounts of attorneys fees incurred by WBGI on this issue.  Upon approval of the award of attorneys fees, final judgment on these sums shall be entered pursuant to HRCP Rule 54(b), and a constructive trust shall be imposed upon Parcel 27 for the satisfaction of these sums, pursuant to ~~which Defendant Walter Wagner will be declared a constructive trustee for the benefit of WBGI.~~

2. Defendants Walter Wagner, Linda Wagner, Dan Perkins and Dave Adams are hereby ordered to provide a full and complete accounting of all income received by or for the benefit of WBGI and all expenditures of WBGI funds made between April 12, 2001 and August 2003, with such accounting to be provided to the Court and WBGI no later than June 30, 2008. ~~In the event~~ that said Defendants fail to provide a full accounting ~~of such funds,~~ said Defendants will be liable for any funds not accounted ~~for as well~~ as any expenditures of WBGI which were made for non-~~WBGI related expenses.~~

3. The remainder of WBGI's Motion for Partial Summary Judgment is hereby denied for the reasons stated above.

DATED:  Hilo, Hawaii, _____ **MAR 1 3 2008**

[SEAL — 1ST THRD CIRCUIT COURT]

_____
JUDGE OF THE ABOVE-ENTITLED COURT
**GREG K. NAKAMURA**

---

*World Botanical Gardens, Incorporated v. Walter Wagner, et al.;*
Civil No. 05-1-0210

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF WORLD BOTANICAL GARDENS, INCORPORATED'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
FILED HEREIN ON NOVEMBER 30, 2007

---