WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT

2011 DEC -2  P 1:50

DISTRICT OF UTAH

BY:_____
     DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | | |
|---|---|---|
| WALTER L. WAGNER, | ) | Case:   2:11cv00784 |
| | ) | |
| Plaintiff | ) | **SUPPLEMENTAL** |
| | ) | **AFFIDAVIT OF WALTER L.** |
| vs. | ) | **WAGNER IN SUPPORT OF** |
| | ) | **MOTION FOR PRELIMINARY** |
| PRESTON MICHIE, KENNETH | ) | **INJUNCTIVE RELIEF** |
| FRANCIK, LESLIE COBOS, MARK | ) | |
| ROBINSON, ANNETTE EMERSON | ) | |
| STEVE BRYANT, WORLD BOTANICAL | ) | |
| GARDENS, INC. (WBGI), | ) | |
| | ) | Hon. Clark Waddoups/Trial |
| Defendants | ) | Hon. Paul Warner/Pre-Trial |
| | ) | |

# SUPPLEMENTAL AFFIDAVIT OF WALTER L. WAGNER IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

I, Walter L. Wagner, affirm state and declare under penalty of perjury of the laws of the State of Utah as follows:

1. As referenced briefly by Mr. Dan Perkins in his sworn affidavit, since resuming my work in Utah in 2008 after relocating back to Utah from Hawai'i that year, I have had a number of professional positions that require FBI background checks, fingerprinting, State licensing, and other aspects of professional employment.

2. Beginning in 2009 I was privileged to work in conjunction with the federal Center for Medicare and Medicaid Services (CMS) in their implementation of the Healthcare Reform Act ("Obamacare") as it pertains to the regulations for the Medicare population. Much of this work was in a Personal Health Information (PHI) compliant facility requiring security clearance for entrance. This work is presently (2011) ongoing, where I work with many seniors from many diverse backgrounds. Part of the work requires extensive training on detection of fraud in all aspects of the implementation of Parts A, B, C, and D of the CMS regulations. As mentioned previously, I have passed all of the requisite coursework on such fraud detection. Further, allied work also requires completion of various Anti-Money-Laundering

coursework to prevent criminal fraud, which testing I have also successfully completed with high scores.

3. Beginning in 2010 and through to the second half of that year, I was also privileged to work with the US Census Bureau on preparation of the 2010 US Census. Again, this work was in a secured facility for protection of personal information, and required FBI background check, fingerprinting, professional referral, etc., and involved working with thousands of colleagues in our secured facility in South Jordan. My work involved computer-assisted CFU work to help insure the most complete, accurate and comprehensive US Census ever created. Stringent rules were in place to insure the protection of personal information from fraudulent use. This work was timely submitted to Congress at the end of 2010, and will be used extensively by numerous federal, state and local agencies over the next decade, until the 2020 Census.

4. Beginning with the 2008-2009 school year, and continuing to the current 2011-2012 school year, I have been privileged to also serve part-time, at various Utah secondary public schools, as a classroom instructor. These positions have been primarily in the teaching of mathematics and science, and occasionally foreign languages. In that capacity I am frequently called upon to discipline students whenever I detect fraud, lying or deceit. This

discipline can range from reprimand, to parent conference, to administrative conference, to expulsion (which I have not personally had to experience with my students). As I mentioned before, I have an extensive and diverse background for detection of fraud, lying or deceit; and whenever such raises its ugly head, I'll point it out.

I

## FRAUDULENTLY OBTAINED "INDICTMENT"

5. Mr. Holden <u>falsely states</u> in his Reply Memorandum in support of his motion to dismiss that the fraudulently obtained "indictment" was *"based on Plaintiff's misappropriation of funds."*[1] <u>Nothing could be further from the truth</u>, and this appears to be an intentional lie by Mr. Holden, for which this Court might wish to consider sanctions, including but not limited to an OSC re contempt hearing. The fraudulently obtained "indictment" was based <u>entirely</u> upon the fraudulent claim by defendant Francik that Linda Wagner was no longer a corporate officer on January 1, 2004 when she signed a corporate document as a WBGI officer. The charge was *"attempted* theft" because no money was transferred, but rather there was an "attempt" to obtain a

---

[1] Last sentence, bottom of Page 3, of *"Defendant World Botanical Gardens, Inc.'s Reply Memorandum In support of Motion to Dismiss"*, which falsely reads: *"First, the Indictment was based on Plaintiff's misappropriation of funds."*

4

judgment on the Promissory Note[2], with defendant Francik fraudulently claiming that Linda Wagner was then no longer an officer and therefore no longer entitled to have signed that Promissory Note, which he in turn claimed was 'fraudulent' or, in terminology used by his attorney, a 'fabrication'.

