IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **WALTER L. WAGNER,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| v. | Case No. 2:11-cv-784-CW-PMW |
| **PRESTON MICHIE; KENNETH FRANCIK; LESLIE COBOS; MARK ROBINSON; ANNETE EMERSON; STEVE BRYANT; and WORLD BOTANICAL GARDENS, INC., a Nevada corporation,** | **District Judge Clark Waddoups** |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

District Judge Clark Waddoups referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court are (1) World Botanical Gardens, Inc.'s ("WBGI") motion to dismiss[2] and (2) Walter L. Wagner's ("Walter Wagner" or "Wagner") motion for preliminary injunctive relief.[3] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is

---

[1] *See* docket no. 9.

[2] *See* docket no. 5.

[3] *See* docket no. 10.

not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

As an initial matter, the court notes that Wagner is proceeding pro se in this case. Accordingly, the court will construe his pleadings and other submissions liberally. *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## BACKGROUND

Most of the following background information is taken from the complaint and documents that are either attached to or referenced in the complaint. Accordingly, they can properly be considered by the court in deciding WBGI's motion to dismiss. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384-85 (10th Cir. 1997).

In addition, the court grants WBGI's request for the court to take judicial notice of three state court decisions, the contents of which will be referenced in the following factual background. The court recognizes that rule 12(d) of the Federal Rules of Civil Procedure generally requires a court to treat a motion to dismiss as a motion for summary judgment when matters outside the complaint are considered. *See* Fed. R. Civ. P. 12(d). However, since the three state court decisions are the type of public records that are subject to judicial notice, the court's consideration of them does not require the court to treat WBGI's motion to dismiss as a motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004);

*City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1251 n.4 (10th Cir. 2001); *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

Wagner is a former officer and shareholder of WBGI.  In his amended complaint in this case, Wagner has brought six causes of action against WBGI and other individuals.  Wagner alleges claims for slander and libel against WBGI on three different topics:  record-keeping, misappropriation of WBGI funds, and a 2004 promissory note ("2004 Note").  Wagner also alleges a claim against WBGI for fraud, waste, and mismanagement.

As indicated above, the court is taking judicial notice of three state court decisions involving Wagner that are related to this case.  The three state court decisions are:

1. *World Botanical Gardens, Inc. v. Walter Wagner, et al.*; Second Judicial District for the State of Nevada, Washoe County; Case No. CV05-02079; dated October 2, 2006 ("Nevada Decision" or "Nevada Court").

2. *Walter Wagner v. World Botanical Gardens, Inc.*; Third Circuit Court for the State of Hawaii; Civil No. 04-1-0232; dated November 13, 2007 ("First Hawaii Decision" or "First Hawaii Court").

3. *World Botanical Gardens, Inc. v. Walter Wagner, et al.*; Third Circuit for the State of Hawaii; Case No. 05-1-0210; dated October 9, 2008 ("Second Hawaii Decision" or "Second Hawaii Court").

<u>Nevada Decision</u>

WBGI sued Wagner in Nevada state court to obtain an injunction against Wagner's ongoing interference with WBGI's operations.  After a three-day trial, the Nevada Court entered the Nevada Decision.  The Nevada Decision described "a relentless conspiracy and campaign by

3

Defendant Walter Wagner and the other Remaining Defendants to gain control of WBGI at any cost."[4]  The Nevada Court found that Wagner:

> had diverted funds to his personal accounts, failed to keep proper financial records, . . . failed to pay employment taxes, failed to file corporate income tax reports, [and] failed to keep accurate records of shareholders.  [WBGI board members] also discovered the Internal Revenue Service had placed a lien on WBGI's real property to secure payment of overdue payroll taxes.[5]

The Nevada Court also ruled that Wagner "intentionally and illegally engaged in a fraudulent scheme to sell shares of WBGI stock to unsuspecting purchasers."[6]  Based on its findings of fact, the Nevada Court ruled that "[t]he removal of Defendant Walter Wagner from the WBGI Board of Directors was proper."[7]  The Nevada Court also found that "[f]rom Defendant Walter Wagner's removal through the present, the WBGI Board of Directors has properly managed the business and affairs of WBGI."[8]

The Nevada Court entered a permanent injunction against Wagner ordering him to cease creating or participating in an alternate board of directors, interfering with WBGI's business

---

[4] Docket no. 7, Exhibit A at 4.

