WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT

2012 MAR 19  A II: 37

DISTRICT OF UTAH

BY:_____
       DEPUTY CLERK


# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

---

| | |
|---|---|
| WALTER L. WAGNER, | Case:   2:11cv00784 |
| Plaintiff | **OBJECTION TO *REPORT AND RECOMMENDATION*** |
| vs. | **[28 USC 636; FRCP 72]** |
| PRESTON MICHIE, KENNETH FRANCIK, LESLIE COBOS, MARK ROBINSON, ANNETTE EMERSON STEVE BRYANT, WORLD BOTANICAL GARDENS, INC. (WBGI), | |
| | **District Judge Clark Waddoups** |
| Defendants | **Magistrate Judge Paul Warner** |

---

## OBJECTION TO *REPORT AND RECOMMENDATION*

I

## INTRODUCTION

Pursuant to Federal Rules of Civil Procedure section 72(b)(3), *Resolving Objections*, as well as pursuant to 28 U.S. Code section 636(b)(1) which reads essentially the same, this honorable Court is obligated to determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. Accordingly, this Court is obligated to reject or modify the recommended disposition, or receive further evidence, or both, or return the matter to the magistrate judge with instructions. To aid this Court in this task, plaintiff submits this *Objection to Report and Recommendation*.

In the *Report and Recommendation* prepared by the honorable magistrate judge Paul Warner, he has accepted as true all of the allegations in three state court documents as if the allegations had been litigated at trial and were true 'findings of fact' which documents he entitles *Nevada Decision*, *First Hawaii Decision*, and *Second Hawaii Decision*. Not discussed is that the *First Hawaii Decision*, which was on appeal in Hawaii at the time of submission of this matter to magistrate Warner, has since been remanded to the Hawaii trial court with a reversal of the trial court judge and a decision favorable to plaintiff herein for a

determination as to how much money he is owed by defendant WBGI herein, which appellate decision is attached to plaintiff's accompanying sworn affidavit as *Exhibit "A"*.    Further, magistrate Warner has essentially ignored the sworn affidavits of Mr. Calvin Andrus, Mr. Dan Perkins and plaintiff Wagner, and not included them in his erroneous factual determinations, relying solely on the erroneous court documents, as detailed *infra*.

The correct factual matters are included in the accompanying sworn affidavit by plaintiff Wagner, and their effect on the *Report and Recommendation* follows.

This Court will recognize that magistrate judge Paul Warner relied heavily upon three court documents in his *Report and Recommendation* while essentially ignoring sworn affidavits of three parties, which documents he entitled *Nevada Decision*, *First Hawaii Decision*, and *Second Hawaii Decision*. Plaintiff follows that same nomenclature throughout to avoid confusion.   As noted, the *First Hawaii Decision* has now been reversed by the Hawaii appellate court.  The impact of that reversal will be discussed *infra*.  Additionally, the other two documents heavily relied upon by magistrate Warner are equally unreliable, as discussed i*nfra*.

*///*

3

II

## *NEVADA DECISION*

As this Court will note from the accompanying sworn affidavit of plaintiff Wagner, the *Nevada Decision* was entered in one of two identical claims that had been filed by defendant herein WBGI in 2005 in two different states, namely Hawaii and Nevada, resulting in two decisions, the so-called *Nevada Decision* and the *Second Hawaii Decision*.  The *First Hawaii Decision* (the now-reversed decision) arose from a claim filed by plaintiff herein Wagner in 2004 against defendant herein WBGI, and with the recent reversal of that decision the case is now sustained as a valid claim for monies owed to plaintiff Wagner by WBGI.

To recapitulate the procedure that gave rise to the *Nevada Decision*, this court may read in greater detail, in the accompanying sworn affidavit, regarding the below summarization of those facts and issues:

The Francik Board of WBGI (shareholders of WBGI including defendant herein Francik) filed[1] two identical claims in two different states naming the members of the competing Board of Directors of WBGI, namely the Tolman Board members (also shareholders of WBGI, including plaintiff herein Wagner)

---

[1] Hawaii claim filed June 30, 2005 as #05-1-0210;  identical Nevada claim filed a few weeks thereafter.

