WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT....

2012 APR 10  P 3: 50

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | | |
|---|---|---|
| WALTER L. WAGNER, | ) | Case:   2:11cv00784 |
| | ) | |
| Plaintiff | ) | **SWORN AFFIDAVIT OF** |
| | ) | **WALTER L. WAGNER IN** |
| vs. | ) | **SUPPORT OF OPPOSITION** |
| | ) | **TO REQUEST FOR STAY, ETC.** |
| PRESTON MICHIE, KENNETH | ) | |
| FRANCIK, LESLIE COBOS, MARK | ) | |
| ROBINSON, ANNETTE EMERSON | ) | |
| STEVE BRYANT, WORLD BOTANICAL | ) | |
| GARDENS, INC. (WBGI), | ) | **District Judge Clark Waddoups** |
| | ) | |
| Defendants | ) | **Magistrate Judge Paul Warner** |
| | ) | |

## SWORN AFFIDAVIT OF WALTER L. WAGNER
## IN OPPOSITION TO REQUEST FOR STAY, ETC.

I, Walter L. Wagner, affirm, state and declare under penalty of perjury as follows:

I

## NO "FORUM SHOPPING"

Defendants recently filed a document entitled "*Defendant World Botanical Gardens, Inc.'s Memorandum in Support of Motion to Stay*" in which it is falsely alleged[1] that I engaged in "forum shopping" to select Utah as the forum for suit.

Though not a party to this action, Linda Wagner is a key witness in many of these facts, and as my spouse, I live with her and our children.   Linda Wagner has ancestors who arrived in continental North America on the Mayflower, and centuries later some of their descendants arrived in the Salt Lake Valley in 1847.   Her father and mother, both of whom are descendants of those early Utah pioneers, live in Provo, Utah where she was raised and attended public school from K-12, and likewise graduated from BYU (as a

---

[1] Page 8, Item 7 of the document.

mathematics education major) where her father taught as a science professor[2].

Promptly after graduation, she began teaching mathematics in the Jordan School District (JSD) for a decade.  She left her position at JSD circa 1997 to raise our family in their early years, and later began teaching in Hawaii.  She was forced out of teaching in Hawaii due to the criminal activity of defendant Francik, in that she was not allowed to teach in Hawaii with a pending felony charge fraudulently initiated by defendant Francik's criminal lies to a grand jury (detailed below and in the attached *Exhibit "A")*.  However, the State of Utah recognized early on that defendant Francik had lied[3], and allowed her to renew her Utah teaching credential, and she resumed teaching mathematics in Utah in 2008, though in the Nebo District (where I also teach mathematics and science part-time) in Utah County.

Likewise, I had taught in Utah (public grade school and public college) in the early 1990s (1990-1994) when I met Linda Wagner, and we both relocated back to Utah in 2008 following the criminal activity of defendant Francik and the

---

[2] H. Kimball Hansen, Professor *Emeritus* of Physics and Astronomy

[3] She was required to give a satisfactory explanation of the "pending felony".  The utterly bogus nature of the charge was thoroughly detailed to the proper parties.  Likewise, I was required to give a satisfactory explanation in order to obtain a Utah state license.  Those representative state agencies are now also aware of the dismissal of the fraudulent charges defendant Francik lodged against us with his lies.

criminal collusion[4] of at least one Hawaii trial court judge with defendant Francik.

In addition to teaching part-time in the Nebo district, I also have been working for the US Census Bureau out of the Utah 'Vangent' (Sandy) office (on the 2010 Census which was completed and timely submitted to Congress in late 2010, and preparing for the 2020 Census). I have also been working in support of the US CMS[5] utilizing the requisite Utah Department of Insurance license, since 2009. I have also been an active member of the Great Salt Lake Health Physics Society since 1990, attending meetings on a regular basis since, including while living temporarily in Hawaii.

Moreover, all three of our children attend public school in Utah (Nebo District), where they excel[6].

In addition, both of us have church callings in our Payson community.

Consequently, the ONLY forum that would be appropriate for either of us in which to file would be in Utah where we live and work. That is NOT forum shopping. If the defendants now don't like appearing in Utah, perhaps the next

---

[4] Detailed *infra* and in *Exhibit "E"*.

[5] Center for Medicare and Medicaid Services

[6] Our oldest is 9th grade, straight-As; the younger ones are A/B in elementary grades.

time they choose to engage in criminal activity and other unlawful activity they should be more careful not to choose as their victims people who live in Utah.

II

## DEFENDANT FRANCIK'S PERJURED GRAND JURY TESTIMONY

As I've mentioned a few times, defendant Francik perjured himself before a Hilo Grand Jury in 2008. I am attaching herewith as *Exhibit "A"* a true copy of the transcript of that testimony (hereinafter "Transcript").

Defendant Francik reported to me in May 2004 that he was removed ("fired") from the Los Angeles Police Department (LAPD) in 1995 and prosecuted, as I mentioned in my prior affidavit, which has gone unchallenged. At that time the LAPD was undergoing an extensive investigation due to the Rampart Corruption[7] scandal, and defendant Francik was prosecuted, but not convicted, and terminated with the LAPD.

---

[7] The City of Los Angeles entered into a Consent Decree with the US Department of Justice (DOJ) in 2000 under threat of suit by the DOJ. The Consent Decree provided for Federal oversight, which was not lifted until 2009. As part of the pattern of corruption and its investigation, defendant Francik was one of the LAPD officers charged and prosecuted. This Court is provided this as a background in reviewing his *modus operandi* in lying under oath, as shown in the accompanying Transcript (*Exhibit "A"*). See, for example: http://articles.cnn.com/2000-11-04/justice/lapd.order_1_consent-decree-lapd-reforms?_s=PM:LAW ; and also: http://latimesblogs.latimes.com/lanow/2009/07/judge-frees-lapd-from-consent-decree.html

It was only about four years thereafter, circa 1999, that defendant Francik initially acquired share ownership interest in WBGI based on false pretenses previously detailed by me. However, it was another nearly full decade before defendant Francik provided perjured testimony to the Hilo Grand Jury in 2008.

This Court's attention is directed initially to page 8[8] of the Transcript. At the bottom of the page defendant Francik acknowledges I served as the WBGI President in 2004, and he references that WBGI paid its filing fees "in early 2004" and that I was listed as WBGI's President. Attached herewith as *Exhibit "B"* is a true copy of that "*early '04*" filing, which took place in February 2004 with the Nevada Secretary of State, and which document was provided to defendant Francik by WBGI's attorney Sherrill Erickson in May 2004 by way of that hand-delivered letter previously provided as an exhibit in my prior affidavit. His testimony also acknowledges his awareness of the requirement of listing corporate officers annually, or at least filing annually a change of officers if they change. It is to be noted that neither defendant Francik nor defendant Emerson ever filed a change-of-officer form in 2003 when defendant Francik purported in

---

[8] The language reads: "*Q: Now, at any time between July, 2004 through September, 2004 did Walter Wagner have the title of president of WBGI? A: Actually, he was still listed on the corporate filing documents with the State of Nevada. So let me try to clarify this a little bit. Every year, as a corporation, you file your list of officers, and you pay your corporation fees to the state. We are a Nevada corporation. So when we renewed our corporate filing and paid our fees, it would have been in early '04. And at that point in time, he was actually listed as president. ...*"

his grand jury testimony that defendant Emerson replaced Linda Wagner as a WBGI corporate officer.

It is also to be noted that this grand jury testimony of defendant Francik contrasts directly with the claim now being advanced to this Court by *Richer and Overholt*[9] that I was replaced as a WBGI corporate officer (President) by Francik in 2003. As mentioned previously, neither Linda Wagner nor I were replaced as corporate officers by way of a legal filing in Nevada until at least September 2, 2004 by way of the filing mailed by defendant Emerson on that date. I was legally obligated to continue to serve as a corporate officer until released, as was Linda Wagner, which we both did.

Not only is defendant Francik correct in that assertion that I was listed as the WBGI President, it also shows his awareness of that document. What defendant Francik does NOT say to the Hilo grand jury is that that document

---

[9] Page 7, last full paragraph, of document entitled "*Defendant World Botanical Gardens, Inc.'s Memorandum in Opposition to Plaintiff's Objection to Report and Recommendation*". They cited the affirmance of the *First Hawaii Decision* which denied all claims save *quantum meruit* as therefore affirming the fraudulent dicta of Judge Hara which read, *inter alia*, that "*Ken Francik and Annette Emerson were appointed as President and Secretary/Treasurer, respectively, in August 2003.*" That was never litigated, and that was in fact dicta inserted by Tom Yeh for Judge Hara's signature. It is patently false as detailed in this affidavit and the relevant Nevada documents showing Linda Wagner and myself as WBGI officers throughout all of 2003. That is instead evidence of the corrupt nature of allowing a *judge pro tempore* to also serve as an attorney on cases for the judge he serves as *a judge pro tempore*, as Judge Hara simply signed the falsehoods prepared for him by Tom Yeh without regard to their validity or absence of litigation or factual evidence.

(*Exhibit "B"*) also lists Linda Wagner as a WBGI corporate officer, NOT defendant Emerson.   In having sworn to tell "*the truth, the whole truth, and nothing but the truth*"[10] he was obligated to disclose that fact.   Rather, he hides that fact and then later in the Transcript lies about Linda Wagner's status.

He subsequently references[11] an election to a board of directors in August 2003.   That needs a little background.   A board of directors was actually initially elected in February 2003, to represent the joint venture partnership that owned the WBGI corporation[12].   Previously I had served as the general managing partner for the partnership.   Both defendant Francik and I were on that board. That initial board (and it is irrelevant whether it is considered the WBGI board, or the WBG-JVP board) failed to conduct meetings or business of any form and did not function as a board, save to agree to hold an election in August 2003 to seek a one-year extension of the board with those board members until 2004.   It was the first elected board.   In the meanwhile, both Linda Wagner and I

---

[10] Page 5, Line 3 of the Transcript

[11] Page 11 of the Transcript, commencing on line 10

[12] The original partnership (World Botanical Gardens Joint Venture Partnership; WBG-JVP) had intended to formalize numerous separate corporations around the globe which would be owned by the joint venture partnership, with the Hawaii corporation (WBGI) being the first one.  Because of defendant Francik's insertion of himself into these matters, the subsequent corporations were not formed under the Joint Venture Partnership umbrella.  The WBGI corporation was incorporated with Linda Wagner and myself as its Board of Directors, which remained in place until September 2004.

continued to serve on a day-to-day basis as the WBGI corporate officers as we'd done since incorporation in Nevada in 2001 when we were initially both the WBGI Board of Directors, as well as its corporate officers.

