WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT

2012 APR 17 P 2: 42

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

---

WALTER L. WAGNER,            )     Case:   2:11cv00784
                             )
   Plaintiff              )     **MEMORANDUM   OF   LAW   IN**
                             )     **SUPPORT OF OPPOSITION**
   vs.                    )     **TO REQUEST FOR STAY, ETC.**
                             )
PRESTON MICHIE, KENNETH      )
FRANCIK, LESLIE COBOS, MARK  )
ROBINSON, ANNETTE EMERSON    )
STEVE BRYANT, WORLD BOTANICAL )
GARDENS, INC. (WBGI),        )     **District Judge Clark Waddoups**
                             )
   Defendants             )     **Magistrate Judge Paul Warner**
                             )

---

## MEMORANDUM OF LAW IN OPPOSITION TO REQUEST FOR STAY, ETC.

I

## INTRODUCTION

Defendants have requested a stay of this action to await the outcome of the *First Hawaii Case* that was reversed at the appellate level and remanded to a trial court to determine how much money is owed to plaintiff herein on his 2004 *quantum meruit* claim against defendant WBGI herein.  The defendants claim that the issues of the instant 2011 case (ongoing defamations since 2008, and a request for appointment of a Receiver) are identical to the issues of the prior 2004 Hawaii case (breach of contract for services rendered to WBGI between 1995 and 2003).

In reality, their motion to stay is but more of the ongoing fraud, waste and mismanagement of the WGI shareholder resources, and again argues for appointment of a Receiver.  As we see below, not only is the doctrine of issue preclusion inapplicable herein, they have presented no facts (affidavit or otherwise) to counter the extensive factual evidence submitted by plaintiff.

///

///

2

II

## ISSUE PRECLUSION NOT APPLICABLE IN THIS STAY REQUEST

Defendants apparently are seeking a stay of this case in order for the pending Hawaii case to reach a conclusion, hoping that there might be some facts that are tangentially related upon which they might be able to seek issue preclusion thereon.  By the same argument, one could ask for a stay of the pending Hawaii case hoping that the facts to be litigated herein could serve as issue preclusion in that case.

But the two cases are not related, other than by parties, and they have entirely different issues before them.  The Hawaii case seeks a *quantum meruit* determination of the value of the services provided by plaintiff herein between 1995 to 2003 for his labor in building a botanical garden – a contract action. The instant case is primarily a tort action of defamation stemming initially from acts of defamation commencing circa 2008, some five years after the work of the Hawaii case was completed, with the defamation ongoing by numerous parties through to at least the filing of the First Amended Complaint.  As shown in the accompanying affidavit, the facts to be litigated in the 2004 Hawaii action are entirely different than those to be litigated in the instant 2011 action.  The Hawaii action will resolve facts as to the total amount of work performed by

3

plaintiff between 1995 and 2003, and its value. That work did not involve record-keeping or other aspects of the instant case allegations. It is not a case regarding his work as a WBGI officer or Director (involving recordkeeping), for which he had no compensation agreement. Rather, it is a case based entirely on the extensive amount of labor performed by plaintiff in building a botanical garden, and the value of that labor.

A)   Issue Preclusion Doctrine is Sound

The doctrine of issue preclusion, as developed by the state and federal courts over the course of years, is sound. If an issue of fact or law has already been litigated and decided by a court of competent jurisdiction, why re-litigate it?

To prevent injustice in some cases, such as where a party itself never had the opportunity to litigate, or where a reason to aggressively litigate was absent in the first case, but present in the second, or where a party is deprived of a full and fair opportunity to litigate in the prior case for which issue preclusion is sought, the courts have developed standards to determine when issue preclusion is applicable. Those standards have developed into four essential requirements or 'prongs' as determined by many cases over the years.

///

///

4

Under the general principles of collateral estoppel or issue preclusion as detailed in *National Labor Relations Board v. Thalbo Corp.*[1], a judgment in a prior proceeding bars a party and its privies from relitigating an issue if, but only if the following four standards are met:

(1)   *the  issues in both proceedings are identical;*

(2)   *the issue in the prior proceeding was actually litigated and actually decided;*

(3)   *there was a full and fair opportunity to litigate in the prior proceedings,* and

(4)   *the issue previously litigated was necessary to support a valid and final judgment on the merits.*

"*With respect to the determination of whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which*

