WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT
2012 MAY 22 P 12: 06
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| WALTER L. WAGNER, ) </br> ) </br> Plaintiff ) </br> ) </br> vs. ) </br> ) </br> PRESTON MICHIE, KENNETH ) </br> FRANCIK, LESLIE COBOS, MARK ) </br> ROBINSON, ANNETTE EMERSON ) </br> STEVE BRYANT, WORLD BOTANICAL ) </br> GARDENS, INC. (WBGI), ) </br> ) </br> Defendants ) </br> ) | Case:   2:11cv00784 </br></br> **SWORN AFFIDAVIT OF WALTER L. WAGNER IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS** </br></br> **District Judge Clark Waddoups** </br></br> **Magistrate Judge Paul Warner** |

## SWORN AFFIDAVIT OF WALTER L. WAGNER IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

I, Walter L. Wagner, affirm, state and declare under penalty of perjury as follows:

1. I repeat and reaffirm all of my prior affidavits filed herein as if set forth in full.

2. The Individual Defendants named herein have now appeared in this matter by way of the most recent filing of May 11, 2012 by their attorney, Mr. Patrick Holden of the *Richer and Overholt, PC* firm. I believe this now confers jurisdiction of this Court over them, notwithstanding the fact that the certificates of waiver of service have not been returned to me for Mr. Steve Bryant and Mr. Mark Robinson, as have the others been returned and filed herein for Preston Michie, Kenneth Francik, Leslie Cobos and Annette Emerson.

3. It appears that the referenced recent filing is but a 'house-keeping' pleading to have the individual named defendants on record as filing the same motion to dismiss as was filed by the corporate defendant WBGI, and it will be addressed by the Memorandum of Law that will shortly be filed in opposition thereto. It does not appear that any novel arguments are presented, and

instead the refuted arguments previously presented are presented anew on behalf of the individual defendants.

4.   Counsel for defendants appears to believe that the extensive acts of defamation complained of herein in the instant First Amended Complaint are privileged conduct on the part of the defendants; i.e. that they are privileged to make false accusations of theft against myself, or make false accusations that I have been convicted of "attempted theft and identity theft" merely because they have boot-strapped those false allegations by the same false allegations before the courts, which were either refuted in those courts, or irrelevant to the issues before those courts, or were not litigated due to lack of a trial.  This will be addressed again in the soon to be filed Memorandum of Law in response thereto.  However, to give this Court more insight into the ring-leader of this band of false defamers, I will give a little more detail into his earliest examples of defamation (not complained of in the First Amended Complaint, though clearly tortious conduct) by which he dragged the other named defendants into his circle of lies.

5.   As mentioned previously, due to the aftermath of 9/11/2001, I began loaning money to WBGI on my personal credit cards, and WBGI began repaying those loans in 2003 through to May 2004.  In May 2004 defendant Kenneth Francik directed that those repayments should cease.  In June 2004 I arranged

a meeting with defendant Francik to voice my concerns regarding that financial impropriety. This meeting between Kenneth Francik and myself to discuss the then recent termination of the repayment agreement took place in June 2004 at *Ken's House of Pancakes* (a different 'Ken') in Hilo, Hawaii and we were the only two in attendance.

6. At that meeting, over lunch, we discussed the fact that the repayment program had been terminated, and that I personally would be unable to personally assume those payments on a continuing basis, as they were for about $1500/month on a minimal repayment program (which was what had been taking place – i.e. making the minimum monthly payments on about six credit cards). I expressed my concern that I would be forced to initiate suit for breach of contract on that breach if we could not work out an acceptable arrangement, but that I was not interested in bringing suit if it could be avoided.

7. In response to my concerns, defendant Francik suggested that I could, in the interim, sell some of my personal shares of WBGI ownership and use those proceeds to make those monthly payments as a means of avoiding default on those credit card payments. This was not something I had intended to do previously, and was an idea suggested to me by defendant Francik. Since this was not an 'entrapment' situation, i.e. since it was legal to sell my own property, I agreed to that as an interim solution, and shortly thereafter began selling some

of my own personal shares of WBGI, using the proceeds towards payments of those credit card obligations.

8. However, I was unaware at that time that I was being set-up in something similar to an entrapment. Specifically, I was unaware that it would be relatively easy for defendant Francik to simply thereafter lie about the fact of our conversation, and lie and falsely claim that I was selling the company treasury shares, not my own, which of course would have been illegal and an embezzlement. My thinking simply had not entertained that possibility on his part that he would start lying about me and our conversations.

9. After defendant Francik waited an appropriate period of time of about seven months, and after defendant Francik confirmed through the WBGI office manager (David Adams) that I was indeed selling some of my shares and having my share-count reduced in the WBGI corporate data base by Mr. David Adams, defendant Francik then sprang into action.

10. In January 2005 defendant Francik sent his long-time companion defendant Leslie Cobos to Hawaii to meet with Mr. Adams, whereupon she asked to see the share sale documentation for my own personal shares I had been selling. He then provided those to her (as she was also listed as a WBGI corporate officer at that time). Mr. Adams has previously filed extensive

documentation by way of sworn affidavits that he had been duly reducing my share count over time as he was provided with my personal share sale data, and that Ms. Cobos did not conduct an "audit" of the records to locate those, but she specifically asked him for them, as he had been having several phone calls previously with defendant Francik regarding my personal share sales.

