WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT

2012 MAY 29  P 12: 57

DISTRICT OF UTAH

BY:_____
   DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | | |
|---|---|---|
| WALTER L. WAGNER, | ) | Case:   2:11cv00784 |
| | ) | |
|    Plaintiff | ) | |
| | ) | **MEMORANDUM OF LAW IN** |
|    vs. | ) | **OPPOSITION TO INDIVIDUAL** |
| | ) | **DEFENDANTS' MOTION TO** |
| PRESTON MICHIE, KENNETH | ) | **DISMISS** |
| FRANCIK, LESLIE COBOS, MARK | ) | |
| ROBINSON, ANNETTE EMERSON | ) | |
| STEVE BRYANT, WORLD BOTANICAL | ) | |
| GARDENS, INC. (WBGI), | ) | **District Judge Clark Waddoups** |
| | ) | |
|    Defendants | ) | **Magistrate Judge Paul Warner** |
| | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

I

### INTRODUCTION

Counsel for defendants Preston Michie, Kenneth Francik, Leslie Cobos, Mark Robinson, Annette Emerson and Steve Bryant (hereinafter "Individual Defendants") has appeared and filed on behalf of the individual defendants, providing *in personam* jurisdiction over those individual defendants. Additionally, all save defendants Mark Robinson and Steve Bryant have filed a waiver of service of process.

Counsel now essentially repeats the argument made previously on behalf of co-defendant WBGI, but in truncated version. For the same reasons as in the opposition previously filed, that argument fails as detailed below.

It is undisputed that defendants WBGI, Kenneth Francik and Mark Robinson (and possibly some or all of the other named defendants) caused to be placed on the WBGI website (with defendant Mark Robinson as the web-master, and defendant Kenneth Francik as the prime author) the dismissed and discredited 'Indictment' document, and left same on the website for at least a full year after the dismissal of the fraudulently obtained 'Indictment', and not until

2

after plaintiff obtained access to that shareholder section and learned he was being defamed, and filed the First Amended Complaint complaining of such, whereupon it was belatedly removed but without any form of corrective or other explanation that the document was obtained by criminal fraud and was untrue. It is further undisputed that none of the allegations of the indictment document are true, i.e. plaintiff Wagner was never engaged in either 'identity theft' or 'attempted theft'.

Further, it is undisputed that the 'Indictment' document placed on the WBGI website by defendants was done for the purpose of defaming plaintiff to his several hundred business associates, and it is undisputed that the 'Indictment' document was procured by the fraud of defendant Francik in giving secret perjured testimony to a Hilo grand jury[1].

It is to be further noted that the 'Indictment' document was not discussed by Magistrate Warner in his Report.

Rather, what was discussed in the Report were the other allegations of the complaint pertaining to the false defamation of plaintiff Wagner by defendants.    In addition to the causes of action for defamation stemming

---

[1] See sworn affidavits of plaintiff Wagner, et al., none of which have been countered by affidavits in opposition or other allegations refuting his assertions.

from wrongly placing that "indictment' document on the WBGI website, additional causes of action arise from the lesser wrongdoings of the other defendants

Defendant Michie falsely accused plaintiff Wagner (to one or more of his business associates) of the criminal theft of Visitor Center funds that had been deposited into a dedicated Visitor Center account, when it is now undisputed that those funds were stolen by one or more of the named defendants, not by plaintiff Wagner, and the false accusation against plaintiff Wagner was in an effort to 'cover-up' that theft.  To that claim defendants raise as a defense the 'argument' of issue preclusion, asserting that the "trial" in Hawaii resolved that issue by the 'finding' that plaintiff had engaged in other wrongful takings, which allegedly are of the same level of character.  What was not presented by them, and was presented in opposition, is that that "trial" was a fraud on their part as well, in that plaintiff Wagner was precluded from attending the same to litigate that issue, as detailed in his sworn affidavits and which fact is not disputed.

Additionally, defendant Bryant wrongly accused plaintiff Wagner of poor record keeping pertaining to required shareholder data, when it is now undisputed that the poor record-keeping was by one or more of the named defendants, not by plaintiff.  Again, to that claim defendants raise as a defense the 'argument' of issue preclusion, asserting that the "trial" in Hawaii, and the

4

trial in Nevada, resolved that issue as to plaintiff's record-keeping ability. They cited to matters of record-keeping alleged in the Nevada case, and the Hawaii "trial" in support of their contention of 'issue preclusion'. Again, plaintiff has amply countered that argument in his prior Memorandum of Law which addressed those issues, and in particular the fraudulent nature of the "trial" in Hawaii in which facts were not actually litigated, and the trial in Nevada which never addressed the issues of plaintiff Wagner's record-keeping, as the Nevada trial was restricted to solely the governance issue. In the governance issue, plaintiff Wagner's record-keeping was irrelevant to the determination as to which of two boards was properly entrusted with WBGI funds, and he did not fly his witnesses pertaining to that issue to Nevada as they were not at issue.

