Arnold Richer, #2751
Patrick F. Holden, #6247
**RICHER & OVERHOLT, P.C.**
Attorneys for Defendants Michie, Francik,
Cobos, Robinson, Emerson, Bryant and WBGI
901 West Baxter Drive
South Jordan, Utah 84095
Telephone: (801) 561-4750
Email: aricher@richerandoverholt.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WALTER L. WAGNER, an individual, | : |
| Plaintiff, | : Case No. 2:11-cv-00784-CW-PMW |
| v. | : DEFENDANTS PRESTON MICHIE'S, KENNETH FRANCIK'S, LESLIE |
| PRESTON MICHIE, an individual, KENNETH FRANCIK, an individual, LESLIE COBOS, an individual, MARK ROBINSON, an individual, ANNETE EMERSON, an individual, STEVE BRYANT, an individual, and WORLD BOTANICAL GARDENS, INC., a Nevada corporation, | : COBOS', MARK ROBINSON'S ANNETTE EMERSON'S, AND STEVE : BRYANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO : DISMISS. : District Judge Clark Waddoups |
| Defendants. | : Magistrate Paul M. Warner |

Defendants Preston Michie, Kenneth Francik, Leslie Cobos, Mark Robinson, Annette

Emerson, and Steve Bryant ("the Individual Defendants"), by and through their attorneys of

record, and pursuant to the *Federal Rule of Civil Procedure* 12(b)(6) and DUCivR 7-1, submit the Individual Defendants' Reply Memorandum in Support of the Individual Defendants' Motion to Dismiss.

## INTRODUCTION

Plaintiff Walter L. Wagner ("Wagner") sued Defendant World Botanical Gardens, Inc. ("Defendant WBGI") and the Individual Defendants for defamation as well as fraud, waste and mismanagement. [Docket # 2] The Individual Defendants are former and present members of the Board of Directors for Defendant WBGI. Initially, Wagner served Defendant WBGI, but did not serve the Individual Defendants. As a result, Defendant WBGI, by itself, moved to dismiss Wagner's First Amended Complaint ("Complaint"). [Docket # 's 5 and 7]

Defendant WBGI's motion was based on the doctrine of issue preclusion, in addition to Wagner's lack of standing to bring a fraud, waste and mismanagement claim against Defendant WBGI. At issue was the preclusive effect of three prior state court decisions between Wagner and Defendant WBGI. Magistrate Warner found three of the four elements of issue preclusion applied to Wagner's defamation claims, but reserved ruling on the last element of issue preclusion, the finality of each state court decision. [Docket # 30] Magistrate Warner also concluded that Wagner lacked standing to bring a fraud, waste and mismanagement claim against Defendant WBGI. [Docket # 30]

Defendant WBGI filed a second motion addressing the finality of each state court

decision. [Docket #'s 39 and 40] Defendant WBGI also filed a motion to stay further proceedings based on the pendency of one of the three state court decisions. [Docket #'s 41 and 42] These motions are pending.

Eventually, the Individual Defendants waived service of process and filed their own separate motion to dismiss. [Docket #'s 52 and 53] The Individual Defendants essentially raised the same arguments as Defendant WBGI, arguing that Wagner's defamation claims are barred by issue preclusion. Wagner submitted his Memorandum of Law in Opposition to Individual Defendants' Motion to Dismiss ("Wagner's Memorandum"). [Docket # 55]

Wagner raises several arguments. First, Wagner argues that the issue of his poor record-keeping was not actually and necessarily litigated in the Nevada state court decision. Second, Wagner claims that the prior state court proceedings were the product of fraud and therefore do not have any preclusive effect. Third, Wagner claims that his defamation claim arises out of an allegedly improper indictment for attempted theft and identify theft in the State of Hawaii. According to Wagner, the Individual Defendants' and Magistrate Warner failed to address this aspect of Wagner's case.

