WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT

2012 JUN 28  A 11: 03

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| WALTER L. WAGNER, ) | Case:   2:11cv00784 |
| ) | |
| Plaintiff ) | **MEMORANDUM OF LAW** |
| ) | **IN SUPPORT OF** |
| vs. ) | **APPOINTMENT OF** |
| ) | **CAL ANDRUS AS** |
| PRESTON MICHIE, KENNETH ) | **RECEIVER** |
| FRANCIK, LESLIE COBOS, MARK ) | |
| ROBINSON, ANNETTE EMERSON ) | |
| STEVE BRYANT, WORLD BOTANICAL ) | |
| GARDENS, INC. (WBGI), ) | **Clark Waddoups, Judge** |
| ) | |
| Defendants ) | **Paul Warner, Magistrate** |
| ) | |

## MEMORANDUM OF LAW IN SUPPORT OF APPOINTMENT OF CAL ANDRUS AS RECEIVER

I

## INTRODUCTION

The law is clear that appointment of a Receiver is warranted under certain circumstances such as herein. A Receiver can be appointed when a case is filed in federal Bankruptcy Court for dissolution or reorganization, and a Receiver can also be appointed pursuant to the applicable state statutes pertaining to corporations.

This Court obtained jurisdiction over this matter that would otherwise be before a state court, due to the diversity jurisdiction. Title 28 of the United States Code, § 1332, reads in pertinent part:

> **(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –**
>
> **(1) citizens of different States**

In this matter plaintiff is a citizen of Utah, WBGI is incorporated in

2

Nevada with its principal place of business in Hawaii, and the other named defendants are citizens of various states other than Utah, Nevada or Hawaii, providing complete diversity jurisdiction.

The applicable state law pertaining to corporations is the Nevada Revised Statutes (NRS), though similar laws exist in all 50 states pertaining to corporations incorporated in those other states.

The applicable Nevada Revised Statute reads

**NRS 78.650 Stockholders' application for injunction and appointment of receiver when corporation mismanaged.**

    1. **Any holder or holders of one-tenth of the issued and outstanding stock** may apply to the district court in the county in which the corporation has its principal place of business or, **if the principal place of business is not located in this State, to the district court in the county in which the corporation's registered office is located**, for an order dissolving the corporation and appointing a receiver to wind up its affairs, and by injunction restrain the corporation from exercising any of its powers or doing business whatsoever, except by and through a receiver appointed by the court, **whenever**:
    (a) **The corporation has willfully violated its charter;**
    (b) **Its trustees or directors have been guilty of fraud or collusion or gross mismanagement in the conduct or control of its affairs;**
    (c) **Its trustees or directors have been guilty of misfeasance, malfeasance or nonfeasance;**
    (d) The corporation is unable to conduct the business or **conserve its assets** by reason of the act, neglect or refusal to function of any of the directors or trustees;
    (e) **The assets of the corporation are in danger of waste,**

**sacrifice or loss through** attachment, foreclosure, **litigation or otherwise**;

(f) The corporation has abandoned its business;

(g) The corporation has not proceeded diligently to wind up its affairs, or to distribute its assets in a reasonable time;

(h) The corporation has become insolvent;

(i) **The corporation, although not insolvent, is for any cause not able to pay its debts or other obligations as they mature**; or

(j) The corporation is not about to resume its business with safety to the public.

2. **The application may be for the appointment of a receiver, without at the same time applying for the dissolution of the corporation**, and notwithstanding the absence, if any there be, of any action or other proceeding in the premises pending in such court.

3. In any such application for a receivership, it is sufficient for a temporary appointment if notice of the same is given to the corporation alone, by process as in the case of an application for a temporary restraining order or injunction, and the hearing thereon may be had after 5 days' notice unless the court directs a longer or different notice and different parties.

4. **The court may, if good cause exists therefor, appoint one or more receivers for such purpose**, but in all cases directors or trustees who have been guilty of no negligence nor active breach of duty must be preferred in making the appointment. The court may at any time for sufficient cause make a decree terminating the receivership, or dissolving the corporation and terminating its existence, or both, as may be proper.

5. Receivers so appointed have, among the usual powers, all the functions, powers, tenure and duties to be exercised under the direction of the court as are conferred on receivers and as provided in NRS 78.635, 78.640 and 78.645, whether the corporation is insolvent or not.

(**bold** added for emphasis)

4

II

ARGUMENT

Nevada law is clear that enforcement of its statutory law can be had in jurisdictions other than Nevada, even without relying on federal diversity jurisdiction.   The NRS 78.650, paragraph 1, specifically allows for enforcement proceedings in any other state, and by application of federal diversity jurisdiction, it becomes enforceable before this Court.   This is to ensure that sound business practices are followed and not encumbered by requirements necessitating appearances in Nevada.   The Nevada Secretary of State has sought to augment that state's coffers by making Nevada a state in which it is easy to file articles of incorporation (and annual filing fees) for companies not actually located in Nevada (as have Delaware and Wyoming become preferred states for filing articles of incorporation to augment their state's coffers).

