WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT
2012 JUL -2  P 12: 08
DISTRICT OF UTAH
BY:_____
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| WALTER L. WAGNER, ) | Case:   2:11cv00784 |
| ) | |
| Plaintiff ) | **SWORN AFFIDAVIT OF** |
| ) | **DAN PERKINS IN** |
| vs. ) | **SUPPORT OF ANDRUS'** |
| ) | **APPOINTMENT AS** |
| PRESTON MICHIE, KENNETH ) | **RECEIVER** |
| FRANCIK, LESLIE COBOS, MARK ) | |
| ROBINSON, ANNETTE EMERSON ) | |
| STEVE BRYANT, WORLD BOTANICAL ) | |
| GARDENS, INC. (WBGI), ) | **Clark Waddoups, Judge** |
| ) | |
| Defendants ) | **Paul Warner, Magistrate** |
| ) | |

# SWORN AFFIDAVIT OF DAN PERKINS
# IN SUPPORT OF ANDRUS' APPOINTMENT AS RECEIVER

I, Dan Perkins, affirm, state and declare under penalty of perjury as follows:

1. I became an investor in WBGI in 1995, and assisted WBGI extensively thereafter by assisting the founder, plaintiff Wagner, in raising capital for the construction of the botanical gardens, which assistance commenced in late 1995.

2. In 2004 I raised additional capital for WBGI, which money I turned over to the control of Kenneth Francik and his board of directors. I raised approximately $700,000 in 2004 for WBGI. Approximately $500,000 was raised from new investors to WBGI. They were directed by me to mail their check and participation agreement to the Hilo office, where Mr. David Adams caused their check to be deposited into the WBGI general operating account, then controlled by Kenneth Francik and his board, and their participation agreement registered in the WBGI database. I did not directly handle the money they invested in WBGI. I was located in Utah during those efforts.

3. Additionally, I spoke with existing investors and encouraged them to increase their original investment amount with additional investment, with the promise that their additional investment amount would be placed into a dedicated "Visitor Center Account" that was to be used exclusively for construction of a much-needed and much-anticipated Visitor Center. Those monies were also handled by Mr. Adams when they were received in the Hilo office, and he deposited approximately $220,000 into that dedicated Visitor Center Account, raised entirely from existing shareholders of record.

4. In making those assistances in raising capital for WBGI, I was provided information by defendant Kenneth Francik that the money so raised would be used for construction of a Visitor Center. Defendant Francik had promised the shareholders in writing in WBGI newsletters released in 2004 that if they increased their original financial participation, that their money would be used exclusively for construction of a Visitor Center. I had believed that his written promise would be kept.

5. In September 2004 I met with defendant Kenneth Francik and Mr. David Adams, the WBGI office manager. This was shortly before the start of the annual shareholder meeting later that day. During that meeting of

the three of us, we discussed the fact that the founder (plaintiff Wagner) was selling some of his shares. I was aware that he was doing so to replace monies that WBGI had been paying on his personal credit cards that he had loaned to WBGI, which monthly repayments had ceased by WBGI in mid-2004. Defendant Kenneth Francik expressed to Mr. Adams and myself his approval of such share sales, proclaiming to the two of us that he was pleased that the founder was reducing the number of shares he held in WBGI.

6. In late 2004, Mr. Adams kept me apprised of the fact that plaintiff Wagner was continuing to reduce his share ownership, as Mr. Adams was responsible for maintaining the shareholder database, and he was reducing the share count of plaintiff Wagner whenever he sold some shares. During this period of time, I continued assisting Kenneth Francik with raising capital for his board of directors, which assistance continued until January 2005.

7. In late January (or early February) of 2005 defendant Kenneth Francik conducted a telephonic board meeting. I was on his board of directors at that time, and participated in that telephonic board meeting. At that board meeting, defendant Francik announced that he had "caught"

plaintiff Wagner selling the WBGI treasury shares and embezzling the money. He proclaimed that his girlfriend, defendant Leslie Cobos, had conducted an "audit" of the WBGI books and had discovered such theft. I was aware, of course, that plaintiff Wagner was selling his own shares, and I relayed that information that defendant Francik was setting up plaintiff Wagner, to him personally, by way of a phone call a few minutes later.

