WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT

2012 JUL 12  A 11: 22

DISTRICT OF UTAH

BY:_____
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

---

| | |
|---|---|
| WALTER L. WAGNER, ) | Case:   2:11cv00784 |
| ) | |
| Plaintiff ) | **REPLY TO "DEFENDANTS'** |
| ) | **MEMORANDUM IN** |
| vs. ) | **OPPOSITION TO** |
| ) | **PLAINTIFF'S MOTION FOR** |
| ) | **APPOINTMENT OF CAL** |
| PRESTON MICHIE, KENNETH ) | **ANDRUS AS RECEIVER** |
| FRANCIK, LESLIE COBOS, MARK ) | **AND TO BAR WBGI** |
| ROBINSON, ANNETTE EMERSON ) | **PAYMENTS"** |
| STEVE BRYANT, WORLD BOTANICAL ) | |
| GARDENS, INC. (WBGI), ) | |
| ) | **Clark Waddoups, Judge** |
| Defendants ) | **Paul Warner, Magistrate** |
| ) | |

<u>REPLY TO "*DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR APPOINTMENT OF CAL ANDRUS AS RECEIVER AND TO BAR WBGI PAYMENTS*"</u>

Plaintiff Walter L. Wagner respectfully replies to the "Defendants' Memorandum in Opposition to Plaintiff's Motion for Appointment of Cal Andrus as Receiver and to Bar WBGI Payments".

I

<u>INTRODUCTION</u>

There is one salient feature about this case that this Court should take note of – there are no affidavits filed by any of the defendants that refute any of the facts set forth by plaintiff, by Mr. Perkins or by Mr. Andrus in their respective sworn affidavits.  The relevant facts set forth by those parties clearly refute the opposition posed by Mr. Patrick Holden on behalf of his clients.  Those relevant facts gleaned from those uncontested sworn affidavits can be summarized as follows:

1.    Defendant Francik worked a fraud upon a Hilo grand jury by lying under oath, falsely claiming that plaintiff and his wife committed crimes of 'identity theft' and 'attempted theft' by their signing of promissory notes that

2

were intended to defer for a period of ten years a WBGI financial obligation to plaintiff (back-pay) so as to allow WBGI sufficient time to begin operating in the financial black whereupon repayment of such obligation would not be a hardship ten years later;

2.      Defendant Francik worked a fraud upon the Nevada court by lying under oath and claiming that plaintiff herein had sold WBGI treasury shares, rather than his own personal shares as was the case, and thereafter seeking a monetary judgment against plaintiff in Nevada in contravention to the agreement to leave all monetary claims for decision in the Hawaii case.

3.      Defendants Francik et al. worked a fraud upon the Nevada court by lying and falsely claiming that plaintiff was not owed any monies, and in particular that he had not earned any money for the decade-long effort (1994-2004) he had undertaken to build the WBGI botanical garden, and that accordingly they should be allowed to sell plaintiff's shares at auction to 'satisfy' the fraudulently obtained monetary judgment issued in Nevada.

4.      Defendants Francik et al. worked a fraud upon the Nevada court by purporting to sell at a "public auction" plaintiff's share ownership interest in WBGI, when in fact there was no actual auction, and they were sold back to

3

defendant WBGI and a WBGI board member at 1/50th of their then actual value without any actual competitive bidding by the public or others but rather by 'single individual bid' offers.

5.     Defendants Francik et al. worked a fraud upon the Nevada court by falsely claiming that plaintiff, who had spent more than a decade in building up the WBGI botanical garden (1994-2006 of actual construction efforts), was attempting to destroy WBGI, when in fact he was simply opposing the frauds being successfully worked upon the Nevada court; in concert with that fraud, defendants Francik et al. in actuality engaged themselves in the destruction of WBGI by selling off the WBGI lands and spending the WBGI shareholder monies on fraudulent legal efforts.

6.     Defendant Francik worked a fraud upon the Hawaii court by causing the false arrest of plaintiff's wife, and removal of plaintiff and his wife from that courtroom, at the start of the 'civil trial' in which the fraudulent claims of selling corporate treasury shares rather than his own shares, etc. were also promulgated to that court.

7.     Defendants Francik et al. worked a fraud on the WBGI shareholders by telling them (both orally and in writing) to invest dedicated monies into a

dedicated Visitor Center Account that would be used solely for the construction of a much needed and much-anticipated Visitor Center, and then instead spending the money on themselves and their frauds rather than building a Visitor Center as promised.

8.    Defendants Francik et al. have continuously worked a fraud on the WBGI investors by falsely claiming to them that plaintiff had stolen the Visitor Center Account monies when in fact they were stolen by one or more defendants; by falsely claiming to the WBGI shareholders that their litigations were viable and needed legal actions when they were in fact frauds; by falsely claiming to the WBGI shareholders that their legal actions were 'behind them' (2010 WBGI eNewsletter) when in fact they had the instant case pending and were continuing to work frauds by posting the dismissed and fraudulently-obtained 'indictment' on the WBGI website as if it were true and not actually dismissed as false, and they had the Hawaii case for back-pay pending before the appellate court; etc.

