WALTER L. WAGNER
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

FILED
U.S. DISTRICT COURT

2012 NOV 26  A 8: 07

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| WALTER L. WAGNER, ) | Case:   2:11-cv-784-RJS-PMW |
| ) | |
| Plaintiff ) | **MEMORANDUM OF** |
| ) | **OBJECTION TO REPORT** |
| vs. ) | **AND RECOMMENDATION OF** |
| ) | **MAGISTRATE JUDGE PAUL M.** |
| PRESTON MICHIE, KENNETH ) | **WARNER OF NOVEMBER 5,** |
| FRANCIK, LESLIE COBOS, MARK ) | **2012** |
| ROBINSON, ANNETTE EMERSON ) | |
| STEVE BRYANT, WORLD BOTANICAL ) | |
| GARDENS, INC. (WBGI), ) | **District Judge Robert J. Shelby** |
| ) | |
| Defendants ) | **Magistrate Judge Paul Warner** |
| ) | |

# MEMORANDUM OF OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE PAUL M. WARNER OF NOVEMBER 5, 2012

I

## INTRODUCTION

Plaintiff received a copy of the Report and Recommendation, postage meter stamped on November 7, deposited into the U.S. mail on Thursday, November 8, and received by plaintiff on Tuesday November 13, 2012, and plaintiff files this Objection thirteen days thereafter on November 26, 2012.

The **first salient feature** of the Report and Recommendation is the recommendation for a stay of plaintiff's claim pertaining to the publication to some 600 WBGI shareholders of a fraudulent indictment against plaintiff herein, long after it had been dismissed by the trial court, pending the outcome of plaintiff's claim for breach of contract in the First Hawaii Action (a recommendation of a stay of the defamation action against defendants contained in the amended complaint). However, it is to be noted that the outcome has already been determined as to whether or not the underlying claim for monetary damages against WBGI is a valid claim, with the Hawaii Court of

Appeals (First Hawaii Case – II) determining that the *quantum meruit* aspect of the breach of contract is a valid contract action, sending it back to the trial court for determination as to the amount of money owed, <u>not</u> whether or not the suit was validly filed. As shown below, the operative effect of that Hawaii Appellate Court decision (First Hawaii Claim - II) is to preclude <u>defendants</u> from asserting that that lawsuit was bogus, as they were asserting to the Hawaii prosecuting attorney in bringing a fraudulent claim of 'attempted theft' for plaintiff herein having filed that lawsuit against WBGI. It has been conclusively determined that it was a valid suit on which plaintiff may proceed, and defendants are hereafter precluded from asserting that it was an invalid claim upon which they could assert to the prosecuting attorney that that lawsuit was an "attempted theft" for plaintiff herein having brought that claim.

The **second salient feature** of the <u>Report and Recommendation</u> is its utter neglect to reference any of the extensive evidences of fraud brought against the defendants by way of numerous sworn affidavits, particularly as they relate to frauds upon the trial courts of Hawaii and Nevada in procuring the relied-upon judgments for 'issue preclusion'. While perhaps if those affidavits had been countered with opposing affidavits, this neglect to reference such fraud could be understandable, in fact they were completely unopposed.

3

Specifically, three individuals filed sworn affidavits (Andrus, Perkins, and plaintiff Wagner herein) detailing extensive frauds worked upon the Hawaii court (Second Hawaii Case) and the Nevada court (Nevada Case) leading to those decisions that were unfavorable to plaintiff herein, and were recommended as a basis for issue preclusion pertaining to the issues of 'record keeping' and 'misappropriation of funds'. As shown below, the Rules of Evidence require this Court to treat as validly existent the fraud that was worked upon the trial courts of Hawaii and Nevada to obtain those decisions, in that the defendants have not met their burden of establishing the non-eixistence of the presumed fraud, which presumption was introduced by plaintiff.