6. I have gone back and re-read the Transcript of the Grand Jury proceeding (CR No. 08-1-097, dated February 27, 2008) in which defendant Francik gave his perjured testimony. The entire transcript is relatively short, only 22 pages, and only about half being testimony by defendant Francik. It is very clear that the <u>sole basis</u> of his charge he was fraudulently making was that Linda Wagner was not a corporate officer on January 1, 2004 when she signed that Promissory Note deferring for ten years the prior nine-years worth of accumulated back-pay. There is <u>no mention</u> or allegation of misuse or misappropriation of any WBGI monies, and indeed, the word "misappropriation" was not even mentioned in his testimony. A copy of that Grand Jury transcript will be made available at any forthcoming hearing for this Court's *in camera* inspection, should it desire to confirm that the

---

[2] This "attempt" is ongoing, in the form of *Wagner v. WBGI*, currently pending in the Hawai'i appellate court, in which plaintiff Wagner is currently seeking to obtain a judgment based upon the work he did and evidenced by a series of nine increasingly larger Promissory Notes that had been signed by the WBGI officers year-by-year each January 1, deferring for ten years the accumulating obligation.

"indictment" was **NOT** based upon allegations of *"Plaintiff's misappropriation of funds"* as falsely claimed by Mr. Holden in his recent filing, but rather solely upon defendant Francik's fraudulent claim of a fabricated Promissory Note.

7. Defendant Francik went to great lengths to work a fraud on the Grand Jury. He falsely proclaimed that defendant Emerson had been voted in to replace Linda Wagner as a corporate officer in 2003. He falsely proclaimed that the *"entire Board"* was aware that Annette Emerson had replaced Linda Wagner as a corporate officer in 2003. Yet his false proclamations to the Grand Jury were subsequently directly countered by at least three (3) of those Board[3] members who filed sworn affidavits in Court stating that they knew Linda Wagner to be a WBGI corporate officer at the time she signed that January 1, 2004 Promissory Note deferring an existing WBGI financial obligation for a period of ten years.

8. Further, nowhere in his testimony did he give any of the evidence available to him that showed Linda Wagner was in fact a proper corporate officer at the time she deferred that existing obligation, evidence of which he was well aware. Numerous sworn affidavits (now including Mr. Perkins'

---

[3] David Adams, Dan Perkins, and Walter Wagner signed sworn affidavits they knew Linda Wagner was a WBGI corporate officer; the other active Board members at that time were Kenneth Francik, Annette Emerson, Lanny Neel and Don Miller.

affidavit filed herein) showed that the vote to replace Linda Wagner as a corporate officer took place on September 2, 2004, some eight (8) months <u>AFTER</u> she signed that Promissory Note deferring that existing obligation. Moreover, <u>all</u> of the written corporate records maintained by the State of Nevada confirmed that as well, records of which defendant Francik was well-aware.  Specifically, the WBGI minutes of the September 2, 2004 meeting showed Linda Wagner as having been replaced by vote on that date; and the Nevada filing submitted by defendant Emerson to the State of Nevada was also on that date, which is the first document filed removing Linda Wagner as a corporate officer (she had been one of the Incorporators of WBGI in Nevada in 2001).  <u>Neither defendant Emerson, nor anyone else, ever filed Nevada corporate records showing Linda Wagner being removed as a corporate officer until September 2, 2004.</u>  Defendant Emerson, after election to the Board, did file two corporate documents in Nevada <u>prior</u> to September 2, 2004.  The first one, filed *circa* March 2004 by defendant Emerson, served to appoint herself as the *Resident Agent for Service of Process* for WBGI, a non-officer position.  The second one, filed *circa* June 2004 by defendant Emerson, served to appoint herself to replace Dan Perkins as a corporate officer (Treasurer), leaving the positions then held by me and Linda Wagner intact (President and Secretary, respectively).  Both of those earlier filings

showed defendant Emerson's awareness of the necessity of filing corporate documents to make corporate changes, and that she did not then (March or June, 2004) consider herself as having replaced Linda Wagner as a corporate officer. All of this was very well detailed and documented in the criminal litigation fraudulently initiated by defendant Francik, including certified copies of the relevant Nevada documents referenced above. Moreover, in May 2004 defendant Francik was advised in a letter from the WBGI attorney at that time as to the proper identity of the WBGI officers.