[5] *Id*. at 2-3.

[6] *Id*. at 7.

[7] *Id*. at 9.

[8] *Id*. at 6.

affairs, altering signature cards of WBGI bank accounts, or attempting to sell WBGI property.[9] WBGI has not indicated whether the Nevada Decision was or is on appeal.

### First Hawaii Decision

Wagner sued WBGI seeking recovery of "deferred salary" in the form of the 2004 Note. WBGI purportedly executed the 2004 Note (and prior notes referenced in the 2004 Note) in favor of Wagner in the amount of $340,736.75. The First Hawaii Court found that the "promissory notes are fabrications" and that "Wagner's own statements to the Court also constitute admissions that the promissory notes are fabrications."[10] The First Hawaii Court ultimately ruled that "[t]he 2004 [Note] . . . was fraudulently created."[11] In addition, the First Hawaii Court stated that "Wagner has engaged in a course and pattern of fraud dating to the period before WBGI was incorporated."[12] Among Wagner's conduct identified by the court was the following: signing promissory notes as an officer of a nonexistent corporation, signing promissory notes without shareholder approval, concealing information about the promissory notes and the lawsuit from WBGI's shareholders and directors, and making fraudulent representations to the court in order to induce the entry of a default judgment.[13]

---

[9] *See id*. at 10-11.

[10] *Id*., Exhibit B at 11-12.

[11] *Id*. at 16.

[12] *Id*. at 19.

[13] *Id*. at 19-20.

According to WBGI, Wagner has appealed the First Hawaii Decision, and that appeal is pending before the Hawaii Intermediate Court of Appeals.

### Second Hawaii Decision

WBGI initiated this case against Wagner to recover corporate funds Wagner misappropriated and converted for his personal use. The Second Hawaii Court issued extensive findings of fact, conclusions of law, and an order detailing Wagner's conduct. The Second Hawaii Court ruled that Wagner "diverted WBGI funds [for] personal purposes. These included funds for [a] personal mortgage, property tax payments[,] personal credit card payments[,] and for debts incurred to creditors for personal expenditures."[14] The Second Hawaii Court found that Wagner mischaracterized corporate funds as loans, business expenses, and salary.[15]

The Second Hawaii Court went on to find Wagner guilty of abuse of process and malicious prosecution, and declared Wagner a vexatious litigant for "relitigating or attempting to relitigate in propria persona and in bad faith the validity of final determinations in Nevada adverse to defendants involving WBGI who prevailed on all issues in dispute."[16]

According to WBGI, Wagner appealed the Second Hawaii Decision, and it was affirmed by the Hawaii Intermediate Court of Appeals. WBGI has further indicated that Wagner has filed a petition for certiorari with the Hawaii Supreme Court for review of that decision.

---

[14] *Id.*, Exhibit C at 6.

[15] *See id.* at 6-7.

[16] *Id.* at 46; *see id.* at 45-47.

## ANALYSIS

As noted above, the motions before the court are (1) WBGI's motion to dismiss and (2) Wagner's motion for preliminary injunctive relief. The court will address the motions in turn.

### I. WBGI's Motion to Dismiss

WBGI's motion seeks dismissal of Wagner's complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under rule 12(b)(6), the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Wagner alleges claims for defamation against WBGI on the following topics: record-keeping, misappropriation of WBGI funds, and the 2004 Note. Wagner also alleges a claim against WBGI for fraud, waste, and mismanagement. The court will first address the defamation claims, then it will address the fraud, waste, and mismanagement claim.