as defendants.  The identical claims in both states sought both a determination that the Francik Board was the proper governing board of WBGI, as well as monetary damages.   As plaintiff Wagner was a member of that competing Board of Directors, he filed a motion in the Hawaii court[2] to have either the Hawaii claim or the Nevada claim dismissed, so that the claim would proceed in only one state jurisdiction instead of two.  That motion was not granted in the manner in which it was requested, and instead the Hawaii court ordered that the Francik Board of WBGI, if it wished to proceed on its monetary claims in Hawaii, would be restricted to proceeding solely on the governance claim in Nevada and not on the monetary claims in Nevada, which was the state of incorporation of WBGI.  Accordingly, the Francik Board agreed to the court's order, and agreed to litigate solely the governance claim in Nevada, and to litigate solely monetary claims in Hawaii, as a method of keeping alive in Hawaii the alleged monetary claims that they apparently wished to be litigated in Hawaii.

Thus, the defendants in the Nevada action (the members of the Tolman Board, the competing board of directors of WBGI, which board had been approved as to form and membership by WBGI's original Hawaii attorney) prepared for the Nevada case to litigate the sole issue over which the Nevada

---

[2] Filed November 28, 2005; the Order bifurcating the case with governance issue to be decided in Nevada, and monetary claims decided in Hawaii, issued January 24, 2006

court had retained jurisdiction, namely which of two competing boards was the properly constituted Board of Directors for WBGI, the so-called "governance" issue.  To that end, the Tolman Board arranged the appearance on behalf of the named defendants in the Nevada action those individuals who had relevant testimony thereon, namely Ron Tolman (the Tolman Board chairman), Dan Perkins (Tolman Board member), and plaintiff Wagner (Tolman Board member).

Since the alleged monetary claims, and the facts surrounding the alleged monetary claims, were not being litigated in Nevada, plaintiff-herein Wagner and the other members of the Tolman Board did not arrange for the appearance of persons who would have relevant testimony pertaining to allegations of monetary claims.  Those parties included Linda Wagner, David Adams, Cliff Kamanaka, et al.  Rather, those parties remained in Hawaii and did not appear in Nevada, with the expectation that they would later be called as witnesses in the Hawaii action (which they were) for the alleged monetary claims.

Thus, the only issue that was actually litigated in the *Nevada Decision* case was the issue of which of two competing Boards of Directors of WBGI was properly in governance of the corporation (the Tolman Board or the Francik Board), since by prior agreement between the parties in the Hawaii case both boards agreed that only the governance issue would be litigated in Nevada, while the numerous allegations of monetary claims would be litigated in Hawaii.

All of the testimony and evidence presented by plaintiff-herein Wagner and the other named defendants was related solely to that issue, which was the only issue they were litigating and the only issue over which the Nevada trial court judge had obtained jurisdiction to adjudicate, based upon the prior agreement of the parties to litigate solely that issue.  The parties did not give evidence, other than some tangentially related information, on the issue of alleged monetary claims as was being advanced by the Francik Board against the members of the Tolman Board, including plaintiff herein Wagner, in the Hawaii forum.  Those claims were to be presented in the Hawaii case (*Second Hawaii Decision* case). The Tolman Board members, of course, did not call their witnesses on the monetary claim issues, as their witnesses on those issues remained in Hawaii. Instead, the only witnesses they called presented testimony pertaining to the governance issue.

III

## IMPACT OF *NEVADA DECISION*

As a consequence of litigating in Nevada the sole issue of governance of WBGI, the only issue arising from the *Nevada Decision* that would be available to defendants herein for purposes of issue-preclusion would be the determination that they were found to be the proper Board of Directors of WBGI.

Plaintiff Wagner is precluded from asserting that the Tolman Board is the proper governing board of WBGI, even if the trial court concluded erroneously on that issue, leaving the Francik Board as the governing board of WBGI to devastate the botanical garden, as discussed *infra*.   Issues pertaining to alleged monetary claims including the issue of plaintiff's quality or recordkeeping or alleged misappropriations of money, since they were not litigated in Nevada, cannot serve for the purpose of issue preclusion, even if tangential "findings of fact" thereon were entered pertaining to alleged monetary claims.