In August 2003, the WBG partnership (which owned the WBGI corporation) conducted the 'election' in which it voted to continue the existing board for another year, until September 2004. That was the only vote put to the shareholders, and they voted to continue the existence of the membership makeup of that board for another year. At no time did the shareholders seek to vote on corporate officer positions (nor on board officer positions), nor did the board that had had its term of existence extended one year make any votes as to corporate Officers or board officers. Rather, that second board (identical in membership to the first) continued on the same path of 'indifference' as the first board in that it conducted no actual meetings, until it conducted its first true meeting in April 2004 (in Las Vegas), which lasted two days. At that meeting which I attended, that board then selected defendant Francik to serve as the board chairman. Telephone meetings that began circa December 2003 were perfunctory and conducted no actual business, other than to schedule that first actual meeting, a two-day first board meeting in April 2004 in Las Vegas. At no time did that second board ever even suggest that officers other than Linda Wagner and myself should be running the day-to-day affairs of the corporation.

Accordingly, both of us continued to run the day-to-day affairs of the corporation throughout 2003 and halfway into 2004.

But Francik took those facts, twisted them until they were a lie, and falsely stated to the grand jury as follows:

> "*Well, we had an election. Uh, she did not run. Uh, she was not appointed. We had numerous board of director meetings starting, really, in early 2003 by use of the phone. When we met in August of 2003 at a shareholder meeting, the board was introduced. Her name was never on a ballot, was never appointed, was never, uh, uh, introduced to the shareholders as an officer. ... And it was common knowledge by the entire board and the entire group of shareholders that she had absolutely no position with World Botanical Gardens.*"

While this Court might initially believe that perhaps defendant Francik was confused as to the distinction between a board of directors, and the corporate officers who run the day-to-day affairs of a corporation, such was not the case. Moreover, half of the board (myself, Dan Perkins, David Adams) filed sworn affidavits in Hawaii stating they were aware that Linda Wagner continued to serve as a WBGI corporate officer (Mr. Adams worked with Linda Wagner at that time in 2003 and 2004 on a daily basis, while he served as the WBGI officer manager in Pepeekeo). Defendant Francik was aware of those affidavits.

10

I was also present when defendant Francik was hand-delivered that letter from WBGI's attorney, Mrs. Sherrill Erickson, attached previously as an exhibit, which shows that Linda Wagner, Dan Perkins and I were the WBGI corporate officers until the date of the letter, May 2004.  All three of us (Mrs. Erickson, defendant Francik, and myself) discussed the fact that Linda Wagner, Dan Perkins and I were the WBGI corporate officers.  Further a few weeks earlier Linda Wagner and I were instructed by the WBG partnership board to sign a WBGI corporate resolution[13] (to empower the land title company to act) authorizing the finalization of a purchase of land (the rainforest parcel), which we did.  Defendant Francik did not sign that Corporate Resolution, nor did defendant Emerson; but rather Linda Wagner and I signed that corporate resolution in our capacities as WBGI officers circa June 2004.  Yet defendant Francik was aware of the necessity of having such a corporate resolution on file with the land title company.  It simply was not an issue at that time, since everyone acknowledged Linda Wagner and I continued to act in the capacity of

---

[13] A true copy of that Corporate Resolution is attached as *Exhibit "D"*.  The original version that is signed by both of us was filed with Title Guaranty Escrow Services, 450 Kilauea Avenue, Hilo HI in May 2004 for the opening of the Escrow Account for that land parcel acquisition, following several years of leasing of the land.  This is the same parcel of land (aka Rainforest Parcel) that defendant Francik sold to his friend without realtor assistance or public offering in 2008, for a price less than what was paid for it, even though WBGI had through my efforts made approximately $1,000,000 in improvements to that parcel beyond the $1.3 million purchase price.

corporate officers to run the day-to-day affairs of WBGI. This was in large part because Linda Wagner, David Adams (who also served as the WBGI office manager), and I were the only ones living in Hawaii; i.e. the other board members (Francik, Emerson, Miller, Perkins) were all living outside of Hawaii.

While it is true that Linda Wagner began giving private tutoring to defendant Emerson (she flew to Hawaii for two weeks of training, etc.) in early 2004 to train her on the WBGI corporate financial computer programs, defendant Emerson herself was well aware she was not yet a corporate officer.

This fact of her awareness of her status is clearly evidenced in defendant Emerson's first filing with the State of Nevada in March 2004 in which she sought a non-officer position, namely as the *Resident Agent* (for service of process) for the WBGI corporation (even though she was not a Nevada resident, of which fact I was then unaware). Because of the extensive tutoring at the WBGI office that Linda Wagner had provided to defendant Emerson in early 2004, defendant Emerson apparently felt that she had become the WBGI corporate treasurer, in that circa June 2004 she signed herself in to that officer position. A true copy of that Nevada Secretary of State corporate filing is attached herewith as *Exhibit "C"*. It is to be noted that she boot-strapped herself in to that position, in that no existing WBGI officer signed her in; rather she signed herself in which is improper procedure. More importantly perhaps is

12

the fact that she did not make any changes to the President or Secretary positions that were then held by myself and Linda Wagner, respectively. Her only change was to replace Dan Perkins with herself as the Treasurer. Dan Perkins had at that time requested that he be removed as the Treasurer.

It was not until September 2, 2004 that defendant Emerson submitted a Nevada Secretary of State corporate form (previously filed as an exhibit herein) changing the corporate officer positions then held by Linda Wagner and myself. That was as a result of an election that that board conducted by telephone on September 2, 2004 (absent myself, as I was not informed of it, though I saw the minutes after-the-fact) replacing Linda Wagner with defendant Emerson, and replacing myself with defendant Francik. Of course, the fact of an actual vote to change the corporate officers and defendant Emerson's mailing to Nevada of a change of officer form on that same date, which took place on September 2, 2004, was not mentioned by defendant Francik to the Grand Jury.

IN SUMMARY, defendant Francik was aware that Linda Wagner was serving as WBGI's corporate officer in 2004 because he'd seen the February 2004 Nevada Secretary of State filings showing as such during our office visit in May 2004 with Sherrill Erickson; because he had discussed that fact with WBGI's attorney and myself at her office in May 2004; because he had never conducted any vote or other effort to have her removed from the long-standing

13

corporate position she'd held since 1995; because he knew he had never filed any documents with Nevada to have either himself or Annette Emerson listed as officers prior to June 2004[14]; because he actually voted in September 2004 to have Linda Wagner removed as a corporate officer and replaced with Annette Emerson (and myself replaced with him); because he directed defendant Emerson to file a Change of Officer form to reflect that September 2, 2004 vote (which she did); and because he relied on Linda Wagner's Corporate Resolution signature (*Exhibit "D"*) in acquiring WBGI land title in 2004.  None of those facts were disclosed to the Hilo grand jury, and instead he lied, falsely claimed the whole board was aware that she'd been replaced by defendant Emerson in 2003, and that I was aware of that 'fact'.  This testimony was a complete fraud and felony perjury.

It was apparently not until 2005 that his attorney needed to 'find' that Linda Wagner was not a corporate officer in 2004 (in order to attempt to prevail in the suit I had filed, *Wagner v. WBGI*, now recently remanded to the trial court level) that they began concocting a fictionalized version of events, apparently not realizing I maintained copies of those relevant corporate documents

---

[14] It is not yet clear whether Annette Emerson filed with Nevada to replace Dan Perkins with herself in that June 2004 filing on her own, or whether she was prompted to do so by defendant Francik.

including the letter hand-delivered to defendant Francik disclosing Linda Wagner, Dan Perkins and myself as the WBGI corporate officers in May 2004.

Not only was Linda Wagner victimized by defendant Francik, his false claims that I was aware in 2003 that defendant Emerson was my Secretary, not Linda Wagner, is a complete lie. We'd discussed those facts in May 2004 in Hilo at Sherrill Erickson's office while discussing the hand-delivered letter our WBGI attorney, Sherrill Erickson, had handed to both of us. That letter confirmed the identities of WBGI's officers and confirmed that the corporation was in 'Good Standing' with the State of Nevada, facts defendant Francik had wanted confirmed by WBGI's legal counsel, which was why that letter was prepared by Mrs. Erickson in the first instance.

Nowhere in this perjured testimony before the Hilo grand jury does defendant Francik disclose any of the truth, or any of the documents he'd seen, or the vote he conducted in September 2004 to replace Linda Wagner and myself as corporate officers, or the request that the board had made to us in May 2004 to prepare and file with Title Guaranty a corporate resolution signed by both of us as WBGI officers, or of the communications he'd had with Sherrill Erickson in June, July and August 2004 on how to have us removed as corporate officers. He swore to tell the whole truth, and he told none of it; and instead presented a complete lie to the grand jury for the express purpose of

15

injuring Linda Wagner and myself.  He has repeated those lies extensively ever since, as detailed somewhat in the First Amended Complaint.

III

## COLLUSION OF JUDGE NAKAMURA WITH DEFENDANT FRANCIK

As mentioned in my prior affidavit, Judge Nakamura arrested Linda Wagner within about ½ hour of her arrival in his courtroom for the "trial" that was then scheduled and that resulted in the bogus "*Second Hawaii Decision*". At that time, defendant Francik was on the witness stand as I was standing at the podium while conducting my initial cross-examination.  Linda Wagner was seated, waiting to begin her initial cross-examination of defendant Francik, when she was arrested.