///

///

---

[1] *N.L.R.B. v. Thalbo Corp.*, 171 F.3d 102 (**1999**); for the same four-pronged standard see also: *Jet., Inc. v. Sewage Aeration Systems*, 223 F.3d 1360 (**2000**), rehearing and rehearing denied, on remand, 2003 WL 355736 (**2003**); *Abbott Laboratories v. Dey L.P.,* 110 F.Supp2d 667 (**1996**); *Alevras v. Tacopina*, 399 F.Supp.2d 567 (**2005**); *Silva v. Mid Atlantic Management Corp.,* 277 F.Supp.2d 460 (**2003**); *General Electric Co. v. Deutz AG*, 129 F.Supp.2d 776, reversed 270 F.3d 144 (**2000**); *State v. One Single Family Residence at 1810 East Second Avenue, Flagstaff, Ariz.*, 969 P.2d 166, 193 Ariz. 1 (**1997**); *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229 (**1998**), as modified on denial of rehearing on subsequent appeal 2005 WL 851616 (**2005**); *O'Neill v. Simpson*, 958 P.2d 1121 (**1998**); *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196 (**2003**); *Safeco Ins. Co. of Illinois v. Laskey*, 985 P.2d 878, 162 Or.App. 1 (**1999**).

*comprise the practical realities of litigation must be examined.[2]  In determining whether a party has had a full and fair opportunity to litigate an issue, the court should proceed cautiously on an* ad hoc *basis and examine the facts of each case.[3]*

*A party may be held to not have had a full and fair opportunity to litigate an issue where the party against whom collateral estoppel is being asserted lacked incentive to vigorously litigate in the prior action[4], such as where the amount at stake in the first litigation was insignificant[5] or if the future litigation was not foreseeable.[6] ...*

*The factors courts have considered in determining if a party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate an issue in the prior litigation include, besides the incentive to litigate in the first*

---

[2] *Butler v. Stover Bros. Trucking Co.,* 546 F.2d 544, 22 Fed. R. Serv. 2d 1225 (7th Cir. **1977**); *Benjamin v. Coughlin* 643 F.Supp. 351 (S.D. N.Y. **1986**); *Moore v. Aegon Reinsurance Co. of America*, 196 A.D.2d 250, 608 N.Y.S.2d 166 (1st Dep't. **1994**)

[3] *McCoy v. Colonial Baking Co.,* Inc., 572 So. 2d 850 (Miss. **1990**)

[4] *in re Towe*, 147 B.R. 545 (Bankr. D. Mont. **1992**), decision aff'd, 74 A.F.T.R.2d 94-7423 (D. Mont. **1994**), aff'd 97 F.3d 1461 (9th Cir. **1996**); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (**1980**); *Parklane Hosiery Co., Inc. v. Shore*, 439 U,S, 322, 99 S.Ct. 645, 58 L.Ed2d 552, 26 Fed. R. Serv. 2d 669 (**1979**); (and nine others circa 1986-1993)

[5] *Parklane Hosiery Co. Inc. v. Shore*, supra; (and nine other case citations circa 1965-1989)

[6] *Parklane Hosiery Co., Inc. v. Shore*, supra; (and seven other case citations circa 1980-1994)

*action and the foreseeability of the second action, include ... whether the party to be estopped without fault of his or her own was deprived of crucial evidence or witnesses in the prior litigation.*[7,8]

B)   Issue Preclusion Does Not Apply

While the instant matter does not meet ANY of the four prongs for the issue preclusion standard set forth by the courts, the one most glaring prong is that of a full and fair prior litigation.

Defendants have essentially conceded all of the facts filed herein by plaintiff and others who have filed in support, as none of the facts set forth by plaintiff, and those supporting him in numerous sworn affidavits, have been contested by defendants with opposing affidavits.

It is essentially uncontested that defendant Francik, operating for and on behalf of defendant WBGI, used criminal fraud to deprive plaintiff of a trial in the *Second Hawaii Case*, which resulted in the *Second Hawaii Decision* that they

---

[7] *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.E. 2d 788 (**1971**); *Snider v. Consolidation Coal Co.*, 973 F.2d 555 (7th Cir. **1992**); *General Dynamics Corp. v. American Tel. & Tel. Co.*, 650 F.Supp 1274 (N.D. Ill. **1986**); *Richardson v. Four Thousand Five Hundred Forty-Three Dollars, U.S. Currency*, 120 Idaho 220, 814 P.2d 952 (Ct. App. **1991**)