11.   In late January or early February 2005, defendant Francik then conducted a telephone board meeting with defendant Mark Robinson, defendant Leslie Cobos, defendant Preston Michie, defendant Annette Emerson and Mr. Dan Perkins (his then 'board of directors'), and announced that he (defendant Francik) had "caught" me selling company treasury shares and embezzling the money. He further announced that I had been "caught" in this alleged crime by an "audit" conducted by defendant Leslie Cobos at the WBGI office. A few minutes after the conclusion of that board meeting in early 2005, Mr. Dan Perkins telephoned me and informed me of the false accusations being made about me by defendant Francik. A few days later Mr. Perkins tendered his resignation from that board chaired by defendant Francik because of Francik's lies. Subsequently, over time, Mr. Perkins also filed numerous sworn affidavits detailing those lies by defendant Francik.

12.   As a consequence of the extensive sworn affidavits filed by Mr. Adams and Mr. Perkins demonstrating how defendant Francik had been lying, no

criminal charges were filed for that falsely alleged embezzlement. Nonetheless, defendant Francik again repeated that lying to the Nevada court judge falsely claiming I had been selling WBGI treasury shares and embezzling the money, not my own personal shares as I had been directed to do earlier by defendant Francik as a means of avoiding suit for breach of the repayment agreement that defendant Francik caused to be breached.

13. Because I was not appearing in Nevada in defense of any monetary claims (but solely of the governance issue, as had been previously agreed between the parties as stated in my prior affidavits), I did not have Mr. Adams as a witness in Nevada to refute defendant Francik's falsehoods regarding the alleged embezzlement which he sought to proceed on in Nevada as a civil tort. Apparently, the trial court judge in Nevada chose to believe the lies of defendant Francik (likely because he smiles when he lies) and entered a monetary judgment against me based upon the falsely alleged sale of corporate treasury shares, not my own personal shares.

14. This *modus operandi* of defendant Francik, of setting actions in place that he can then twist with lies to make appear to be illegal, was my first encounter with his cunning schemes.

15. It appears that he also was able to have his WBGI associates (the named defendants herein except for Mr. Bryant, who did not become associated with defendant Francik until only just recently) believe his lies, notwithstanding the extensive evidence filed in court to the contrary, because they apparently don't read the court pleadings filed by myself and instead relied on defendant Francik for his 'explanations' of what he was doing in court.

16. In other words, based upon defendant Francik's lies, I apparently became 'fair-game' for the other defendants to begin making false statements about me, resulting in the actions complained of herein, without regard to any verification process by them.

17. Subsequently, defendant Francik did the same type of thing with his lying to the Hilo grand jury several years later. In early 2008 my suit for breach of the repayment agreement (it was filed in mid-2004 not long after the meeting at *Ken's House of Pancakes* due to other illegalities I saw defendant Francik engaged in, and amended in 2005 to add the credit card breach to the back-pay breach that was initially filed in 2004) was dismissed by the trial court (Judge Hara) when his *judge pro tempore* (Tom Yeh, serving as Francik's counsel in Hawaii) requested it. It was not until four years later that the Hawaii appellate court reversed Judge Hara and reinstated my claim for back-pay (but surprisingly not the credit card breach), which totals in excess of $450,000.

18. However, taking that initial dismissal in 2008 of my claim for back-pay as an opportunity for him to act, about three weeks after that dismissal he flew to Hawaii (using WBGI shareholder funds to pay for the flight, as the records show) and appeared before the Hilo grand jury and gave that perjured testimony detailed previously. Since according to the trial court judge I was not owed the money (i.e. he had dismissed the case without it going to trial), and since I had attempted to collect money by filing suit, Francik simply argued by way of his grand jury testimony that my filing suit for my back-pay was an 'attempted theft', which Francik 'supported' by his lies that Linda Wagner had been replaced as a WBGI corporate officer in 2003 by defendant Emerson, and therefore was not an authorized signatory on the Promissory Notes submitted in support of that suit. Since I was not there to refute those lies (as they have been since refuted in my prior affidavits filed herein, as well as in that criminal indictment case), and since the grand jury never had access to the Nevada corporate documents provided to this Court, the grand jury sided with defendant Francik's lies and granted his request to have an indictment issued.

19. Apparently, defendant Francik's counsel now wishes to bootstrap his defense that since Francik got away with lying previously, he and his associated defendants should be able to, with impunity, publish whatever lies they choose on the WBGI website to further defame me to my business partners in WBGI,

etc., including the lies of the dismissed indictment, and other lies about their theft of the WBGI Visitor Center Account monies as a means of covering up their own theft of those monies by falsely accusing me of that theft.

20. While this is not in the same category, for example, as lying to obtain a Social Security Number from Connecticut instead of one's home state, or lying to present a forged Selective Service System card or Birth Certificate, it is a type of lying that should be rooted out and eradicated by exposure of the truth, which is the purpose of this suit – to show the truth about that lying and to seek compensation for the spoils of that fraud on the courts and on the WBGI shareholders.

21. This lying has got to stop, and defendants need to be held accountable for their conduct in either promoting those lies, or otherwise engaging in actions which they know are wrong such as publishing a dismissed indictment on a corporate website in an effort to defame me nonetheless with the false accusations of that fraudulent indictment, and to otherwise seek to keep the fruits of all of those lies and falsehoods such as obtaining a 'judgment' by having myself removed from a courtroom based entirely on defendant Francik's lying to a grand jury and subsequent lying thereafter to maintain that fraudulent criminal prosecution.

22.   Because of the fact that it is now established by the appellate court that I am owed money by WBGI for my back-pay, it is also now appropriate for this court to appoint a Receiver to insure that WBGI monies are not used in defense of the individual defendants, and are instead paid to me as directed by that court.

DATED:   May 21, 2012

_____
Walter L. Wagner