Finally, Magistrate Warner recommended dismissal of the fraud, waste and mismanagement claim based on his erroneous assumption that the claims by defendants that plaintiff was not owed money and they could therefore sell his shares to themselves at greatly discounted rates ($10/share, when other shareholders were paying $520/share) to cover a portion of the Nevada decision, when in fact it is now determined that they lied to the Nevada judge, plaintiff is in fact owed money for his services, and they had no right to sell his shares. Based upon that fraud upon the Nevada court (which could not be established at that time due to the lack of the Hawaii appellate court reversal at

that time), plaintiff indeed has standing to bring a fraud, waste and mismanagement action against defendants for their spending $700,000 of WBGI funds on themselves and their cronies to fraudulently avoid repayment of approximately the same amount of money that plaintiff Wagner had loaned to WBGI, and for which he filed suit which is now the reversed First Hawaii Decision.

II

## THE "POINT I" ARGUMENT IS REFUTED PREVIOUSLY

In support of its truncated argument, counsel for the individual defendants raises a single point ("Point I") that he breaks into three parts (A, B and C):

A)   Record Keeping

The individual defendants reference the finality of the Nevada Decision. While it is final, perhaps, with respect to the issues litigated, the fraud worked upon that Court in the false proclamation to that court by the defendants that plaintiff was not owed money (which is now determined to be false by the Hawaii Appellate Court) certainly renders the actions pertaining to the sale of plaintiff's shares to an individual member of that board at drastically discounted rate to be fraudulent, and therefore reversible by that Court, as well as by this honorable Court due to fraud.

6

However, that fraud did not go directly to the issues that were litigated at trial, though it should give this Court pause to consider in a new light the other frauds that were being successfully worked upon that Nevada court.

Specifically, as detailed in the undisputed facts of the sworn affidavits filed herein, the Nevada case stemmed from two original nearly-identical filings which sought monetary claims, and a determination as to the proper governance of WBGI. Those filings were the Second Hawaii Case (filed a few weeks prior to the Nevada filing) and the Nevada Case. Because it is improper to have two identical cases proceeding in two different jurisdictions, the Hawaii court early on determined that the (Second) Hawaii Case would be restricted solely to monetary claims, and the Nevada Case would be restricted solely to the 'governance' issue to determine which of two different boards of directors (ten-shareholder Tolman Board; or six-shareholder Francik Board) would be properly in control of the corporation.

As a consequence, none of the issues pertaining to plaintiff Wagner's activities while serving as WBGI President were at issue. Rather, the issue pertained to the method by which Mr. Tolman was appointed as Board Chairman versus the fraudulent election of defendant Francik to his Board. Regrettably, the Nevada court's wrong decision on that issue has essentially

caused the destruction of an otherwise viable corporation by placing a felon as head of the corporation.

Because plaintiff Wagner knew in advance that the case pending in Nevada pertained solely to the governance issue, witnesses who could have provided testimony in support of his record-keeping, and the reasons for his decisions pertaining thereto, were not flown to Nevada from Hawaii.

However, at that trial, defendants sought to introduce facts pertaining to plaintiff's record keeping, apparently in an effort to sway the trial court judge in the absence of facts showing defendant Francik as legitimately elected, and apparently in an effort to wrongfully seek monetary claims, and those facts were simply not litigated within the meaning of the doctrine of 'issue preclusion', as discussed in the previous Memorandum of Law.

The one monetary claim that the trial court did find against plaintiff was based on defendant Francik's perjured assertion that plaintiff Wagner had sold the corporate treasury shares, not his own personal shares.  That perjury to the Nevada court by defendant Francik is detailed somewhat in the prior uncontested sworn affidavit of plaintiff Wagner in which the origin of that fraud at *Ken's House of Pancakes* is detailed.   Deciding to side with the fraudulent version being told by defendant Francik, the trial court judge issued a judgment

8

against plaintiff Wagner for the value of the shares of his that he sold, under the false impression they were corporate treasury shares not his own shares, but confusedly further required a reduction in the number of plaintiff Wagner's shares as if he had sold his own shares. However, that judgment dollar amount is for about ½ of the dollar amount that plaintiff Wagner is owed by defendant WBGI in the First Hawaii Case (unpaid back pay).

B)   <u>False Allegation of Misappropriation of WBGI Funds and the 2004 Note:</u>

Counsel for the individual defendants makes references to the Second Hawaii Case and its judgment, and the appellate process which refused to entertain hearing the appeal after two years of pendency before the appellate court when the original presiding judge self-recused himself and the new presiding judge simply abruptly dismissed the appeal, apparently not wishing to entertain allegations of collusion of the trial court judge with defendant Francik.

The fraud of that "trial" is, however, well detailed herein. The dismissal of that fraudulently obtained 'indictment' had not yet occurred at the time that the Second Hawaii Case went to the appellate court. Since such fraud can serve to vacate judgments under the Federal Rules of Civil Procedure (FRCP), Rule 60(b)(3), *a fortiori* this Court can examine that fraud to determine whether there was a trial in fact which would meet the requirements for 'issue preclusion'. It is

urged upon this Court that that fraud of defendant Francik lying to a Hilo grand jury, then using the 'indictment' obtained by that lying to prevent the plaintiff from attending the Second Hawaii Case "trial", is just such fraud as should serve to preclude the operation of 'issue preclusion' as that fraud in fact worked to prevent actual litigation of the issues of the alleged misappropriation (poor spending) of monies and the 2004 Promissory Note allegedly not signed by corporate officers.