## POINT I

### THE ISSUE OF WAGNER'S POOR RECORD KEEPING WAS ACTUALLY AND NECESSARILY LITIGATED IN THE NEVADA CASE.

Wagner claims the Individual Defendants defamed him by claiming he was a poor record-

keeper during his tenure with Defendant WBGI. The Individual Defendants argue that the issue of Wagner's poor record-keeping was actually and necessarily litigated in the Nevada Case. In response, Wagner states that "none of the issues pertaining to plaintiff Wagner's activities while serving as WBGI President were at issue" in the Nevada Case. [Docket # 55, pg. 7]

The fourth element of issue preclusion under Nevada law is that "the issue was actually and necessarily litigated." Five Star Capital Corporation v. Ruby, 194 P.3d 709, 713 (Nev. 2008). The Nevada Decision shows that the issue of Wagner's poor record-keeping was actually and necessarily litigated. The Nevada Court conducted a three day trial at which Wagner was represented by counsel. [Docket # 7; Exhibit A, pgs. 1 - 2] After the trial, the Nevada Court entered Findings of Fact, Conclusions of Law and Judgment.

The Nevada Court first found that:

[i]n the later part of 2003, Emerson and Francik spent numerous hours trying to decipher and organize WBGI's business records, which had formerly been kept by Defendant Walter Wagner. Emerson and Francik discovered that Defendant Walter Wagner had diverted funds to his personal accounts, **failed to keep proper financial records**, and failed to pay employment taxes, failed to file corporate income tax reports, **failed to keep accurate records of shareholders.**

[Docket # 7; Exhibit A, pgs. 2- 3][Emphasis added]

The Nevada Court went on to note that "[u]pon discovery of Defendant Walter Wagner's malfeasance, the Board of Directors began to change Defendant Walter Wagner's role and limit his authority over daily affairs." [Docket # 7; Exhibit A, pg. 3] Finally, "the Board of Directors

... removed Walter Wagner as a member of WBGI's Board of Directors." [Docket # 7; Exhibit A, pg. 3] Based on these findings, the Nevada Court concluded that "[t]he removal of Defendant Walter Wagner from the WBGI Board of Directors was proper . . . ." [Docket # 7; Exhibit A, pg. 9]

Remarkably, Wagner claims that "none of the issues pertaining to plaintiff Wagner's activities while serving as WBGI President were at issue." [Docket # 55, pg. 7] This claim is contradicted by the Nevada Decision, in which the Nevada Court addresses and resolves several issues related to Wagner's activities at Defendant WBGI.

Wagner also argues that the issue of record-keeping was not necessary to the Nevada Decision. The Nevada Court disagreed. In the Nevada Decision, the Nevada Court included explicit findings that Wagner kept poor financial and shareholder records. Based in part on these finding, the Nevada Court concluded that Wagner was properly removed from the WBGI Board of Directors. Wagner's removal was based on his malfeasance while at WBGI, which malfeasance was in turn based in part on Wagner's poor record-keeping. Therefore, the fact that Wagner was a poor record-keeper was necessary to the finding that Wagner committed malfeasance, which was necessary to determine the propriety of Wagner's removal from WBGI.

WBGI 03

## POINT II

## WAGNER CANNOT AVOID THE PRECLUSIVE EFFECT OF THE PRIOR DECISIONS BY CLAIMING FRAUD.

Interspersed throughout Wagner's Memorandum are allegations that the prior state court proceedings were tainted by fraud[1] - fraud and misconduct committed by the Individual Defendants as well as the state court judges. Wagner's allegations are an insufficient basis upon which to deny the preclusive effects of the state court decisions.

"The denial of a full and fair opportunity to litigate is a defense to collateral estoppel (issue preclusion)." Pactiv Corporation v. Dow Chemical Company, 449 F.3d 1227, 1233 (D.C. Cir. 2006). Generally, "when there has been a due process violation" then "the prior judgment . . .[is] denied preclusive effect." Id. Furthermore, "ordinarily all that due process requires in a civil case is proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." Fehlhaber v. Fehlhaber, 681 F.2d 1015, 1027-1029 (5th Cir. 1982).

---

[1] Wagner claims the Nevada Decision was the result of fraud, [Docket # 55, pg. 6 ("fraud worked upon that Court in the false proclamation to that court by the defendants . . . .")][Docket # 55, pg. 8 ("That perjury to the Nevada court by defendant Francik is detailed . . . .")] [Docket # 55, pg. 9 ("The fraud of that [Second Hawaii Decision] is, however, well detailed herein.")][Docket # 55, pg. 10 ("fraud in fact worked to prevent actual litigation of the issues of misappropriation (poor spending) of monies and the 2004 Promissory Note allegedly not signed by corporation officers.")][Docket # 55, pg. 11 ("fraud worked upon the [First] Hawaii court by defendant Francik . . .")].