Two salient facts can be applied to the above Nevada statute:

1)   WBGI spent approximately $700,000 on lawyers (with most going to a college crony of defendant Michie) in its attack upon the WBGI founder, plaintiff herein, for the purpose of avoiding the liability to the plaintiff herein

for his construction work in building the botanical garden.   Nevertheless, WBGI has been found liable to him by the Hawaii appellate court, which is in an amount similar to the amount spent by defendants trying to unlawfully avoid that liability; and

2)    Lead members of the current management team of WBGI, who are defendants herein, have engaged in extensive wrongdoing, including criminal fraud, tortious conduct, etc. directed towards the WBGI shareholders and plaintiff, and that wrongdoing has caused the WBGI shareholders extensive harm.  These include, but are not limited to:

a)    Inducing dozens of WBGI shareholders to deposit their money into a dedicated "Visitor Center Account" on the false written promise that their additional investment money would be used exclusively for construction of a much-needed and much-anticipated Visitor Center, but instead spending the money on fraudulent litigations and payments to defendant Michie's college crony, and then thereafter lying about it and falsely claiming that plaintiff herein had illegally spent those monies elsewhere;

6

b)     Lying to WBGI shareholders by defendant Francik falsely proclaiming that plaintiff herein was "caught" by his girlfriend defendant Cobos during an "audit" in an alleged 'embezzlement' when in fact he was entirely set up and induced into selling his own shares to help meet WBGI's payment obligation on credit card loans, and then falsely charged with selling company treasury shares, not his own;

c)     Lying to WBGI shareholders and others by defendant Francik falsely proclaiming that plaintiff herein and his wife were not WBGI officers on January 1, 2004 when they signed the last in a series of nine promissory notes written to save WBGI from having to make financial outlays and deferring that obligation for a period of ten years, falsely asserting instead that such signatures constituted 'attempted theft' and 'identity theft' and initiating fraudulent criminal charges thereon and falsely publishing those false charges to the WBGI shareholders long after they were dismissed by the courts;

d)     Selling off of WBGI's primary assets, its land holdings, and leaving WBGI with less than 10% of its original holdings; selling off of WBGI's land assets in violation of WBGI By-Laws and established practice; selling off of WBGI's land assets to personal friends of some of the named

defendants herein without realtor assistance or public offering but rather by 'private placement' at prices greatly below market value;

e)      Billing WBGI approximately $150,000 by defendant Michie for alleged 'legal work' in assisting his college crony in promoting the frauds of defendant Francik;

f)      Neglecting of the botanical garden infrastructure, including allowing extensive growth of weeds and loss of plantings, and failing to maintain the development program instituted by the founder.

When plaintiff originally incorporated WBGI he controlled 33.33333% of the shares.  Over time he was 'watered-down' by issuance of additional shares, and his ownership was reduced to 16.66667%, and now at about 13% with his sale of some of his shares.  While defendants proclaim that they sold-off his shares to 'satisfy' a judgment obtained by fraud in Nevada (the fraudulent claim that plaintiff sold WBGI treasury shares and pocketed the money, when in reality he sold some of his own shares, and donated most of the money to WBGI), that fraud does not serve to preclude plaintiff from bringing this instant action for appointment of a Receiver, in that that fraud is part of the fraud and collusion complained of against defendants.

Moreover, plaintiff is owed money by defendant WBGI, as now affirmed by the Hawaii appellate court; just the exact opposite of what the defendants herein were telling the Nevada judge, i.e. their fraudulent claim that he was not owed any money for building the botanical garden and he simply 'donated' ten years of his time to its construction.   That amount owed to plaintiff by WBGI far exceeds the amount of the 'judgment' fraudulently obtained in Nevada, and there was never a valid legal basis to sell plaintiff's share ownership in WBGI, and it remains at about 13% (less than 16,66667% because he sold a few of his shares).   That share ownership qualifies plaintiff to seek a Receiver under the NRS provision (first paragraph of NRS 78.650) requiring a 10% ownership interest in seeking a Receiver.

The defendants have violated six (6) of the ten (10) provisions of NRS 78.650, namely a-e and i of paragraph 1.   Violation of any one of those provisions is sufficient cause to appoint a Receiver.   Violation of all six simply shows this Court that defendants are unfit to continue serving in any capacity on behalf of WBGI.

Not only is WBGI unable to pay its debt to plaintiff herein, it continues to encumber itself in litigation, while using various frauds to either provoke

9

suits, or defend suits, as has been amply detailed in numerous sworn affidavits previously filed herein.

While one can only speculate as to the motive behind the actions of the defendants, the motive of greed comes readily to mind. It could only be greed that would have compelled defendant Michie to bill WBGI approximately $150,000 to promote the various frauds delineated by defendant Francik. However, the motives are irrelevant to the violation of those sections – the simple fact that so many of the NRS 78.650 provisions have been violated is all that is required to show the necessity for the immediate appointment of Mr. Cal Andrus as the Receiver of the remaining WBGI assets, which will also serve to settle the instant complaint, as well as the judgment obtained by plaintiff against WBGI for his services rendered.

III

CONCLUSION

While the instant tort claims would give any prudent business person cause to wonder what's wrong with the 'management' of WBGI, they are but a small fraction of the numerous other wrongs engaged by that

10

'management' over the course of the past few years. One can only speculate at what drove defendant Francik to engage himself in so many criminal acts while serving on the WBGI board. But one can only speculate as to why he did likewise while with the LAPD. However, his motive is irrelevant. What is relevant is that he has 'tainted' the other members of his board so heavily by lying to them so thoroughly and extensively over the course of the past few years, that they too have become unable to adequately see the forest for the trees, and are presently unfit to guide WBGI, necessitating the appointment of a Receiver.

WHEREFORE, it is respectfully requested that this Court immediately appoint Mr. Andrus as a Receiver for WBGI so that he might begin to repair the extensive harm caused, and being caused, by defendants to WBGI.

DATED: June 25, 2012

_____

Walter L. Wagner

11