8. I subsequently ascertained in speaking with Mr. Adams that the purported "audit" by defendant Cobos was in actuality simply her appearing at the WBGI office in Hilo, and in her capacity as a member of the board of directors, asking Mr. Adams for copies of the documentation of plaintiff Wagner's share sales.

9. Subsequently, I provided written sworn affidavits in the Hawaii law suits pertaining to the above, as did Mr. Adams, all of which show that defendant Francik had set up plaintiff Wagner to make it appear that he was selling WBGI treasury shares, not his own. Because both Mr. Adams and I refused to lie to support defendant Francik's false accusations, we were both named as defendants by Kenneth Francik in the lawsuits he initiated in Hawaii, along with plaintiff herein Wagner.

10. As a consequence of that fraudulent suit against plaintiff Walter Wagner, that also named myself and Mr. Adams, filed in both Hawaii and Nevada, the approximately $700,000 that I had raised in 2004 to build the WBGI Visitor Center instead went into the pocket of defendant Michie's college chum, Mr. Tom Yeh and their Nevada attorney. Defendants Francik and Michie had hired Mr. Yeh, Mr. Michie's college chum, to represent them in their fraudulent suit against plaintiff herein Wagner in Hawaii, and a different attorney in Nevada.

11. I was dismayed, to say the least, to see this man, Kenneth Francik, whom I had supported by raising a relatively large sum of money for him to spend on building the botanical garden, instead spend it on a fraudulent lawsuit, and cause the demise of the botanical garden in the process. Apparently because that still was not enough money, I was further dismayed to see them sell off 90% of the WBGI land holdings that I had spent nearly a decade (1995-2004) in assisting in WBGI's acquisition, including its signature waterfall that had served as a major attraction for WBGI (and was a major selling point in my assistance to WBGI in raising capital).

12. The fraudulent criminal complaint that was initiated by defendant Francik against plaintiff herein Wagner is but further fraud on his part. Plaintiff Wagner had told me that he was protecting his personal interests by signing promissory notes for the salary he was not collecting, choosing to spend that money instead on the development of the botanical garden. I was told this several times by him over the course of several years, long before defendant Francik became involved. I was aware that he and Linda Wagner were WBGI officers on January 1, 2004 because I was also an officer at that time. Later in mid-2004, I asked to be released as an officer. Plaintiff Wagner and his wife had been WBGI officers since I started working for WBGI in 1995, and served continuously in such capacity to about September, 2004 when the board of directors voted to appoint new officers. I attended the telephonic board of directors meeting in September 2004 in which we voted to replace the Wagners as WBGI officers with defendant Francik and defendant Emerson. Defendant Francik was well aware that Linda Wagner and Walter Wagner were WBGI officers in January, 2004 when they signed that last promissory note. I believe it was criminal fraud for defendant Francik to go to a Hilo grand jury and lie, wrongly convincing them that the Wagners were not WBGI officers when

they signed that last promissory note. Fortunately for the Wagners, they had the public record from Nevada that bears out what I wrote above.

13. My wife and I are parents, grandparents, and great grandparents. I have served in many business capacities over the past half century. I have never before seen someone with such a proclivity for lying and fraud as is the case with defendant Francik. I continue to work, in part because my investment in WBGI, at one time valued at $500,000, was wiped out by defendant Francik and his frauds.

14. I have known Mr. Cal Andrus for more than 20 years. He is honest, hard working, and one of the original investors in WBGI, having invested in WBGI the year prior to my investment. I believe this Court would do well to appoint him as a Receiver in an effort to clean up the mess created by defendant Francik and his close associates, who apparently continue to pursue the frauds initiated by defendant Francik.

DATED: July 2, 2012

_____
Dan Perkins