9.    Defendants have, since 2004, systematically destroyed most of WBGI:

A)    In 2004, when plaintiff herein turned control of WBGI over to defendants, WBGI possessed 300 acres of prime farm land that it was developing into a large botanical garden. This included the acclaimed triple-

tiered Umauma Falls on a 90-acre parcel, as well as the Rainforest Walk on a 180 acre parcel, and an additional 30 acres that was denoted as the Visitor Center parcel, for which preliminary excavations of the Visitor Center site had commenced (which is now the sole remaining WBGI parcel, though with 3 acres of it sold to one of defendants' friends at a price well below market value).   In 2004, approximately 100 visitors were daily visiting the botanical garden, and the botanical garden was in immaculate condition, following ten years of extensive labor on the part of plaintiff herein, who himself is a trained botanist (degreed from UC Berkeley in 1972).   Visitor Comments in 2004 were exceptionally favorable.

B)   Following eight years of disastrous 'management' by defendants, none of whom are botanists and who are instead led by a fired 'dirty-cop' who was prosecuted for his misdeeds as a Los Angeles police officer, the remaining 27 acres are a complete disaster.   The 90-acre Umauma Falls parcel was sold to a WBGI shareholder, who developed it into a strongly competing tourist attraction with a prominent zip-line attraction leading into the fabulous Umauma Gulch while suspended over the stupendous triple-tiered Umauma Falls.  This Umauma Falls zip-line attraction has essentially bankrupted the WBGI zip-line attraction that has been described as a

"Kindgergarten" level zip-line dropping into a small stream instead of a deep gulch as does the competing Umauma Falls zip-line. The Rain Forest parcel, which was being extensively developed by plaintiff for WBGI with extensive plantings, trails, etc. was sold off to a private friend of defendants' (again without public offering or shareholder approval) at well below market value, and it has been chopped up into several smaller parcels for resale in the Hawaii housing market. The sole remaining parcel has been described by recent visitors in very unflattering terms, detailed in the accompanying supplemental affidavit of plaintiff, in which he copied verbatim their descriptions given in the *TripAdvisor* website provided by defendant Bryant.

C)   One can only conclude that in 2004, ten years after initiation of development, WBGI was a strong and viable operation, and following eight years of disastrous 'management' by defendants, WBGI now teeters on the verge of insolvency with no 'game-plan' for rescuing it, other than to continue the frauds being worked by the 'management' upon the courts. While defendants continue to claim that plaintiff "has attempted to destroy WBGI", in reality plaintiff is the one who created WBGI and spent ten years of his life developing WBGI into a premier botanical garden destination. In actuality, for the past eight years defendants have been destroying WBGI by working

frauds on the courts, by selling off WBGI lands, by stealing monies from the shareholders' dedicated Visitor Center Account, and otherwise engaging themselves in criminal and fraudulent activities while allowing the remaining WBGI land to simply deteriorate like the forgotten plants at a Home Depot fire-sale rack.

D)   Plaintiff's efforts before the courts in the Nevada and Hawaii cases have simply been to expose the frauds of defendants, as well as obtain recognition of the extensive monetary claims he has against WBGI (for which monetary claims he had been willing to defer for ten years, which deferral defendants herein rejected, seeking instead to deny him any compensation for his garden efforts, via the courts, which fraudulent court effort by defendants was unsuccessful as per the Hawaii appellate decision).

II

## PLAINTIFF HAS STANDING

Defendants claim that plaintiff lacks standing to seek appointment of Mr. Andrus as a receiver (they don't argue it's not a necessary action, or that they're doing just fine, or that he's not qualified).  In actuality, because of the extensive frauds of defendants, plaintiff retains standing.

In 2004, plaintiff owned 16.667% of the 20,000 issued shares of WBGI, and they had a share value at that time of $520/share (valuing WBGI at $10,000,000+).  Additionally, as per the un-refuted sworn affidavits on file herein, plaintiff is owed approximately $700,000 by WBGI for his work for WBGI from 1994 to 2004.  Plaintiff sold approximately 3% of his ownership interest in WBGI (as per the agreement arranged at *Ken's House of Pancakes* between plaintiff and defendant Francik to avoid the legal complications of the WBGI breach of the credit card repayment program), leaving him 13+% ownership interest in WBGI, sufficient to give him standing under Nevada law to bring the action for appointment of a receiver.

However, defendants claim that their frauds allow them to claim he has no ownership interest.  Their frauds in this matter are three-fold:

1)   They fraudulently claimed to the Nevada court that plaintiff sold WBGI treasury shares and embezzled the money; when in actuality he sold his own shares (the 3% referenced above) as per the agreement entered at *Ken's House of Pancakes*.  This is an uncontested fact presented herein by way of sworn affidavit.