II

## DEFAMATION CLAIM FOR PUBLISHING FRAUDULENT INDICTMENT TO 600+ SHAREHOLDERS IS NOT PRECLUDED AND SHOULD NOT BE STAYED IN THAT ISSUE PRECLUSION OPERATES AGAINST DEFENDANTS

1.  Plaintiff amended his original complaint to include a major claim for defamation based upon defendants' publication on their WBGI website of a fraudulently obtained indictment against plaintiff herein, notwithstanding the dismissal of the indictment for cause, in an effort to falsely portray plaintiff as a felon, all the while failing to advise the WBGI shareholders (who are plaintiff's

4

business partners as well) that the indictment had been dismissed, resulting in their continuing belief of that fraud and plaintiff's inability to conduct other business with them. This is by far the most egregious of the conducts complained of, in that the publication was to approximately 600+ business partners of plaintiff and/or their spouses. This claim is the one that is not relating to record-keeping and/or alleged misappropriation of funds (which Magistrate Warner has recommended to be dismissed) but instead 'relates' to the "2004 Note" claim (First Hawaii Case) for monetary damages which Magistrate Warner has recommended be retained, though stayed pending the outcome of the First Hawaii Case now that that claim has been returned from the Hawaii Appellate Court earlier this year to the Hawaii trial court, some 8+ years after the case was initially filed by plaintiff herein against WBGI in 2004.

2. The other claims that Magistrate Warner has recommended be dismissed pertain to 'record keeping' and alleged 'misappropriation of funds'. Magistrate Warner relies upon the effect of issue preclusion (based on the fraudulently obtained Second Hawaii Decision and the fraudulently obtained Nevada Decision) to recommend their dismissal. Those claims pertain to defamations of plaintiff to single individuals, as compared to the defamation to 600+ individuals of the publication of their fraudulently obtained indictment on the WBGI website

long after the indictment was dismissed by the Hawaii court. Those claims are relatively minor in effect compared to the claim recommended for retention. Plaintiff will discuss those claims, and the alleged 'issue preclusion' pertaining thereto, in <u>Section III, LESSER CLAIMS AND THE EFFECT OF FRAUD ON ISSUE PRECLUSION</u>

3. However, even though Magistrate Warner has recommended that the claim for defamation based on the false publication of a fraudulently obtained indictment should not be dismissed, he has recommended that this claim should be stayed pending the 'outcome' of the First Hawaii Case (the one filed in 2004 by plaintiff herein against WBGI). His argument thereon is in error for several reasons.

4. Plaintiff summarizes anew the defamation claim that Magistrate Warner has recommended for retention as follows:

A) Defendant Francik, circa February 2008, began lying to prosecutors and WBGI shareholders, claiming that plaintiff herein Wagner was not owed money by WBGI for the work he had done during the prior decade. Plaintiff Wagner had filed suit against WBGI in 2004 (First Hawaii Case) setting forth, *inter alia*, a claim based upon *quantum meruit* (value of services performed). By spending

approximately $500,000 of shareholder money on the law firm of *Tsukazaki*, et al., he was able to persuade judge *Hara* to dismiss that suit circa 2008 (about 2 weeks prior to his fraudulent testimony to a 'grand jury'. About two weeks later defendant Francik was subsequently able, by lying and other frauds, to wrongly persuade prosecutor *Kimura* and deputy prosecutor *Iboshi* to bring an indictment against plaintiff herein, based upon the dismissal of that suit. He was subsequently able, by lying and other frauds, to persuade judge *Nakamura*[1] to arrest plaintiff Wagner's wife during the subsequent civil suit (Second Hawaii Decision) and fraudulently obtain a civil judgment against the Wagners who were unable to appear and defend themselves in court due to defendant Francik's fraud on that court.