9. It is because of that extensive background of evidence showing defendant Francik as having perjured himself before the Grand Jury that the fraudulently obtained "indictment" was dismissed in 2010. Issue Preclusion now operates to preclude defendants from proclaiming that my wife and I were not the WBGI officers on January 1, 2004 when we signed that ninth Promissory Note deferring for ten years my accumulated back-pay, because that issue was extensively litigated, and the "indictment" dismissed. In addition, the preclusive effect of the State of Nevada corporate filings by defendant Emerson, public records for all to see, likewise serves to preclude defendants from now in some way claiming that there was in fact any validity to defendant Francik's fraudulent testimony to the Grand Jury.

10. Mr. Holden also references the earlier "finding" by the trial court judge in *Wagner v. WBGI* that the Promissory Note was "fabricated". This was based upon defendant Francik's fraudulent claims as such, and is likewise the subject of the pending appeal in that case. There was no "fabrication" of the Promissory Notes. Each year on January 1, the prior year's accumulated back-pay was tabulated and rolled into another Promissory Note. After nine years, there were nine such promissory notes. Defendant Francik was nowhere around at that time, as he was not yet a shareholder for the first 4 such notes, and it was not until after the 9th such note that he began falsely claiming they were "fabrications". Because he is a cunning and clever liar[4] his false claims were initially believed by that judge. However, when he re-injected the issue two years later, by taking it to the Grand Jury, he was unable to rely on issue preclusion, as they need actual evidence. So he lied to them to provide them with evidence. Following two years of litigation of that issue, i.e. whether or not Linda Wagner fabricated a WBGI Promissory Note by signing such without corporate authority, that case was dismissed. Once again, issue preclusion now serves to preclude defendants from

---

[4] This is not the first time that his lies caught up with him. In a declaration against interest, in May 2004 he confided to me that he had been fired from the Los Angeles Police Department and prosecuted for lying. Unfortunately, he was not convicted.

claiming the Promissory Note in question was a "fabrication" due to the subsequent criminal litigation of the issue engendered by defendant Francik's fraudulent Grand Jury testimony, which resolved the issue favorably to myself and Linda Wagner.

II

## FALSE ARREST AT THE "TRIAL" INVALIDATES JUDGMENTS

11. Mr. Holden also falsely claims that my departure from the "trial" courtroom to bail out my wife, after she was whacked in the knee, raises *"no questions about the validity of the Second Hawaii Court Judgment."*[5]  He arrogantly asserts: *"Plaintiff requested no continuance. Instead, he simply chose not to attend the trial so he could bail out his wife. Plaintiff's voluntary absence from trial raises no issues concerning the validity of the Second Hawaii Court Judgment."* I seriously doubt the Hawaii Supreme Court will concur with Mr. Holden's legal position, not to mention his lack of moral character he would exhibit towards the needs of his wife.

12. Contrary to Mr. Holden's implicit assertion, Linda Wagner was not simply accompanying me to the courtroom to hold my hand. She was a critical key witness, who had been listed in advance as a witness, as well as a

---

[5] Bottom of Section C, page 5 of *"Defendant World Botanical Gardens, Inc.'s Reply Memorandum in Support of Motion to Dismiss"*

party. She had explicit testimony to give on the fraudulent assertions of "misappropriation" of WBGI funds, because she was the WBGI bookkeeper, accountant, and corporate Secretary and Treasurer during the times of question (1995-2003) regarding the advisability of those appropriations. Her testimony was key to providing a complete picture and it would have been devastating indeed to defendant herein Francik. Her testimony would have shown that all of the fraudulent allegations of "misappropriation" were in fact that – fraudulent; as the appropriations were proper, necessary, and beneficial to WBGI, and did not enrich me personally. Rather, I continued to loan money to WBGI year after year, and I am presently the single largest creditor of WBGI because of those loans.

13. Linda Wagner had appeared before that same judge ten days prior to the "trial" at a pre-trial hearing. This was conducted by Judge Nakamura, who had also issued an arrest warrant two months earlier for Linda Wagner's arrest (but which neither she nor I were aware of at that pre-trial hearing), signed by him the day after issuance of the "indictment". He did not exercise on that warrant that he was then holding at that pre-trial hearing, but instead directed Linda Wagner to appear for the "trial" that would be conducted ten days hence. Ten days later, within a half-hour of her showing her face in his courtroom at the "trial", that was when he exercised on that warrant. Had he

exercised the warrant ten days earlier when we stood before him, we would have had no cause for complaint. But that is not what happened. Instead, he deliberately chose to exercise on it at a time in which it was guaranteed to deprive Linda Wagner and myself of our opportunity to conduct a fair trial.