### A.  Defamation Claims

Before addressing the specifics of Wagner's defamation claims against WBGI, the court must address a threshold issue.  WBGI argues that all of Wagner's defamation claims are barred by the three state court decisions discussed above pursuant to the doctrine of issue preclusion, which is also known as collateral estoppel.  Accordingly, the court must address which forum's law applies in determining the preclusive effect of the three state court decisions.

"A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997).  Accordingly, the court must apply Utah law to determine the preclusive effect of the three state court decisions.  Utah courts "apply the 'most significant relationship' approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance." *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).  "[T]he particular factors considered in determining the 'most significant relationship' vary according to the type of action brought." *Id*.

In this case, the issue presented is the preclusive effect of the three state court judgments.  It does not appear that Utah courts have addressed this particular issue.  However, the Supreme Court has indicated that "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Moreover, the Tenth Circuit has stated that "[f]ederal courts must apply the law of the state rendering the judgment to determine its collateral estoppel effect; we may not accord

greater preclusive effect to a state court judgment than would the state in which the judgment is rendered." *Amoco Prod. Co. v. Heimann*, 904 F.2d 1405, 1417 (10th Cir. 1990).

Pursuant to those authorities, the court concludes that Utah courts would likely apply the rendering state's law to determine the preclusive effect of decisions from that state's courts. Accordingly, the preclusive effect of the three state court decisions will be determined under the state law of the court rendering each decision.

The court now turns to addressing the merits of Wagner's defamation claims. As indicated above, WBGI argues that all of those claims are barred under the doctrine of issue preclusion.

### 1. Record-Keeping

WBGI argues, under the doctrine of issue preclusion, that the Nevada Decision precludes Wagner from relitigating his defamation claims related to record-keeping. Under Nevada law,

> the following factors are necessary for application of issue preclusion: ([a]) the issue decided in the prior litigation must be identical to the issue presented in the current action; ([b]) the initial ruling must have been on the merits and have become final; . . . ([c]) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and ([d]) the issue was actually and necessarily litigated.

*Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (quotations, citation, and footnote omitted) (third alteration in original).

### a. Identical Issues

The issue decided by the Nevada Court was and is identical to the issue Wagner presents in this litigation, namely Wagner's poor record-keeping as an officer of WBGI. Wagner's

9

defamation claims are based on the assertion that WBGI stated that Wagner kept poor shareholder records while in control of WBGI and that Wagner's poor record-keeping resulted in an incomplete list of all WBGI shareholders.

The Nevada Court directly addressed the issue of Wagner's poor record-keeping when it stated that Wagner

> had diverted funds to his personal accounts, failed to keep proper financial records, . . . failed to pay employment taxes, failed to file corporate income tax reports, [and] failed to keep accurate records of shareholders. [WBGI board members] also discovered the Internal Revenue Service had placed a lien on WBGI's real property to secure payment of overdue payroll taxes.[17]

The Nevada Court also ruled that Wagner "intentionally and illegally engaged in a fraudulent scheme to sell shares of WBGI stock to unsuspecting purchasers."[18]  Based on its findings of fact, the Nevada Court ruled that "[t]he removal of Defendant Walter Wagner from the WBGI Board of Directors was proper."[19]  The Nevada Court also found that "[f]rom Defendant Walter Wagner's removal through the present, the WBGI Board of Directors has properly managed the business and affairs of WBGI."[20]

Based on the foregoing, the court concludes that the issue decided by the Nevada Court related to Wagner's poor record-keeping is identical to the issue presented in this case.

---

[17] *Id.*, Exhibit A at 2-3.

[18] *Id*. at 7.

[19] *Id*. at 9.

[20] *Id*. at 6.

### b.  Final Judgment on the Merits

Other than making the conclusory assertion that the Nevada Decision was on the merits and is final, WBGI has not provided the court with any proof that the Nevada Decision is indeed final.  Not only has WBGI failed to provide the court with the standard for finality of a judgment for purposes of issue preclusion under Nevada law, it has also failed to indicate whether the Nevada Decision was or is on appeal.  Under those circumstances, the court cannot conclude that the Nevada Decision is final for purposes of issue preclusion.