It is hornbook law that *issue preclusion*, if it is to be used for its preclusive effect in subsequent litigation, must be on an issue that was actually litigated, and not on some tangential issue that was not necessary to the action.  This is well detailed in numerous cases.  In *Faulkner v. Caledonia*[3] and numerous other cases, the courts have laid out a four-pronged requirement in order for issue preclusion to be operative.  They are:

1. The issue in question must have been actually litigated in the case;
2. The issue in question must have been necessarily litigated, meaning that its determination was necessary to the case;

---

[3] *Faulkner v. Caledonia County Fair Ass'n*, 869 A. 2d 103 (vt. **2004**); see also *Richards v. Smith*, 9 Misc. 3d 670, 802 N.Y.S.2d 850 (Sup **2005**); *People v. Ochoa*, 191 Cal. App. 4th 664, 2011 WL 9814 (2d Dist. **2011**); *In re FedEx Ground Package System, Inc. Employment Practices Litigation*, 712 F. Supp. 2d 776 (N.D. Ind. **2010**); *American Jurisprudence 2d*, Judgments, section 493.

3. The issue in question was actually litigated and determined in the original action; and

4. The issue in question was actually litigated, squarely addressed, and specifically decided.

For reasons known only to the trial court judge, after the parties in the Nevada case litigated the facts pertaining to the governance issue, the trial court judge not only made a determination on that issue, which he had jurisdiction to do, he overstepped his jurisdiction and, without any litigation thereon, made "findings of fact" pertaining to the issues of monetary claims and issued monetary judgments.   A trial court only has the jurisdiction that is conferred upon it by the parties before it.  The parties before the Nevada court had already agreed to acceptance of the Hawaii court decision that bifurcated the two identical claims, leaving the monetary claims for decision in Hawaii, and the sole governance issue for decision in Nevada.  Accordingly, the parties had agreed to limit the Nevada trial court's jurisdiction to solely the governance issue.

Even if the trial court believed that it had jurisdiction to enter "findings of fact" pertaining to monetary claims, or even if it believed it had jurisdiction to enter "findings of fact" pertaining to the war in Iraq that was then ongoing, it had no such jurisdiction, as such jurisdiction was not conferred on him.   The only

jurisdiction it had was to determine which of two competing Boards of Directors was properly in governance of WBGI, because that was the only jurisdiction conferred upon him by the parties, with the parties explicitly reserving the jurisdiction to determine monetary claims for the Hawaii case.

The parties only gave limited testimony on facts pertaining to allegations of monetary claims, as those monetary claims were not at issue, and only in areas that might have overlapped with the trial court judge's ability to ascertain the governance issue.  The majority of the facts pertaining to all other issues, other than governance, were not introduced, because the witnesses were not present but remained in Hawaii, and they were not litigated.  Accordingly, the trial court judge did not have an appropriate factual presentation upon which to address issues pertaining to the alleged monetary claims.  In particular, as noted in the accompanying affidavit, the witnesses who could have provided relevant facts pertaining to the issues of record keeping or alleged misappropriations of monies by plaintiff simply were not present in Nevada. They were not present because those issues were not to be litigated in Nevada, and in fact were not litigated in Nevada.  The trial court judge simply overstepped his jurisdiction in relaying his "findings of fact" about issues of which he had had only limited presentation of information.

The four-prong test that is set out by numerous court decisions has been set out for that very reason.  Issue preclusion relates only to issues that were actually litigated, were necessarily litigated, were litigated and determined, and were squarely addressed and specifically decided.

The issue of whether or not plaintiff herein kept good records was not an issue before the Nevada court.  It was neither litigated, nor determined, nor squarely addressed.  Rather, while the trial court submitted its "findings of fact" pertaining to some of that, those "findings of fact" were not based upon litigation of that issue.  The witnesses who were prepared to give testimony on that issue remained in Hawaii, where they were prepared to give their testimony on that false monetary-claims issue before the Hawaii court, as plaintiff-herein's record-keeping was directly related to the false monetary claims of alleged misappropriations that were to be litigated in Hawaii.  Those witnesses included Cliff Kamanka, who had testimony pertaining to the IRS arrangements that plaintiff-herein had made with him, Linda Wagner, who served as WBGI's corporate Secretary and Treasurer, and David Adams, who served as WBGI's general office manager.  Rather, the Nevada judge's "findings of fact" was based on limited testimony that was only tangential to issues of record-keeping and alleged misappropriations, and testimony that was not necessary to the determination of the sole issue before him, i.e. whether or not Mr. Tolman and

his board (including plaintiff-herein Wagner) was the actual WBGI Board of Directors, or whether the Francik Board was the governing board.