Because of the egregious nature of that criminal activity involving defendant Francik, I filed a motion for a new trial.  That motion was denied. Attached herewith as *Exhibit "E"* is the transcript of the oral hearing conducted to supplement the written briefing.  In that transcript, Judge Nakamura briefly detailed his role in the fraudulent arrest of Linda Wagner as follows[15]:

///

---

[15] Beginning in the middle of the transcript on Page 7, continuing to the bottom of Page 8

"*Okay. So the Court will deny the motion.*

*Um, with respect to the contention that, um, Mr. Francik participated in the criminal case which resulted in Mrs. Wagner being indicted and thereafter pursuant to the indictment arrested, Court doesn't see any connection with respect to, um, Mr. Francik testifying as a witness in the grand jury proceeding and this civil action.*

*Moreover, um, it is pretty clear that Mrs. Wagner knew that she had been indicted, that she would be subject to arrest, and she, frankly, could have taken care of that matter so that she wouldn't be arrested at an inconvenient time such as during the trial proceeding.*

*Um, for whatever it's worth, the Court, um, did not participate in the timing in regard to Mrs. Wagner's arrest. Um, for what – whatever reason, and I don't know why, the deputy sheriffs knew that Mrs. Wagner was present in court, and they approached me, through my law clerk, asking permission to arrest her, um, I guess this is a courtesy to the court, rather than coming into court while – while the trial is proceeding and just seizing her. Um, when they were at the door, I assumed the reason why is they were going to – wanted – they were going to arrest Mrs. Wagner and the Court took a recess so we wouldn't have an unseemly situation where the deputy sheriffs arrest Mrs. Wagner during ongoing court proceedings. And that's simply what happened.*

*As I said, Mrs. Wagner could have taken care of that issue by turning herself in earlier before trial, posting bail, and being available for trial. She declined to do that; that was her choice.*

*Mr. Yeh, please submit a form of the order.*"


What Judge Nakamura did not say, and as I mentioned in my previous affidavit, is that Linda Wagner and I had both been before him about ten days prior to the "trial", while he had that warrant with him already issued weeks earlier, and he did not arrest Linda Wagner or myself at that time. Neither Linda

Wagner nor I were aware he was holding a warrant for our arrest until days after that last pre-trial hearing. We discussed that fact that he'd had warrants for our arrest but had not exercised them when we stood before him, and concluded that since he had not arrested us at a pre-trial hearing when we stood before him, he would certainly not arrest us at a trial and deprive us of our trial rights.

Moreover, we also had filed a motion for recall of that warrant[16] prior to the trial (on April 24, a full week prior thereto) which his clerk assured me he'd seen, explaining the criminal fraud of defendant Francik in his testimony before the grand jury, which recall and dismissal of the fraudulent charge was warranted under the circumstances. We did not have the financial resources to post a high bail, and since the charges were utterly bogus, we believed seeking a recall of the warrant was a preferable route. The subsequent failure to prosecute and dismissal of the fraudulently obtained charge further evidences the meritorious nature of the motion for recall of the warrant and to dismiss the fraudulent charges.

There was absolutely no reason to arrest Linda Wagner and place a high felony bail-hold on her when she was and is a pillar in the community there

---

[16] Attached herewith as *Exhibit "F"*

back then (and here now) who had engaged in no wrongdoing whatsoever. She had no reason to believe that she would be arrested and removed at the "trial" because of Judge Nakamura's prior conduct of not arresting her when she was previously before him, particularly when there were numerous other avenues available to Judge Nakamura, such as:

a)   Arrest and immediate release on her own recognizance;

b)   Arrest, but delayed detention until after the trial and posting of bond at that time;

c)   Deferral of arrest until the conclusion of the "trial";

d)   Recall of the warrant pending hearing of the motion to dismiss;

e)   Deferral of arrest and scheduling of an arraignment date;

f)   Continuance of the trial until the following day to allow posting of bail;

g)   Any other lawful conduct that would not deprive us of our civil rights at the "trial".

Regardless of the circumstances of Linda Wagner's arrest at the start of the "trial" and Judge Nakamura's attempt to shift the blame to the blameless individual, the fact remains that we were both deprived of the opportunity to actually litigate the facts involved in the "Second Hawaii Decision". Those false allegations by defendant Francik at the "trial" were in fact never litigated due

entirely to his felony conduct before the Hilo grand jury. Nowhere have the defendants herein presented any facts that counter what I have presented, because what I have presented in all of my affidavits filed herein is factually true and accurate.

Essentially, defendant Francik's felony conduct before the grand jury is essentially also that hoary old tort of *res ipsa loquitor*, the thing speaks for itself. But for his lying to a grand jury, and continuous lying thereafter to judges, attorneys, sheriffs and others to effect Linda Wagner's false arrest at the "trial", we would not have been deprived of our trial rights, and instead be saddled with a fraudulent "trial" and its fraudulent "*Second Hawaii Decision*".

Also, because it is included in the transcript of Judge Nakamura's testimony, I briefly comment on the statements of Tom Yeh included therein. Beginning on the bottom of page 4 of that transcript (*Exhibit "E"*), through to page 6, Mr. Yeh engages in a personal attack on myself. He refers to the Nevada Secretary of State corporate filings as "hearsay" even though most were filed by his client defendant Emerson, and documents which are public record and required filings. He doesn't address that issue.

Rather, he engages in a diversion and launches into a false attack on my integrity by falsely accusing me of making fraudulent accusations of failing to

serve documents on him, and making a fraudulent 'Certificate of Service'. His "evidence" is a postal mark on the document that was served being a date of September 9, and the actual certificate of service filed September 8. What is not obvious was that my postal carrier, because it was a small postal office in Honomu, quits picking up mail for the day at 2:00 PM, and the 'Certificate of Service' in question was placed into the stream of mail a few hours thereafter, on September 8, but it was not actually stamped by the post office until the following day, September 9. This he claims is evidence of my alleged fraudulent filings, when it is but further evidence of how he and his clients continuously make false and fraudulent accusations against their opponents as a courtroom strategy. I detailed that fact in my rebuttal to his 'argument' on pages 6-7 of that transcript. Nevertheless, Judge Nakamura was inclined to decline the motion for a new trial, and accept his *judge pro tempore's* 'argument' notwithstanding its complete lack of merit, and the highly unethical fraudulent accusations made against me by Mr. Yeh.

IV

## REMAINING ISSUE IN HAWAII

The issue that remains in Hawaii pertains to the value of the service I performed in building a botanical garden between 1995 and 2004, for which I

was not fully compensated[17]. There are no issues pertaining to record keeping,

false allegations of misappropriation, or other matters. The appellate court

affirmed the dismissal of the other claims without comment as to why they

waited four years to make their 'determination'. No witnesses had yet been

called, the case is wide open in terms of making findings of fact. None of the

issues of defamation and other issues of the instant case, all of which took

place long after completion of my work in Hawaii under a salary contract, had

arisen during that time.

WHEREFORE, it is respectfully requested that this honorable Court deny

the motion for a stay of these proceedings, and grant the motion for

appointment of a Receiver to protect what little remaining asset is left to secure

my interests.

DATED: April 9, 2012


_____

Walter L. Wagner


_____

[17] I was paid approximately $120,000 over those nine years, and was left owing approximately
$450,000

# EXHIBIT "A"

## Kenneth Francik's Perjured Testimony to Grand Jury



IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

In the Matter of the Proceedings )
)
of the Grand Jury of the Third )
)
Circuit of the State of Hawaii )      Subsequently
)      Numbered
for the January 2008 Term )      CR. NO. 08-1-097
)
STATE OF HAWAII )
)
vs. )
)
LINDA WAGNER and WALTER WAGNER, )
)
Defendants. )
──────────────────────────── )

TRANSCRIPT OF PROCEEDINGS

had before the Hawaii Grand Jury on Wednesday, February 27,

2008, in the above-entitled matter.

APPEARANCES:

For the State of Hawaii:      SHANNON KAGAWA
                              Deputy Prosecuting Attorney
                              County of Hawaii
                              655 Kilauea Avenue
                              Hilo, Hawaii 96720

Independent Counsel to
  the Grand Jury:             EILEEN TREDWAY, ESQ.

Reported By:  JENNIFER WHETSTONE, CSR 421, RMR
              Official Court Reporter
              Third Circuit Court, State of Hawaii

THIRD CIRCUIT COURT, STATE OF HAWAII

1

2                            I N D E X

3        Wednesday, February 27, 2008

4

5            WITNESSES                        PAGE NO.

6        KENNETH FRANCIK
              By the State                        5
7
         SERGEANT JUERGEN CANDA
8             By the State                        15

9        KENNETH FRANCIK (Recalled)
              By the Grand Juror                  17
10            By the State                        19

11

12

13

14                           EXHIBITS

15           EXHIBIT NUMBERS                   SUBMITTED

16       State's Exhibit 1                        4

17

18

19

20

21

22

23

24

25

1   Wednesday, February 27, 2008                    9:35 A.M.

2                          --oOo--

3             MS. KAGAWA:  Good morning, ladies and gentlemen.

4   This is case number two on your calendar, State of Hawaii

5   versus Linda Wagner and Walter Wagner.  May the record

6   reflect the presence of grand jury counsel Eileen Tredway,

7   the court reporter, and myself, deputy prosecuting attorney

8   Shannon Kagawa.

9             THE FOREPERSON:  We'll have a recess.

10            MS. KAGAWA:  If we can go back on the record.

11  We took a brief recess in order to get all the paperwork,

12  but we'll start again.

13            Good morning, ladies and gentlemen.  This is

14  case number two on your calendar, State of Hawaii versus

15  Linda Wagner and Walter Wagner.  May the record reflect the

16  presence of grand jury counsel, the court reporter, and

17  myself, deputy prosecuting attorney Shannon Kagawa.  Madam

18  Foreperson, is there a quorum present?

19            THE FOREPERSON:  Yes, there is.

20            MS. KAGAWA:  Thank you.  Let the record reflect

21  I'm gonna hand to each member of the grand jury copies of

22  the grand jury indictment.  I ask that you read it, and let

23  me know when you're done.

24            Does any member of the grand jury need more time

25  to read the proposed grand jury indictment?  Let the record

1   reflect no response.  Let the record reflect I'm collecting

2   from each member of the grand jury copies of the grand jury

3   indictment which were handed out.

4            If the record can reflect I'm handing to the

5   secretary the copies of the indictment which were handed out

6   to each member of the grand jury to be marked as state's

7   exhibit one regarding this case.

8            THE FOREPERSON:  Does the grand jury counsel

9   have any information on the law?