[8] *American Jurisprudence 2d* , Judgments, section 575, **Requirements of full and fair opportunity to litigate issue in prior action and of fairness – Factors in determining if party to be estopped had full and fair opportunity to litigate in prior action.**

previously relied upon for issue preclusion.  Having missed his first bite at the apple due to defendants' uncontested criminal activity of lying to a grand jury in Hawaii, defendants now seek to deprive plaintiff of his first actual bite, claiming 'issue preclusion'.   Apparently, however, recognizing the weakness of that argument, they now also seek a 'stay'.  Defendants' criminal fraud in depriving plaintiff of an actual trial in that *Second Hawaii Case* is such a glaring example of deprivation of the "*full and fair opportunity to litigate*" prong requirement that they now switch to a stay request instead.

Moreover, the *Nevada Decision* likewise runs afoul of all four prongs, but again, the most pronounced is the '*full and fair opportunity to litigate*' prong.  In the *Nevada Case*, as is shown in the uncontested facts, the sole issue that was being litigated was the issue of which of two Boards of Directors was properly constituted to govern WBGI (the governance issue).  All monetary issues had been agreed upon by the parties to be litigated in Hawaii (*Second Hawaii Case*).

Accordingly, the uncontested facts show that plaintiff herein had several witnesses pertaining to monetary claims, including alleged record-keeping deficiencies, sales of his personal shares or other alleged misappropriations, etc. who had no information on the sole issue that was before the Nevada court and were accordingly not called as witnesses on matters that were clearly extraneous to the sole issue before the Nevada court.  Plaintiff herein had no

incentive to vigorously litigate issues pertaining to his record keeping, his alleged misappropriations (alleged poor appropriations) of monies, or other factors when he had served as the WBGI president, because they did not pertain to the sole issue pending before the Nevada court.  That sole issue was whether Ron Tolman's Board was the proper Board of Directors, or whether the fraudulent election of the Ken Francik Board should empower the Francik Board with the WBGI shareholder monies.   There was no impetus whatsoever to litigate issues pertaining to plaintiff Wagner's service on behalf of WBGI, as the quality of his service to WBGI was not an issue as to the then pending governance issue, which dealt entirely with the propriety of the Tolman Board appointment versus the propriety of the Francik Board 'election'.

Moreover, it was certainly not foreseeable that tangential matters raised during the Nevada Case at that trial would be subsequently requested to serve as the basis for issue preclusion on future acts of defamation, including criminal defamation by defendant Francik.   Accordingly, there was no basis for a vigorous defense of the false allegations that were otherwise tangential to the governance issue, and after-the-fact insertion of dicta of matters not actually litigated, regarding falsely alleged deficiencies of record keeping or falsely alleged misappropriations of funds.

Those issues were to be litigated solely in the *Second Hawaii Case*, which never happened because of the criminal fraud of defendant Francik. While defendants now try to argue that plaintiff Wagner was not obligated to go bail out his wife (!) when she was removed from the courtroom in Hawaii by court order[9] in collusion with defendant Francik's perjury, they ignore the fact that she was a critical key witness in the case then pending against Wagner, so even if they were correct in saying that plaintiff Wagner should have remained behind and abandoned his wife to the vagaries of the penal system in Hawaii, they still run afoul of the '*full and fair opportunity to litigate*' prong as he was now missing his critical key witness due entirely to the criminal fraud of defendants' lying to the Hilo grand jury, and accordingly missing both the <u>full</u> opportunity, as well as the <u>fair</u> opportunity, to litigate the factual issues they now rely upon for their claim of 'issue preclusion'.

Of course it is hoped that this honorable Court disagrees with defendants' sentiment that plaintiff should have abandoned his wife and not gone to bail her out from the fraudulent charges lodged against her by the criminal acts of defendant Francik. Because of plaintiff Wagner's complete awareness of the innocence of his wife, and his awareness of the criminal activity of defendant

---

[9] The bench warrant had been signed by Judge Nakamura himself, and he exercised his own warrant in arresting the Wagners.

Francik before the Hilo grand jury and the obvious collusion of the trial court with defendant Francik, he had every reason to be concerned regarding his wife's well-being within the vagaries of that system.   The only reasonable course for him was to go and bail out his wife, in the hopes that the "trial" would have been stayed by the court *sua sponte*, and then return with her to allow the trial to resume.   But of course, that was not the intent of that judge, and that "trial" proceeded on without the Wagners being present, depriving them of an actual trial within the meaning of American jurisprudence.