It is otherwise uncontested that Linda Wagner was in fact a corporate officer on January 1, 2004 when she signed that 2004 Promissory Note, and the public record of Nevada clearly shows as such. It is further uncontested herein that defendant Francik worked a fraud on the Second Hawaii Court and precluded plaintiff Wagner from being at the "trial" because of that fraud. Accordingly, this Court is obligated to weigh the public record of Nevada with the discredited "judgment" obtained by defendant Francik's fraud on the Hawaii trial court to determine that indeed that 2004 Promissory Note was validly signed by Linda Wagner and hence plaintiff Wagner's record keeping thereon was proper, and he was not engaged in any form of misappropriation of funds in signing such promissory note.

///

10

C)    The 2004 Note:

Counsel for the individual defendants references the Hawaii appellate court's remand to the trial court for the determination on a *quantum meruit* basis the value of the work performed by plaintiff herein for WBGI between 1995 to 2004 for which he had not been paid.  He had filed with that court copies of Promissory Notes that had been entered year by year.  The trial court judge dismissed the case on the fraudulent claim by defendant Francik that Linda Wagner was not a WBGI officer on January 1, 2004 when she signed the last of a long series of such promissory notes, alleging that that constituted fraud on her part.  The trial court agreed with defendant Francik's fraud, and dismissed the case.  The appellate court reversed, and remanded for further proceedings on the *quantum meruit* claim.  For whatever reason, it did not discuss the validity of any of the promissory notes (they were all valid, signed year by year), and simply asserted that "in all other respects, we affirm the circuit court".

Once again, this Court must weigh the uncontested public record of Nevada, which clearly demonstrates that Linda Wagner was a WBGI corporate officer on January 1, 2004 when she signed the last in a series of promissory notes (none of the others of which were challenged), with the fraud worked upon the Hawaii court by defendant Francik, whose fraud in the exact same regard has been amply demonstrated with the Hilo grand jury.   While it is

disconcerting that the appellate court refused to address that issue, and remanded for a decision on the actual value of the services performed (as opposed to the contractually stated value), this Court can again itself review pursuant to FRCP Rule 60(b)(3), etc., and determine that the public record of Nevada is controlling, that defendant Francik worked a fraud on the Hawaii court, and that the 2004 Promissory Note was neither a misappropriation of funds nor an example of poor record keeping that would otherwise serve to give credence to the claimed issue of 'issue preclusion'.

III

## CONCLUSION

In summary, the individual defendants have raised no new issues, and their summarization of the claimed 'issue preclusion' amply demonstrates that the doctrine is inapplicable herein for the same reasons given in the prior Memorandum of Law in opposition. Specifically, the Nevada Case did not address the issues but rather solely the issue of corporate governance, the First Hawaii Case was remanded for placement of a judgment in plaintiff's favor, and the Second Hawaii Case never actually litigated the issues because of the criminal fraud of defendant Francik.

They have demonstrated that the issue of the defamation of plaintiff by some (or possibly all) of the defendants placing on the WBGI website the discredited, dismissed 'indictment' for the sole and express purpose of defaming plaintiff to his business associates is not addressed in any of the prior court cases (First Hawaii Case, Nevada Case, Second Hawaii Case), and the defamations contained therein (false allegation that plaintiff committed the felonies of "identity theft" and "attempted theft") are not even remotely suggested as having been the subject of prior court cases. Rather, the evidence before this Court is that that 'indictment' was obtained exclusively by the felony perjury of defendant Francik before a Hilo grand jury, that defendant Francik's fraudulent allegations are proven to be false by the Nevada public record and that defendant Francik was aware of the truth and chose to present a lie, and that the fraudulently obtained 'indictment' was dismissed by the Hawaii court, but that nevertheless some (or possibly all) of the named defendants chose to publish the 'indictment' on the WBGI website for a full year after its dismissal.

Accordingly, it is respectfully requested that this Court deny the motions to dismiss in their entirety, and grant plaintiff's requested reliefs.

Further, it is again requested that this Court appoint a Receiver to oversee the affairs of WBGI. WBGI owes plaintiff a substantial sum of money (First

Hawaii Case, appellate decision), and they are spending monies owed to him to pay their attorneys to oppose him, rather than paying him as required by the appellate court decision.  Further, they are now using the shareholder monies to pay for the individual defendants legal representation, which is an impermissible usage of those monies.  Accordingly, a Receiver is warranted to prevent these continuing frauds.

It is further requested that this Court issue an interlocutory order directing that WBGI not sell off its remaining parcel of land.  These defendants have caused the loss of 90% of WBGI's land holdings and it is believed they plan to sell the remaining 10% to cash themselves out, leaving the WBGI shareholders high and dry, and WBGI as a 'shell' corporation.

DATED:     May 25, 2012


Walter L. Wagner