Each state court provided Wagner ample due process. In the Nevada Case, Wagner was represented by counsel during the three day trial. [Docket # 7; Exhibit A, pg. 1] After receiving an adverse result, Wagner appealed to the Nevada Supreme Court. The Nevada Supreme Court rejected Wagner's appeal. [Docket # 40; Exhibit A] Wagner had the opportunity to raise any due process objections both before the trial court and on appeal. Against this backdrop, Wagner claims record-keeping was not at issue. In light of the record, as contained in the Nevada Decision, Wagner's belief is not reasonable.

Similarly, the Second Hawaii Court conducted a two day trial. [Docket # 7; Exhibit C] Wagner was present for the first day of trial, but chose not to appear for the second day of trial. [Docket # 7; Exhibit C] Wagner appealed the Second Hawaii Court's decision to the Hawaii Court of Appeals, which appeal was rejected. [Docket # 40; Exhibit C] The Hawaii Court of Appeals stated that "Wagner's points on appeal are nearly incomprehensible." [Docket # 40; Exhibit C] Wagner then petitioned for certiorari with the Hawaii Supreme Court, who denied Wagner's petition. [Docket # 40; Exhibit C] The Hawaii state court system afforded Wagner abundant opportunities to raise his claims. Wagner took full advantage of these opportunities, and his claims were rejected[2].

---

[2] Wagner's quantum meruit claims remain pending in the First Hawaii Court.

## POINT III

## WAGNER'S CLAIMS RELATING TO THE FRAUDULENT EXECUTION OF THE PROMISSORY NOTE AND MISAPPROPRIATION OF FUNDS WERE RESOLVED IN THE HAWAII DECISIONS.

Wagner claims that "the 'Indictment' document was not discussed by Magistrate Warner in his Report." [Docket # 55, pg. 3] According to Wagner's Complaint, on February 28, 2008, a Hawaii grand jury indicted ("the Indictment") Wagner for attempted theft and identify theft. [Docket # 2, ¶ 33] Defendant Francik is alleged to have testified before the grand jury. [Docket # 2] Wagner contends the Indictment was based on Defendant Francik's false testimony. Wagner alleges that Defendant Francik made the following false statements to the grand jury:

(1) Wagner signed a WBGI promissory note on January 1, 2004 without being a WBGI officer or without his co-signor being a WBGI officer [Docket # 2; ¶ 33];

(2) Wagner and his co-signor had been replaced as officers of WBGI in August of 2003 and that therefore their execution of the promissory note was fraudulent [Docket # 2; ¶ 33]; and

(3) Wagner was aware that his wife Linda Wagner was not an officer when signing the promissory note, and therefore perpetrated a fraud [Docket # 2; ¶ 33].

Thus, according to Wagner the Indictment was based on the same defamatory claims (fraudulent promissory note and misappropriation of funds) addressed and resolved in the First and Second Hawaii Court Decision. The Second Hawaii Decision is final, and therefore bars subsequent relitigation of the misappropriation claim in this forum. The First Hawaii Decision is

pending, and all claims related to the First Hawaii Decision (fraudulent promissory note) are the subject of a pending motion to stay.

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request that Plaintiff's state law defamation claims be dismissed with prejudice under the doctrine of res judicata.

DATED this 15th day of June, 2012.

**RICHER & OVERHOLT, P.C.**

_____
Arnold Richer
Patrick F. Holden
Attorneys for Defendants Preston Michie, Kenneth Francik, Leslie Cobos, Mark Robinson, Annette Emerson, and Steve Bryant

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **DEFENDANTS PRESTON MICHIE'S, KENNETH FRANCIK'S, LESLIE COBOS', MARK ROBINSON'S, ANNETTE EMERSON'S AND STEVE BRYANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** to be delivered to the following in the manner and on the date below indicated:

[X] Mail
[ ] Fax
[ ] Email
[ ] Hand Delivery

Walter L. Wagner
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
(Pro Se Plaintiff)

DATED this ___ day of June, 2012..

_____
Patrick F. Holden