2)    They fraudulently claimed to the Nevada court that they did not owe plaintiff any money for the work he did between 1994 to 2004 for building the botanical garden, and therefore the only way to 'satisfy' their fraudulent claim that he sold WBGI treasury shares and embezzled the money was to sell his remaining (13+%) shares.  In actuality, WBGI owes plaintiff approximately $700,000 for that work performed over the course of a decade, roughly double the amount they claimed was owed to them (3% X 20,000 shares X $520/share = $312,000).  This is shown in the uncontested sworn affidavit of plaintiff, as well as by the Hawaii appellate decision showing the validity of his claim;

3)    They fraudulently claimed to hold an "auction" to sell his shares, but could only get $10/share, when in actuality there was no 'auction', they were sold to themselves at the 'opening bid' for each lot, for which they purport to have acquired his shares at $10/share, and then months later they sold them to unsuspecting WBGI shareholders at approximately $200/share.  Again, this is presented herein by way of uncontested sworn-affidavit.

Any one of those three frauds would be sufficient to void that claimed transaction. All three combined simply show that plaintiff retains standing due to those frauds. Defendants simply claim that they can do whatever they want, and say whatever they want, and that their words therefore preclude plaintiff from having standing. This Court, of course, is free to actually examine the facts, and not simply take defendants' false claim at face value that plaintiff lacks standing.

III

## DEFENDANTS' ATTEMPT TO BLAME PLAINTIFF FOR THEIR LEGAL DIFFICULTY IS SERIOUSLY MISPLACED

Defendants assert "*Ironically, much of the financial difficulty experienced by WBGI is a result of Plaintiff's ongoing litigation against WBGI.*"[1] Certainly, that is true. Plaintiff was named as a defendant in two fraudulent lawsuits initiated by defendants herein, and defended against those frauds. It would certainly have been preferable had they not spent all of the *Visitor Center Account* monies on their frauds, and instead simply agreed to acknowledge the monetary claims that plaintiff had generously allowed ten years for the repayment thereof. Instead, they chose to harass

---

[1] Last sentence of first paragraph of Point III on page 4 of their *Memorandum in Opposition*.

and badger plaintiff herein with their frauds, leaving him no choice but to defend in the fraudulent suits they initiated, and prosecute in the suit he initiated and which the appellate court agreed with him on his claim for back-pay. Likewise, in the instant suit, it would be preferable if they stipulated that they would not continue to prosecute their frauds, acknowledge their civil liabilities (both in the instant suit and the other suits), and move forward.

Indeed, that is the course to be chartered by Mr. Andrus, as that is the only course that will rapidly remove WBGI from litigations and its attendant expenses, and allow WBGI to obtain investment capital (which shies away from lawsuits) and prosper. As Mr. Richer noted in *Bedore v. Familian*, 125 P.3d 1168, the appointment of a Receiver is severe and harsh, but defendants have left this Court no alternative. They have engaged in extensive criminal and civil frauds over the past eight years for which they have remained unrepentant, and choose instead to continuously engage themselves in litigations rather than acknowledge their frauds, digging themselves ever deeper into financial difficulty. They now repeat here the frauds they worked in Nevada, including the fraudulent claim that plaintiff *"sprayed weed killer on garden plants"* when in fact he sprayed weed-killer

on garden weeds, creating a beautiful botanical garden.[2]   Indeed they appear to relish working their frauds, repeating anew that same quote derived from the fraud worked upon the Nevada court judge as if it brings them some pleasure to falsely and fraudulently paint plaintiff in a false light.

Accordingly, it is respectfully requested that this Court appoint Mr. Andrus as the WBGI Receiver so that he may begin setting matters in proper order, and allow WBGI to begin recovering from the disasters inflicted on it during the past eight years by the defendants.

DATED: July 10, 2012

Walter L. Wagner

---

[2] The other frauds from that quote on the bottom of page 4 of their Memorandum in Opposition have been detailed before, and include the fact that the *Tolman Board* (not plaintiff) froze the WBGI bank account, which board was fraudulently deceived by defendant Francik who promptly filed suit against Ron Tolman et al. in contravention to the *Two Boards Agreement*; the *Lis Pendens* was lawful because plaintiff in fact is owed money by WBGI as is now determined by the appellate court; plaintiff did not 'trespass' but was an invited guest as the WBGI founder who continued to work *gratis* for two years (2004-2006) at the botanical garden, including doing weed control; the WBGI website was taken down temporarily by the Tolman Board because of false defamations placed on it by defendants herein, from which lesson defendants learned nothing; and of course plaintiff did not sell the WBGI interests (treasury shares) but rather his own shares, and WBGI was not deprived of any funds it would otherwise have had. These contradicting facts were detailed previously in one of plaintiff's uncontested sworn affidavits filed herein.