B)  The 'indictment' alleged two felonies ostensibly committed by plaintiff, neither of which were in fact crimes. The first count of the 'indictment' was the claim that he had engaged in "identity theft" for telling people that his name is Walter Wagner and that he was the President of WBGI since its inception in 1995 to circa September 2, 2004 when he was replaced by Board of Director

---

[1] Though not relevant to this complaint, it should be mentioned that the foregoing attorney and government officials were also members of a Big Island political organization known as the *Japanese* Chamber of Commerce, whereas plaintiff and his wife were active in a competing organization known as the Big Island Chamber of Commerce.

vote led by defendant Francik. In fact, that is plaintiff's name, and no one was claiming he was not the President of WBGI during that time-frame (not even defendant Francik). Accordingly, that charge was 'quickly' dismissed after approximately six months (in late 2004) of pendency before the court.

C) The second count of the 'indictment' was the claim that plaintiff Wagner's 2004 filing of the First Hawaii Case (seeking *quantum meruit* damages, etc.) was an "attempted theft" because that civil suit had been dismissed two weeks earlier (January, 2008) by judge *Hara*, and therefore Wagner's 'attempt' to collect money (by filing suit) for his services rendered was not a valid attempt because ostensibly monies were not owed due to the trial court dismissal of the First Hawaii Case. In fact, not only were monies owed to plaintiff herein, the First Hawaii Case was subsequently (in 2012) reinstated by appellate action (First Hawaii Case – II). That phony criminal charge was dismissed for cause, however, in 2010 as it is never a crime to file a civil lawsuit in which a person honestly believes he is owed money, even if he does not prevail.

D) After the indictment was filed, defendant Francik continued his acts of defamation against plaintiff, lying about him and claiming plaintiff Wagner was not owed monies, etc., as detailed more fully in the instant complaint. This

continued until the dismissal of the indictment in 2010, approximately 11 months before the instant suit was filed herein.

E) Notwithstanding the dismissal of the indictment, defendant Francik continued lying about plaintiff herein thereafter, and induced defendant Robinson to publish on the WBGI website the dismissed indictment, publishing same to 600+ of plaintiff's business partners so as to induce them to have no further business dealings with plaintiff, falsely setting forth that it was a valid indictment, not a bogus indictment dismissed for cause.

5. Magistrate Warner has now recommended that the defamation action claim pertaining to defendants' false defamation of plaintiff on the WBGI website should be stayed based upon the First Hawaii Case now being back before the trial court as a result of appellate action earlier in 2012 (First Hawaii Case – II) in which he sets forth that that subsequent determination might affect the outcome of this pending defamation claim as a "parallel" action.

6. However, such is not the case. The indictment itself was fraudulent, as it was based on activities that are not crimes. Moreover, no matter what the final outcome of plaintiff's *quantum meruit* claim in Hawaii, the dismissal of the indictment is final and will not change. The publication of a dismissed

9

indictment, for the purpose of defaming plaintiff to his business partners, is not affected by whether plaintiff's services to WBGI over the course of ten years (1995-2004) is valued at $.01 or $500,000 (or even dismissed for failure to prosecute); it is the fact that the indictment was dismissed, and that there was no valid basis for an indictment, that plaintiff complains about herein based upon defendants' publication of a dismissed indictment, as if it were true, to plaintiff's business partners long after it had been dismissed.

7.     The doctrine of issue preclusion in fact <u>operates to preclude defendants</u> from asserting that plaintiff's civil suit (First Hawaii Case) was bogus (as defendant Francik asserted to the Hilo, Hawaii prosecuting attorney (who has since been replaced).  Issue Preclusion serves to protect plaintiff from the fraudulent and bogus claim of defendants that plaintiff Wagner filed a fraudulent lawsuit seeking *quantum meruit* payment for the services he rendered, when in fact the appellate court has agreed (First Hawaii Case – II) that he is owed such *quantum meruit* payment and the filing was accordingly, as a matter of law, not bogus.