14. Having lost my critical key witness, and with an aberrant judge who had taken a "short break" moments before the arrest, with no clue as to when he might return, I had no option or recourse left in that courtroom at that time, and instead chose to obtain Linda Wagner's release from false imprisonment. Hanging around for an unknown period of time to ask such an aberrant judge for a "continuance", when it was very obvious he had no intent on affording either of us a fair trial (and when he could have issued such a continuance himself *sua sponte*, if he were actually interested in providing a fair trial), would have been a pointless exercise and could have jeopardized Linda Wagner's safety and security, which was a paramount concern for any honorable individual and certainly my concern, even if Mr. Holden would have no such concern for his wife or family.

III

## THEFT OF VISITOR CENTER ACCOUNT FUNDS

15. I indeed had strong suspicions as far back as 2006 that defendants were embezzling the Visitor Center Account (*Account B*) funds. I voiced that

suspicion in numerous affidavits, as that suspicion was based upon the vast amount of money being spent on litigation showing on their accounting records. I strongly suspected they were not spending their own money, but rather the shareholder Visitor Center Account money. But I had not seen direct facts showing as such, until just this past summer, when defendant Michie fraudulently claimed that I had not set up that *Account B*, and that instead I had stolen ("misappropriated") the money that had been sent in to me for deposit into that account. That fraudulent proclamation by defendant Michie alerted me to the fact that the Visitor Center account was no more, and had been either closed, or completely drained of its funds and left merely as a shell account.

16. Nowhere had it been previously alleged in any legal proceedings that I had engaged in any outright theft of monies. The false claims that were being litigated were always false claims of "misappropriation" of not having properly spent monies.[6] In Nevada, because there were to be no claims for monetary damages, those issues were not litigated at trial. Rather, the issue that was litigated at trial in Nevada was whether or not Ron Tolman and his board had

---

[6] The *"Appendix"* to the *Response to Opposition to Motion for Preliminary Injunction* contains a true and correct summary of the types of alleged "misappropriations" I was being falsely accused of by defendants.

properly obtained corporate authority. Because of the extensive lying of defendant Francik, the trial court left defendant Francik in control of the WBGI company and its bank accounts, rather than Mr. Tolman and his board as it should have done.

17. While the Nevada judge found it "shocking" that I did not know the names of the parties who had purchased my personal shares of WBGI, this was not because of poor record-keeping. Rather, I did not know the names because I was on the witness stand, and did not have those records in front of me, so I could not give him either the names of those parties, or the amounts they had spent to buy my shares, or the exact total amount. While on the witness stand I did provide him with an approximate total dollar amount, and approximate total of my personal shares that were sold. But I had never met or spoken with the purchasers, and did not personally know them, as they had been sold through an intermediary. Within a few days of my testimony, a complete accounting of all of my shares sold, the names of the purchasers, and the amount paid, was in fact provided to that judge, at his request. That was a complete and accurate record. He likely also found it "shocking" in part because defendant Francik was lying to him and proclaiming I had not obtained board permission to sell some of my shares, when in fact I had, as has been amply documented since. Since the sale of

my personal shares, and the fraudulent claim that it was without permission and therefore the funds should have been turned over to WBGI, was not an issue for decision by the Nevada court, but rather by the Hawaii court, as per the stipulation of the parties and the Hawaii court, it was not litigated in Nevada as it was to be litigated instead in Hawaii. It was not subsequently litigated in Hawaii because my wife and I were subsequently whacked in the knee by defendant Francik. Because the issue of alleged misapplication ("misappropriation") of monies was not an issue in the Nevada courts, and because it was not litigated in the Hawaii court because my wife and I were removed from the courtroom, issue preclusion, even if it were the same issue as the theft of the Visitor Center Account funds (which it is not), is not applicable.

IV

CONCLUSION

18. Mr. Holden's recent filing is deceitful, and should be disregarded by this Court. The WBGI corporation has no business, some seven years after having obtained control of the management and finances, of chronically falsely defaming me with their fraudulent claims that my wife and I "fabricated" a Promissory Note when we were no longer corporate officers, of falsely asserting that we are presently under indictment with felony charges

pending against us, of falsely asserting that I stole or embezzled the monies that were mailed in for deposit into the Visitor Center account, or otherwise attempting to cover-up their own theft of those monies. It should be clear to this Court that they are not intent on running a botanical garden, but instead are intent on bashing people with their frauds to make themselves look better. It isn't working.

19. Accordingly, I am again requesting that this Court order them to remove from their website all legal pleadings of the 'legal actions' that they have engaged themselves, and leave the website as a neutral ground for actual WBGI business. It is further requested that this Court direct an investigation, through proper channels, into the theft of the Visitor Center account funds and hold the responsible parties accountable. It is further requested that this Court begin seeking to find a Receiver so that WBGI won't continue to waste its remaining assets (if any) on its fraudulent litigations.

DATED:   December 2, 2011

*/s/ Walter L. Wagner*

Walter L. Wagner