### c.  Party or Party in Privity

The party against whom the Nevada Decision is asserted, Wagner, was a party to the case decided by the Nevada Court.  Accordingly, this element is satisfied.

### d.  Issue Actually and Necessarily Litigated

After a three-day trial, the Nevada Court entered the Nevada Decision.  As noted above, the record-keeping issue addressed by the Nevada Court is the same issue presented in this case.  Indeed, the Nevada Court explicitly referred to the issue in its findings of fact.  For these reasons, the court concludes that the issue of Wagner's record-keeping was actually and necessarily litigated.

### e.  Conclusion

WBGI has satisfied three of the elements of issue preclusion on the issue of Wagner's record-keeping.  The only element that WBGI has failed to establish is the finality of the Nevada Decision.  Consequently, the court cannot conclude, at this point, that Wagner's claims related to record-keeping are barred by issue preclusion.  As such, this portion of WBGI's motion should

be denied without prejudice. If WBGI can demonstrate that the Nevada Decision is final, WBGI should be allowed to renew its motion to dismiss Wagner's claims related to record-keeping.

### 2. Misappropriation of WBGI Funds and 2004 Note

WBGI argues, again under the doctrine of issue preclusion, that the First Hawaii Decision and the Second Hawaii Decision preclude Wagner from relitigating his defamation claims concerning the misappropriation of WBGI funds and the 2004 Note. Under Hawaii law,

> the test for collateral estoppel has four elements: ([a]) the fact or issue in the present action is identical to the one decided in the prior adjudication; ([b]) there was a final judgment on the merits in the prior adjudication; ([c]) the parties to the present action are the same or in privity with the parties in the prior action; and ([d]) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment.

*Smallwood v. City & Cnty. of Honolulu*, 185 P.3d 887, 895 (Haw. Ct. App. 2008).

#### a. Identical Issues

The Second Hawaii Decision addressed Wagner's misappropriation and conversion of WBGI funds for personal use. Wagner's defamation claim is based, in part, on allegations that WBGI stated that Wagner embezzled funds designated for use to construct a Visitor Center. WBGI also allegedly stated that there was no designated Visitor Center account and that Wagner misappropriated investor funds for personal use.

These are the same issues resolved by the Second Hawaii Court. The Second Hawaii Court found that Wagner "diverted WBGI funds [for] personal purposes. These included funds for [a] personal mortgage, property tax payments[,] personal credit card payments[,] and for

debts incurred to creditors for personal expenditures."[21] The Second Hawaii Court found that Wagner mischaracterized funds as loans, business expenses, and salary.[22] While the Visitor Center is not specifically mentioned, it is encompassed within the Second Hawaii Court's global finding of misappropriation of corporate funds. Wagner's defamation claim is based on the view that he did not misappropriate WBGI funds and that any such statement is false. However, the Second Hawaii Court found to the contrary, that is, that Wagner did in fact misappropriate WBGI funds.

In addition, the First Hawaii Decision resolved the issue of whether Wagner fraudulently manufactured the 2004 Note (in addition to the prior notes incorporated into the 2004 Note). In this case, Wagner contends that WBGI's statement that Wagner fraudulently executed the 2004 Note was defamatory. Wagner further alleges that WBGI's assertion that Wagner's spouse executed the 2004 Note as an officer of WBGI, while she was in fact not an officer of WBGI, was also defamatory.

The First Hawaii Court resolved this issue and found that the "promissory notes are fabrications" and that "Wagner's own statements to the Court also constitute admissions that the promissory notes are fabrications."[23] In addition, the First Hawaii Court ultimately ruled that "[t]he 2004 [Note] . . . was fraudulently created."[24] Wagner's defamation claims are based, in

---

[21] *Id.*, Exhibit C at 6.