Likewise, the issue of whether or not plaintiff-herein Wagner 'misappropriated' (i.e. badly appropriated') WBGI monies during his tenure as WBGI President was not an issue before the Nevada court. It too was neither litigated, nor determined, nor squarely addressed. Rather, while the trial court submitted its "findings of fact" pertaining to some of that, it too was not based upon litigation of that issue. Again, the witnesses that had relevant testimony of the false monetary claims of 'misappropriations' of WBGI monies remained in Hawaii, where they were prepared to give testimony on those issues in the Hawaii case. Those primary witnesses included both Linda Wagner, the WBGI Treasurer and Secretary during those relevant times, and David Adams, the WBGI office manager during the relevant periods of time. Since neither of those witnesses was required for the determination of the governance issue that was before the Nevada court, they did not fly to Nevada to give testimony about matters of which they had little or no direct knowledge, namely the 'governance' issue. Rather, the witnesses called in the governance-issue Nevada case by plaintiff-herein on the governance issue included Ron Tolman of Idaho, chairman of the Tolman board, Dan Perkins of Utah, a board member of the Tolman board, and plaintiff-herein Wagner of Hawaii, also a Tolman Board

12

member.  It is to be particularly noted that neither Mr. Tolman nor Mr. Perkins were from Hawaii, and did not have direct relevant testimony on facts that arose in Hawaii pertaining to the false allegations of alleged misappropriations or the false allegation of alleged poor record-keeping during the past when plaintiff Wagner was WBGI President.

Clearly, the doctrine of issue-preclusion as set forth in *Clark-Cowlitz v. FERC*[4] serves well to insure that the principle that one who has actually litigated an issue should not be allowed to re-litigate it.  But at the same time, it cannot and should not be used as a bar to preclude litigation of facts that were only tangentially addressed in a prior proceeding.  This is particularly so when the facts pertain to an issue that is scheduled for litigation in another forum, and where witnesses are scheduled to appear in another forum, but reasonably and logically not in the forum which is relied upon for 'issue-preclusion' seeking the preclusive effect of a 'findings of fact' that is only tangential to the issue at hand, and which facts those witnesses in the other forum could give relevant testimony on.

///

---

[4] *Clark-Cowlitz Joint Operating Agency v. F.E.R.C.,* 826 F.2d 1074 (D.C. Cir. **1987**); see also *Riemers v. Peters-Riemers*, **2004** N.D. 153, 684 N.W.2d 619 (N.D. **2004**); *Bremer v. Weeks*, 104 Haw. 43, 85 P.3d 150 (**2004**); *American Jurisprudence 2d*, Judgments, section 465

This is perhaps more fully elucidated in *People v. Moore*[5] in which the court found in favor of a party against whom the earlier decision that was asserted for purposes of issue-preclusion did not have a <u>full</u> and <u>fair opportunity</u> to litigate the issue in the earlier case.   That is exactly the situation here. Plaintiff Wagner did not have a full or fair opportunity in Nevada to litigate issues pertaining to his record-keeping, or to the falsely alleged misappropriations, <u>because they were not issues in the Nevada proceeding</u>, which was strictly limited to the issue of governance of WBGI, deciding which of two Boards was properly constituted in accordance with the WBGI voting and Nevada incorporation laws.  His witnesses on the issues of record-keeping and falsely alleged misappropriations were in Hawaii, not Nevada, waiting for those issues to come to trial in Hawaii on the monetary claims case.

Further, courts are obligated to resolve all doubt in favor of permitting parties to have their day in court on the merits of a controversy.[6]  Accordingly, if there is <u>any doubt</u> as to whether plaintiff Wagner had a full and fair hearing on the issues of alleged misappropriations and alleged poor record-keeping in the Nevada forum, this Court is obligated to deny the claim of issue preclusion

_____

[5] *People v. Moore*, 138 Ill.2d 162, 149 Ill. Dec. 278, 561 N.E.2d 648 (**1990**)

[6] *Brigham Young University v. Tremco Consultatnts, Inc.*, 2005 UT 19, 110 P.3d 678, 197 Ed. Law. Rep. 835 (Utah, **2005**); see also *Gudmundson v. Del Ozone*, 2010 UT 33, 232 P.3d 1059 (Utah **2010**)

arising from the Nevada forum.  In fact, without a doubt, he did not have a full and fair hearing in the Nevada forum on those issues, as his witnesses on those issues were in Hawaii awaiting the opportunity to give their testimony in the Hawaii forum on those issues as they pertained to the alleged monetary claims.