10           MS. TREDWAY:  At the beginning of today's grand

11  jury session, the grand jury panel was given handouts

12  prepared by counsel indicating the law in the Hawaii Revised

13  Statutes that applies to each of the proposed indictments.

14  The handout is to be used with the Hawaii Revised Statutes

15  in the room.  The original of the handout was filed with the

16  court, and I am submitting, at this time, a copy into

17  evidence for today's proceedings.

18           This is case number two on your calendar, a

19  four-count indictment.  Does anyone wish me to read any of

20  the law indicated in the handout for this indictment?  May

21  the record note no response.

22           MS. KAGAWA:  State's first witness is Ken

23  Francik.

24           THE FOREPERSON:  Would you raise your right

25  hand, please.  You do solemnly swear or affirm that the

THIRD CIRCUIT COURT, STATE OF HAWAII

1  evidence which you shall give before the grand jury shall be

2  the truth, the whole truth, and nothing but the truth?

3          THE WITNESS:  I do.

4          THE FOREPERSON:  You may be seated.

5          THE WITNESS:  Thank you.

6                  KENNETH FRANCIK,

7  called as a witness by the state, having been duly and

8  regularly sworn, testified as follows:

9                    EXAMINATION

10         BY MS. KAGAWA:  Q     Good morning.

11 A     Good morning.

12 Q     Could you please state your name, and spell it for the

13 record.

14 A     Kenneth A. Francik, F-R-A-N-C-I-K.

15 Q     Is it okay if I call you Ken?

16 A     Absolutely.

17 Q     Okay.  Now, Ken, are you familiar with a business

18 called World Botanical Gardens, Inc., also known as WBGI?

19 A     Yes, I am.

20 Q     And how are you familiar with it?

21 A     I got involved with that organization in 1999 as a

22 shareholder, purchased shares in that corporation, and, uh,

23 later in 2003, uh, I went onto the board of directors of

24 that corporation.  On August of -- or in 2003, I became the

25 chairman of the board and still hold that position today.

```
1    Q     Now, can you briefly explain, what is WBGI?

2    A     Uh, World Botanical Gardens, or for those of you who

3    haven't come out to see it, we are a tourist location

4    located 16 miles north of Hilo at Highway 19 and Mile Marker

5    16, and we're open to the public every day.  We have a

6    number of attractions out there -- waterfalls, and gardens.

7    Q     Now, how is World Botanical Gardens' managed?

8    A     It's managed by a eight-member board of directors.  We

9    have four officers, uh, on that, and the business decisions

10   are made by the corporate board.

11   Q     Now, do these decisions -- when you say "business

12   decisions," does it decide how much someone gets paid or

13   who's employed by World Botanical Gardens?

14   A     Absolutely.

15   Q     Do you know somebody by the name of Annette Emerson?

16   A     Yes, I do.

17   Q     How do you know Annette Emerson?

18   A     Annette Emerson is a board member who I actually met

19   as a shareholder back in 2003.  We were on the board

20   together.  She is still on the board of directors and is

21   currently our treasurer.

22   Q     Now, Annette Emerson currently resides on the

23   mainland, is that correct?

24   A     Yes, she does.

25   Q     Now, back in 2004, did Annette Emerson have a position
```

THIRD CIRCUIT COURT, STATE OF HAWAII

1   with World Botanical Gardens?

2   A      Yes, she did.

3   Q      And what was that position?

4   A      2004 she was the secretary-treasurer of the

5   corporation and a board director.

6   Q      Now, do you know somebody by the name of Walter

7   Wagner?

8   A      Yes, I do.

9   Q      And how do you know Walter Wagner?

10   A      Uh, I met Walter Wagner originally, I think, in '98,

11   '99.  He had founded World Botanical Gardens.  Uh, later we

12   became associated with him.

13   Q      Now, do you know somebody by the name of Linda Wagner?

14   A      Yes.

15   Q      And is Linda Wagner related to Walter Wagner?

16   A      Yes.  They are husband and wife.

17   Q      Now, was either Walter Wagner or -- let's start -- was

18   Walter Wagner ever employed with WBGI?

19   A      Yes.

20   Q      In what capacity?

21   A      He was employed as the garden director, uh, who

22   basically had oversight of the business on the island here.

23   Q      And when you say "oversight of the business on the

24   island," can you explain.

25   A      He was the business manager.  Uh, ran the business.

1    Q     Did he have decisions -- could he make decisions about

2    who gets paid, how much someone gets, paid solely by

3    himself?

4    A     No.

5    Q     That would still have to be done through the board?

6    A     That's correct.

7    Q     Now, was Linda Wagner ever employed?

8    A     Uh, to the best of my knowledge, she was never

9    employed by World Botanical.

10   Q     Now, is Walter Wagner still employed with WBGI?

11   A     No.

12   Q     When did his employment end?

13   A     Uh, he was terminated in May of '04.

14   Q     Now, at any time between July, 2004, through

15   September, 2004, did Walter Wagner have the title of

16   president of WBGI?

17   A     Actually, he was still listed on the corporate filing

18   document with the State of Nevada.  So let me try to clarify

19   this a little bit.  Every year, as a corporation, you file

20   your list of officers, and you pay your corporation fees to

21   the state.  We are a Nevada corporation.  So when we renewed

22   our corporate filing and paid our fees, it would have been

23   in early '04.  And at that point in time, he was actually

24   listed as president.  Um, however, the way the board was

25   structured, as chairman of the board, I had oversight over

1    the board and everybody.  And his position, listed as

2    president, he still had no authority on his own to act or do

      anything without the authority or the approval of the board

      as a whole.

5    Q    Okay.  So between July, 2004, through September, 2004,

6    although it may have said on a paper that he was president,

7    he had no authority to conduct any business for WBGI solely

8    by himself?

      A    That's absolutely, correct.

10    Q    Now, at any time between July, 2004, through

11    September, 2004, was Linda Wagner the secretary or treasurer

12    of WBGI?

      A    No.

14    Q    Now, you learned or WBGI learned, on December 19th,

15    2005, that there was a complaint that had been filed by

16    Walter Wagner against the defendant, World Botanical

17    Gardens, in Civil 04-1-232, for damages in the amount of

18    $340,736.75, is that correct?

19    A    That's correct.

20    Q    And this complaint had actually been filed in the

21    Third Circuit Court in Hilo on July 28th, 2004?

22    A    Correct.

23    Q    This complaint was based on a promissory note dated

24    January 1st, 2004, stating that Walter Wagner was owed back

25    pay, or money, is that correct?

1  A     Yes.

2  Q     And this promissory note was signed by Walter Wagner

3  as president, is that correct?

4  A     Yes.

5  Q     Did the board ever approve any of this back pay for

6  Walter Wagner on a promissory note?

7  A     Absolutely not.

8  Q     Could Walter Wagner have signed the promissory note,

9  because he was listed as president, solely by himself?

10 A     No.

11 Q     Could he decide how much money he was being paid

12 solely by himself?

13 A     No.

14 Q     And he understood that -- that his position, as far as

15 the word "president," did not entitle him to do that?

   A     That's absolutely correct.

17 Q     Now, this promissory note was also signed by Linda

18 Wagner, noting herself as secretary/treasurer of WBGI, is

19 that correct?

20 A     Yes.

21 Q     Was she secretary or treasurer at that time?

22 A     No.

23 Q     Now, the complaint that we talked about, civil number

24 04-1-232, was served on Linda Wagner, who stated that she

25 was secretary/treasurer of WBGI, is that correct?

1   A      Yes, that's correct.

2   Q      And this document was actually filed with the court in

3   Hilo on July 29, 2004?

4   A      Yes.

5   Q      At the time Linda Wagner was served the complaint, did

6   Walter Wagner know that Linda Wagner was no longer -- or she

7   was not the secretary/treasurer of WBGI?

8   A      Yes.

9   Q      How do you know that Walter Wagner knew this?

10  A      Well, we had had an election.  Uh, she did not run.

11  Uh, she was not appointed.  We had numerous board of

12  directors meetings starting, really, in early 2003 by use of

13  the phone.  When we met in August of 2003 at a shareholder

14  meeting, the board was introduced.  Her name was never on a

15  ballot, was never appointed, was never, uh, uh, introduced

16  to the shareholders as on officer.  We conducted business,

17  signed numerous documents.  Uh, the entire board was listed

18  on shareholder newsletters after that point in time, so at

19  no place -- any material, no meeting -- did she ever appear

20  or attempt to appear.  And it was common knowledge by the

21  entire board and the entire group of shareholders that she

22  had absolutely no position with World Botanical Gardens.

23  Q      And the actual person who had that position during

24  this time was Annette Emerson, is that correct?

25  A      That is correct.

THIRD CIRCUIT COURT, STATE OF HAWAII

1    Q    Annette Emerson had that position from sometime in

2    2003?

3    A    Yes.

4    Q    And Annette Emerson actually still holds -- or she's

5    the treasurer currently now?

6    A    Currently she is still our treasurer.

7    Q    Okay.  Now, after Linda Wagner was served this

8    complaint by Walter Wagner, did Linda Wagner ever notify

9    anyone on the board of director for WBGI about this

10   complaint?

11   A    No.

12   Q    The court had a hearing on August 25th, 2004, in the

13   third circuit court in Hilo, correct?

14   A    Yes.

15   Q    And at this hearing, it was represented that Linda

16   Wagner was the secretary/treasurer or treasurer of WBGI?

17   A    That's correct.

18   Q    And the third circuit court in Hilo entered a default

19   judgment against WBGI on September 10th 2004, in the amount

20   of $340,736.75 in favor of Walter Wagner?

21   A    Correct.

22   Q    And that's because, at that time, it was represented

23   that no one from WBGI was contesting that?

24   A    Yes.

25   Q    And at the time, no one on the board of directors of

THIRD CIRCUIT COURT, STATE OF HAWAII

1   WBGI knew about it?

2   A      No, we did not.

3   Q      Did Walter Wagner ever receive that amount of money

4   from the default judgment?

5   A      No, he did not.

6   Q      The transaction did not go through, is that correct?

7   A      That's correct.  He attempted to but --

8   Q      No money was ever given to him?

9   A      No money was ever exchanged.

10   Q      And everything you testified occurred in the County

11   and State of Hawaii?

12   A      Yes.

13              MS. KAGAWA:  Does any member of the grand jury

14   have questions for this witness?