C)   Issue Preclusion Will Not Apply in *First Hawaii Case*

Having recognized the unsoundness of their issue preclusion arguments previously made by defendants pertaining to the *Nevada Decision* and *Second Hawaii Decision*, defendants now instead seek a 'stay' of these proceedings to allow the 2004 *First Hawaii Case*, recently remanded in 2012 for further proceedings, to make findings of fact and conclusions of law in the hopes that they might be able to rely upon issue determinations for issue preclusion at some distant time in the future.

///

///

///

11

But defendants ignore entirely the nature of the *First Hawaii Case* and the issue before that court[10]. While the trial court (Judge Hara) did make brief dicta that exactly contradicted the public record of Nevada (as detailed in the accompanying affidavit), that dicta is not controlling and was not litigated. Indeed, the public records of Nevada, which are official records of Nevada's Secretary of State, are controlling as to the identity of WBGI's officers between April 2001 (date of incorporation) and September 2004 (date Change-of-Officer form submitted by defendants to replace Wagners as officers). The dicta inserted by Judge Hara's *judge pro tempore* for his signature, and which facts were not litigated, cannot be controlling thereon, particularly in light of the official public records of the Secretary of State for Nevada, which are controlling and which show the Wagners continuously as WBGI officers until September 2004.

The issue to be litigated in Hawaii now does not pertain to plaintiff's record keeping abilities, or when he was no longer a WBGI officer, or his falsely alleged poor-appropriation of funds, or any of his service as a WBGI officer.

---

[10] It is not determined which judge will hear that case for the further proceedings. Judge Hara, the original trial court judge, has recused himself from hearing matters involving plaintiff Wagner, when he recused himself from determining matters in the fraudulent criminal case initiated by defendant Francik. Likewise, Judge Nakamura offered to recuse himself from further proceedings. (He was allowed to remain on the criminal case in order to affirm its dismissal following the failure to prosecute.) Since there are only 2 judges in Hilo, the case will likely be sent elsewhere for further proceedings, and might take an additional eight years if history is any lesson.

Those issues simply do not pertain to the value of his labor, and are not necessary to support a valid and final judgment on the merits of his *quantum meruit* claim. Rather, that pending 2004 *First Hawaii Case* pertains entirely to the work he performed in building the botanical garden, and its *quantum meruit* value. This will involve detailing the facts of the actual construction of the botanical garden itself, the amount of his time involved, and the standard wages paid for such labor in the construction industry. None of those are issues upon which this Court could rely upon for purposes of issue preclusion in the instant matter, and his record keeping and appropriations as a WBGI officer are irrelevant to those factual issues.

Rather, the instant matter pertains to the issue of the criminal lying of defendant Francik to a Hilo grand jury and scores of other persons thereafter, including causing his lies and the fraudulent indictment derived therefrom to be recently published on defendant WBGI's website by defendant Mark Robinson. Additionally, the instant matter pertains to other recent false defamations of plaintiff including the knowingly false allegation to WBGI shareholders that plaintiff stole shareholder monies set aside directly into a Visitor Center account (over which plaintiff herein had no control), when defendants (or at least one of them) are the individuals who stole that money (which monies were used by

13

defendant Francik, *inter alia*, to fly himself to Hawaii to present his perjured testimony to that Hilo grand jury).

III

## CONCLUSION

In summary, it is uncontested that defendant Kenneth Francik utilized criminal perjury to preclude a full and fair trial in the *Second Hawaii Case*. Accordingly, the sound doctrine of issue preclusion cannot be applied to that case due its failure to meet the four-prong standard developed by the courts which requires, *inter alia*, a full and fair prior litigation.

Likewise, it is uncontested that the *Nevada Case* was conducted for the sole issue to be resolved by that trial court to be the determination of which of two competing Boards of Directors was properly in governance of WBGI (the governance issue). This was because of the fact that the *Second Hawaii Case* and the *Nevada Case* had been filed as essentially identical complaints filed in two different states by the Francik Board's attorneys, utilizing WBGI shareholder monies in contravention to the agreement between the Francik Board and Tolman Board to not spend shareholder monies foolishly on such nonsense. Accordingly, the parties agreed (during a hearing conducted in the *Second Hawaii Case* on Wagner's motion) that the *Nevada Case* would be used solely

to determine the governance issue, whereas the *Second Hawaii Case* would be restricted to solely monetary claims. That agreement was reached as a 'compromise' to allow both cases to proceed in both states, but to not allow duplicate issues to be decided in two different courts (which is contrary to extensive case law, cited by Wagner in support of his motion).