8.     Accordingly, there is no basis for a 'stay' to await the outcome of plaintiff's *quantum meruit* claim, as plaintiff's instant claim for defamation does not turn on that outcome in any manner.  The raising of the issue of the *Colorado River*

case [*Colo. River Water Conservation District v. United States*, 424 U.S. 800 (1977)] is in essence a smokescreen. The *Colorado River* case requires both the pending State and the pending Federal cases to be "parallel", and defines parallel by asserting "*a federal court must first determine whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate <u>substantially the same issues</u> in different forums.*" (<u>underlining</u> added for emphasis)[2]. While these are substantially the same parties (WBGI in Hawaii; WBGI and most of its Board of Directors in Utah), they are most definitely <u>not</u> substantially the same issues, and are <u>not</u> parallel cases, nor did Magistrate Warner make any effort to show that they are parallel cases, rather simply jumping to that erroneous conclusion and then analyzing whether a stay should be placed if they are found to be parallel.

9. In particular, the claim pending in Hawaii is for back-pay, a *quantum meruit* claim under <u>contract law</u> for the work performed between 1995-2004. The instant Federal claim is for defamation, a <u>tort action</u>, for falsely publishing false and defamatory materials to plaintiff's business partners. Moreover, as noted above, the outcome of the *quantum meruit* claim <u>has no bearing</u> on the

---

[2] Page 13, top paragraph, of Magistrate Warner's Report and Recommendation)

instant tort action. Rather, issue preclusion operates to preclude defendants from asserting that plaintiff's claim was bogus and that the dismissal of the 'indictment' was somehow erroneous.

### III

### LESSER CLAIMS AND THE EFFECT OF FRAUD ON ISSUE PRECLUSION

1. Various lesser tort claims were also filed in the amended complaint, and they relate primarily to issues pertaining to plaintiff's record-keeping and the falsely alleged misappropriation of funds. These are claims for defamation based upon writings to single individuals by individual defendants on behalf of WBGI in which plaintiff herein was falsely defamed as it pertained to his record-keeping and the false allegation that he misappropriated WBGI funds (the false claim by defendant Michie that plaintiff Wagner stole the Visitor Center funds, when in fact this was a cover-up by Michie of the theft of those funds by one or more of the defendants). These false claims were by way of emails to single individuals.

2. What is notable about this case however, is not that these lesser tort claims have arisen, but rather that in defending against the claim of 'issue preclusion' raised by defendants' counsel, plaintiff has submitted evidence in

the form of numerous sworn affidavits. This evidence provides great detail of frauds worked by defendants, and primarily defendant Francik, that were worked upon both the Second Hawaii court (judge *Nakamura*) as well as the Nevada court, setting forth that those decisions were obtained by fraud, and were it not for that fraud, the decisions would have been favorable to plaintiff herein.

3. But more notable still is not the extensive detailing of criminal fraud and other fraud worked by defendant Francik by way of sworn affidavits, but rather that there is not a single piece of evidence submitted by defendants that countered that fraud. The defendants simply chose to remain silent when faced with that fraud.

4. Magistrate Warner simply ignores that extensive detailing of fraud as if it had not been filed, and ignores defendants' silence thereon. This is erroneous.

5. The Federal Rules of Evidence, Rule 301 (Presumptions in Civil Cases Generally) reads:

> "*In a civil case, unless a federal statute or these rules provide otherwise, <u>the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption</u>. ...*"
> (<u>*underlining*</u> added for emphasis)

6. This burden to produce evidence to rebut the presumption (and in this case the presumptions are that the Second Hawaii Decision and the Nevada Decision were procured by the fraud of defendant Francik, as detailed by the several sworn affidavits filed by plaintiff Wagner's witnesses) is amplified by the Notes of the Advisory Committee, which reads:

> "Presumptions governed by this rule are given the effect of <u>placing upon the opposing party the burden of establishing the nonexistence of the presumed fact</u>, once the party invoking the presumption establishes the basic facts giving rise to it. The same considerations of fairness, policy, and probability which dictate the allocation of the burden of the various elements of a case as between the prima facie case of a plaintiff and affirmative defenses also underlie the creation of presumptions. These considerations are not satisfied by giving a lesser effect to presumptions. Morgan and Maguire, Looking Backward and Forward at Evidence, 50 Harv.L.Rev. 909, 913 (1937); Morgan, Instructing the Jury upon Presumptions and Burden of Proof, 47 Harv.L.Rev. 59, 82 1933); Cleary, Presuming and Pleading: An Essay on Juristic Immaturity, 12 Stan.L.Rev. 5 (1959)." (<u>underlining</u> added for emphasis)

7. Since defendants did not file any evidence to counter the evidence filed by plaintiff, the opposing party has not even attempted to establish the nonexistence of the presumption that the decisions of the Second Hawaii Case and the Nevada Case were obtained by the fraud of defendant Francik and are not valid or otherwise enforceable judgments.