[22] *See id.* at 6-7.

[23] *Id.*, Exhibit B at 11-12.

[24] *Id.* at 16.

part, on his assertion that the statement Wagner "fraudulently created the 2004 Note" is false. However, that issue was already resolved by the First Hawaii Court.

Finally, the Second Hawaii Court addressed the issue of whether Wagner's spouse was a director or officer of WBGI, which is also part of Wagner's defamation claim. The Second Hawaii Decision provides that "Defendant Linda Wagner was neither a WBGI director nor a WBGI officer after August of 2003. Defendant Linda Wagner has admitted in deposition testimony that after Annette Emerson became Treasurer, she no longer had any position of authority and was neither an officer [nor] director of WBGI."[25]  Accordingly, the Second Hawaii Court has explicitly ruled on that issue.

For these reasons, the court concludes that the issues presented in this case concerning the misappropriation of WBGI funds and the 2004 Note are identical to the issues addressed in the First Hawaii Decision and the Second Hawaii Decision.

### b. Final Judgment on the Merits

WBGI asserts that the First Hawaii Decision and the Second Hawaii decision are final for purposes of issue preclusion, even though both of those decisions are currently on appeal. However, under Hawaii law, it appears that a judgment is not final for purposes of issue preclusion while pending on appeal. *See Glover v. Fong*, 42 Haw. 560, 574 (Haw. 1958) ("A judgment is final where the time to appeal has expired without appeal being taken."); *cf. Littleton v. State*, 708 P.2d 829, 833 (Haw. Ct. App. 1985) ("[W]here an appeal has been taken, a

---

[25] *Id.*, Exhibit C at 16.

judgment of the trial court is not final, at least for purposes of *res judicata*."). Accordingly, the court cannot conclude that the First Hawaii Decision and Second Hawaii Decision are final for purposes of issue preclusion under Hawaii law.

### c. Same Parties

This element is clearly satisfied. Wagner and WBGI were parties to the cases decided by the First Hawaii Decision and the Second Hawaii Decision.

### d. Issue Actually Litigated, Finally Decided, and Essential to the Judgment

The Second Hawaii Judgment reflects that the Second Hawaii Court conducted a two-day trial. Wagner was present for the first day, but failed to appear when the court reconvened on the second day of trial.[26] The Second Hawaii Court proceeded to take evidence, and after considering that evidence, along with the papers filed by both parties, ruled against Wagner.[27] The Second Hawaii Decision is an extensive and thorough review of the facts and circumstances surrounding Wagner's misappropriation of funds.[28] Accordingly, the court concludes that the issue of Wagner's misappropriation of funds was actually litigated, finally decided, and is essential to the Second Hawaii Decision.

The First Hawaii Decision demonstrates that the First Hawaii Court conducted a hearing at which Wagner was present. The First Hawaii Court considered all the papers filed and the

---

[26] *See id.*, Exhibit C at 1-2.

[27] *See id.* at 1-50.

[28] *See id.*

15

arguments of all parties.[29] The First Hawaii Decision is an extensive and thorough review of the facts and circumstances surrounding the execution and attempted collection of the 2004 Note.[30] Accordingly, the court concludes that the issue of the 2004 Note was actually litigated, finally decided, and is essential to the First Hawaii Decision.

### e.  Conclusion

WBGI has satisfied three of the elements of issue preclusion on the issues of Wagner's misappropriation of funds and the 2004 Note. As noted above, the only element that WBGI has failed to establish is the finality of the First Hawaii Decision and the Second Hawaii Decision. Consequently, the court cannot conclude, at this point, that Wagner's claims related to misappropriation of funds and the 2004 Note are barred by issue preclusion. As such, this portion of WBGI's motion should be denied without prejudice. If and when the First Hawaii Decision and Second Hawaii Decision become final, WBGI should be allowed to renew its motion to dismiss Wagner's claims related to misappropriation of funds and the 2004 Note.