IV

## SECOND HAWAII DECISION

Following determination that the Francik Board would be controlling WBGI, not the Tolman Board, by the *Nevada Decision*, the Hawaii case then proceeded slowly to trial in Hawaii in April 2008, resulting in the *Second Hawaii Decision*.

However, in January 2008 the *First Hawaiian Decision* was issued (and now reversed by appellate decision in 2012) by Judge Hara.  Seizing upon this January 2008 now-reversed 'decision' that WBGI did not owe plaintiff-herein Wagner any money for the work he did in building the botanical garden, defendant Francik secretly flew to Hawaii from his home in California a few days later in February 2008 and appeared before a Hawaii grand jury and fraudulently claimed that Linda Wagner was not a WBGI corporate officer when she signed a Promissory Note (signed January 1, 2004), and therefore had engaged in two felonies, identity theft and attempted theft (for attempting to

15

obtain monies owed to plaintiff-herein Wagner for the work he had done in building the botanical garden).

Based solely upon defendant Francik's fraudulent and perjured testimony the grand jury issued a secret indictment of both Linda Wagner and plaintiff-herein Walter Wagner. Contrary to defendant Francik's lies to the grand jury that Linda Wagner was not a WBGI Officer on January 1, 2004, the Nevada Department of Corporation records show Linda Wagner and Walter Wagner as the incorporators of WBGI in Nevada in 2001, and that they were WBGI officers continuously since incorporation through to at least September 2, 2004.

The first Nevada-recorded document (and there are no other documents, Hawaii, Nevada, or otherwise, showing contrarily) to show a change in officers was filed in February 2004 and it showed Linda Wagner being replaced by Mr. Dan Perkins as Treasurer, while she remained as the WBGI Secretary. The next document filed to show a change was filed by defendant Emerson in March 2004 in which she replaced the existing Resident Agent[7] with herself, and in which plaintiff-herein Wagner, as President of WBGI, signed her appointment as WBGI's Resident Agent (but not as an officer), and she signed acknowledgment

_____

[7] In Nevada, the Resident Agent is the party authorized to receive service of process on behalf of a corporation, and every Nevada-filed corporation is required to publicly list one. One of the requirements is residency in the state of Nevada (hence the term "resident agent").

of acceptance.  The next document to show a change was filed by defendant Emerson in June 2004 in which she filed to replace Mr. Perkins as the Treasurer, leaving Linda Wagner as the Secretary and plaintiff-herein Walter Wagner as the President.  The next document to show a change was filed in July 2004 by plaintiff-herein Wagner, in which the Treasurer position again went to Linda Wagner.   On September 2, 2004 shortly after a vote by the board (which vote included defendants Francik and Emerson), Ms. Emerson filed the first document that removed Linda Wagner as an officer, replacing Linda Wagner with herself as both Secretary and Treasurer.

Defendant Francik was well aware of that scenario of officer changes, because 1) he voted at that board meeting on September 2, 2004 to replace Linda Wagner with Annette Emerson as a WBGI officer; 2) he had been hand-delivered copies of the above Nevada documents by WBGI's attorney in May 2004; and 3) he had extensively communicated in July 2004 with WBGI's attorney as to the method required for replacing Linda Wagner as a WBGI officer.  Nevertheless, when he secretly appeared before the grand jury in February 2008, he falsely and fraudulently proclaimed that Linda Wagner had been replaced by defendant Emerson as a WBGI officer in August 2003, and therefore was not eligible to sign a WBGI promissory note on January 1, 2004, and since he also fraudulently claimed that no monies were owed to plaintiff-

17

herein Wagner (as per the recent *First Hawaii Decision*, since reversed) he was able to convince the grand jury by his lies that Linda Wagner and plaintiff-herein Walter Wagner had engaged in identity theft and attempted-theft by their signing of that promissory note and filing suit utilizing it as a document in support of his lawsuit (which lawsuit rendered the *First Hawaii Decision*), fraudulently claiming they were not WBGI officers at the time of signing that last promissory note. This rehearsal of the facts is obtained from the accompanying sworn affidavit where they are presented in greater detail.

The long and short of all of this is that the WBGI corporate documents clearly showed that Linda Wagner was authorized to sign that promissory note, and that plaintiff-Wagner is owed money by WBGI for the work he performed, even if he is required to show proof of the value of his work rather than relying on the promissory notes for their stated-value. Accordingly, the grand jury indictment was a complete sham and fraud on the grand jury system by defendant Francik because of his lying, which caused subsequent problems as detailed below.