15              THE WITNESS:  Yes?

16              A GRAND JUROR:  Do you have any of the minutes

17   of that meeting or --

18              THE WITNESS:  Which --

19              A GRAND JUROR:  Are we allowed to see that or --

20              THE WITNESS:  Which meeting are we talking

21   about?

22              A GRAND JUROR:  When she was not elected.

23              THE WITNESS:  Oh, absolutely.  Uh --

24              MS. KAGAWA:  Okay --

25              A GRAND JUROR:  You don't have to produce it, I

1    just wanted to know if it exists.

2                   THE WITNESS:  Can I answer that?

3                   (No verbal response.)

4                   THE WITNESS:  Oh, okay.  Yes, we have records of

5    all the meetings.  We have records of the election, we have

6    records of the meeting.  Um, I don't know how much I can

7    divulge.  When we, okay, when we found out about this

8    fraudulent filing over a year later, we put a packet

9    together to get the default judgment overturned by the

10   court.  Which they did.  Part of that filing packet that

11   went to the court to have that default judgment overturned

12   -- our copies of all the minutes, all the documentation,

13   newsletters, affidavits, there's an entire package that's

14   about that thick, I actually have it with me today -- but,

15   yes, those things do exist.

16                   A GRAND JUROR:  Oh, great.

17                   THE WITNESS:  And the court did examine all

18   those documents prior to reversing that default judgment,

19   and that's in essence why no money was exchanged, even

20   though he attempted to serve that, at the time, to get

21   money.

22                   A GRAND JUROR:  Thank you.

23                   THE WITNESS:  Sure.

24                   MS. KAGAWA:  Any further questions?  Let the

25   record reflect no response.  Thank you.

1          THE WITNESS:  Thank you.

2          MS. KAGAWA:  State's next witness will be

3    Juergen Canda.

4          THE FOREPERSON:  High.  Good morning.

5          THE WITNESS:  High.

6          THE FOREPERSON:  Do you solemnly swear or affirm

7    that the evidence that you shall give before the grand jury

8    shall be the truth, the whole truth, and nothing but the

9    truth?

10          THE WITNESS:  Yes, I do.

11          THE FOREPERSON:  You may be seated.

12          THE WITNESS:  Thank you.

13                    SERGEANT JUERGEN CANDA,

14   called as a witness by the state, having been duly and

15   regularly sworn, testified as follows:

16                         EXAMINATION

17          BY MS. KAGAWA:  Q     Good morning.  Could you

18   please state your name and occupation.

19   A     Hi.  I'm Juergen Canda.  I'm a sergeant, Puna patrol,

20   police.

21   Q     Now, Sergeant Canda, were you assigned an

22   investigation involving a person by the name of Walter

23   Wagner?

24   A     Yes, I was.  When I was a detective of criminal

25   investigation section.

```
 1   Q     And during your investigation, did you advise Walter
 2   Wagner of his rights?
 3   A     Yes, I did.
 4   Q     Did he waive his rights?
 5   A     Yes, he did.
 6   Q     What did he say regarding whether or not he believed
 7   or he felt he was president of World Botanical Gardens,
 8   Incorporated, in 2004?
 9   A     When I spoke to Walter Wagner about that, he
10   acknowledged that there had been a change of board of
11   directors, there was numerous types of correspondence where
12   he actually directed letters to the current president
13   acknowledging that Ken Francik was the president.  He -- Mr.
14   Wagner stated he then created his own organization called
15   World Botanical Gardens Foundation, which was a nonprofit
16   organization separate from World Botanical -- World
17   Botanical Gardens corporation.
18   Q     And everything you testified occurred in the County
19   and State of Hawaii?
20   A     Yes.
21              MS. KAGAWA:  Does any member of the grand jury
22   have questions for this witness?  Let the record reflect no
23   response.
24              THE WITNESS:  Okay.
25              MS. KAGAWA:  At this -- oh, sorry.  At this
```

THIRD CIRCUIT COURT, STATE OF HAWAII

```
 1   time, the state has no other witnesses.  Would any member of
 2   the grand jury like for the state to recall any of its
 3   witnesses?
 4                    A GRAND JUROR:  I'm confused.  Um, there is the
 5   World Botanical Gardens business, and now, with uh, Sergeant
 6   Canda has told us that, uh, Walter Wagner apparently, out of
 7   whole cloth, created the World Botanical Gardens Foundation.
 8   Is there any reason to believe that he expected to be paid
 9   for running the World Botanical Gardens Foundation by the
10   board of directors by the World Botanical Gardens?
11                    MS. KAGAWA:  Would you like the state to recall
12   any witness?
13                    A GRAND JUROR:  Yes, please.
14                    MS. KAGAWA:  And would that witness be Sergeant
15   Canda or Ken Francik?
16                    A GRAND JUROR:  Ken Francik.
17                    MS. KAGAWA:  Okay, the state will recall Ken
18   Francik.
19                    THE FOREPERSON:  We'll have a recess in place.
20                    (Ms. Kagawa stepped out of the grand jury room.)
21                    THE FOREPERSON:  We're reconvening.
22   Mr. Francik, you're reminded that you're still under oath.
23                    THE WITNESS:  Okay.
24                         KENNETH FRANCIK,
25   recalled as a witness, having been previously sworn,
```

1   testified further as follows:

2                          EXAMINATION

3             BY A GRAND JUROR:   Q    Can I repeat what I just

4   said?  Well, we have learned that Walter Wagner claimed to

5   have set up a World Botanical Gardens Foundation.

6   A    Okay.

7   Q    Um, is there any reason to believe that the board of

8   directors or any of the officers of the World Botanical

9   Gardens had any reason to believe that they should pay

10  Walter Wagner for being the president of the World Botanical

11  Gardens Foundation?

12  A    Well, let me see if I can understand that a little

13  bit.

14  Q    Sure.

15  A    Bear with me a little bit, 'cause we're gettin' into

16  an area that's been litigated over several years.

17  Q    Of course.

18  A    Okay?  The name "World Botanical Gardens Foundation"

19  was an entity that Mr. Wagner set up well after the fact.

20  Q    Okay.

21  A    Okay?

22  Q    The fact of --

23  A    The fact of that it actually came after this.

24  Q    Okay.

25  A    Okay?  So the filing for that, I believe, it, when he

1   filed with the department of taxation, they actually

2   backdated it to January 1st of '05.  And the reason he did

3   that, I believe, draw your own conclusions, but when he got

4   caught doing a number of things and demand was made by the

5   corporation, of the board of directors, to pay back certain

6   funds, he then came up with this foundation, okay?

7        Now, if you look into the records of the foundation,

8   it basically doesn't really exist, other than it's a name

9   only.  There's no tax liability, there are no, uh, financial

10  filings with IRS, it's -- it's -- it's basically a name on a

11  piece of paper filed with the department of taxation, okay?

12       When we looked into that -- that case has actually

13  been um, litigated in the State of Nevada, since we're a

14  Nevada corporation.  That entity has absolutely no bearing

15  or fact, no connection with World Botanical Gardens.  Um,

16  it, I believe, if you want my opinion, I believe it was

17  simply a name to try to cover a theft of another later case

18  that's been filed against him for about $356,000 that he

19  actually embezzled from the corporation after this attempt.

20  Okay, and that's more where that foundation comes in.  But

21  the court in the State of Nevada has found that that is a --

22            MS. KAGAWA:  Ken, can I stop you?

23            A GRAND JUROR:  That's fine.  That's enough.

24  Thank you.

25                    FURTHER EXAMINATION

1        BY MS. KAGAWA:   Q     Maybe if I can just ask

2    you a couple questions to clarify.  So World Botanical

3    Gardens Foundation was not created until January of 2005, at

4    least that's what the department of taxation indicates?

5    A     Yes.  I believe it was actually filed in March of '05

6    and back-dated to that -- to the beginning of the year.

7    Q     This motion, the judgment that was entered on December

8    10th, 2004, was a promissory note for back pay from 1995 to

9    2003?

10   A     That's correct.

11   Q     That's what he was claiming, the three hundred forty

12   thousand dollars, seven hundred --

13   A     Yes.

14   Q     -- thirty-six and seventy-five cents was?

15   A     Yes.

16   Q     Okay.

17   A     Yeah.  There's no correlation between those two

18   entities at all at that time.

19         MS. KAGAWA:  Any further questions?

20         A GRAND JUROR:  Thank you.

21         MS. KAGAWA:  Let the record reflect no response.

22   Thank you.  Does any member of the grand jury wish for the

23   state to recall any of its witnesses?  Let the record

24   reflect no response.

25         THE FOREPERSON:  Does grand jury counsel have

1    any further information on the law?

2          MS. TREDWAY:   Mr. Francik, when he came back

3    into the room, made reference to, perhaps, another matter

4    that is pending not before this grand jury panel.  And I'd

5    like to caution the grand jury panel that they should

6    consider the evidence with respect to the charge before them

7    and not necessarily infer probable cause that this charge

8    was committed by the reference made to other matters that

9    are in existence elsewhere.

10         MS. KAGAWA:   Let the record reflect that grand

11   jury counsel, prosecutor, and court reporter are leaving the

12   room.

13         (WHEREUPON the deputy prosecutor, Grand Jury

14   counsel, and the court reporter left the Grand Jury to their

15   deliberations and returned shortly thereafter.)

16         MS. KAGAWA:   Let the record reflect that grand

17   jury counsel, prosecutor, and court reporter have returned.

18   Has the grand jury reached a decision?

19         THE FOREPERSON:   Yes, we have.  Um, for case

20   number two, um, the grand jury finds a true bill.  As to

21   count one and two, for Linda Wagner.

22         MS. KAGAWA:   Okay.

23         THE FOREPERSON:   And for case number two, um,

24   counts three and four, the jury finds a true bill on all

25   counts, counts three and four, for Walter Wagner.

1           MS. KAGAWA:   Okay.   So just -- you found a true

2      bill on one through four?

3           THE FOREPERSON:   Yes.

4           MS. KAGAWA:   Okay, let the record reflect I'm

5      handing to the foreperson copies of the grand jury

6      indictment.

7           (Whereupon the Grand Jury proceedings were

8      recessed.)