As a consequence, there was never a full and fair hearing on any factual claims or issues in Nevada that were related to the monetary claims, as they were unrelated to the sole issue of governance between those two competing Boards of Directors. In particular, parties who could have appeared and given testimony about plaintiff's record keeping and about the false allegations of misappropriations of WBGI funds were not flown to Nevada as they were not witnesses for the sole governance issue, but rather witnesses for the alleged monetary claims to be heard in Hawaii.

Again, the doctrine of issue preclusion fails on all four prongs, and strikingly so on the prong of having a prior full and fair litigation of the issue sought to be precluded. Here, defendants seek to preclude issues based on allegations of facts that were set forth in after-trial dicta that had no bearing on the sole issue of which of two competing boards of directors were properly in governance (the 10 shareholder Tolman Board that was properly appointed and approved by WBGI's attorney; or the 6 shareholder Francik Board that was

15

illegally elected).      In particular, the facts and circumstances of plaintiff
Wagner's service as a WBGI officer were wholly irrelevant to the issue of which
of those two boards were properly to be in control of WBGI's finances, which
was why he did not fly witnesses to Nevada who could have provided facts in
support of a full litigation of those 'facts'.  Rather, Ron Tolman, as Chairman of
the Tolman Board, produced witnesses[11] in the *Nevada Case* who could
present testimony that his Board of Directors was properly constituted, and that
the Francik Board was illegally elected.  Those witnesses had scant knowledge
of plaintiff Wagner's record keeping or appropriations of WBGI funds when he
had been WBGI's president, and witnesses pertaining to those issues of fact
remained in Hawaii.

Finally, recognizing the gross deficiencies of their claims for issue
preclusion based on the *Nevada Case* and *Second Hawaii Case*, defendants
herein now instead seek a 'stay' of the instant federal case.  They 'argue' that
the *First Hawaii Case*, recently remanded back to the trial court level some eight
years after it was filed in 2004 so as to determine how much money defendant
WBGI owes plaintiff Wagner based on the Francik Board having stiffed him his

---

[11] As noted in the prior affidavit, those witnesses included Mr. Tolman of Idaho, plaintiff herein Wagner, and Mr. Perkins of Utah, as well as witnesses called by the Francik board.  They did not include Linda Wagner (WBGI Secretary/Treasurer circa 1995-2004), David Adams (WBGI general officer manager circa 2002-2005), or Cliff Kamanaka (IRS agent overviewing WBGI circa 2001-2004).

salary over the course of nearly a decade, should be heard first. They do so in the hope that they can then possibly point to some facts or issues that might serve as a basis for issue preclusion herein.

But once again, issue preclusion fails on all four prongs. In particular, the facts show that the sole issue to be decided in Hawaii is how much money is owed to plaintiff Wagner based upon his labor between 1995 to 2003. The work he performed as a WBGI officer, for which he was not compensated, is not at issue. His record keeping or allegations of misappropriation are not at issue. They were to be at issue in the *Second Hawaii Case* that was scuttled by defendant Francik, not in the *First Hawaii Case* that is now back at the trial court level on remand eight years after it was filed. Not only has that case not been litigated, so that none of the doctrine of issue preclusion is applicable currently, there is no basis to stay the instant action to 'see what happens' in Hawaii. The issues of defendant Francik's criminal defamation of plaintiff Wagner and his wife over the course of many years, including publishing his defamation on the WBGI website, is not an issue before the *First Hawaii Case* court, nor is the issue of defendant Michie falsely alleging that plaintiff Wagner stole Visitor Center Account funds, as a means to cover up the theft of those funds by one or more of the defendants, an existing issue before the Hawaii courts.

Accordingly, it is respectfully requested that the motions to dismiss be denied in their entirety, the motion for a stay of these proceedings be denied, that this case be allowed to proceed forward, and that this Court appoint a Receiver to safeguard the precious few remaining assets of WBGI from the wanton and indiscriminate waste of shareholder funds that have been used to satisfy the criminal proclivities of defendant Francik et al.  It is also requested, in light of the failure of defendant WBGI to produce any facts that counter the extensive sworn affidavits on file herein, that this Court enters a summary judgment as to the liability of WBGI on the issues before this Court, leaving for further proceedings a determination as to the amount of that liability.

DATED:  April 16, 2012

Walter L. Wagner