8.      Accordingly, it is error for Magistrate Warner to utilize those decisions, no matter how strongly defendants' counsel urges him to do so, in that the un-rebutted presumption is that they were obtained exclusively by the fraud of defendant Francik, as was amply detailed in the various sworn affidavits filed as evidence by plaintiff Wagner. Accordingly, this Court would be complicit in those frauds if it were to allow fraudulently obtained judgments to be utilized in this Court. In that both plaintiff and defendants have submitted this matter for decision, defendants cannot now seek any late introduction of 'evidence', absent a showing of fraud on the part of plaintiff (which fraud does not exist).

9.      Accordingly, the doctrine of issue preclusion is wholly inapplicable, as the issues that are purportedly determined by prior court action in fact were obtained by fraud.

10.     Indeed, because defendants failed to present even the slightest scintilla of evidence to counter the facts detailed by plaintiff's witnesses who provided evidence by way of numerous sworn affidavits, both detailing the frauds worked upon the courts of Hawaii and Nevada, as well as detailing the facts giving rise to the instant tort actions, it is requested that summary judgment is appropriate and be granted as against defendants for failing to present any rebuttal

evidence, leaving the sole issues to be decided by the jury to be the amount of the monetary damages, which was not detailed by plaintiff.

IV

CONCLUSION

1.  The tort claim for defendants' publishing on the WBGI website false and defamatory material, namely a fraudulently obtained, and subsequently dismissed, 'indictment' as if it were a true and valid extant criminal complaint should be retained as an action, as recommended by Magistrate Warner. However, the action should not be stayed pending the outcome of the *quantum meruit* claim pending in Hawaii as they are entirely different claims and issues, and that 2004 Hawaii contract action (First Hawaii Case) is not a parallel action to the instant 2011 tort action. Moreover, the outcome of the Hawaii contract action is irrelevant to whether or not plaintiff was falsely defamed by defendants' publishing false and defamatory material about plaintiff on their WBGI website.

2.  The claim of 'issue preclusion' is entirely circumvented by the failure of defendants to rebut the evidence showing that their prior state actions were entirely obtained by fraud worked upon those courts. While this could have been a rebuttable presumption, the fact that the defendants failed to even

attempt to meet their burden of proof now serves to eliminate that claim of 'issue preclusion', in that this Court must now conclude that frauds were worked on the Nevada and Hawaii courts as detailed by plaintiff's witnesses in their various sworn affidavits, and not rebutted in the least.

3. Because of the failure to rebut the evidence presented by plaintiff by way of his witnesses' sworn affidavits, all of the claims of the complaint have been established, and the case is subject to summary judgment and accordingly it is respectfully requested that partial summary judgment be entered as to the liability of the defendants, with the sole remaining issue for the jury to be the extent of the monetary damages.

4. The conclusion of Magistrate Warner that the motion for an extension of time for service of process, because of the acknowledgment of the service of process, is moot is a correct conclusion.

5. The request for an appointment of a receiver must be properly entertained because defendants failed to rebut the evidence proving that plaintiff owns more than 10% of the outstanding shares of WBGI, and because defendants failed to rebut the evidence showing that WBGI 'governance' meets telephonically across the U.S., leaving any state as a valid state in which to file if jurisdiction

can otherwise be obtained, as it can in Utah because WBGI filed suit against plaintiff Wagner in Utah state court in the recent past, and because WBGI did not challenge jurisdiction in Utah.

DATED: NOVEMBER 23, 2012

_____
Walter L. Wagner