### B.  Fraud, Waste, and Mismanagement

WBGI argues that Wagner's fraud, waste, and mismanagement claim must be dismissed. WBGI asserts, pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, that Wagner's claim must be dismissed for lack of subject-matter jurisdiction because he does not have standing to bring the claim.

---

[29] *See id.*, Exhibit B at 2.

[30] *See id.* at 1-21.

"Standing is a jurisdictional issue that may be raised by the court at any time." *Wilson v. Glenwood Intermountain Props.*, 98 F.3d 590, 592-93 (10th Cir. 1996).

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a [motion under rule 56 of the Federal Rules of Civil Procedure].

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted). Accordingly, this court can look to matters beyond Wagner's complaint to determine whether subject-matter jurisdiction exists.

In his complaint, Wagner alleges that he owns an approximately 1/6th interest in WBGI. However, Wagner has provided no evidentiary basis for this allegation. To the contrary, the Second Hawaii Decision demonstrates that Wagner's remaining shareholder interest in WBGI was sold to satisfy an outstanding judgment. The Second Hawaii court noted that "[o]n July 20, 2007, a Report of Sheriff's Sale was filed, in which the sale of the shares held by

[Wagner] to satisfy the Nevada [Decision and] judgment was reported."[31]  The court also stated that "[a]fter his removal from WBGI's Board of Directors, . . . Wagner lacked authority to take any action on behalf of or to represent WBGI in any capacity, and was merely a WBGI shareholder (. . . Wagner's shares were sold at public auction by the Washoe County, Nevada Sheriff's Office on June 29, 2007, at which time his relationship with WBGI ended . . .)."[32]

It appears that Wagner no longer has any stake or any ownership interest in WBGI. According to the Second Hawaii Decision, his shares were sold and he was lawfully removed from WBGI.  As such, the court agrees with WBGI's argument that Wagner lacks standing to bring his fraud, waste, and mismanagement claim and, therefore, that the claim should be dismissed for lack of subject-matter jurisdiction.  Accordingly, this portion of WBGI's motion should be granted.

## II.  Wagner's Motion for Preliminary Injunctive Relief

Along with his complaint, Wagner filed a motion for preliminary injunctive relief against WBGI.

> To obtain a preliminary injunction, the moving party must establish:  (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

---

[31] *Id.*, Exhibit C at 9.

[32] *Id.* at 18.

*Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1262 (10th Cir. 2005) (quotations and citation omitted).

The court has determined that Wagner has failed to demonstrate that there is a substantial likelihood that he will prevail on the merits of his claims. The court has recommended dismissal of one of Wagner's claims, and the remaining claims are barred from dismissal based only on the fact that the Nevada Decision, First Hawaii Decision, and Second Hawaii Decision do not appear to be final for purposes of issue preclusion. Once those decisions become final, and assuming for the sake of argument that the cases are resolved in WBGI's favor, Wagner's remaining claims will be subject to dismissal under the doctrine of issue preclusion.

Because the court concludes that Wagner has failed to demonstrate that he is likely to succeed on the merits of his claims, it is unnecessary for the court to address the remaining factors required for preliminary injunctive relief. Wagner's motion for preliminary injunctive relief should be denied.

## CONCLUSION AND RECOMMENDATION

In summary, **IT IS HEREBY RECOMMENDED** that:

1. WBGI's motion to dismiss[33] be **GRANTED IN PART** and **DENIED IN PART** as follows:

---

[33] *See* docket no. 5.

      a.      WBGI's motion to dismiss Wagner's claims related to record-keeping, misappropriation of funds, and the 2004 Note be **DENIED WITHOUT PREJUDICE**.

      b.      WBGI's motion to dismiss Wagner's claim for fraud, waste, and mismanagement be **GRANTED**.

2.    Wagner's motion for preliminary injunctive relief[34] be **DENIED**.

\* \* \* \* \*

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 5th day of March, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[34] *See* docket no. 10.