Also in February 2008, shortly after the grand jury (at the urging of defendant Francik and believing his lies to be true) falsely indicted Linda Wagner and plaintiff-herein Walter Wagner, Judge Nakamura issued bench warrants for the Wagners' arrest based upon that fraudulently obtained

18

indictment.  Judge Nakamura did not disclose to either of the Wagners the existence of his bench warrants, instead likewise keeping the warrants secret. Judge Nakamura was also presiding over the civil suit that had been pending before his court since 2005 that ultimately resulted in the *Second Hawaii Decision* in April 2008.

Approximately ten days before the "trial" that resulted in the *Second Hawaii Decision*, Judge Nakamura conducted a pre-trial conference, the last in a series of hearings in that case over the course of 2½ years since it had been filed in 2005.  At that last pre-trial hearing, Judge Nakamura was holding the bench-warrants for the Wagners' arrest that he'd signed nearly two months earlier, but he still did not disclose their existence to the Wagners, who attended that hearing along with defendant Francik's attorney purportedly on behalf of WBGI.  Instead, Judge Nakamura directed them to appear at the then forthcoming "trial" that was to commence in ten days.

During that two month period of time (February 2008 to April 2008) defendant Francik repeated his lies he had presented to the grand jury to numerous others, including his attorney, the other named defendants herein, and others for the express purpose of placing plaintiff-herein Wagner in a false light, and to maintain his fraudulent criminal prosecution of plaintiff-herein Wagner, which subsequently terminated in late 2010 with the dismissal of the

criminal indictment defendant Francik had fraudulently obtained. He has continued such defamation continuously through at least to the filing of the instant complaint.

At the "trial" that resulted in the *Second Hawaii Decision*, as noted in the accompanying affidavit, Linda Wagner was falsely arrested and removed from the courtroom based upon that warrant Judge Nakamura had been holding for two months, precluding her from examining witnesses, cross-examining witnesses, presenting herself as a witness, and allowing plaintiff-herein Wagner to examine her as a witness, and otherwise precluding her from having an actual trial. Likewise, because plaintiff-herein Wagner had no other recourse other than to go bail her out of false imprisonment (as noted in the accompanying affidavit and in other affidavits filed herein, Judge Nakamura was not available for oral motions for a continuance), he too was deprived of his right to a trial, in that his chief witness was no longer available, nor was he available to cross-examine witnesses or present his own testimony.

Accordingly, no actual facts were presented at the "trial", and instead the lies, falsehoods and misrepresentations of defendant Francik, defendant Emerson and others were presented to Judge Nakamura for his decision-making. While Mr. David Adams, who was a witness for the Wagners, did appear, since the Wagners were not present to examine him, he was not

allowed to present any evidence showing the frauds, lies and misrepresentations that were presented at that "trial", in that he was not free to simply give a narrative discourse and was constrained to answer only questions asked by defendant Francik's attorney, and apparently gave only very limited testimony.

Thus, there was in actuality no litigation of facts. Rather, there was simply a one-sided presentation of falsehoods, lies and frauds disguised as 'fact'.

Those circumstances can in no way be described as being an actual litigation of facts, or facts that were in actuality determined in the original action, which was not a trial in any sense of the term in American jurisprudence, but rather a mock "trial" that had the form of a trial, but not the substance, which requires an actual litigation of facts.

As clearly shown in the accompanying affidavit and other affidavits on file herein, plaintiff Wagner was deprived of an actual trial through no fault of his own. The frauds of defendant Francik were being worked behind plaintiff Wagner's back, ultimately resulting in a scam on the judicial system and a fraudulent "trial". Defendant Francik's continuing efforts of defamation during that period of time biased Judge Nakamura so extensively that he concluded the Wagners were guilty of the charges lodged against them, and that he could

accordingly deprive the Wagners of their civil rights to a trial as a consequence. The fact that the Wagners were wholly innocent, and that defendant Francik completely bamboozled Judge Nakamura never dawned on him at that time.

Therefore, <u>none</u> of the requirements of issue preclusion have been met in the *Second Hawaii Decision*.   Indeed, the damages flowing from defendant Francik's lies to the grand jury, which he then followed with lies to his attorney, the judge, defendant Emerson to induce her to lie, his other board members and others, is the heart of the damages of the instant complaint.  As a result of defendant Francik's lies to numerous persons, and not just the grand jury, resulting in a sham "trial", a wrongful monetary judgment was entered against plaintiff Wagner[8] herein, and part of the instant complaint is to recover that amount, as well as the costs associated with defending against defendant Francik's frauds.