9                          --oOo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   C E R T I F I C A T E

2     STATE OF HAWAII    )
                         )
3     COUNTY OF HAWAII   )
      _____)

4

5           I, JENNIFER WHETSTONE, CSR 421, RMR, and an

6     Official Court Reporter for the Third Circuit Court, State

7     of Hawaii, do hereby certify that the foregoing comprises a

8     full, true, and accurate transcription, done to the best of

9     my ability, of the proceedings held in connection with the

10    above-entitled cause.

11          Dated this 29th day of May, 2008.

12

13                          OFFICIAL COURT REPORTER

14

15                          JENNIFER WHETSTONE

16

17

18

19

20

21

22

23

24

25

THIRD CIRCUIT COURT, STATE OF HAWAII

# EXHIBIT "B"

**February 2004 WBGI Filing of its Officers**

**(PROFIT) ANNUAL LIST OF OFFICERS, DIRECTORS AND RESIDENT AGENT OF**

FILE NUMBER

*WORLD   BOTANICAL   GARDENS, INC.* *C9341-2001*

(Name of Corporation)

FOR THE FILING PERIOD OF 4/12/2003 TO 4/12/2004

*Av 5/1/02*
*01-02/200*
*02-03   20P*       FILED #
*03-04   200*        FEB 2 3 2004
*Rein  300*
*RvA    60*          IN THE OFFICE OF
        —            ~~Dean Hill~~
      *$960*         DEAN HELLER, SECRETARY OF STATE

The corporation's duly appointed resident agent in the State of Nevada upon whom process can be served is:

DANIEL L. PERKINS
1973 N. NELLIS BLVD. # 204
LAS VEGAS, NV 89115

*4 02 23-415*

□ CHECK BOX IF YOU REQUIRE A FORM TO UPDATE YOUR RESIDENT AGENT INFORMATION

*Important: Read instructions before completing and returning this form.*

THE ABOVE SPACE IS FOR OFFICE USE ONLY

1. Print or type names and addresses, either residence or business, for all officers and directors. A President, Secretary, Treasurer, or equivalent of and all Directors must be named. Have an officer sign the form. *FORM WILL BE RETURNED IF UNSIGNED*
2. If there are additional directors attach a list of them to this form.
3. Return the completed form with the filing fee. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. Make your check payable to the Secretary of State. Your cancelled check will constitute a certificate to transact business per NRS 78.155. To receive a certified copy, enclose an additional $30.00 and appropriate instructions.
5. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, NV 89701-4201, (775) 684-5708.
6. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties.

**CHECK ONLY IF APPLICABLE:**

□ This corporation is a publicly traded corporation.   The Central Index Key number is: _____

□ This publicly traded corporation is not required to have a Central Index Key number.

NAME                                              TITLE(S)
WALTER L. WAGNER              PRESIDENT (OR EQUIVALENT OF)
ADDRESS                  CITY                    ST      ZIP
P O BOX 411   HONOMU, HI   96728

NAME                                              TITLE(S)
LINDA WAGNER                  SECRETARY (OR EQUIVALENT OF)
ADDRESS                  CITY                    ST      ZIP
PO BOX 411   HONOMU   HI   96728

NAME                                              TITLE(S)
DAN PERKINS                   TREASURER (OR EQUIVALENT OF)
ADDRESS                  CITY                    ST      ZIP
PO BOX 411   HONOMU   HI   96728

NAME                                              TITLE(S)
WALTER L. WAGNER             DIRECTOR
ADDRESS                  CITY                    ST      ZIP
PO BOX 411   HONOMU   HI   96728

I declare   to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of NRS 360.760 and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X  Signature of Officer *Walter L Wagner* Title *President* Date 2/18/2004

Nevada Secretary of State Form ANNUAL LIST-PROFIT 2003
Revised on: 9/12/03



**DEAN HELLER**
Secretary of State

101 North Carson Street, Suite 3
Carson City, Nevada 89701-4786
(775) 684 5708

## Articles of Incorporation
(PURSUANT TO NRS 78)

Office Filing Only  9341-01

APR 1 2 2001

IN THE OFFICE OF
DEAN HELLER SECRETARY OF STATE

*Important: Read attached instructions before completing*

| | |
|---|---|
| **1. Name of Corporation** | WORLD BOTANICAL GARDENS, INCORPORATED |
| **2. Resident Agent Name and Street Address:** (Must be a Nevada address where process may be served). | NAME<br>DAMIEN SCOTT<br><br>STREET ADDRESS 1973 NORTH NELLIS BLVD. SUITE 130    CITY LAS VEGAS    ZIP NEVADA 89115 |
| **3. Shares:** (No of shares corporation authorized to issue) | Number of shares with par value:    Par value:    Number of shares without par value: 1500 |

### 4. Names, Addresses, Number of Board of Directors/Trustees:

The First Board of Directors/Trustees shall consist of **TWO** members whose names and addresses are as follows:

1. NAME   WALTER L. WAGNER
STREET ADDRESS PO BOX 411   CITY HONOMU   STATE HAWAII   ZIP 96728

2. NAME   LINDA M. WAGNER
STREET ADDRESS PO BOX 411   CITY HONOMU   STATE HI   ZIP 96728

3. NAME
STREET ADDRESS   CITY   STATE   ZIP

4. NAME
STREET ADDRESS   CITY   STATE   ZIP

### 5. Purpose (Optional-See Instructions)

The purpose of this corporation shall be:
TO DEVELOP AND ADVANCE THE WORLD BOTANICAL GARDENS AT UMAUMA ON THE BIG ISLAND OF HAWAII

### 6. Other Matters: (See Instructions)

Number of addition pages: 0

### 7. Names, Addresses and Signatures of Incorporators: (If more than two incorporators, please attach additional pages).

NAME WALTER L. WAGNER
STREET ADDRESS PO BOX 411
CITY HONOMU   STATE HAWAII   ZIP 96728
Signature *Walter L. Wagner*

NAME
STREET ADDRESS
CITY   STATE   ZIP
Signature

### 8. Certificate of Acceptance of Appointment of Resident Agent:

I, DAMIEN SCOTT, hereby accept appointment as Resident Agent for the above named corporation.

Authorized Signature of Resident Agent or Resident Agent Company

MARCH , 2001
Date

04/04/2001 08:02AM NLK1C5 FY01-008-64128

# EXHIBIT "C"

**Defendant Emerson's Second WBGI Filing Replacing Dan Perkins**

(PROFIT) ANNUAL LIST OF OFFICERS, DIRECTORS AND RESIDENT AGENT OF

World Botanical Gardens, Inc
(Name of Corporation)

FILE NUMBER

9341-2001

FOR THE FILING PERIOD OF   2004   TO   2005

The corporation's duly appointed resident agent in the State of Nevada upon whom process can be served is:

Annette Emerson
1380 Greg St #204
Sparks, NV 89431

☐ CHECK BOX IF YOU REQUIRE A FORM TO UPDATE YOUR RESIDENT AGENT INFORMATION

Important. Read instructions before completing and returning this form.

FILED # _____

JUN 2 8 2004

IN THE OFFICE OF
DEAN HELLER, SECRETARY OF STATE

THE ABOVE SPACE IS FOR OFFICE USE ONLY

1. Print or type names and addresses either residence or business, for all officers and directors. A President, Secretary, Treasurer, or equivalent of and all Directors and all directors must be named. Have an officer sign the form. FORM WILL BE RETURNED IF UNSIGNED
2. If there are additional directors attach a list of them to this form.
3. Return the completed form with the filing fee. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. Make your check payable to the Secretary of State. Your cancelled check will constitute a certificate to transact business per NRS 78.155. To receive a certified copy, enclose an additional $30.00 and appropriate instructions.
5. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, NV 89701-4201, (775) 684-5708.
6. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties.

**CHECK ONLY IF APPLICABLE**

☐ This corporation is a publicly traded corporation. The Central Index Key number is:

☐ This publicly traded corporation is not required to have a Central Index Key number.

| NAME | TITLE(S) | | |
|---|---|---|---|
| Walter L Wagner | PRESIDENT (OR EQUIVALENT OF) | | |
| ADDRESS | CITY | St | Zip |
| P.O. Box 411 | Honomu | HI | 96728 |

| NAME | TITLE(S) | | |
|---|---|---|---|
| | SECRETARY (OR EQUIVALENT OF) | | |
| ADDRESS | CITY | St | Zip |

| NAME | TITLE(S) | | |
|---|---|---|---|
| Annette S Emerson | TREASURER (OR EQUIVALENT OF) | | |
| ADDRESS | CITY | St | Zip |
| 1380 Greg St #204 | Sparks | NV | 89431 |

| NAME | TITLE(S) | | |
|---|---|---|---|
| | DIRECTOR | | |
| ADDRESS | CITY | St | Zip |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of NRS 360.780 and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State

X Signature of Officer
*Annette S Emerson*

Title Treasurer       Date 6-22-04

Nevada Secretary of State Form ANNUAL LIST-PROFIT 2002
Revised on 09/24/03

**DEAN HELLER**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684 5708
Website: secretaryofstate.biz

**FILED #** _____

MAR 1 9 2004

IN THE OFFICE OF
~Dan Hell~
DEAN HELLER SECRETARY OF STATE

**General instructions for this form:**
1. Please print legibly or type; Black Ink Only.
2. Complete all fields.
3. The *physical Nevada* address of the resident agent must be set forth;
   PMB's are not acceptable.
4. Ensure that document is signed in signature fields.
5. Include the filing fee of $60.00.

ABOVE SPACE IS FOR OFFICE USE ONLY

World Botanical Gardens, Inc     C9341-2001
_____   _____
Name of Entity                   File Number

The change below is effective upon the filing of this document with the Secretary of State.