While it might be tempting to accept the *Second Hawaii Decision* as a valid decision with full litigation on the issues at hand, nothing could be further from the truth.   At the very heart of that case is the false defamation by

---

[8] Linda Wagner was forced to file a petition for bankruptcy protection to have that wrongful judgment dismissed as against her, in that defendants Francik *et al.* sought to garnish her wages at Nebo School District where she teaches mathematics, using that fraudulently obtained 'judgment', and she could not wait for the slow machinery of the judicial system to rectify that wrong.

defendant Francik which is at the very heart of this case.  His acts of defamation have never been litigated, and his acts of defamation likewise precluded litigation of the other alleged issues, namely the falsely claimed issue of alleged 'misappropriations' and the falsely claimed issue of alleged 'poor record-keeping'.

Accordingly, the claim of 'issue preclusion' set forth by magistrate Warner is simply not applicable to the instant case.

V

## WASTE, FRAUD AND MISMANAGEMENT

Magistrate judge Paul Warner erroneously concludes that plaintiff Wagner lacks standing to bring a waste, fraud and mismanagement cause of action as against the defendants.  He does so based upon the 'Nevada Decision' issuance of monetary damages, the now-reversed First Hawaii Decision denying plaintiff Wagner his monetary damages as against WBGI, and the claims of defendants that they sold off plaintiff Wagner's shares in order to 'satisfy' the monetary award of the Nevada Decision.  This is, of course, all a fraud on the part of defendants as will be detailed below.  But first this Court should be aware of the extensive devastation to WBGI caused by the defendants, to understand the effects of defendants frauds on the value of

WBGI.  The fact that other shareholders are now banding together to bring suit against these same defendants for the same cause of action is irrelevant to the issues at hand.

As detailed in the affidavits and complaint filed herein, in order to fund the litigations referenced herein, the defendants used the shareholder monies, in contravention to the agreement signed by Ron Tolman and defendant Francik that shareholder monies would not be used whatsoever for litigation of the claims then being advanced by defendant Francik et al.  While WBGI was left with a large sum of cash of approximately $400,000 by plaintiff herein in 2004, much of which was raised in 2004, when defendant Francik initially obtained control of WBGI finances, in order to preserve that sum and use it for legitimate WBGI purposes, that agreement was signed by Ron Tolman and defendant Francik in April 2005.  Nevertheless, after defendant Francik et al. initiated suit a few weeks later in June 2005, they quickly depleted that sum to pay their attorneys in both Hawaii and Nevada.  In order to maintain those suits, they thus decided to liquidate the land assets of WBGI plaintiff Wagner had acquired for WBGI.  This resulted in the loss of approximately 270 acres of WBGI lands that WBGI had been controlling since 1995 (when the land deals were originally negotiated by plaintiff Wagner with the prior owner, Mauna Kea Agribusiness, Inc.), and a relatively small sum of cash of roughly $200,000 paid to WBGI.  The

land was sold at 'fire-sale' prices, without benefit of realtors, and to privately selected 'friends' of defendant Francik.

Because those monies still were not enough, WBGI also extensively curtailed its landscaping practices, leaving large portions of the botanical gardens that were under development, but not yet publically accessible, to revert back to a primitive state of tall weeds and weed-trees choking out the garden plants.  They further uprooted fully mature trees that were planted by WBGI between 1995-2004 in other areas which were then sold off at a small fraction of their value to landscape contractors for use elsewhere.   The purchaser of one of the major land parcels, the 90-acre piece with the Umauma Falls, received a windfall of approximately $1,000,000 worth of improvements to the land, including roadway and an overlook, which WBGI had paid for to develop, but for which it received no compensation, as that parcel was sold to that party for the original purchase price without the improvements.   That purchaser immediately developed it into a competing botanical garden and zip-line attraction (www.umaumaexperience.com) that is a huge financial success. The purchaser of another 150-acre parcel, though that friend of defendant Francik tendered a small sum to defendant Francik/WBGI, the total sale price was less than the purchase price, and defendant Francik's friend also received

a windfall of approximately $1,000,000 worth of improvements to the property by WBGI between 1995-2004 for which WBGI received no compensation.