Reason for change: (check one) ☒ Change of Resident Agent ☐ Change of Location of Registered Office

The former resident agent and/or location of the registered office was:

Resident Agent: Daniel Perkins

Street No.: 1973 N Nellis Blvd #204

City, State, Zip: Las Vegas, NV  89115

The resident agent and/or location of the registered office is changed to:

Resident Agent: Annette Emerson        161752

Street No.: 1380 Greg St #204

City, State, Zip: Sparks, NV    89431

Optional Mailing Address: _____

NOTE:    For an entity to file this certificate, the signature of one officer is required.

x Walter L. Wegner / President
        Signature/Title

## Certificate of Acceptance of Appointment by Resident Agent:

I hereby accept the appointment as Resident Agent for the above-named business entity.

x Emerson     or                    3-15-04
Authorized Signature of R.A.   or   On Behalf of R.A. Company        Date

*This form must be accompanied by appropriate fees.  See attached fee schedule.*

Nevada Secretary of State RA Change 2003
Revised on: 11/18/03



"*Amended*"

(PROFIT) ANNUAL LIST OF OFFICERS, DIRECTORS AND RESIDENT AGENT OF

World Botanical Gardens, Inc.
(Name of Corporation)

FILE NUMBER

9341-2001

FOR THE FILING PERIOD OF ~~April 2004~~   ~~April 2005~~

April 2004   April 2005

The corporation's duly appointed resident agent in the State of Nevada upon whom process can be served is:

Annette Emerson
1380 Greg St #204
Sparks, NV 89431

☐ CHECK BOX IF YOU REQUIRE A FORM TO UPDATE YOUR RESIDENT AGENT INFORMATION

125

FILED # _____

SEP 1 4 2004

IN THE OFFICE OF
DEAN HELLER SECRETARY OF STATE

amend 04-05

THE ABOVE SPACE IS FOR OFFICE USE ONLY

Important: Read instructions before completing and returning this form.

1. Print or type names and addresses either residence or business, for all officers and directors. A President, Secretary, Treasurer, or equivalent of and all Directors and all directors must be named. Have an officer sign the form. FORM WILL BE RETURNED IF UNSIGNED
2. If there are additional directors attach a list of them to this form.
3. Return the completed to* with the filing fees. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.
4. Make your check payable to the Secretary of State. Your cancelled check will constitute a certificate to transact business per NRS 78.155. To receive a certified copy, enclose an additional $30.00 and appropriate instructions.
5. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, NV 897014201, (775) 684-5708.
6. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties.

**CHECK ONLY IF APPLICABLE**

☐ This corporation is a publicly traded corporation. The Central Index Key number is:

☐ This publicly traded corporation is not required to have a Central Index Key number.

| NAME | TITLE(S) | | |
|---|---|---|---|
| Kenneth Francik | PRESIDENT (OR EQUIVALENT OF) | | |
| ADDRESS | CITY | St | Zip |
| 687-C Lariate Ln | Simi Valley | CA | 93065 |
| NAME Annette Emerson | TITLE(S) SECRETARY (OR EQUIVALENT OF) | | |
| ADDRESS | CITY | St | Zip |
| 1380 Greg St #204 | Sparks | NV | 89431 |
| NAME Annette Emerson | TITLE(S) TREASURER (OR EQUIVALENT OF) | | |
| ADDRESS | CITY | St | Zip |
| 1380 Greg St #204 | Sparks | NV | 89431 |
| NAME Lanny Neel | TITLE(S) DIRECTOR | | |
| ADDRESS | CITY | St | Zip |
| PO Box 324 | Honomu | HI | 96728 |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of NRS 360.780 and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X Signature of Officer

*Annette S Emerson*

Title Secretary/Treasurer   Date 9-2-04

Nevada Secretary of State Form ANNUAL LIST-PROFIT 2002
Revised on 09/24/03

# EXHIBIT "D"

**Wagners' May 2004 Corporate Resolution requested by Board of Directors**

# WORLD BOTANICAL GARDENS, INC.

**PO Box 411, Honomu, HI 96728**
**808 964-5535; wbgi@hotmail.com**
**www.wbgi.com**

## CORPORATE RESOLUTION

### (Sale of Land)

WHEREAS, the World Botanical Gardens, Inc. (WBGI) is in the business of developing and sustaining, in perpetuity,  a World Class botanical garden on the Island of Hawaii, and

WHEREAS, the World Botanical Gardens, Inc. has, by and through the Board of Directors of World Botanical Gardens Joint Venture Partnership, received a directive to sell to Richard Alderson that surplus 31-acre parcel adjacent to the Honopueo Stream not needed for the Gardens development, and

WHEREAS, the World Botanical Gardens, Inc. has deemed such directive to be in the best interests of the partnership and in furtherance of the interests of the Gardens development,

THEREFORE, be it RESOLVED that the World Botanical Gardens, Inc. should continue with such development by consummating the sale of said 31-acre parcel to Richard Alderson in accordance with the contract privately entered into between Richard Alderson and WBGI.

DATED:      May 17, 2004


Walter L. Wagner,
President, WBGI

Linda M. Wagner,
Secretary/Treasurer, WBGI

# EXHIBIT "E"

**Transcript of Judge Nakamura's Description of Illegal Arrest at "Trial"**

+NOTICE

This transcript cover has been sealed to protect the transcript's integrity. Breaking the seal will VOID the reporter's certification page.

```
 1              IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

 2                         STATE OF HAWAII

 3     _____
                                        )  CIVIL NO. 5-1-210
 4     WORLD BOTANICAL GARDENS,         )
       INCORPORATED, a Nevada          )
 5     corporation,                     )
                                        )
 6              Plaintiff,              )
                                        )
 7          vs.                         )
                                        )
 8     WALTER WAGNER; LINDA WAGNER;     )
       DAN PERKINS; DAVID ADAMS; JOHN  )
 9     DOES 1-10; JANE DOES 1-10, and  )
       DOE ENTITIES 1-10,              )
10                                      )
                Defendants.             )
11     _____)

12                    TRANSCRIPT OF PROCEEDINGS

13     held in connection with the above-entitled cause

14     before the Honorable Greg K. Nakamura, Circuit Court

15     Judge, presiding, on the 11th day of September, 2008.

16     APPEARANCES:

17     THOMAS L.H. YEH, AAL          for Plaintiffs
       85 W. Lanikaula Street
18     Hilo, HI  96720

19     Mr. Walter Wagner            Defendant, Pro Se
       P. O. Box 411
20     Honomu, HI  96728

21

22     REPORTED BY:  Geraldine Saffery

23

24

25
```

GERALDINE L. SAFFERY, CSR 328, RPR
Transcript Authenticated by Original Signature & Seal

1      THURSDAY, SEPTEMBER 11, 2008
2                ---oOo---
3          THE CLERK:  Civil No.  05-1-210 World
4   Botanical Gardens, Inc., vs.  Walter Wagner, Motion to
5   Dismiss, or Alternatively for a New Trial.
6          MR. YEH:  Good morning, Your Honor.
7   Thomas Yeh representing World Botanical Gardens, Inc.
8          THE COURT:  Good morning.
9          MR. WAGNER:  Good morning.  Walter
10  Wagner.
11         THE COURT:  Good morning.
12         So can the parties limit their remarks to
13  five minutes each?  Mr. Wagner?
14         MR. WAGNER:  Uh, yes, Your Honor.
15         I don't think there's any question but
16  that, uh, this fellow Francik was lying to the grand
17  jury; it's fairly well evidenced by the affidavits that
18  have been submitted in support of this.  Um, and there's
19  no question that that lying resulted in the issuance of
20  a, uh, um, warrant for, uh, Linda Wagner's arrest, and
21  mine as well, and, uh, that as a consequence of the
22  exercise of that, uh, that, uh, both of us were unable
23  to, uh, attend the trial.
24         Um, it's that kind of a, um, gross
25  unclean hands that, uh, what allows for this Court to

1    have, uh, jurisdiction to set aside the existing
2    judgment and -- and -- and issue a new trial or request
3    for a new trial.  It also, um, allows, because of the
4    lengthy delays in this process, for this Court to have
5    jurisdiction to actually dismiss the case, uh, because
6    this is a -- a failure to timely prosecute, uh, because
7    it's been, uh, act -- actions which are in essence, uh,
8    causing a continuation of this, um, lengthy case.
9                And the, um, claim by Mr. Yeh and
10   Mr. Francik that, uh, Ms. Wagner was not an officer of
11   WBGI in January 1st, 2004, is simply, uh, refuted by
12   Mr. Francik's own testimony.  I'd like to at least read
13   a little bit of that into court.
14               And this was, uh, his testimony before
15   the grand jury.  Uh, there was a question posed to him
16   that it says:
17               "Now, at any time between July,
18          2004, through September, 2004, did Walter
19          Wagner have the title of president of
20          WBGI?"
21               And the answer was, by Mr. Francik:
22               "Actually, he was still listed
23          on the corporate filing documents [sic]
24          with the State of Nevada.  So let me try to
25          clarify this a little bit.  Every year, as

08

GERALDINE L. SAFFERY, CSR 328, RPR
Transcript Authenticated by Original Signature & Seal

1       a corporation, you file your list of

2       officers, and you pay your corporation fees

3       to the state.  We are a Nevada corporation.

4       So when we renewed our corporation filing

5       fees -- when we renewed our corporation

6       filings or paid our fees, it would have

7       been in early 2004.   And at that point in

8       time, he was actually listed as president."

9       [sic]

10              So, uh, this Court has also seen the, uh,

11  documents that were filed in January -- in February of

12  2004, and they show that, uh, not only was I listed as

13  president, but that Linda Wagner was listed as the

14  secretary, and, uh, I was also listed as a director of

15  the corporation; and months later, uh, Ms. Emerson did

16  file another document with Nevada and that document

17  listed me again as the president and her as a resident

18  agent, not as an officer.

19              Thank you, Your Honor.

20              THE COURT:  Mr. Yeh?

21              MR. YEH:  Thank you, Your Honor.

22              I think what, uh, the hallmark of

23  Mr. Wagner's method of operation is, is kind of

24  illuminated by these so-called listings which he refers

25  to which are in essence hearsay documents.  This Court

08

1   has been presented a wealth of evidence at trial, in

2   motions, showing that what in fact occurred is contrary

3   to what was listed and which he continues to refer to.

4            Now, one of the things that I wanted to

5   point out today for the Court is we pointed out to

6   Mr. Wagner on numerous occasions that when you file a

7   document with the court you're also suppose to attach a

8   certificate of service.  So what his -- what his method

9   of operations has been is he files documents with the

10  court, he files certificate of service with a court, but

11  he doesn't serve us.