The remaining 26-acre parcel still controlled by WBGI now has a barely break-even operation on it, being a 'kindergarten-level' zip-line and 'garden' tour. The WBGI shareholders have no real prospect of recovering their investment under the current management. Moreover, the current management has placed personal liens on the remaining 26-acre parcel in their own name for approximately $500,000, which was the original purchase price.

In 2004, WBGI was selling shares for $520/share, which continued under the Francik board until early 2005. That placed a valuation on the 19,000 issued shares of approximately $10,000,000 and plaintiff Wagner's 1/6th interest at about $1,700,000. Thereafter in 2007 the Francik board sold treasury shares to its existing shareholders at about half that value. Now, it is estimated that they are worth possibly $25/share, if the remaining asset has a net worth of $500,000.00

With that as a backdrop, it is apparent that the Francik board litigations have been devastating, both to the botanical garden, as well as to the shareholders including plaintiff-herein Wagner.

///

It should also be mentioned that defendant Francik had only a 200 share interest in WBGI, or about 1/100th interest in the project, and the other named defendants combined had far less than defendant Francik.

While it is true that defendants claim that they sold off plaintiff Wagner's 1/6th interest in WBGI, that 'sale' at an "auction" was fraudulent for several reasons, and plaintiff Wagner still retains his ownership interest in WBGI.

First, they fraudulently claimed to the Nevada court that WBGI did not owe plaintiff Wagner any money for the work he did in building the botanical garden. At that time he had filed a $500,000+ claim to recover those monies he had loaned (in not collecting his salary), but defendants herein fraudulently claimed WBGI owed no money for those services. That has since been proven to be a fraudulent claim, in that the Hawaii appellate court recently sent for decision his claim, to be determined based upon actual work (*quantum meruit*), and not the stated value of the promissory notes. The actual work, at standard journeyman wages, far exceeds the stated value of the promissory notes (which also exceed the erroneous *Nevada Decision* monetary judgment), thus serving as a complete offset to the alleged Nevada judgment, precluding the sale of plaintiff's shares to 'satisfy' an alleged deficit, thus allowing the instant claim for fraud, waste and mismanagement.

but generated over the course of several years, with no contrary affidavits or testimony.   It is an active, on-going case with witnesses yet to testify, and cannot serve for purposes of issue preclusion.

The second filed Hawaii case, from which the Nevada case was effectively split, did not result in an actual trial, but rather a sham "trial" due to the fraud of defendant Francik herein.   Defendant Francik is skilled in the 'art' of presenting lies within the judicial system guised as truth.   He was fired from our Los Angeles Police Department for such conduct, and likewise engaged himself in such conduct in Hawaii, flying over there shortly after issuance of the *First Hawaii Decision* to present his lies to a grand jury for the express purpose of hindering the Wagners in their defense of the fraudulent allegations made against them in Hawaii.   He succeeded all too well, resulting in a sham "trial" that resulted in the *Second Hawaii Decision*.   Since the facts were not actually litigated in that sham "trial", the doctrine of issue preclusion is again not applicable, as it only applies to issues that are actually litigated, necessarily litigated, squarely addressed and specifically decided.   Since none of the issues pertaining to the false allegations of plaintiff Wagner allegedly 'misappropriating' monies, or allegedly keeping 'poor-records' were actually litigated in either the Hawaii or Nevada forums, those issues cannot serve for issue preclusion.

///

31

Rather, not only are defendants WBGI and Francik liable for his repeated lies regarding the Wagners' capacity as WBGI officers on January 1, 2004, the defendants are also liable for the other acts of defamation they have engaged in since, including falsely claiming that plaintiff Wagner engaged in an outright theft of WBGI monies from a dedicated WBGI bank-account over which he in fact never had control (which false allegation is far worse in harm than a mere civil allegation of 'misappropriation' of funds, which false allegation was never actually litigated).

Finally, plaintiff Wagner has standing to assert a claim for the fraud, waste and mismanagement of the company founded by the plaintiff.   Their wanton behavior cannot be excused or justified, has caused extensive devastation and damage, and there is no valid basis for them to have purportedly 'sold off' his ownership interest in WBGI, when he in fact had extensive ownership interest, and in fact is still owed a substantial sum for his work in developing the project, as per the now-reversed *First Hawaii Decision*.

DATED:    March 15, 2012

_____

Walter L. Wagner

32