12           So yesterday I had the clerk of our

13  office make sure that she kept the actual mailing that

14  Mr. Wagner did.  We never get certificates of service,

15  so we checked with the court with respect to the

16  opposition memo that was filed with the court.  I think

17  it was on Monday.  So what Mr. Wagner did is he filed

18  with the court a rebuttal to our memo in opposition on

19  September 8th at 10:37 a. m.  He also filed with the

20  court, but didn't serve on us, a certificate of service

21  saying that he mailed that document to us on

22  September 8th.  So the court's record reflects that.

23           We have the envelope showing that this

24  document was mailed on September 9th.  And I have, um,

25  the original envelope for the court and I'll present

GERALDINE L. SAFFERY, CSR 328, RPR
Transcript Authenticated by Original Signature & Seal

08

1   Mr. Wagner -- he knows what he mailed.  And if I may

2   present to the Court the actual postmarked envelope?

3                       We have indicated to the Court that

4   Mr. Wagner -- this is not just a procedural

5   irregularity.  This is fraud upon the Court and fraud

6   upon the parties.  We requested the Court for a

7   determination of vexation litigate -- litigant on behalf

8   of Mr. Wagner.  This is yet another piece of evidence of

9   the frauds that he perpetrates.

10                      So his M.O. and his hallmark is to file

11  things that are misleading and untrue, and to later

12  refer to them as the truth.  That's reflected in the

13  listings that he refers to in Nevada.

14                      So for all the reasons that we've

15  provided to the court, both in trial as well as at our

16  opposition memo, the motion needs to be denied and he

17  needs to be determined a vexation litigant.

18                      Thank you.

19                      MR. WAGNER:  Uh, Your Honor, uh, when

20  something is deposited into the mail on September the

21  8th, um, it depends upon what time it's received at the

22  post office as to whether or not it gets stamped.  Um,

23  if it's deposited into the mail after, uh, 2:30 or

24  thereabouts, it isn't picked up actually by that post

25  office until the following morning and that's when

1   they'll stamp it.  So anything that we deposit into --

2   into the mail after, uh, 2, 2:30, uh, doesn't actually

3   get stamped until September the 9th even though it was

4   deposited into the mail on September the 8th.

5           There is no fraud involved in that, Your

6   Honor.  That's simply the mechanism of the postal

7   service.  This is -- this is just typical of Mr. Yeh's

8   accusations, trying to point fraud to myself when in

9   fact his client is the one who's engaged in extensive

10  fraud about lying about who was the officers and when,

11  and that's been very well documented before this court.

12          Thank you, Your Honor.

13          THE COURT:  Okay.

14          So the Court will deny the motion.

15          Um, with respect to the contention that,

16  um, Mr. Francik participated in the criminal case which

17  resulted in Mrs. Wagner being indicted and thereafter

18  pursuant to the indictment arrested, Court doesn't see

19  any connection with respect to, um, Mr. Francik

20  testifying as a witness in the grand jury proceeding and

21  this civil action.

22          Moreover, um, it is pretty clear that

23  Mrs. Wagner knew that she had been indicted, that she

24  would be subject to arrest, and she, frankly, could have

25  taken care of that matter so that she wouldn't be

1   arrested at an inconvenient time such as during the
2   trial proceeding.
3          Um, for whatever it's worth, the Court,
4   um, did not participate in the timing in regard to
5   Mrs. Wagner's arrest.  Um, for what -- whatever reason,
6   and I don't know why, the deputy sheriffs knew that
7   Mrs. Wagner was present in court, and they approached
8   me, through my law clerk, asking permission to arrest
9   her, um, I guess this is a courtesy to the court, rather
10  than coming into court while -- while the trial is
11  proceeding and just seizing her.  Um, when they were at
12  the door, I assumed the reason why is they were going
13  to -- wanted -- they were going to arrest Mrs. Wagner,
14  and the Court took a recess so we wouldn't have an
15  unseemly situation where the deputy sheriffs arrest
16  Mrs. Wagner during ongoing court proceedings.  And
17  that's simply what happened.
18          As I said, Mrs. Wagner could have taken
19  care of that issue by turning herself in earlier before
20  trial, posting bail, and being available for trial.  She
21  declined to do that; that was her choice.
22          Mr. Yeh, please submit a form of the
23  order.
24          MR. YEH:  We'll do, Your Honor.
25          Thank you, Your Honor.

```
 1                    THE COURT:  Off the record.              08:
 2     (Hearing adjourned at 8:17 a. m.)
 3                          ---oOo---
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

GERALDINE L. SAFFERY, CSR 328, RPR
Transcript Authenticated by Original Signature & Seal

# EXHIBIT "F"

**Motion for Recall of Warrant and Dismissal of Case**

WALTER L. WAGNER     HB-1
PO BOX 411
HONOMU, HI 96728
808 964-5535          Voice
*Pro se*

FILED

2008 APR 24  AM 8: 27

L. COSTER, CLERK
THIRD CIRCUIT COURT
STATE OF HAWAII

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

--ooOoo--

| | | |
|---|---|---|
| STATE OF HAWAII, | ) | CR. NO. 08-1-0097 |
| | ) | |
| Plaintiff, | ) | **POINTS AND AUTHORITIES IN** |
| | ) | **SUPPORT OF MOTION TO DISMISS** |
| vs. | ) | **AND RECALL OF BENCH WARRANT;** |
| | ) | **EXHIBIT "A"** |
| LINDA M. WAGNER, | ) | |
| WALTER L. WAGNER, | ) | Date:  May 9, 2008 |
| | ) | Time:  1:30 PM |
| Defendants. | ) | Court: Hon. Greg K. Nakamura |
| | ) | |

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND RECALL OF BENCH WARRANT

I

INDICTMENT FAILS TO GIVE NOTICE OF ALLEGED FACTS

The indictment document provides no averment of fact as to the actions taken by either defendant that would constitute a violation of penal provisions, and in particular that would constitute either an attempted theft, or an identity theft.

Hawaii's Rules of Penal Procedure, Rule 12, allows for the filing of a motion to dismiss pursuant to the prior provisions of Hawaii Penal Code, Rule 806-34, which

requires that the accused be given "reasonable notice of the facts", and that averments which fail to do so are insufficient to charge the accused.

In the instant indictment document, there are no averments that show or tend to show the property which was the subject of the alleged attempted theft, or what actions of the defendants would have constituted an attempted theft. Nowhere are the defendants apprised of what conduct or actions of theirs somehow violated penal provisions pertaining to theft, and the indictment is accordingly fatally defective.

Likewise there are no averments that show or tend to show what or who was the subject of the alleged identity theft, or what actions of the defendants would have constituted an identity theft. Nowhere are the defendants apprised of what conduct or actions of theirs somehow violated penal provisions pertaining to identity theft, and the indictment is accordingly fatally defective.

The preferred method for a defendant to raise a constitutional right to due process in a criminal prosecution is by way of a motion to dismiss. *State v. Hanapai*, 89 Haw. 177, 970 P.2d 485, 1998 Haw. LEXIS 520 (1998). Further, the requirement of sufficiently alleging all of the essential elements of the offense charged may not be waived or dispensed with. *State v. Jendrusch*, 58 Haw. 279, 567 P.2d 1242, 1977 Haw. LEXIS 109 (1977). The failure to sufficiently allege all of the essential elements of the offense charged is ground for reversal, even when raised as an issue for the first time on appeal. *State v. Jendrusch*, supra. Such objection is even timely even though first raised in a motion for a new trail, in a motion for arrest of judgment, on appeal, or by collateral attack. *State v. Tuua*, 3 Haw. App. 287, 649 P.2d 1180, 1982 Haw. App. LEXIS 149 (1982)

**2**

II

## ALLEGED UNDERLYING FACTS, IF INCLUDED IN AN AMENDED INDICTMENT, ARE LAWFUL ACTIVITIES

It is clear that the facts were not alleged in the indictment because if they were, it would be obvious that the alleged facts do not constitute criminal activity.  Indeed, they constitute exemplary activity of citizens exercising their rights to use of the civil courts.

Because the defendants were unable to ascertain from the indictment document what activities of theirs were being complained of, they retained the services of a Private Investigator to ascertain indirectly what the complaining party was telling the grand jury.  It is expected that the grand jury transcripts will support the findings of the Private Investigator, which are summarized in the supporting affidavit of defendant Walter L. Wagner.

Those averments which are missing from the indictment are essentially the same for both defendants, and allege two primary scenarios of events; 1) the fact that defendant Dr. Wagner, assisted by Linda Wagner, made use of the civil courts to file a civil action [CV04-1-0232; Intermediate Court of Appeals No. 28998] against a corporation [WBGI], which action is still pending; and 2) the fact that defendant Dr. Wagner asserted to the trial court in August, 2004 that he was the president of WBGI.  It is an undisputed fact that the records of the Secretary of State for the State of Nevada continuously showed Dr. Wagner as the President of WBGI, from its inception in 1995 as a Utah corporation, and again thereafter from its inception as a Nevada corporation in 2001, through and until at least sometime in September, 2004.  Additionally, sworn affidavits from both the "complaining party", Kenneth Francik, as well as from the Wagners, likewise show that Dr. Wagner was the President of WBGI in August, 2004 when he appeared in court and asserted he was WBGI's President.

**3**

Accordingly, as a matter of law, no identity theft of the identity of WBGI or of its presidency or other offices could have occurred by the defendants.

Further, as a matter of law, the defendants are and were privileged to file and participate in civil actions to recover monies owed to defendant Dr. Wagner from WBGI, and such activity as a matter of law is lawful activity and cannot be considered a crime, even if ultimately Dr. Wagner were to eventually not prevail on that action, which is currently pending before the courts.

Indeed, it would appear that the filing of the indictment document itself constitutes a civil offense against the Wagners.

Attached herewith as Exhibit "A" is the *Jurisdictional Statement* filed before the Intermediate Court of Appeals on April 23, 2008 showing that the underlying civil action is currently pending.

WHEREFORE, it is respectfully requested that the indictment be dismissed, with prejudice against refiling, on the basis that it fails to allege facts sufficient to state a valid claim of violation of penal provisions, and on the basis that any attempt to amend it would amend it with facts which do not constitute a violation of penal provisions.

DATED:      April 24, 2008


_____
Walter L. Wagner

_____
Linda M. Wagner